IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PENNY NINIVAGGI et al., individually
and on behalf of all others similarly situated,

        *Plaintiffs*,

v.

UNIVERSITY OF DELAWARE,

        *Defendant*.

No. 20-cv-1478-SB

---

HANNAH RUSSO, individually and on
behalf of all others similarly situated,

        *Plaintiff*,

v.

UNIVERSITY OF DELAWARE,

        *Defendant*.

No. 20-cv-1693-SB

---

Robert J. Kriner, Jr., Scott M. Tucker, CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP, Wilmington, Delaware; Joshua D. Arisohn, BURSOR & FISHER, P.A., New York, New York.

        *Counsel for Ninivaggi et al.*

Christopher P. Simon, Michael L. Vild, CROSS & SIMON, LLC, Wilmington, Delaware; Eric M. Poulin, Roy T. Willey, IV, ANASTOPOULO LAW FIRM, LLC, Charleston, South Carolina.

        *Counsel for Russo.*

James D. Taylor, Jr., Charles E. Davis, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, Delaware.

        *Counsel for Defendant.*

**MEMORANDUM OPINION**

August 20, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Higher education involves lots of money but surprisingly few express contracts. Students borrow and spend tens if not hundreds of thousands of dollars to go to college. Yet they never sign an agreement of the sort they encounter when downloading an app. Instead, they must look to course catalogs and student handbooks—poor substitutes for comprehensive contracts. Thus, when the unexpected happens, there may be no contingency plan or agreed-upon remedies. Courts must sort out who promised what.

The COVID pandemic hit this country in early 2020. So in March, the University of Delaware replaced in-person classes with online ones. Now some of its students (and some of their parents) are suing over that decision. Though they do not fault the school for going online, they want partial refunds of their spring 2020 tuition and fees. Because the school might owe them that, I will mostly deny its motions to dismiss.

To start, the students have plausibly alleged that U. Delaware promised them in-person classes, activities, and services. True, the school never promised them expressly. But promises need not be express to be enforceable. By its statements and history of offering classes in person, the school may have implied a promise to stay in person. So the students deserve a chance to press their contract claims.

To be sure, even if there was a promise, the school was probably justified in breaking it. But that would not end the case. Though impossibility might excuse the broken promise, the school should not be unjustly enriched. So it may need to return the money it saved, if any, by going online.

The students' contract and unjust-enrichment claims survive. But their conversion claim is baseless. So I will dismiss that claim but none of the others.

## I. BACKGROUND

Before me are two cases. In *Russo*, the named plaintiff is a U. Delaware student. In *Ninivaggi*, the plaintiffs are other U. Delaware students and their parents. The school has moved to dismiss both cases. Because the plaintiffs have asked me to consolidate the cases and their facts are identical, I am deciding the motions together.

U. Delaware started its spring 2020 semester in person. Russo Compl., D.I. 1-1, ¶ 102. Yet like many schools, when the pandemic hit, it moved online. *Id.* ¶¶ 1, 35. The school partially refunded the charges for housing, dining, and parking. *Id.* ¶ 43. But it refused to refund any of the students' fees or tuition. *Id.* ¶ 38. So they sued for partial refunds.

U. Delaware did not sign a formal contract with the students. Nor did it expressly say that it would not go online. Oral Arg. Tr. 46. But according to the students, before the pandemic, the school had treated in-person and online classes "as two separate and distinct products." Russo Compl. ¶ 107. For instance, its course catalog listed some courses as in-person and others as online. *See id.* ¶¶ 97–98. It charged more for some in-person programs than for their online counterparts. *Id.* ¶¶ 20, 82. Its advertisements specifically touted the in-person experience. *Id.* ¶¶ 72–92. And before the

3

pandemic, it had never planned to offer its in-person classes remotely. *Id.* ¶¶ 83, 102–04. These facts, the students argue, show that when they signed up for classes and paid tuition, they contracted to take those classes in person.

The students also claim that they contracted for campus services. For example, U. Delaware charged them fees for the gym, the student centers, and the health center, sometimes at higher rates than those paid by online students. Russo Compl. ¶¶ 24–28, 40; Ninivaggi Compl., D.I. 1-1, ¶ 21. But when the school went online, they say, it kept the fees while denying them the services. Russo Compl. ¶¶ 28, 42; Ninivaggi Compl. ¶ 25. They want to recover some of their fees, as well as some of their tuition.

In case their contract claims fail, the students are also suing for unjust enrichment. And the *Ninivaggi* students and parents are suing for conversion too. The school has moved to dismiss both cases, arguing that it never promised to hold classes in person.

## II. THE PARENTS HAVE STANDING

But first, a jurisdictional issue: In *Ninivaggi*, some plaintiffs are parents who paid their children's tuition and fees. Compl. ¶¶ 8, 10, 13. U. Delaware argues that they lack standing to sue because they had no contract with the school and were not harmed. It reasons that the *parents* did not take "the allegedly inferior online classes" or miss out on campus services. D.I. 6, at 8.

I disagree. If the parents are right, they suffered a simpler injury: The school wrongly took their money. It promised to use the money for one purpose but did not. This "financial harm is a classic and paradigmatic form of injury" that supports standing. *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017) (cleaned up). The

4

parents suffered that injury whether they had a contract or not. *See Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 891 n.65 (Del. Ch. 2009) (recognizing that parties may claim unjust enrichment when there is doubt about whether a contract exists or is enforceable).

The school responds that the parents had no duty to pay their adult children's tuition. That misses the point. Whether or not they had to pay, they *did*, and now claim that they did not get what they paid for. So they allege an injury and have standing to sue.

### III. THOUGH SOME OF ITS TERMS ARE EXPRESS, U. DELAWARE'S EDUCATIONAL CONTRACT IS NOT FULLY INTEGRATED AND DOES NOT BAR IMPLIED TERMS

We often think of a contract as a single document detailing all the terms. But some contracts are implied, as when someone silently takes a newspaper and hands the seller a dollar. And others fall along a spectrum in between, with some terms express and others implied. This contract falls somewhere in the middle.

Delaware law governs this case. In Delaware, "[t]he relationship between a student and the university he attends is one of contract." *Siebold v. Univ. of Delaware*, 1975 WL 4178, at *3 (Del. Ch. Mar. 12, 1975). Yet most college students never sign a single, integrated contract.

So to find the terms of an education contract, Delaware courts have looked to documents like the school's course catalog or student handbook. *See, e.g.*, *Siebold*, 1975 WL 4178, at *3; *Swanson v. Wesley Coll., Inc.*, 402 A.2d 401, 403 (Del. Super. Ct. 1979). Although these documents can supply some terms of an education contract, no Delaware court has held that they are the *only* source of those terms.

5

I doubt any court would. Under Delaware law, a contract need not be written, but "may be inferred wholly or partly from conduct." *P.C. Connection, Inc. v. Synygy Ltd.*, 2021 WL 57016, at *19 (Del. Ch. Jan. 7, 2021) (quoting Restatement (Second) of Contracts § 4). "[T]o prevail on a theory of implied-in-fact contract, a plaintiff must establish that the parties, through their actions, demonstrated a meeting of the minds on all essential terms." *Ridley v. Bayhealth Med. Ctr., Inc.*, 2018 WL 1567609, at *7 (Del. Super. Ct. Mar. 20, 2018) (internal quotation marks omitted). To do so, the plaintiff may rely on evidence like the parties' "course of dealing or usage of trade or course of performance." Restatement § 4 cmt. a; *see Weik Nitsche & Dougherty, LLC v. Pratcher*, 2020 WL 5036096, at *5–6 (Del. Ch. Aug. 26, 2020).

Although the Delaware Supreme Court has not yet weighed in, many other states recognize that education contracts may contain implied terms. *See, e.g.*, *Burns v. Quinnipiac Univ.*, 991 A.2d 666, 673 (Conn. App. Ct. 2010); *Kashmiri v. Regents of Univ. of Cal.*, 67 Cal. Rptr. 3d 635, 650 (Cal. Ct. App. 2007). I predict that Delaware would agree. *Cf. Wisch v. Sanford Sch., Inc.*, 420 F. Supp. 1310, 1315 (D. Del. 1976).

Schools and students show their intent to contract mostly through their actions, not words: the school admits them, the students enroll and pay tuition, and the students go to class. The parties did that here, and their acts plausibly created an implied contract.

If they did, then U. Delaware must follow not just the terms of its course catalog, but also those *implied* by its relationship with its students. Those terms, we will see, plausibly included a promise of in-person classes, activities, and services.

6

U. Delaware insists that its contract was solely express, limited to the four corners of the course catalog. For support, it points to an integration clause near the end of the catalog: "This agreement supersedes all prior understandings, representations, negotiations and correspondence between the student and the University of Delaware, constitutes the entire agreement between the parties *with respect to the matters described*, and shall not be modified or affected by any course of dealing or course of performance." Russo D.I. 7, Ex. B at 32 (emphasis added). But the integration clause limits its own reach to "the matters described" in that section of the catalog—the mechanics of "Costs, Billing, and Financial Aid." *Id.* at 4. It does not purport to address methods of instruction (like in-person classes) and thus does not make the contract fully integrated. So that is no bar to implying other terms.

## IV. U. DELAWARE DID NOT EXPRESSLY PROMISE IN-PERSON CLASSES OR ACTIVITIES

The students claim that they expressly contracted with U. Delaware for in-person classes, activities, and services. The school replies that it never promised that, and even warned students that it could change its policies. I see no plausible claim that U. Delaware promised in-person classes or activities expressly. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). But as I will explain later, it may have done so implicitly.

**A. U. Delaware did not expressly promise in-person classes**

The students argue that U. Delaware's catalog promised in-person classes. I disagree.

True, the catalog (and similar documents) said that some classes were scheduled to meet in person. But that shows only that the school *planned* to offer in-person

classes, not that it *committed* to do that. Course catalogs are full of tentative plans: when and where each class will meet, who will teach it, even what textbook it will use. If just scheduling a class in person amounted to promising in-person teaching, then by the same logic the catalog would have promised thousands of other details. But U. Delaware did not plausibly commit to turning its entire catalog into an enforceable code. And nothing in the catalog singles out in-person classes as the one detail that would never change. So the catalog does not help the students on its own. For the same reason, neither do the school's advertisements.

### B. U. Delaware did not expressly promise in-person activities and services

The students claim that U. Delaware charged fees for the gym, the health center, and the like, but then cut them off during the pandemic. The students say that the school specifically described the "nature and purpose of each fee." Russo Compl. ¶ 107. But they never point to a document where the school promised that the students would always have access to the facilities. Nor do they allege that a school official promised that orally.

Admittedly, the line between express and implied contracts can be blurry. *Corp. Servs. Co. v. Kroll Assocs.*, 2001 WL 755934, at *5 (Del. Super. Ct. June 15, 2001). But the students' factual assertions do not plausibly allege an express contract.

### V. U. DELAWARE MAY HAVE IMPLIEDLY PROMISED IN-PERSON CLASSES AND ACTIVITIES

That leaves whether U. Delaware impliedly promised in-person classes and services. It may have. Courts across the country have split on this question. *See*

*Crawford v. Presidents & Dirs. of Georgetown Coll.*, 2021 WL 1840410, at \*8 (D.D.C. May 7, 2021) (collecting cases), *appeal filed*, No. 21-7063 (D.C. Cir. June 11, 2021).

### A. U. Delaware may have promised in-person classes

Start with the claim about classes. U. Delaware's contract with its students has some implied terms. The school does not dispute that. Some things are "an indispensable part of the bundle of services which colleges … afford their students." *Furek v. Univ. of Del.*, 594 A.2d 506, 520 (Del. 1991) (read as bearing on implied contractual terms by *Rogers v. Del. State Univ.*, 905 A.2d 747 (Table) (Del. 2006)). If students do the work, they will get their degrees. *E.g.*, *Carr v. St. John's Univ.*, 231 N.Y.S.2d 410, 413 (N.Y. App. Div. 1962). Schools may enforce rules of behavior and punish students who do not follow them. *See Stathis v. Univ. of Ky.*, 2005 WL 1125240, at \*9 (Ky. Ct. App. May 13, 2005).

Similarly, the students insist, being on campus is a core part of the educational deal: it is "so basic to the bargain" between students and an in-person university. Oral Arg. Tr. 44. They may be right.

No doubt, U. Delaware could not simply have stopped classes. Its counsel conceded that. Oral Arg. Tr. 16:9–16. So there is some implied limit on the school's freedom to change its teaching. True, universities have wide latitude to change course details. Professors fall ill, so substitutes fill in. Classrooms need repairs, so students must trek to different parts of campus. Scheduling conflicts arise, so schools may be unable to offer every class every semester. Not every detail in the course catalog is frozen in amber.

But suspending in-person instruction is fundamentally different. Imagine an in-person school that runs a deficit. After taking the students' tuition, it switches to self-directed learning just to save money. That bait-and-switch would probably be unreasonable. *See Crawford*, 2021 WL 1840410, at *7–8. Indeed, at oral argument, U. Delaware could not deny that. Oral Arg. Tr. 78:5–21, 79:16–80:13.

Before the pandemic, U. Delaware allegedly treated in-person and online classes as separate products: it charged separate prices for them and had no plans to move its in-person classes online. And for centuries, plaintiffs insist, students and schools have understood that college courses are taught in person. Russo D.I. 9, at 7. They trudge bleary-eyed to their 8 a.m.'s, down caffeine during all-nighters in the library with their study groups, and run from one campus building to another in between. That is what it means to go "*off to* college." Plus, the school touts this on-campus experience on its website, in its admissions letters, and during admitted students' day. Russo Compl. ¶¶ 78, 86–87, 92.

This history, custom, and course of dealing, along with the school's statements, plausibly created an implied promise of in-person classes. These claims will proceed to discovery.

### B. U. Delaware may have impliedly promised activities and services in exchange for the fees

The school charged the students for access to, among other things, its gym and health center. But the students lost access to those facilities when the pandemic hit. This is a classic implied-in-fact contract claim: If you charge a customer for a book and take his money, you have contracted to give him the book. You cannot later take

10

take the book back. So too, if a school charged a fee for an activity or service, it plausibly promised to provide it.

The school replies that the fees did not buy *access* to any activities or services; instead, they only "supported" them. Russo D.I. 7, at 12 n.10. I cannot see why that would matter. *How* the school planned to use the fees is irrelevant to *what* it promised in return. Perhaps discovery will show that the school really promised nothing. But the students have plausibly alleged that it did.

### VI. U. Delaware's Responses Are Not Persuasive

#### A. U. Delaware did not reserve the right to go online

The school argues that it expressly reserved the right to go online. It did not.

First, the school notes that in its course catalog, it "reserve[d] the right to revise its policies, fees, and other charges." Russo D.I. 7, Ex. B, at 4. But this language is buried in the catalog's section on "fees" and seems to cover only "charges." Even if it covered all school policies, it would not help. "[S]pecific contractual provisions control over more general ones." *In re El Paso Pipeline Partners, L.P. Derivative Litig.*, 2014 WL 2768782, at *11 n.1 (Del. Ch. June 12, 2014) (citing *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 941 (Del. 1979)).

The students claim that the school specifically promised in-person classes and services. If they are right, that promise would trump a general reservation. As Judge Friedrich put it: "The reservations of rights clearly permit the universities to make some changes to course programming and educational services. Yet certain assumptions of the broader implied contract between the universities and their students are so fundamental that the reservations of rights cannot reasonably be interpreted to

11

waive them." *Montesano v. Cath. Univ. of Am.*, 2021 WL 2894720, at *3 (D.D.C. July 9, 2021).

The catalog also says that "[n]o refunds of tuition or course fees will be made for withdrawn courses after the end of the free drop/add period." Russo D.I. 7, Ex. B, at 16. This does not help the school either: it focuses on the *student's* decision to drop a class, not *U. Delaware's* right to cancel or change classes.

U. Delaware drafted all these terms. We construe contractual ambiguities against the drafter. *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 360 (Del. 2013) (contra proferentem). No provision expressly reserves the school's right to go online or expressly limits students' remedies. Nor is there any force majeure clause. *Cf. Lindner v. Occidental Coll.*, 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020) (dismissing contract claim based in part on a clause expressly reserving the right to make changes required by "economic conditions or national emergency"). U. Delaware could have added these terms; we will not.

U. Delaware has thus failed to show that it reserved the right to go online or disclaimed any promise of in-person instruction.

### B. The students have brought a contract claim, not one for malpractice

Next, U. Delaware calls this a claim for educational malpractice. Such claims assert that, because the school was negligent in teaching, "the student received an inadequate education." *Moss Rehab v. White*, 692 A.2d 902, 905 (Del. 1997). Many states bar these claims. *Id.* at 906 n.7. The school argues that Delaware would bar them too.

But this is not a malpractice suit. The students claim not that their education was *bad*, but that it breached a promise to provide a specific type of education.

### C. The students did not waive their contract claim

Finally, the school argues that its students waived their contract claims by showing up to their online classes. Not so. In Delaware, "[c]ontinuing performance [under a contract] … does not waive recovery for the material breach." *Williams Cos. v. Energy Transfer LP*, 2020 WL 3581095, at *14 (Del. Ch. July 2, 2020).

## VII. U. DELAWARE'S PERFORMANCE WAS IMPOSSIBLE, BUT THAT DOES NOT BAR RESTITUTION

Even if U. Delaware promised in-person classes and services, it has a strong defense: the pandemic. If keeping a promise becomes impossible, the promisor may be excused. *AluminumSource, LLC v. LLFlex, LLC*, 2021 WL 211142, at *9 (Del. Super. Ct. Jan. 21, 2021). As the school points out, a week and a half after U. Delaware went online, Delaware's governor ordered colleges to stop in-person activities. Russo D.I. 7-1, at 35. Because this order "is not subject to reasonable dispute," I take judicial notice of it. Fed. R. Evid. 201. The students do not contest that U. Delaware had to move classes online.

But that does not end the case. If someone "renders performance under the contract," but the contract is then excused because of a "change of circumstances," he still "has a claim in restitution … as necessary to prevent unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 34; *see also* Restatement (Second) of Contracts § 272. So if the students prove that U. Delaware promised in-person classes, but the school shows that the promise was impossible to keep, the

13

students might be able to recover restitution. If the school saved money by substituting online for in-person classes, it might have to give those savings back to the students.

That last question turns on an unknown. The school cannot be liable for restitution unless going online enriched it. If online classes cost the school as much or more than in-person classes would have, then it was never enriched at all. But if they were cheaper to offer, then the school might have pocketed the difference. On a motion to dismiss, I have no basis for saying that U. Delaware spent more, less, or as much as it normally does on classes. Those cost calculations must await discovery and summary judgment.

In case their contract claim fails, the students plead unjust enrichment in the alternative. Russo Compl. ¶ 153. Because it is too early to tell if their contract claim will succeed, their unjust-enrichment claims survives. *See Yu v. GSM Nation, LLC*, 2018 WL 2272708, at *21 (Del. Super. Ct. 2018).

### VIII. THE CONVERSION CLAIM FAILS

The *Ninivaggi* plaintiffs are also suing for conversion. But in Delaware, "an action in conversion will not lie to enforce a claim for the payment of money." *Kuroda*, 971 A.2d at 890. The students and their parents want only their tuition back, not any tangible property. So their conversion claim fails. Because that is the only basis for their punitive-damages claim, I will strike that request too.

\* \* \* \* \*

Because the students plausibly allege that U. Delaware impliedly promised in-person classes, services, and activities, their contract claims survive. And because

14

impossibility might excuse those promises, their unjust-enrichment claims survive too. But the conversion claim fails. Thus, I will grant the school's motion to dismiss the *Ninivaggi* plaintiffs' conversion claim but deny the rest.