**EXHIBIT 44**





Visit   Apply   Give

   

## MAJOR FINDER

Search for

### Refine A-Z

| A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q |

| R | S | T | U | V | W | X | Y | Z |

**By College**

**By subject**

# PSYCHOLOGY

APPLY NOW

Exhibit
0044
Morgan



College of Arts and Sciences

Department of Psychological and Brain Sciences

# EXPLORE THE MIND, BRAIN, AND BEHAVIOR

Psychology is the study of the basic processes of the mind and the brain, and the behavior they produce. Because psychology is a hub science, the scientific contributions of psychological research apply many other fields such as law, medicine and engineering. Our undergraduates learn about basic principles of human and animal behavior, the scientific methods used to derive and refine those principles and appropriate ways to apply such knowledge. Because of the interdisciplinary nature of psychology, our major prepares students with transferrable skills applicable to a wide variety of careers.

## AREAS OF STUDY

- Brain and Behavior
- Cognition
- Cultural Perspectives
- The Social Self
- Clinical Science
- Child Development

## CAREER OPTIONS

- Research Scientist
- Therapist
- Psychiatrist
- Human Resources Specialist
- Leadership Consultant
- Marketing Analyst
- Career Counselor

## GRADUATE PROGRAMS

- Social Work
- Marriage & Family Therapy
- Clinical Science
- Social Psychology
- Human Factors
- School Psychology

## What's special about this program?

Our faculty members are award-winning experts across areas such as the development of children in adverse environments, impact of prejudice and processes of change in psychotherapy. We collaborate with multiple departments, the Early Learning Center and the new fMRI research facility. Through our comprehensive program of research and teaching students participate as research assistants with faculty. Students develop strong theoretical frameworks for understanding psychological issues and acquire skills associated with gathering and analyzing data.

## Get involved

Psychology Club
Psi Chi Psychology Honor Society
McNair Scholars
Undergraduate Research Summer Scholars
Active Minds
Autism Speaks U

- Medicine
- Law
- Business

**SEE HOW RECENT PSYCHOLOGY GRADS ARE SUCCEEDING >**

# SAMPLE CURRICULUM

FRESHMAN

SOPHOMORE

JUNIOR

SENIOR






Dare to be first.





Explore UD in Photos

Find your passion: Major Finder

Alumni & Friends: Browse events, Give to UD, Find classmates

UD Home

Psychology | University of Delaware

## EXPLORE

About Us

Athletics

UDaily

Virtual Tour

Employment

## ACADEMICS

Undergraduate Admissions

Graduate Admissions

Colleges

Library

Research

## SERVICES

Accessibility Notice

People Directory

My UD

Campus Safety

A to Z Index

## CONNECT

Contact Us

University of Delaware

Newark, DE 19716 USA

P: 302-831-2792



©2018 University of Delaware    Comments    Legal Notices    Accessibility

**EXHIBIT 45**

Coronavirus (COVID-19) update: Majority of courses will be online through fall semester. **More information**



   

Visit  Apply  Give

# MAJOR FINDER

Search by keyword

By College
By subject

## PUBLIC POLICY

APPLY NOW

**Exhibit
0045**

Morgan

Case 1:20-cv-01478-SB   Document 85-3   Filed 07/08/22   Page 9 of 297 PageID #: 1704



[Joseph R. Biden, Jr. School of Public Policy & Administration](#)

# CREATING SOLUTIONS FOR COMPLEX ISSUES IN OUR COMMUNITIES

Public policy decisions are the means by which communities address challenges such as health, education, housing, energy, poverty, economic growth and environmental sustainability. Public policies are the choices made by societies that drive public investments, create laws and regulations, establish services and security, guide markets and businesses or allocate benefits and costs to citizens. Public policy draws from many

disciplines, including political science, law, economics, sociology, history, urban studies, geography and environmental studies. Policy choices shape the future of communities and change the world.

## AREAS OF STUDY

- State and Local Government Administration
- Nonprofit Administration
- Urban Planning
- Historic Preservation

## CAREER OPTIONS

- City Administrator
- Policy Researcher
- Program Analyst
- Legislative Staff
- Advocate
- Budget Analyst

## GRADUATE PROGRAMS

- Public Policy
- Public Administration
- Law
- Public Health

## What's special about this program?

Students in our program are taught using the distinctive Delaware Model of public policy education. This model integrates academic excellence with professional experience. Students work side-by-side with faculty and professionals to address challenges facing communities and organizations using learning from the classroom. Our faculty have extensive experience working with government, nonprofit community organizations and the private sector. Our communities are learning laboratories and our students use their knowledge to make a meaningful difference. Biden School undergraduate students also have the option of applying to our 4+1 programs, which offer an accelerated path to earning a master's degree alongside the undergraduate program.

## Get involved

Public Administration Fellows
Public Policy Fellows
World Scholars
Legislative Fellows
Washington Fellows
Legislative Researcher
Soles Stipends
Internships

- Urban Planning

- Community Development

- Health Administration

## SAMPLE CURRICULUM

FRESHMAN ☐

SOPHOMORE ☐

JUNIOR ☐

SENIOR ☐



Ready for the next step?

VISIT

MY BLUE HEN HOME

Go Global at UD

STUDY ABROAD

WORLD SCHOLARS

See how recent Public Policy grads are succeeding

CAREER OUTCOMES







Explore UD in Photos

Find your passion: Major Finder

Alumni & Friends: Give to UD and Connect

UD Home

## EXPLORE

About Us

Athletics

UDaily

Virtual Tour

Employment

## ACADEMICS

Undergraduate Admissions

Graduate Admissions

Colleges

Library

Research

## SERVICES

Accessibility Notice

People Directory

My UD

Campus Safety

A to Z Index

## CONNECT

Contact Us

University of Delaware
Newark, DE 19716 USA

P: 302-831-2792

   



©2020 University of Delaware    Comments    Legal Notices    Accessibility

**EXHIBIT 46**

Case 1:20-cv-01478-SB   Document 85-3   Filed 07/08/22   Page 14 of 297 PageID #: 1709

Coronavirus (COVID-19) update: Majority of courses will be online through fall semester. **More information**

# UNIVERSITY OF DELAWARE.

Visit  Apply  Give

## MAJOR FINDER

Search by keyword

By College
By subject

# SPORTS HEALTH

APPLY NOW

**Exhibit 0046**

Morgan



[College of Health Sciences](#)

[Kinesiology and Applied Physiology](#)

[Athletic Training](#)

[Sports Health](#)

# YOUR TICKET TO THE GRADUATE DEGREE PROGRAM IN ATHLETIC TRAINING

The Sports Health major provides unique didactic and clinical experiences that prepare students for exciting

graduate school opportunities in Athletic Training and other allied health careers. Clinical observational experiences working with UD's high-level NCAA Division I student-athletes and clinical staff are among the strengths of UD's educational program. Students wishing to pursue a graduate degree in Athletic Training can take part in the only 3+2 program at the University of Delaware. Students in the Sports Health major who decide not to puruse Athletic Training will complete the requirements for a Bachelor of Science degree in a timely manner and will be positioned to pursue careers in a variety of other health disciplines.

## AREAS OF STUDY

- Anatomy & Physiology
- Emergency care
- Biomechanics
- Exercise physiology
- Strength and conditioning
- Health

## CAREER OPTIONS

- Athletic Training
- Health and fitness
- Health coaching
- Strength and conditioning
- Athletic equipment
- Pharmaceutical sales
- Medical sales

## What's special about this program?

The Health Science brand is alive and well in UD's College of Health Sciences, positioned strategically on the STAR Campus among the contemporary and state-of-the-art health education facilities. A series of strategically placed one-hour, pre-athletic training seminars each semester will enable Sports Health majors to gain foundational knowledge in a variety of sports medicine topics as well as become involved in observational rotations involving UD clinical sites.

## GET INVOLVED

Athletic Training Student Association (ATSA) at the University of Delaware

UD's Undergraduate Research Program

# GRADUATE PROGRAMS

- Allied Health Professions (Athletic training, Physical Therapy, Occupational Therapy, PA studies)

- Medical sales

- Sports equipment

- Fitness specialist

- Medical School

- Health educator

- Sports nutrition and counseling

- Athletic administration

# SAMPLE CURRICULUM

| FRESHMAN | ☐ |
| --- | --- |

| SOPHOMORE | ☐ |
| --- | --- |

| JUNIOR | ☐ |
| --- | --- |

| SENIOR | ☐ |
| --- | --- |

Ready for the next step?

VISIT

MY BLUE HEN HOME

Go Global

at UD

STUDY ABROAD

TOP



Explore UD in Photos



Find your passion: Major Finder



Alumni & Friends: Give to UD and Connect

UD Home

## EXPLORE

About Us

Athletics

UDaily

Virtual Tour

Employment

## ACADEMICS

Undergraduate Admissions

Graduate Admissions

Colleges

Library

Research

## SERVICES

Accessibility Notice

People Directory

My UD

Campus Safety

A to Z Index

## CONNECT

Contact Us

University of Delaware
Newark, DE 19716 USA

P: 302-831-2792



©2020 University of Delaware   Comments   Legal Notices   Accessibility

**EXHIBIT 48**

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**FILED UNDER SEAL**

**EXHIBIT 49**

**Exhibit 0049**
Morgan

**University of Delaware**
**2019-2020 ACADEMIC YEAR CALENDAR**

| | |
|---|---|
| **Graduate Accelerated Session Calendar** may be found here. | Information on religious observances at bottom of calendar. |

FOR THE MOST UP-TO-DATE INFORMATION, PLEASE REFER TO THE ONLINE CALENDAR, RATHER THAN A PRINTED VERSION.
PREPARED BY THE OFFICE OF THE UNIVERSITY REGISTRAR.  FOR QUESTIONS OR COMMENTS:   registrar@udel.edu      11/01/2019

## Fall Semester 2019

| | | |
|---|---|---|
| Apr 15 | Mon | Fall book orders are due by faculty to the UD Bookstore |
| Apr 22 | Mon | Registration begins for Fall Semester 2019 |
| May 1 | Wed | Undergraduate admission application deadline for first year students entering Fall semester |
| May 1 | Wed | Admissions deposit deadline for admitted freshmen |
| Jun 25 | Tue | New Student Orientation begins |
| Jul 1 | Mon | Deadline for graduate admission applications for Fall 2019. Most programs have earlier deadlines. |
| Jul 24 | Wed | New Student Orientation ends |
| Aug 1 | Thu | Undergraduate tuition/fee payment deadline for Fall 2019 |
| Aug 22-23 | | International Student Orientation |
| Aug 24-26 | | 1743 Welcome Days for new students |
| Aug 24 | Sat | Residence hall check-in for new students; 8:00 a.m. to 2:00 p.m. |
| Aug 24 | Sat | First meal in dining halls for new students - lunch |
| Aug 25 | Sun | Residence hall check-in for returning students 8:00 a.m. to 4:00 p.m. |
| Aug 25 | Sun | First meal in dining halls for returning students - dinner |
| Aug 26 | Mon | Academic Orientations |
| Aug 26 | Mon | Residence hall check-in for returning students: 11:00 a.m. to 3:00 p.m. |
| Aug 26 | Mon | Last day to apply for readmission for Fall 2019 |
| Aug 27 | Tue | Classes begin at 8:00 a.m. |
| Aug 27 | Tue | Graduate/PCS tuition/fee payment deadline for Fall 2019. Classes subject to cancellation after this date. |
| Aug 30 | Fri | Deadline for admission to doctoral candidacy for degrees to be conferred in December 2019 or February 2020 |
| Sep 2 | Mon | Labor Day Holiday- University offices closed; classes suspended. |
| Sep 10 | Tue | Last day to add or drop courses.  After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Sep 10 | Tue | Last day to apply for a leave of absence for Fall 2019 |
| Sep 10 | Tue | Deadline for changing dining plan |
| Sep 10 | Tue | **UNDERGRADUATE STUDENTS** - Deadline for completion of deferred examinations and incomplete work (grade I) from Spring Semester 2019 and 2019 Summer Sessions. |
| Sep 16 | Mon | Winter 2020 book orders are due by faculty to UD Bookstore. |
| Sep 16 | Mon | Deadline for filing application for graduate degrees to be conferred in December 2019 |
| Oct 11 | Fri | Fall Break/ Blue Hen Re-Coop Day, classes suspended |
| Oct 11 | Fri | Deadline for midterm grades to be posted in UDSIS |
| Oct 15 | Tue | Spring 2020 book orders are due by Faculty to UD Bookstore. |
| Oct 22 | Tue | Last day to change registration or to withdraw from courses without academic penalty for Fall 2019. |
| Oct 22 | Tue | **GRADUATE STUDENTS** - Deadline for completion of deferred examinations and incomplete work (grade I) from Spring Semester 2019 and 2019 Summer Sessions. |
| Oct 28 | Mon | Registration begins for Winter Session 2020 |
| Nov 11 | Mon | Registration begins for Spring Semester 2020 |
| Nov 14 | Thu | Deadline for receipt of doctoral dissertations and education leadership portfolios for degrees to be conferred in December 2019. |
| Nov. 14 | Thu | Deadline for receipt of master's theses for degrees to be conferred in December 2019 |
| Nov 22 | Fri | Thanksgiving break begins after last class; classes end at 10 p.m.  Residence Halls close at 7:00 p.m. |
| Nov 22 | Fri | Last meal in dining halls before Thanksgiving Break - lunch |
| Nov 25-29 | | Classes suspended Monday through Friday for Thanksgiving break |
| Nov 28 | Thu | Holiday - University offices closed. |
| Nov 29 | Fri | Holiday - University offices closed. |
| Dec 1 | Sun | Residence halls re-open at noon. |
| Dec 1 | Sun | First meal in dining halls after Thanksgiving break- dinner |
| Dec 2 | Mon | Classes resume following Thanksgiving break |
| Dec 2 | Mon | Deadline for graduate admission applications for Spring 2020. |
| Dec 2 | Mon | Deadline for filing application for graduate degrees to be conferred in February 2020. |
| Dec 5 | Thu | Last day of classes, classes end at 10:00 p.m. |
| Dec 5 | Thu | Last day for medical leave of absence to be processed |
| Dec 6 | Fri | Reading Day: no examinations scheduled |
| Dec 9 | Mon | Final examinations begin |
| Dec 14 | Sat | Final examinations end. Residence halls close at 10:00 p.m. |
| Dec 14 | Sat | Last meal in dining halls - dinner |
| Dec 18 | Wed | Deadline for 2019 Fall semester grades to be posted to UDSIS |

## Winter Session 2020

| | | |
|---|---|---|
| Sep 16 | Mon | Winter book orders are due by faculty to the UD Bookstore |
| Oct 28 | Mon | Registration begins for Winter Session 2020 |
| Jan 5 | Sun | Residence hall check-in (5-week classes) Noon to 6:00 p.m. |
| Jan 5 | Sun | First meal in dining halls - dinner |
| Jan 6 | Mon | Classes begin at 8:00 a.m.  (5-week classes)  Residence hall check-in for Winter Session walk-ins, 9:00 a.m. to 3.00 p.m. |
| Jan 6 | Mon | Tuition/fee payment deadline for Winter Session 2020. |
| Jan 9 | Thu | Last day to add or drop courses.  (5-week classes)  After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Jan 9 | Thu | Deadline for changing dining plan – 5-week meal plan. |
| Jan 12 | Sun | Residence Hall check-in (4-week classes) Noon to 6:00 p.m. |
| Jan 13 | Mon | Classes begin at 8:00 a.m.  (4-week classes)  Residence hall check-in for Winter Session walk-ins, 9:00 a.m. to 3.00 p.m. |
| Jan 15 | Wed | Deadline for receipt of dissertations, education leadership portfolios and master's theses for degrees to be conferred in February 2020. |
| Jan 16 | Thu | Last day to add or drop courses.  (4-week classes)  After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Jan 16 | Thu | Deadline for changing dining plan – 4-week meal plan |
| Jan 20 | Mon | Martin Luther King Holiday - classes suspended; University offices closed. |
| Jan 24 | Fri | Last day to change registration or withdraw.  (5-week classes) |
| Jan 28 | Tue | Last day to change registration or withdraw.  (4-week classes) |
| Feb 7 | Fri | Last day of classes |
| Feb 8 | Sat | Final examinations.  Students leaving after Winter Session must checkout of residence hall by 6:00 p.m. |
| Feb 8 | Sat | Last meal in dining halls – dinner |
| Feb 12 | Wed | Deadline for winter session grades to be posted to UDSIS |

## Spring Semester 2020

| | | |
|---|---|---|
| Oct 15 | Tue | Spring book orders are due by faculty to the UD Bookstore. |
| Nov 1 | Fri | Undergraduate admission application deadline for first year and transfer students entering Spring Semester 2020. |
| Nov 11 | Mon | Registration begins for Spring Semester 2020 |
| Dec 2 | Mon | Deadline for graduate admission applications for Spring 2020 |
| Jan 6 | Mon | Undergraduate Tuition/fee payment deadline for Spring 2020 |
| Feb 6 | Thu | Winter International New Student Orientation |
| Feb 7 | Fri | Winter New Student Orientation |
| Feb 7 | Fri | Last day to apply for readmission for Spring 2020 |
| Feb 9 | Sun | Residence hall check-in noon to 6:00 p.m. |
| Feb 9 | Sun | First meal in dining halls – brunch |
| Feb 10 | Mon | Classes begin at 8:00 a.m.  Residence hall check-in 11:00 a.m. - 3:00 p.m. |
| Feb 10 | Mon | Graduate/PCS tuition/fee payment deadline for Spring 2020.  Classes subject to cancellation after this date. |
| Feb 14 | Fri | Deadline for filing application for graduate degrees to be conferred in May 2020. |
| Feb 21 | Fri | Last day to add or drop courses.  After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Feb 21 | Fri | Last day to apply for a leave of absence for Spring 2020 |
| Feb 21 | Fri | Deadline for changing dining plan |

| | | |
|---|---|---|
| Feb 21 | Fri | **UNDERGRADUATE STUDENTS** - Deadline for completion of deferred examinations and incomplete work (grade I) from Fall Semester 2019, and Winter Session 2020. |
| Feb 24 | Mon | Deadline for admission to doctoral candidacy for degrees conferred in May 2020. |
| Mar 16 | Mon | Summer 2020 book orders are due by faculty to UD Bookstore. |
| Mar 23 | Mon | **GRADUATE STUDENTS** - Deadline for completion of deferred examinations and incomplete work (grade I) from Fall Semester 2019 and Winter Session 2020. |
| Mar 27 | Fri | Deadline for midterm grades to be posted to UDSIS |
| Mar 27 | Fri | Spring break begins after last scheduled class; Residence halls close at 7:00 p.m. |
| Mar 27 | Fri | Last meal in dining halls before Spring break - dinner |
| Apr 5 | Sun | Residence halls re-open at noon. |
| Apr 5 | Sun | First meal in dining halls after Spring break - dinner |
| Apr 6 | Mon | Classes resume after Spring break at 8:00 a.m. |
| Apr 6 | Mon | Registration for 2020 Summer Sessions begins |
| Apr 6 | Mon | Deadline for graduate admission applications for June 2020. |
| Apr 13 | Mon | Last day to change registration or to withdraw from courses without academic penalty for Spring 2020 |
| Apr 13 | Mon | Deadline for receipt of doctoral dissertations and education leadership portfolios for degrees conferred in May 2020. |
| Apr 15 | Wed | Fall 2020 book orders are due by Faculty to UD Bookstore. |
| Apr 20 | Mon | Registration begins for Fall Semester 2020 |
| Apr 20 | Mon | Deadline for receipt of master's thesis for degrees to be conferred in May 2020. |
| May 1 | Fri | Undergraduate admission application deadline for first year students entering Fall 2020 |
| May 1 | Fri | Admissions deposit deadline for first year students |
| May 1 | Fri | Deadline for admission to doctoral candidacy for degrees to be conferred in August 2020. |
| May 4 | Mon | Deadline for filing application for graduate degrees to be conferred in August 2020. |
| May 18 | Mon | Last class day; classes end at 10:00 p.m. |
| May 18 | Mon | Last day for medical leave of absence to be processed |
| May 19 | Tue | Reading Day, no examinations scheduled. |
| May 20 | Wed | Final examinations begin. |
| May 25 | Mon | Memorial Day observed; no exams, offices closed |
| May 28 | Thu | Final examinations end. Residence Halls close at 10:00 p.m. (except for graduating students.) |
| May 28 | Thu | Last meal in dining halls - dinner |
| May 29 | Fri | Honors degree breakfast, Doctoral Hooding and some college convocations. |
| May 30 | Sat | Commencement followed by remaining college convocations. |
| May 30 | Sat | Residence halls close at 6:00 p.m. for graduating students. |
| Jun 1 | Mon | Deadline for Spring semester grades to be posted to UDSIS |
| Jun 5 | Fri | Alumni Weekend begins |

### First Summer Session 2020

| | | |
|---|---|---|
| Mar 16 | Mon | Summer book orders are due by faculty to the UD Bookstore. |
| Apr 6 | Mon | Registration for 2020 Summer Sessions begins |
| May 1 | Fri | Deadline for admission to doctoral candidacy for degrees to be conferred in August 2020. |
| May 4 | Mon | Deadline for filing application for graduate degrees to be conferred in August 2020. |
| Jun 7 | Sun | Residence hall check-in for 5 and 7½ week sessions, noon to 5 p.m. |
| Jun 7 | Sun | First meal in dining halls - dinner |
| Jun 8 | Mon | Classes begin at 8:00 a.m. - First Summer Session |

| | | |
|---|---|---|
| Jun 8 | Mon | Tuition/fee payment deadline First Summer Session |
| Jun 11 | Thu | Last day to add or drop courses for First Summer Session. After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Jun 11 | Thu | Deadline for change in Dining plan. |
| Jun 25 | Thu | Last day to change registration or to withdraw from courses - first summer session (5-week course). |
| Jul 1 | Wed | Deadline for graduate admission applications for Fall 2020. Most programs have earlier deadlines. |
| Jul 3 | Fri | Independence Day Holiday observed; Classes suspended; University Offices closed. All dining services are closed. |
| Jul 7 | Tue | Last day to change registration or to withdraw from courses - first summer session (7½-week course). |
| Jul 10 | Fri | Classes end – 5-week Summer Session. |
| Jul 11 | Sat | Final examinations- 5-week Summer Session. Students attending 5-week summer session to check out of residence halls by 7:00 p.m. |
| Jul 15 | Wed | Deadline for 5-week Summer Session grades to be posted to UDSIS. |
| Jul 27 | Mon | Classes end – 7½-week Summer Session classes meeting Monday/Wednesday. |
| Jul 28 | Tue | Classes end – 7½-week Summer Session classes meeting Tuesday/Thursday. |
| Jul 29 | Wed | Final exams - 7½-week Summer Session classes meeting Monday/Wednesday. |
| Jul 30 | Thu | Final exams - 7½-week Summer Session classes meeting Tuesday/Thursday. Students attending 7½-week sessions to check out of residence halls by 7:00 p.m. |
| Aug 3 | Mon | Deadline for 7½-week Summer Session grades to be posted to UDSIS. |

### Second Summer Session 2020

| | | |
|---|---|---|
| Mar 16 | Mon | Summer book orders are due by faculty to the UD Bookstore. |
| Apr 6 | Mon | Registration for 2020 Summer Sessions begins. |
| Jul 12 | Sun | Residence halls check-in noon to 5:00 p.m. |
| Jul 13 | Mon | Classes begin at 8:00 a.m. - Second Summer Session |
| Jul 13 | Mon | Tuition/fee payment deadline for Second Summer Session. |
| Jul 13 | Mon | Deadline for receipt of doctoral dissertations, education leadership portfolios and master's theses for degrees to be conferred in August 2020. |
| Jul 16 | Thu | Last day to add or drop courses for Second Summer Session. After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Jul 16 | Thu | Deadline for change in Dining plans. |
| Jul 30 | Thu | Last day to change registration or to withdraw from courses - Second Summer Session. |
| Aug 13 | Thu | Last day of classes – Second Summer Session. |
| Aug 14 | Fri | Final examinations. Residence halls close for Second Summer Session at 7:00 p.m. |
| Aug 14 | Fri | Last meal in dining halls - dinner. |
| Aug 18 | Tues | Deadline for Second Summer Session grades to be posted to UDSIS. |

---

### RELIGIOUS OBSERVANCES

Sunday, September 29, 2019 – Rosh Hashanah begins at sundown, continues next 2 days
Tuesday, October 8, 2019– Yom Kippur begins at sundown, continues following day
Wednesday, April 8, 2020 - Passover begins, continues for 7 days
Friday, April 10, 2020 – Good Friday

*See policy in Faculty Handbook on* **excused absences.** *Comprehensive List of Observances can be found here:* **Interfaith calendar**

**EXHIBIT 50**

**Exhibit 0050**

Morgan

**University of Delaware**
**2019-2020 ACADEMIC YEAR CALENDAR**

| | |
|---|---|
| **Graduate Accelerated Session Calendar** may be found here. | Information on religious observances at bottom of calendar. |

FOR THE MOST UP-TO-DATE INFORMATION, PLEASE REFER TO THE ONLINE CALENDAR, RATHER THAN A PRINTED VERSION.
PREPARED BY THE OFFICE OF THE UNIVERSITY REGISTRAR.  FOR QUESTIONS OR COMMENTS:   registrar@udel.edu      4/22/2020

### Fall Semester 2019

| | | |
|---|---|---|
| Apr 15 | Mon | Fall book orders are due by faculty to the UD Bookstore |
| Apr 22 | Mon | Registration begins for Fall Semester 2019 |
| May 1 | Wed | Undergraduate admission application deadline for first year students entering Fall semester |
| May 1 | Wed | Admissions deposit deadline for admitted freshmen |
| Jun 25 | Tue | New Student Orientation begins |
| Jul 1 | Mon | Deadline for graduate admission applications for Fall 2019. Most programs have earlier deadlines. |
| Jul 24 | Wed | New Student Orientation ends |
| Aug 1 | Thu | Undergraduate tuition/fee payment deadline for Fall 2019 |
| Aug 22-23 | | International Student Orientation |
| Aug 24-26 | | 1743 Welcome Days for new students |
| Aug 24 | Sat | Residence hall check-in for new students; 8:00 a.m. to 2:00 p.m. |
| Aug 24 | Sat | First meal in dining halls for new students - lunch |
| Aug 25 | Sun | Residence hall check-in for returning students 8:00 a.m. to 4:00 p.m. |
| Aug 25 | Sun | First meal in dining halls for returning students - dinner |
| Aug 26 | Mon | Academic Orientations |
| Aug 26 | Mon | Residence hall check-in for returning students: 11:00 a.m. to 3:00 p.m. |
| Aug 26 | Mon | Last day to apply for readmission for Fall 2019 |
| Aug 27 | Tue | Classes begin at 8:00 a.m. |
| Aug 27 | Tue | Graduate/PCS tuition/fee payment deadline for Fall 2019. Classes subject to cancellation after this date. |
| Aug 30 | Fri | Deadline for admission to doctoral candidacy for degrees to be conferred in December 2019 or master's theses for degrees to be |
| Sep 2 | Mon | Labor Day Holiday- University offices closed; classes suspended. |
| Sep 10 | Tue | Last day to add or drop courses.  After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Sep 10 | Tue | Last day to apply for a leave of absence for Fall 2019 |
| Sep 10 | Tue | Deadline for changing dining plan |
| Sep 10 | Tue | **UNDERGRADUATE STUDENTS** - Deadline for completion of deferred examinations and incomplete work (grade I) from Spring Semester 2019 and 2019 Summer Sessions. |
| Sep 16 | Mon | Winter 2020 book orders are due by faculty to UD Bookstore. |
| Sep 16 | Mon | Deadline for filing application for graduate degrees to be conferred in December 2019 |
| Oct 11 | Fri | Fall Break/ Blue Hen Re-Coop Day, classes suspended |
| Oct 11 | Fri | Deadline for midterm grades to be posted in UDSIS |
| Oct 15 | Tue | Spring 2020 book orders are by Faculty to UD Bookstore. |
| Oct 22 | Tue | Last day to change registration or to withdraw from courses without academic penalty for Fall 2019. |
| Oct 22 | Tue | **GRADUATE STUDENTS** - Deadline for completion of deferred examinations and incomplete work (grade I) from Spring Semester 2019 and 2019 Summer Sessions. |
| Oct 28 | Mon | Registration begins for Winter Session 2020 |
| Nov 11 | Mon | Registration begins for Spring Semester 2020 |
| Nov 14 | Thu | Deadline for receipt of doctoral dissertations and education leadership portfolios for degrees to be conferred in December 2019. |
| Nov. 14 | Thu | Deadline for receipt of master's theses for degrees to be conferred in December 2019 |
| Nov 22 | Fri | Thanksgiving break begins after last class; classes end at 10 p.m.  Residence Halls close at 7:00 p.m. |
| Nov 22 | Fri | Last meal in dining halls before Thanksgiving Break - lunch |
| Nov 25-29 | | Classes suspended Monday through Friday for Thanksgiving break |
| Nov 28 | Thu | Holiday - University offices closed. |
| Nov 29 | Fri | Holiday - University offices closed. |
| Dec 1 | Sun | Residence halls re-open at noon. |
| Dec 1 | Sun | First meal in dining halls after Thanksgiving break- dinner |
| Dec 2 | Mon | Classes resume following Thanksgiving break |
| Dec 2 | Mon | Deadline for graduate admission applications for Spring 2020. |
| Dec 2 | Mon | Deadline for filing application for graduate degrees to be conferred in February 2020. |

| | | |
|---|---|---|
| Dec 5 | Thu | Last day of classes, classes end at 10:00 p.m. |
| Dec 5 | Thu | Last day for medical leave of absence to be processed |
| Dec 6 | Fri | Reading Day: no examinations scheduled |
| Dec 9 | Mon | Final examinations begin |
| Dec 14 | Sat | Final examinations end. Residence halls close at 10:00 p.m. |
| Dec 14 | Sat | Last meal in dining halls - dinner |
| Dec 18 | Wed | Deadline for 2019 Fall semester grades to be posted to UDSIS |

### Winter Session 2020

| | | |
|---|---|---|
| Sep 16 | Mon | Winter book orders are due by faculty to the UD Bookstore |
| Oct 28 | Mon | Registration begins for Winter Session 2020 |
| Jan 3 | Fri | Last day to apply for readmission for Winter 2020 |
| Jan 5 | Sun | Residence hall check-in (5-week classes) Noon to 6:00 p.m. |
| Jan 5 | Sun | First meal in dining halls - dinner |
| Jan 6 | Mon | Classes begin at 8:00 a.m.  (5-week classes)  Residence hall check-in for Winter Session walk-ins, 9:00 a.m. to 3.00 p.m. |
| Jan 6 | Mon | Tuition/fee payment deadline for Winter Session 2020. |
| Jan 9 | Thu | Last day to add or drop courses.  (5-week classes)  After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Jan 9 | Thu | Deadline for changing dining plan - 5-week meal plan. |
| Jan 12 | Sun | Residence Hall check-in (4-week classes) Noon to 6:00 p.m. |
| Jan 13 | Mon | Classes begin at 8:00 a.m.  (4-week classes)  Residence hall check-in for Winter Session walk-ins, 9:00 a.m. to 3.00 p.m. |
| Jan 15 | Wed | Deadline for receipt of dissertations, education leadership portfolios and master's theses for degrees to be conferred in February 2020. |
| Jan 16 | Thu | Last day to add or drop courses.  (4-week classes)  After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Jan 16 | Thu | Deadline for changing dining plan – 4-week meal plan. |
| Jan 20 | Mon | Martin Luther King Holiday - classes suspended; University offices closed. |
| Jan 24 | Fri | Last day to change registration or withdraw.  (5-week classes) |
| Jan 28 | Tue | Last day to change registration or withdraw.  (4-week classes) |
| Feb 7 | Fri | Last day of classes |
| Feb 8 | Sat | Final examinations.  Students leaving after Winter Session must checkout of residence hall by 6:00 p.m. |
| Feb 8 | Sat | Last meal in dining halls – dinner |
| Feb 12 | Wed | Deadline for winter session grades to be posted to UDSIS |

### Spring Semester 2020

| | | |
|---|---|---|
| Oct 15 | Tue | Spring book orders are due by faculty to the UD Bookstore. |
| Nov 1 | Fri | Undergraduate admission application deadline for first year and transfer students entering Spring Semester 2020. |
| Nov 11 | Mon | Registration begins for Spring Semester 2020 |
| Dec 2 | Mon | Deadline for graduate admission applications for Spring 2020 |
| Jan 6 | Mon | Undergraduate Tuition/fee payment deadline for Spring 2020 |
| Feb 6 | Thu | Winter International New Student Orientation |
| Feb 7 | Fri | Winter New Student Orientation |
| Feb 7 | Fri | Last day to apply for readmission for Spring 2020 |
| Feb 9 | Sun | Residence hall check-in noon to 6:00 p.m. |
| Feb 9 | Sun | First meal in dining halls – brunch |
| Feb 10 | Mon | Classes begin at 8:00 a.m.  Residence hall check-in 11:00 a.m. - 3:00 p.m. |
| Feb 10 | Mon | Graduate/PCS tuition/fee payment deadline for Spring 2020. Classes subject to cancellation after this date. |
| Feb 14 | Fri | Deadline for filing application for graduate degrees to be conferred in May 2020. |
| Feb 21 | Fri | Last day to add or drop courses.  After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Feb 21 | Fri | Last day to apply for a leave of absence for Spring 2020 |
| Feb 21 | Fri | Deadline for changing dining plan |

| Feb 21 | Fri | **UNDERGRADUATE STUDENTS -** Deadline for completion of deferred examinations and incomplete work (grade I) from Fall Semester 2019, and Winter Session 2020. |
| Feb 24 | Mon | Deadline for admission to doctoral candidacy for degrees conferred in May 2020. |
| Mar 12-13 | | **Classes suspended |
| Mar 14-29 | | **Spring break |
| Mar 16 | Mon | Summer 2020 book orders are due by faculty to UD Bookstore. |
| Mar 30 | Mon | **Classes resume in online format |
| Apr 6 | Mon | Deadline for graduate admission applications for June 2020. |
| Apr 10 | Fri | **Deadline for midterm grades to be posted to UDSIS |
| Apr 13 | Mon | **There is some flexibility in deadlines for submission of doctoral dissertations and education leadership portfolios for degrees conferred in May 2020. Please contact Mary Martin for additional details. |
| Apr 15 | Wed | Fall 2020 book orders are due by Faculty to UD Bookstore. |
| Apr 20 | Mon | **Registration for 2020 Summer Sessions begins |
| Apr 20 | Mon | **There is some flexibility in deadlines for receipt of master's thesis for degrees to be conferred in May 2020. Please contact Mary Martin for additional details. |
| May 1 | Fri | **Last day to change registration or to withdraw from courses without academic penalty for Spring 2020 |
| May 1 | Fri | Undergraduate admission application deadline for first year students entering Fall 2020 |
| May 1 | Fri | Admissions deposit deadline for first year students |
| May 1 | Fri | Deadline for admission to doctoral candidacy for degrees to be conferred in August 2020. |
| May 4 | Mon | **Registration begins for Fall Semester 2020 |
| May 4 | Mon | Deadline for filing application for graduate degrees to be conferred in August 2020. |
| May 15 | Fri | **GRADUATE STUDENTS -** Deadline for completion of deferred examinations and incomplete work (grade I) from Fall Semester 2019 and Winter Session 2020. |
| May 18 | Mon | Last class day; classes end at 10:00 p.m. |
| May 18 | Mon | Last day for medical leave of absence to be processed |
| May 19 | Tue | Reading Day, no examinations scheduled. |
| May 20 | Wed | Final examinations begin. |
| May 25 | Mon | Memorial Day observed; no exams, offices closed |
| May 28 | Thu | Final examinations end. |
| May 29 | Fri | **Postponed -Honors degree breakfast, Doctoral Hooding and some college convocations. |
| May 30 | Sat | **Postponed -Commencement followed by remaining college convocations. |
| Jun 1 | Mon | Deadline for Spring semester grades to be posted to UDSIS |
| Jun 5 | Fri | ** Canceled - Alumni Weekend begins |
| Jun 9 | Tue | **Last day to submit a change from letter grade to High Pass/Mid Pass grading option |

### First Summer Session 2020

| Mar 16 | Mon | Summer book orders are due by faculty to the UD Bookstore. |
| Apr 20 | Mon | **Registration for 2020 Summer Sessions begins |
| May 1 | Fri | Deadline for admission to doctoral candidacy for degrees to be conferred in August 2020. |
| May 4 | Mon | Deadline for filing application for graduate degrees to be conferred in August 2020. |
| Jun 5 | Fri | Last day to apply for readmission for Summer 2020 |
| Jun 8 | Mon | Classes begin at 8:00 a.m. - First Summer Session |
| Jun 8 | Mon | Tuition/fee payment deadline First Summer Session |
| Jun 11 | Thu | **Last day to add courses for First Summer Session (5-week and 7.5 week). |

** Changes due to Coronavirus COVID-19 Pandemic

| Jun 19 | Fri | **Last day to drop courses for First Summer Session. (5-week and 7.5 week) After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Jun 25 | Thu | Last day to change registration or to withdraw from courses - first summer session (5-week course). |
| Jul 1 | Wed | Deadline for graduate admission applications for Fall 2020. Most programs have earlier deadlines. |
| Jul 3 | Fri | Independence Day Holiday observed; Classes suspended; University Offices closed.  All dining services are closed. |
| Jul 7 | Tue | Last day to change registration or to withdraw from courses - first summer session (7½-week course). |
| Jul 10 | Fri | Classes end – 5-week Summer Session. |
| Jul 11 | Sat | Final examinations- 5-week Summer Session.  Students attending 5-week summer session to check out of residence halls by 7:00 p.m. |
| Jul 15 | Wed | Deadline for 5-week Summer Session grades to be posted to UDSIS. |
| Jul 27 | Mon | Classes end – 7½-week Summer Session classes meeting Monday/Wednesday. |
| Jul 28 | Tue | Classes end – 7½-week Summer Session classes meeting Tuesday/Thursday. |
| Jul 29 | Wed | Final exams – 7½-week Summer Session classes meeting Monday/Wednesday. |
| Jul 30 | Thu | Final exams – 7½-week Summer Session classes meeting Tuesday/Thursday. |
| Aug 3 | Mon | Deadline for 7½-week Summer Session grades to be posted to UDSIS. |

### Second Summer Session 2020

| Apr 20 | Mon | **Registration for 2020 Summer Sessions begins. |
| Jul 13 | Mon | Classes begin at 8:00 a.m. - Second Summer Session |
| Jul 13 | Mon | Tuition/fee payment deadline for Second Summer Session. |
| Jul 13 | Mon | Deadline for receipt of doctoral dissertations, education leadership portfolios and master's theses for degrees to be conferred in August 2020. |
| Jul 16 | Thu | **Last day to add courses for Second Summer Session. |
| Jul 24 | Fri | **Last day to drop courses for Second Summer Session.  After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Jul 30 | Thu | Last day to change registration or to withdraw from courses - Second Summer Session. |
| Aug 13 | Thu | Last day of classes – Second Summer Session. |
| Aug 14 | Fri | Final examinations. |
| Aug 18 | Tues | Deadline for Second Summer Session grades to be posted to UDSIS. |

### Summer Session 2020 – 10-week classes

| Jun 17 | Wed | **Last day to add 10-week courses. |
| Jun 19 | Fri | **Last day to drop 10-week courses. After this date, no tuition will be rebated and a $25 processing fee will be charged for change of registration; students withdrawing from courses will receive a grade of 'W' on permanent record. |
| Jul 16 | Thu | Last day to change registration or withdraw from courses |
| Aug 14 | Fri | Last day of final exams |

---

### RELIGIOUS OBSERVANCES

Sunday, September 29, 2019 – Rosh Hashanah begins at sundown, continues next 2 days
Tuesday, October 8, 2019 – Yom Kippur begins at sundown, continues following day
Wednesday, April 8, 2020 - Passover begins, continues for 7 days
Friday, April 10, 2020 – Good Friday

*See policy in Faculty Handbook on* **excused absences.**
*Comprehensive List of Observances can be found here:* **Interfaith calendar**

**EXHIBIT 51**

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**FILED UNDER SEAL**

**EXHIBIT 52**

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**FILED UNDER SEAL**

**EXHIBIT 55**










← **Tweet**

 **Univ. of Delaware** ✓
@UDelaware ···

We know it's hard not being on campus. Tell us which spot you're most excited to visit when we come back!



ALT

11:05 AM · Apr 8, 2020 · Twitter Web App

**8** Retweets  **2** Quote Tweets  **57** Likes

💬  🔁  ♡  ⬆

 Tweet your reply    **Reply**

---

joe gallo @picodegallo86 · Apr 8, 2020
Replying to @UDelaware
North Green

💬 1  🔁  ♡  ⬆  ···

Gustav Ditters @DWhere · Apr 8, 2020
Joe, you graduated 10 years ago.

💬 1  🔁  ♡ 1  ⬆  ···

Show replies

GEM. @chuk__ · Apr 8, 2020
Replying to @UDelaware
The Apiary!!



---

### Relevant people

 **Univ. of Delaware** ✓    **Follow**
@UDelaware
The University of Delaware's official Twitter feed. Follow us for the latest news and events from #UDel. Go #BlueHens!

### What's happening

**World news · LIVE**
Thousands attend memorial for Al Jazeera journalist Shireen Abu Akleh
Trending with Israeli, Palestinian



**Sports · Trending**
Frank Ntilikina
1,309 Tweets

**Sports · Trending**
Larry Bird
5,949 Tweets

**War in Ukraine · LIVE**
UN council to investigate alleged human rights abuse by Russian troops



Show more

Terms of Service  Privacy Policy  Cookie Policy
Accessibility  Ads info  More ···
© 2022 Twitter, Inc.

Messages

Exhibit 0055 Morgan



GIF

**Sarah Wasserman** @SarahLWasserman · Apr 8, 2020
Replying to @UDelaware
Anywhere at all, so long as I can be face to face with my wonderful students. 💕



Messages



Search Twitter



Messages

**EXHIBIT 56**

← **Tweet**

 **Univ. of Delaware** ✔
@UDelaware

No matter where we are, we still feel like this on the last day of classes. This semester was unlike any we've ever had, and we couldn't be prouder of all you've accomplished despite the odds.
📷: IG user gracemalangaa



ALT

12:52 PM · May 18, 2020 · Hootsuite Inc.

**8** Retweets   **80** Likes

💬        ⟲        ♡        ⬆

 Tweet your reply        Reply

---

Search Twitter

**Relevant people**

 **Univ. of Delaware** ✔        Follow
@UDelaware
The University of Delaware's official Twitter feed. Follow us for the latest news and events from #UDel. Go #BlueHens!

**What's happening**

World news · LIVE
**Thousands attend memorial for Al Jazeera journalist Shireen Abu Akleh**
Trending with Israeli, Palestinian

**#Sneakerella** 👟
Stream the Original movie now
📺 Promoted by Disney+

Sports · Trending
**Frank Ntilikina**
1,297 Tweets

Sports · Trending
**Diaz**
67.1K Tweets

War in Ukraine · LIVE
**UN council to investigate alleged human rights abuse by Russian troops**

Show more

Terms of Service   Privacy Policy   Cookie Policy
Accessibility   Ads info   More ⋯
© 2022 Twitter, Inc.

---

**Exhibit 0056**
Morgan

Messages

**EXHIBIT 58**

Case 1:20-cv-01478-SB Document 85-3 Filed 07/08/22 Page 39 of 297 PageID #: 1734






← **Tweet**

 **Univ. of Delaware** ✔
@UDelaware

···

**#UDGrad2020** Blue Hens, we know this has been a challenging semester, but you've shown just how strong and resilient you are. We can't wait to celebrate you next Saturday during our Blue Hen Celebration.
udel.edu/udgrad2020



10:29 AM · May 23, 2020 · Twitter for iPhone

**7** Retweets  **2** Quote Tweets  **48** Likes

💬          🔁          ♡          ⬆

  Tweet your reply          Reply

 **C Albanese** @Albanese_ca · May 24, 2020
Replying to @UDelaware
Thanks for the memories  #UDgrad2020



### Search Twitter

**Relevant people**

 **Univ. of Delaware** ✔          Follow
@UDelaware
The University of Delaware's official Twitter feed. Follow us for the latest news and events from #UDel. Go #BlueHens!

**What's happening**

World news · LIVE
**Thousands attend memorial for Al Jazeera journalist Shireen Abu Akleh**
Trending with Israeli, Palestinian

Music · Trending          ···
**Metallica**
10.5K Tweets

Sports · Trending          ···
**Ben Simmons**
Trending with Jimmy Butler, Joel Embiid

War in Ukraine · LIVE
**UN council to investigate alleged human rights abuse by Russian troops**

Music · Last night
**Kendrick Lamar's new album Mr. Morale & The Big Steppers has been released**
Trending with Kendrick, We Cry Together

Show more

Terms of Service   Privacy Policy   Cookie Policy
Accessibility   Ads info   More ···
© 2022 Twitter, Inc.

Messages

**Exhibit 0058**
Morgan





&#9851; 1

**EXHIBIT 59**



**Tweet**

Univ. of Delaware ✓
@UDelaware

We know graduation celebrations look a bit different than we thought, but we want to see all the ways you're celebrating this major milestone. Use #UDGrad2020 to share them with us! 🎓 📷: IG user samanthaj_vintage





3:30 PM · May 27, 2020 · Hootsuite Inc.

**9** Retweets  **2** Quote Tweets  **42** Likes

Tweet your reply                    Reply

**Relevant people**

 Univ. of Delaware ✓
@UDelaware        Follow

The University of Delaware's official Twitter feed. Follow us for the latest news and events from #UDel. Go #BlueHens!

**What's happening**

World news · LIVE
Thousands attend memorial for Al Jazeera journalist Shireen Abu Akleh
Trending with Israeli, #ShireenAbuAkleh

Technology · Trending
Alex Jones
5,397 Tweets

Sports · Trending
Ben Simmons
Trending with Jimmy Butler, Joel Embiid

War in Ukraine · LIVE
UN council to investigate alleged human rights abuse by Russian troops

Show more

Terms of Service  Privacy Policy  Cookie Policy
Accessibility  Ads info  More ···
© 2022 Twitter, Inc.

**Exhibit 0059**
Morgan

Messages

**EXHIBIT 60**



Online Programs    Online Admissions    How Online Works    About Us    Apply Now    Request Info



**Exhibit 0060**

Morgan



## UD Online Featured Programs



### Master of Business Administration

Get an AACSB-accredited MBA in as few as 16 months. 5 in-demand concentrations now available. Ranked the #26 online MBA in the country by *U.S. News & World Report*, 2019.

**Learn More »**



### Master of Arts in Strategic Communication

Drive tactical communication initiatives to help shape your organization's relationship with all audiences and stakeholders. Concentrations include Public Relations or Digital and Social Media.

**Learn More »**



### Master of Public Administration

Enhance your administrative acumen and prepare to lead in public administration using relevant research and proven best practices.

**Learn More »**

### M.S. Electrical & Computer Engineering

Specialize in designing networks and systems using the most advanced big data processing and security methods.

**Learn More »**

### Master of Education in Teacher Leadership

Develop insights, tools and solutions to better understand and manage challenges facing students, teachers and schools today.

**Learn More »**

### Master of Science in Cybersecurity

Learn to design secure software and systems with an institution endorsed by the NSA and DHS.

**Learn More »**

## Advance With UD

## Online

"*The University of Delaware is committed to learning across the life span. Our array of online degree and certificate programs are designed to meet the needs of working professionals on a global scale. Programs will continue to be added as the University expands its support for online learning.*"

– James K. Broomall, Associate Vice Provost
Professional and Continuing Studies & Online Initiatives

## About the University of Delaware

Tracing its roots to 1743, the University of Delaware is one of the nation's leading research universities, actively engaged in the critical needs of the global community.

**Learn More »**

University of Delaware
Newark, DE 19716
(844) 237-1338

Learn more about how to file a complaint about a distance program or courses.

  

Online Programs    Admissions    How Online Works    About    Request Info    UD Home

Case 1:20-cv-01478-SB   Document 85-3   Filed 07/08/22   Page 48 of 297 PageID #: 1743

Copyright 2019 University of Delaware   Sitemap / Privacy Policy / Terms & Conditions

**EXHIBIT 62**

**Course location:**

All locations

| |
|---|
| All locations |
| Kent County (SA-KENT) |
| **Main Campus (SA-NEWARK)** |
| PDS Milford (SA-MILFORD) |
| Study Abroad (SA-STDABRD) |
| Sussex County (SA-SUSSEX) |
| UD Academic Center Dover (SA-UDACD) |
| UD Academic Center Georgetown (SA-UDACG) |
| UD Academic Center Wilmington (SA-UDACW) |
| UD Arsht Hall Wilmington (SA-AHW) |
| UD Downtown Center Wilmington (SA-UDDC) |
| UD Online (SA-VIRTUAL) |
| W A Carter Partnership Center (SA-WACPC) |

**Instruction Mode:**

**Preferred start time:**

**Preferred day(s):**

**Number of credits:**

**Keyword:**

Exhibit
0062

Morgan

**EXHIBIT 63**



**Instruction Mode:**

All modes

- All modes
- Online (ON)
- Online and In Person (OP)
- Online Site (OS)
- **In Person (P)**
- Travel (T)
- Variable Format (VF)
- 4 Wk Winter Session Online (4O)
- 4 Wk Winter Session In Person (4P)

**Preferred start time:**

**Preferred day(s):**

**Number of credits:**

**Exhibit 0063**

Morgan

**EXHIBIT 64**



### COURSES SEARCH

Courses Search    Course Descriptions    Catalog    Final Exams    My UD    Help

## CHEG112020L Introduction to Chemical Engineering

2022 Spring Semester (2223)
Blenner,Mark ; Enszer,Joshua Alan
Feb 7 - May 17 F 2:30PM - 3:20PM ISE202
5 open seats (out of 20)
Lab (3 credit hours)

Development of quantitative models for physical systems using a combination of conservation principles and carefully focused experimental data. Stresses the conservation of matter and energy. PREREQ: A minimum grade of C- in MATH241. COREQ: MATH242. RESTRICTIONS: CHEG Majors Only.

Information valid for courses offered 2021 through 2022.

**Notes:** See course catalog for prereq/coreq.

Check course reserves  or view textbooks  .

**College:** Engineering (EG)

**Department:** Chemical Engineering (CHEG)

| Last updated: 5/13/22 at 12:46 PM |
| --- |

**Exhibit 0064**
Morgan



©54334 University of Delaware   Comments   Legal Notices   Accessibility

**EXHIBIT 66**

Hello to everyone in the University of Delaware community. I'm so grateful to have this opportunity to communicate with you today. And first let me say that Eleni and I sincerely hope that you, your families and your friends are safe and healthy through this crisis.

Over the past several weeks our entire world has changed dramatically in response to the Coronavirus COVID-19 pandemic. I want to express my support for everyone experiencing significant hardships during this time, particularly those who may be sick or whose loved ones may be sick, those whose families are experiencing financial troubles and those who have been subjected to discrimination or prejudice. This is the time we support each other and strengthen the bonds that connect us as a community. Our thoughts, our prayers, our well wishes are with all of you as you work and we work together through this new reality.

It's been very hard for everyone in our community. As you know, we've had to take a series of unprecedented measures to ensure the health and safety of our students and our faculty and our staff as well as all in our neighboring communities. The social distancing, while emotionally very hard, it is absolutely necessary to help us save lives in accordance with all the experts, the scientists, the public health people, as well as the government officials.

I like to thank everyone deep from my heart, for your patience, your resourcefulness, your kindness and your cooperation during this time. Starting with our students, this is definitely not how we envisioned our Spring semester. We all miss being together with you on a beautiful campus. But your health and the health of the entire community comes first at this moment in time. And I want to assure you that your success, your success in your education, your career and your life remains our most essential mission. We've been working tirelessly around the clock to make sure that we will continue to provide you with an excellent UD education in the Spring semester.

I can't promise that there won't be a few glitches along the way, but I can guarantee that we're good to make this work. And I want to thank you for all your notes of appreciation and support that kept us going even in the darkest hours. And to our faculty and staff, you are the unsung heroes, the people who have sustained us through this crisis, keeping our campus safe and putting our students on the right path to successful completion of this academic year. We owe you a great deal of gratitude for your sense of duty, our partnership and your ongoing efforts.

One of the many great things I love about UD is the determination and resilience of an amazing community. I see it every day throughout the University. When we are faced with a seemingly impossible task, we always come up with a creative solution, and this crisis is not an exception to the rule. As president of the University of Delaware, I'm so proud of the many positive ways that our community has come together in the face of adversity. It is truly inspiring and I'm so grateful for your partnership and your Blue Hen spirit. The momentum we've built together will not only help us overcome this adversity but will also help us be reinvigorated and conquer the future ahead. Better days are on the horizon. I'm certain that as a community we'll emerge through this crisis stronger and more connected than ever before. I wish you the very best for a successful, healthy and safe semester. Be healthy, be well and thank you.

**Exhibit 0066**

Morgan

**EXHIBIT 67**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 68**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 70**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 73**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 74**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 75**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 77**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 80**

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**FILED UNDER SEAL**

**EXHIBIT 81**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 82**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 83**

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**FILED UNDER SEAL**

**EXHIBIT 84**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 87**

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**FILED UNDER SEAL**

**EXHIBIT 88**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 89**



www.bursor.com

701 BRICKELL AVENUE       888 SEVENTH AVENUE       1990 NORTH CALIFORNIA BLVD.
MIAMI, FL 33131              NEW YORK, NY 10019         WALNUT CREEK, CA 94596

## FIRM RESUME

With offices in Florida, New York, and California, BURSOR & FISHER lawyers have represented both plaintiffs and defendants in state and federal courts throughout the country.

The lawyers at our firm have an active civil trial practice, having won multi-million-dollar verdicts or recoveries in six of six class action jury trials since 2008.  Our most recent class action trial victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector found to have violated the Telephone Consumer Protection Act.

In August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which Mr. Bursor served as lead trial counsel, we won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc. (II)*, we obtained a $50 million jury verdict in favor of a certified class of 150,000 purchasers of the Avacor Hair Regrowth System.  The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009, and the largest in any class action.

The lawyers at our firm have an active class action practice and have won numerous appointments as class counsel to represent millions of class members, including customers of Honda, Verizon Wireless, AT&T Wireless, Sprint, Haier America, and Michaels Stores as well as purchasers of Avacor™, Hydroxycut, and Sensa™ products.  Bursor & Fisher lawyers have been court-appointed Class Counsel or Interim Class Counsel in:

1. *O'Brien v. LG Electronics USA, Inc.* (D.N.J. Dec. 16, 2010) to represent a certified nationwide class of purchasers of LG French-door refrigerators,

2. *Ramundo v. Michaels Stores, Inc.* (N.D. Ill. June 8, 2011) to represent a certified nationwide class of consumers who made in-store purchases at Michaels Stores using a debit or credit card and had their private financial information stolen as a result,

3. *In re Haier Freezer Consumer Litig.* (N.D. Cal. Aug. 17, 2011) to represent a certified class of purchasers of mislabeled freezers from Haier America Trading, LLC,

4. *Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) to represent a certified nationwide class of military personnel against CitiMortgage for illegal foreclosures,

5. *Rossi v. The Procter & Gamble Co.* (D.N.J. Jan. 31, 2012) to represent a certified nationwide class of purchasers of Crest Sensitivity Treatment & Protection toothpaste,

6. *Dzielak v. Whirlpool Corp. et al.* (D.N.J. Feb. 21, 2012) to represent a proposed nationwide class of purchasers of mislabeled Maytag Centennial washing machines from Whirlpool Corp., Sears, and other retailers,

7. *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012) to represent a certified nationwide class of purchasers of Sensa weight loss products,

8. *In re Sinus Buster Products Consumer Litig.* (E.D.N.Y. Dec. 17, 2012) to represent a certified nationwide class of purchasers,

9. *Ebin v. Kangadis Food Inc.* (S.D.N.Y. Feb. 25, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

10. *Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014) to represent a certified nationwide class of purchasers of children's homeopathic cold and flu remedies,

11. *Ebin v. Kangadis Family Management LLC, et al.* (S.D.N.Y. Sept. 18, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

12. *In re Scotts EZ Seed Litig.* (S.D.N.Y. Jan. 26, 2015) to represent a certified class of purchasers of Scotts Turf Builder EZ Seed,

13. *Dei Rossi v. Whirlpool Corp., et al.* (E.D. Cal. Apr. 28, 2015) to represent a certified class of purchasers of mislabeled KitchenAid refrigerators from Whirlpool Corp., Best Buy, and other retailers,

14. *Hendricks v. StarKist Co.* (N.D. Cal. July 23, 2015) to represent a certified nationwide class of purchasers of StarKist tuna products,

15. *In re NVIDIA GTX 970 Graphics Card Litig.* (N.D. Cal. May 8, 2015) to represent a proposed nationwide class of purchasers of NVIDIA GTX 970 graphics cards,

16. *Melgar v. Zicam LLC, et al.* (E.D. Cal. March 30, 2016) to represent a certified ten-jurisdiction class of purchasers of Zicam Pre-Cold products,

17. *In re Trader Joe's Tuna Litigation* (C.D. Cal. December 21, 2016) to represent purchaser of allegedly underfilled Trader Joe's canned tuna.

18. *In re Welspun Litigation* (S.D.N.Y. January 26, 2017) to represent a proposed nationwide class of purchasers of Welspun Egyptian cotton bedding products,

19. *Retta v. Millennium Products, Inc.* (C.D. Cal. January 31, 2017) to represent a certified nationwide class of Millennium kombucha beverages,

20. *Moeller v. American Media, Inc.*, (E.D. Mich. June 8, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

21. *Hart v. BHH, LLC* (S.D.N.Y. July 7, 2017) to represent a nationwide class of purchasers of Bell & Howell ultrasonic pest repellers,

22. *McMillion v. Rash Curtis & Associates* (N.D. Cal. September 6, 2017) to represent a certified nationwide class of individuals who received calls from Rash Curtis & Associates,

23. *Lucero v. Solarcity Corp.* (N.D. Cal. September 15, 2017) to represent a certified nationwide class of individuals who received telemarketing calls from Solarcity Corp.,

24. *Taylor v. Trusted Media Brands, Inc.* (S.D.N.Y. Oct. 17, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

25. *Gasser v. Kiss My Face, LLC* (N.D. Cal. Oct. 23, 2017) to represent a proposed nationwide class of purchasers of cosmetic products,

26. *Gastelum v. Frontier California Inc.* (S.F. Superior Court February 21, 2018) to represent a certified California class of Frontier landline telephone customers who were charged late fees,

27. *Williams v. Facebook, Inc.* (N.D. Cal. June 26, 2018) to represent a proposed nationwide class of Facebook users for alleged privacy violations,

28. *Ruppel v. Consumers Union of United States, Inc.* (S.D.N.Y. July 27, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

29. *Bayol v. Health-Ade* (N.D. Cal. August 23, 2018) to represent a proposed nationwide class of Health-Ade kombucha beverage purchasers,

30. *West v. California Service Bureau* (N.D. Cal. September 12, 2018) to represent a certified nationwide class of individuals who received calls from California Service Bureau,

31. *Gregorio v. Premier Nutrition Corporation* (S.D.N.Y. Sept. 14, 2018) to represent a nationwide class of purchasers of protein shake products,

32. *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast* (S.D.N.Y. Oct. 24, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

33. *Bakov v. Consolidated World Travel Inc. d/b/a Holiday Cruise Line* (N.D. Ill. Mar. 21, 2019) to represent a certified class of individuals who received calls from Holiday Cruise Line,

34. *Martinelli v. Johnson & Johnson* (E.D. Cal. March 29, 2019) to represent a certified class of purchasers of Benecol spreads labeled with the representation "No Trans Fat,"

35. *Edwards v. Hearst Communications, Inc.* (S.D.N.Y. April 24, 2019) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

36. *Galvan v. Smashburger* (C.D. Cal. June 25, 2019) to represent a proposed class of purchasers of Smashburger's "Triple Double" burger,

37. *Kokoszki v. Playboy Enterprises, Inc.* (E.D. Mich. Feb. 7, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

38. *Russett v. The Northwestern Mutual Life Insurance Co.* (S.D.N.Y. May 28, 2020) to represent a class of insurance policyholders that were allegedly charged unlawful paper billing fees,

39. *In re: Metformin Marketing and Sales Practices Litigation* (D.N.J. June 3, 2020) to represent a proposed nationwide class of purchasers of generic diabetes medications that were contaminated with a cancer-causing carcinogen,

40. *Hill v. Spirit Airlines, Inc.* (S.D. Fla. July 21, 2020) to represent a proposed nationwide class of passengers whose flights were cancelled by Spirit Airlines

due to the novel coronavirus, COVID-19, and whose tickets were not refunded,

41. *Kramer v. Alterra Mountain Co.* (D. Colo. July 31, 2020) to represent a proposed nationwide class of purchasers to recoup the unused value of their Ikon ski passes after Alterra suspended operations at its ski resorts due to the novel coronavirus, COVID-19,

42. *Qureshi v. American University* (D.D.C. July 31, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by American University due to the novel coronavirus, COVID-19,

43. *Hufford v. Maxim Inc.* (S.D.N.Y. Aug. 13, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

44. *Desai v. Carnegie Mellon University* (W.D. Pa. Aug. 26, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Carnegie Mellon University due to the novel coronavirus, COVID-19,

45. *Heigl v. Waste Management of New York, LLC* (E.D.N.Y. Aug. 27, 2020) to represent a class of waste collection customers that were allegedly charged unlawful paper billing fees,

46. *Stellato v. Hofstra University* (E.D.N.Y. Sept. 18, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Hofstra University due to the novel coronavirus, COVID-19,

47. *Kaupelis v. Harbor Freight Tools USA, Inc.* (C.D. Cal. Sept. 23, 2020), to represent consumers who purchased defective chainsaws,

48. *Soo v. Lorex Corporation* (N.D. Cal. Sept. 23, 2020), to represent consumers whose security cameras were intentionally rendered non-functional by manufacturer,

49. *Miranda v. Golden Entertainment (NV), Inc.* (D. Nev. Dec. 17, 2020), to represent consumers and employees whose personal information was exposed in a data breach,

50. *Benbow v. SmileDirectClub, Inc.* (Cir. Ct. Cook Cnty. Feb. 4, 2021), to represent a certified nationwide class of individuals who received text messages from SmileDirectClub, in alleged violation of the Telephone Consumer Protection Act,

51. *Suren v. DSV Solutions, LLC* (Cir. Ct. DuPage Cnty. Apr. 8, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

52. *De Lacour v. Colgate-Palmolive Co.* (S.D.N.Y. Apr. 23, 2021), to represent a certified class of consumers who purchased allegedly "natural" Tom's of Maine products,

53. *Wright v. Southern New Hampshire University* (D.N.H. Apr. 26, 2021), to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Southern New Hampshire University due to the novel coronavirus, COVID-19,

54. *Sahlin v. Hospital Housekeeping Systems, LLC* (Cir. Ct. Williamson Cnty. May 21, 2021), to represent a certified class of employees who used a

fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

55. *Landreth v. Verano Holdings LLC, et al.* (Cir. Ct. Cook Cnty. June 2, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act.

56. *Rocchio v. Rutgers, The State University of New Jersey*, (Sup. Ct., Middlesex Cnty. October 27, 201), to represent a certified nationwide class of students for fee refunds after their classes were moved online by Rutgers due to the novel coronavirus, COVID-19,

57. *Malone v. Western Digital Corp.*, (N.D. Cal. Dec. 22, 2021), to represent a class of consumers who purchased hard drives that were allegedly deceptively advertised,

58. *Jenkins v. Charles Industries, LLC*, (Cir. Ct. DuPage Cnty. Dec. 21, 2021) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

59. *Frederick v. Examsoft Worldwide, Inc.*, (Cir. Ct. DuPage Cnty. Jan. 6, 2022) to represent a certified class of exam takers who used virtual exam proctoring software, in alleged violation of the Illinois Biometric Information Privacy Act,

60. *Isaacson v. Liqui-Box Flexibles, LLC, et al.*, (Cir. Ct. Will Cnty. Jan. 18, 2022) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

61. *Goldstein v. Henkel Corp.*, (D. Conn. Mar. 3, 2022) to represent a proposed class of purchasers of Right Guard antiperspirants that were allegedly contaminated with benzene,

62. *McCall v. Hercules Corp.*, (N.Y. Sup. Ct., Westchester Cnty. Mar. 14, 2022) to represent a certified class of who laundry card purchasers who were allegedly subjected to deceptive practices by being denying cash refunds,

63. *Lewis v. Trident Manufacturing, Inc.*, (Cir. Ct. Kane Cnty. Mar. 16, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

64. *Croft v. Spinx Games Limited, et al.*, (W.D. Wash. Mar. 31, 2022) to represent a certified class of Washington residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Washington law,

65. *Fischer v. Instant Checkmate LLC*, (N.D. Ill. Mar. 31, 2022) to represent a certified class of Illinois residents whose identities were allegedly used without their consent in alleged violation of the Illinois Right of Publicity Act,

66. *Loftus v. Outside Integrated Media, LLC*, (E.D. Mich. May 5, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act.

## SCOTT A. BURSOR

Mr. Bursor has an active civil trial practice, having won multi-million verdicts or recoveries in six of six civil jury trials since 2008. Mr. Bursor's most recent victory came in

May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector for violations of the Telephone Consumer Protection Act (TCPA).

In *Ayyad v. Sprint Spectrum L.P.* (2013), where Mr. Bursor served as lead trial counsel, the jury returned a verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc.* (2009), the jury returned a $50 million verdict in favor of the plaintiff and class represented by Mr. Bursor. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009.

Class actions are rarely tried to verdict. Other than Mr. Bursor and his partner Mr. Fisher, we know of no lawyer that has tried more than one class action to a jury. Mr. Bursor's perfect record of six wins in six class action jury trials, with recoveries ranging from $21 million to $299 million, is unmatched by any other lawyer. Each of these victories was hard-fought against top trial lawyers from the biggest law firms in the United States.

Mr. Bursor graduated from the University of Texas Law School in 1996. He served as Articles Editor of the Texas Law Review, and was a member of the Board of Advocates and Order of the Coif. Prior to starting his own practice, Mr. Bursor was a litigation associate at a large New York based law firm where he represented telecommunications, pharmaceutical, and technology companies in commercial litigation.

Mr. Bursor is a member of the state bars of New York, Florida, and California, as well as the bars of the United States Court of Appeals for the Second, Third, Fourth, Sixth, Ninth and Eleventh Circuits, and the bars of the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Central, Southern and Eastern Districts of California, the Southern and Middle Districts of Florida, and the Eastern District of Michigan.

### *Representative Cases*

Mr. Bursor was appointed lead or co-lead class counsel to the largest, 2nd largest, and 3rd largest classes ever certified. Mr. Bursor has represented classes including more than 160 million class members, roughly 1 of every 2 Americans. Listed below are recent cases that are representative of Mr. Bursor's practice:

Mr. Bursor negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified). These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications. These settlements are believed to be the most significant legal development affecting the telecommunications industry since 1968, when the FCC's Carterfone decision similarly opened up AT&T's wireline telephone network.

Mr. Bursor was the lead trial lawyer in *Ayyad v. Sprint Spectrum, L.P.* representing a class of approximately 2 million California consumers who were charged an early termination fee under a Sprint cellphone contract, asserting claims that such fees were unlawful liquidated

damages under the California Civil Code, as well as other statutory and common law claims. After a five-week combined bench-and-jury trial, the jury returned a verdict in June 2008 and the Court issued a Statement of Decision in December 2008 awarding the plaintiffs $299 million in cash and debt cancellation.  Mr. Bursor served as lead trial counsel for this class again in 2013 during a month-long jury trial in which Sprint asserted a $1.06 billion counterclaim against the class.  Mr. Bursor secured a verdict awarding Sprint only $18.4 million, the exact amount calculated by the class's damages expert.  This award was less than 2% of the damages Sprint sought, less than 6% of the amount of the illegal termination fees Sprint charged to class members.  In December 2016, after more than 13 years of litigation, the case was settled for $304 million, including $79 million in cash payments plus $225 million in debt cancellation.

Mr. Bursor was the lead trial lawyer in *White v. Cellco Partnership d/b/a Verizon Wireless* representing a class of approximately 1.4 million California consumers who were charged an early termination fee under a Verizon cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims.  In July 2008, after Mr. Bursor presented plaintiffs' case-in-chief, rested, then cross-examined Verizon's principal trial witness, Verizon agreed to settle the case for a $21 million cash payment and an injunction restricting Verizon's ability to impose early termination fees in future subscriber agreements.

Mr. Bursor was the lead trial lawyer in *Thomas v. Global Visions Products Inc.*  Mr. Bursor represented a class of approximately 150,000 California consumers who had purchased the Avacor® hair regrowth system.  In January 2008, after a four-week combined bench-and-jury trial. Mr. Bursor obtained a $37 million verdict for the class, which the Court later increased to $40 million.

Mr. Bursor was appointed class counsel and was elected chair of the Official Creditors' Committee in *In re Nutraquest Inc.*, a Chapter 11 bankruptcy case before Chief Judge Garrett E. Brown, Jr. (D.N.J.) involving 390 ephedra-related personal injury and/or wrongful death claims, two consumer class actions, four enforcement actions by governmental agencies, and multiple adversary proceedings related to the Chapter 11 case.  Working closely with counsel for all parties and with two mediators, Judge Nicholas Politan (Ret.) and Judge Marina Corodemus (Ret.), the committee chaired by Mr. Bursor was able to settle or otherwise resolve every claim and reach a fully consensual Chapter 11 plan of reorganization, which Chief Judge Brown approved in late 2006.  This settlement included a $12.8 million recovery to a nationwide class of consumers who alleged they were defrauded in connection with the purchase of Xenadrine® dietary supplement products.

Mr. Bursor was the lead trial lawyer in *In re: Pacific Bell Late Fee Litigation*.  After filing the first class action challenging Pac Bell's late fees in April 2010, winning a contested motion to certify a statewide California class in January 2012, and defeating Pac Bell's motion for summary judgment in February 2013, Mr. Bursor obtained final approval of the $38 million class settlement.  The settlement, which Mr. Bursor negotiated the night before opening statements were scheduled to commence, included a $20 million cash payment to provide refunds to California customers who paid late fees on their Pac Bell wireline telephone accounts, and an injunction that reduced other late fee charges by $18.6 million.

## L. TIMOTHY FISHER

L. Timothy Fisher has an active practice in consumer class actions and complex business litigation and has also successfully handled a large number of civil appeals.

Mr. Fisher has been actively involved in numerous cases that resulted in multi-million dollar recoveries for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and consumer fraud. With his partner Scott A. Bursor, Mr. Fisher has tried five class action jury trials, all of which produced successful results. In *Thomas v. Global Vision Products*, Mr. Fisher obtained a jury award of $50,024,611 — the largest class action award in California in 2009 and the second-largest jury award of any kind. In 2019, Mr. Fisher served as trial counsel with Mr. Bursor and his partner Yeremey Krivoshey in *Perez. v. Rash Curtis & Associates*, where the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.

Mr. Fisher was admitted to the State Bar of California in 1997. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit, the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Northern District of Illinois, the Eastern District of Michigan, and the Eastern District of Missouri. Mr. Fisher taught appellate advocacy at John F. Kennedy University School of Law in 2003 and 2004. In 2010, he contributed jury instructions, a verdict form and comments to the consumer protection chapter of Justice Elizabeth A. Baron's *California Civil Jury Instruction Companion Handbook* (West 2010). In January 2014, Chief Judge Claudia Wilken of the United States District Court for the Northern District of California appointed Mr. Fisher to a four-year term as a member of the Court's Standing Committee on Professional Conduct.

Mr. Fisher received his Juris Doctor from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first-year moot court competition.

In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science. Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council." He is also a member of Phi Beta Kappa.

### *Representative Cases*

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court). Mr. Fisher litigated claims against Global Vision Products, Inc. and other individuals in connection with the sale and marketing of a purported hair loss remedy known as Avacor. The case lasted more than seven years and involved two trials. The first trial resulted in a verdict for plaintiff and the class in the amount of $40,000,000. The second trial resulted in a jury verdict of $50,024,611, which led to a $30 million settlement for the class.

*In re Cellphone Termination Fee Cases* - Handset Locking Actions (Alameda County Superior Court). Mr. Fisher actively worked on five coordinated cases challenging the secret locking of cell phone handsets by major wireless carriers to prevent consumers from activating them on competitive carriers' systems. Settlements have been approved in all five cases on terms that require the cell phone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions. The settlements fundamentally changed the landscape for cell phone consumers regarding the locking and unlocking of cell phone handsets.

*In re Cellphone Termination Fee Cases* - Early Termination Fee Cases (Alameda County Superior Court and Federal Communications Commission). In separate cases that are a part of the same coordinated litigation as the Handset Locking Actions, Mr. Fisher actively worked on claims challenging the validity under California law of early termination fees imposed by national cell phone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million. In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination fees that Sprint had collected from California consumers over an eight-year period were void and unenforceable.

### *Selected Published Decisions*

*Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 30, 2016) (certifying 10-jurisdiction class of purchasers of cold remedies, denying motion for summary judgment, and denying motions to exclude plaintiff's expert witnesses).

*Salazar v. Honest Tea, Inc*., 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015) (denying motion for summary judgment).

*Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484 (E.D. Cal. Apr. 27, 2015) (certifying California class of purchasers of refrigerators that were mislabeled as Energy Star qualified).

*Bayol v. Zipcar, Inc.*, 78 F.Supp.3d 1252 (N.D. Cal. 2015) (denying motion to dismiss claims alleging unlawful late fees under California Civil Code § 1671).

*Forcellati v. Hyland's, Inc.*, 2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) (denying motion for summary judgment in case alleging false advertising of homeopathic cold and flu remedies for children).

*Bayol v. Zipcar, Inc*., 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) (denying motion to transfer venue pursuant to a forum selection clause).

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (certifying nationwide class of purchasers of homeopathic cold and flu remedies for children).

*Hendricks v. StarKist Co.*, 30 F.Supp.3d 917 (N.D. Cal. 2014) (denying motion to dismiss in case alleging underfilling of 5-ounce cans of tuna).

*Dei Rossi v. Whirlpool Corp.*, 2013 WL 5781673 (E.D. Cal. October 25, 2013) (denying motion to dismiss in case alleging that certain KitchenAid refrigerators were misrepresented as Energy Star qualified).

*Forcellati v. Hyland's Inc.*, 876 F.Supp.2d 1155 (C.D. Cal. 2012) (denying motion to dismiss complaint alleging false advertising regarding homeopathic cold and flu remedies for children).

*Clerkin v. MyLife.com*, 2011 WL 3809912 (N.D. Cal. August 29, 2011) (denying defendants' motion to dismiss in case alleging false and misleading advertising by a social networking company).

*In re Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010) (affirming order approving $21 million class action settlement).

*Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007) (affirming order denying motion to compel arbitration).

### ***Selected Class Settlements***

*Melgar v. Zicam* (Eastern District of California) - $16 million class settlement of claims alleging cold medicine was ineffective.

*Gastelum v. Frontier California Inc.* (San Francisco Superior Court) - $10.9 million class action settlement of claims alleging that a residential landline service provider charged unlawful late fees.

*West v. California Service Bureau*, *Inc.* (Northern District of California) - $4.1 million class settlement of claims under the Telephone Consumer Protection Act.

*Gregorio v. Premier Nutrition Corp.* (Southern District of New York) - $9 million class settlement of false advertising claims against protein shake manufacturer.

*Morris v. SolarCity Corp.* (Northern District of California) - $15 million class settlement of claims under the Telephone Consumer Protection Act.

*Retta v. Millennium Products, Inc.* (Central District of California) - $8.25 million settlement to resolve claims of bottled tea purchasers for alleged false advertising.

*Forcellati v. Hyland's* (Central District of California) – nationwide class action settlement providing full refunds to purchasers of homeopathic cold and flu remedies for children.

*Dei Rossi v. Whirlpool* (Eastern District of California) – class action settlement providing $55 cash payments to purchasers of certain KitchenAid refrigerators that allegedly mislabeled as Energy Star qualified.

*In Re NVIDIA GTX 970 Graphics Chip Litigation* (Northern District of California) - $4.5 million class action settlement of claims alleging that a computer graphics card was sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.* (Northern District of California) – $12 million class action settlement of claims alleging that 5-ounce cans of tuna were underfilled.

*In re Zakskorn v. American Honda Motor Co.* Honda (Eastern District of California) – nationwide settlement providing for brake pad replacement and reimbursement of out-of-pocket expenses in case alleging defective brake pads on Honda Civic vehicles manufactured between 2006 and 2011.

*Correa v. Sensa Products, LLC* (Los Angeles Superior Court) - $9 million settlement on behalf of purchasers of the Sensa weight loss product.

*In re Pacific Bell Late Fee Litigation* (Contra Costa County Superior Court) - $38.6 million settlement on behalf of Pac Bell customers who paid an allegedly unlawful late payment charge.

*In re Haier Freezer Consumer Litigation* (Northern District of California) - $4 million settlement, which provided for cash payments of between $50 and $325.80 to class members who purchased the Haier HNCM070E chest freezer.

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court) - $30 million settlement on behalf of a class of purchasers of a hair loss remedy.

*Guyette v. Viacom, Inc.* (Alameda County Superior Court) - $13 million settlement for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with its subscribers.

## JOSEPH I. MARCHESE

Joseph I. Marchese is a Partner with Bursor & Fisher, P.A.  Joe focuses his practice on consumer class actions, employment law disputes, and commercial litigation.  He has represented corporate and individual clients in a wide array of civil litigation, and has substantial trial and appellate experience.

Joe has diverse experience in litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, privacy violations, data breach claims, and violations of the Servicemembers Civil Relief Act.

Joe also has significant experience in multidistrict litigation proceedings.  Recently, he served on the Plaintiffs' Executive Committee in *In Re:  Blue Buffalo Company, Ltd. Marketing And Sales Practices Litigation*, MDL No. 2562, which resulted in a $32 million consumer class settlement.  Currently, he serves on the Plaintiffs' Steering Committee for Economic Reimbursement in *In Re: Valsartan Products Liability Litigation*, MDL. No. 2875.

Joe is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan, as well as the United States Court of Appeals for the Second Circuit.

Joe graduated from Boston University School of Law in 2002 where he was a member of The Public Interest Law Journal.  In 1998, Joe graduated with honors from Bucknell University.

### *Selected Published Decisions:*

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. Sept. 7, 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

*Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. June 17, 2016), denying publisher's motion to dismiss its subscriber's allegations of state privacy law violations in putative class action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518 (N.D. Ill. 2011), denying retailer's motion to dismiss its customers' state law consumer protection and privacy claims in data breach putative class action.

### ***Selected Class Settlements:***

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

In *re Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB (S.D.N.Y. 2018) – final approval granted for $47 million class settlement to resolve false advertising claims of purchasers of combination grass seed product.

*In Re:  Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) – final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*Rodriguez v. Citimortgage, Inc.*, Case No. 11-cv-4718-PGG (S.D.N.Y. 2015) – final approval granted for $38 million class settlement to resolve claims of military servicemembers for alleged foreclosure violations of the Servicemembers Civil Relief Act, where each class member was entitled to $116,785 plus lost equity in the foreclosed property and interest thereon.

*O'Brien v. LG Electronics USA, Inc., et al.*, Case No. 10-cv-3733-DMC (D.N.J. 2011) – final approval granted for $23 million class settlement to resolve claims of Energy Star refrigerator purchasers for alleged false advertising of the appliances' Energy Star qualification.

### JOSHUA D. ARISOHN

Joshua D. Arisohn is a Partner with Bursor & Fisher, P.A. Josh has litigated precedent-setting cases in the areas of consumer class actions and terrorism. He participated in the first ever

trial to take place under the Anti-Terrorism Act, a statute that affords U.S. citizens the right to assert federal claims for injuries arising out of acts of international terrorism. Josh's practice continues to focus on terrorism-related matters as well as class actions.

Josh is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York and the Eastern District of New York.

Josh previously practiced at Dewey & LeBoeuf LLP and DLA Piper LLP. He graduated from Columbia University School of Law in 2006, where he was a Harlan Fiske Stone Scholar, and received his B.A. from Cornell University in 2002. Josh has been honored as a 2015 and 2016 Super Lawyer Rising Star.

### *Selected Published Decisions:*

*Morris v. SolarCity Corp.*, 2016 WL 1359378 (N.D. Cal. Apr. 4, 2016), denying defendant's motion to dismiss claims that solar company illegally called consumers using an artificial or prerecorded voice and an automatic telephone dialing system.

*Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016), denying defendant's motion to dismiss and finding that the Michigan Video Rental Privacy Act does not violate the First Amendment.

*Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096 (N.D. Cal. 2016), denying defendant's motion dismiss and rejecting its argument that providing a class representative with a cashier's check for his individual damages mooted his individual and class claims.

### *Selected Class Settlements:*

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

## JOEL D. SMITH

Joel D. Smith is a Partner with Bursor & Fisher, P.A. Joel is a trial attorney who has practiced in lower court and appeals courts across the country, as well as the U.S. Supreme Court.

Prior to joining Bursor & Fisher, Joel was a litigator at Crowell & Moring, where he represented Fortune 500 companies, privately held businesses, and public entities in a wide variety of commercial, environmental, and class action matters. Among other matters, Joel served as defense counsel for AT&T, Enterprise-Rent-A-Car, Flowers Foods, and other major U.S. businesses in consumer class actions, including a class action seeking to hold U.S. energy companies accountable for global warming. Joel represented four major U.S. retailers in a case arising from a devastating arson fire and ensuing state of emergency in Roseville, California, which settled on the eve of a trial that was expected to last several months and involve several

dozen witnesses.  Joel also was part of the trial team in a widely publicized trial over the death of a contestant who died after participating in a Sacramento radio station's water drinking contest.

More recently, Joel's practice focuses on consumer class actions involving automotive and other product defects, financial misconduct, false advertising, and privacy violations.

Joel received both his undergraduate and law degrees from the University of California at Berkeley.  While at Berkeley School of Law, he was a member of the California Law Review, received several academic honors, externed for the California Attorney General's office and published an article on climate change policy and litigation.

Joel is admitted to the State Bar of California, as well as the United States Courts of Appeals for the Second, Third and Ninth Circuits; all California district courts; the Eastern District of Michigan; and the Northern District of Illinois.

## *Selected Published Decisions:*

*Javier v. Assurance IQ, LLC*, --- Fed App'x --- 2022 WL 1744107 (9th Cir. May 31, 2022), reversing dismissal in a class action alleging surreptitious monitoring of internet communications.

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), affirming denial of motion to compel arbitration in putative class action alleging unlawful calls under the Telephone Consumer Protection Act.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020), granting class certification of consumer protection claims brought by purchasers of defective chainsaws.

## *Selected Class Settlements:*

*Crandell et al. v. Volkswagen Group of America*, Case No. 2:18-cv-13377-JSA (D.N.J.)  – final approval granted for a settlement providing relief for Volkswagen Touareg owners to resolve allegations that defects in Touareg vehicles caused the engines to ingest water when driving in the rain.

*Isley et al. v. BMW of N. America, LLC*, Case No. 2:19-cv-12680-ESK (D.N.J.) – final approval granted for settlement providing BMW owners with reimbursements and credit vouchers to resolve allegations that defects in the BMW N63TU engine caused excessive oil consumption.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 8:19-cv-01203-JVS-DFM (C.D. Cal.) – final approval granted for a settlement valued up to $40 million to resolve allegations that Harbor Freight sold chainsaws with a defective power switch that could prevent the chainsaws from turning off.

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

## NEAL J. DECKANT

Neal J. Deckant is a Partner with Bursor & Fisher, P.A., where he serves as the firm's Head of Information & e-Discovery. Neal focuses his practice on complex business litigation and consumer class actions. Prior to joining Bursor & Fisher, Neal counseled low-income homeowners facing foreclosure in East Boston.

Neal is admitted to the State Bars of California and New York, and is a member of the bars of the United States District Court for the Northern District of California, the United States District Court for the Eastern District of California, the United States District Court for the Central District of California, the United States District Court for the Southern District of California, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of New York, and the bars of the United States Courts of Appeals for the Second and Ninth Circuits.

Neal received his Juris Doctor from Boston University School of Law in 2011, graduating cum laude with two Dean's Awards. During law school, Neal served as a Senior Articles Editor for the Review of Banking and Financial Law, where he authored two published articles about securitization reforms, both of which were cited by the New York Court of Appeals, the highest court in the state. Neal was also awarded Best Oral Argument in his moot court section, and he served as a Research Assistant for his Securities Regulation professor. Neal has also been honored as a 2014, 2015, 2016, and 2017 Super Lawyers Rising Star. In 2007, Neal graduated with Honors from Brown University with a dual major in East Asian Studies and Philosophy.

### *Selected Published Decisions:*

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (N.D. Cal. Mar. 29, 2019), granting class certification of false advertising and other claims brought by purchasers of Benecol spreads labeled with the representation "No Trans Fats."

*Dzielak v. Whirlpool Corp.*, 2017 WL 6513347 (D.N.J. Dec. 20, 2017), granting class certification of consumer protection claims brought by purchasers of Maytag Centennial washing machines marked with the "Energy Star" logo.

*Duran v. Obesity Research Institute*, LLC, 204 Cal. Rptr. 3d 896 (Cal. Ct. App. 2016), reversing and remanding final approval of a class action settlement on appeal, regarding allegedly mislabeled dietary supplements, in connection with a meritorious objection.

*Marchuk v. Faruqi & Faruqi, LLP*, et al., 100 F. Supp. 4d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*In Re NVIDIA GTX 970 Graphics Chip Litigation*, Case No. 15-cv-00760-PJH (N.D. Cal. Dec. 7, 2016) – final approval granted for $4.5 million class action settlement to resolve claims that a computer graphics card was allegedly sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.*, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) – final approval granted for $12 million class action settlement to resolve claims that 5-ounce cans of tuna were allegedly underfilled.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – class action claims resolved for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy, following claims that its olive oil was allegedly sold with false and misleading representations.

### *Selected Publications:*

Neal Deckant, *X. Reforms of Collateralized Debt Obligations: Enforcement, Accounting and Regulatory Proposals*, 29 Rev. Banking & Fin. L. 79 (2009) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014)).

Neal Deckant, *Criticisms of Collateralized Debt Obligations in the Wake of the Goldman Sachs Scandal*, 30 Rev. Banking & Fin. L. 407 (2010) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014); *Lyon Village Venetia, LLC v. CSE Mortgage LLC*, 2016 WL 476694, at *1 n.1 (Md. Ct. Spec. App. Feb. 4, 2016); Ivan Ascher, Portfolio Society: On the Capitalist Mode of Prediction, at 141, 153, 175 (Zone Books / The MIT Press 2016); Devon J. Steinmeyer, *Does State National Bank of Big Spring v. Geithner Stand a Fighting Chance?*, 89 Chi.-Kent. L. Rev. 471, 473 n.13 (2014)).

## YITZCHAK KOPEL

Yitzchak Kopel is a Partner with Bursor & Fisher, P.A. Yitz focuses his practice on consumer class actions and complex business litigation. He has represented corporate and individual clients before federal and state courts, as well as in arbitration proceedings.

Yitz has substantial experience in successfully litigating and resolving consumer class actions involving claims of consumer fraud, data breaches, and violations of the telephone consumer protection act. Since 2014, Yitz has obtained class certification on behalf of his clients

five times, three of which were certified as nationwide class actions.  Bursor & Fisher was appointed as class counsel to represent the certified classes in each of the cases.

Yitz is admitted to the State Bars of New York and New Jersey, the bar of the United States Court of Appeals for the Second, Eleventh, and Ninth Circuits, and the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, Eastern District of Missouri, Eastern District of Wisconsin, Northern Distriict of Illinois, and District of New Jersey.

Yitz received his Juris Doctorate from Brooklyn Law School in 2012, graduating *cum laude* with two Dean's Awards. During law school, Yitz served as an Articles Editor for the Brooklyn Law Review and worked as a Law Clerk at Shearman & Sterling. In 2009, Yitz graduated *cum laude* from Queens College with a B.A. in Accounting.

### *Selected Published Decisions:*

*Bassaw v. United Industries Corp.,* --- F. Supp. 3d ---, 2020 WL 5117916 (S.D.N.Y. Aug. 31, 2020), denying motion to dismiss claims in putative class action concerning insect foggers.

*Poppiti v. United Industries Corp.*, 2020 WL 1433642 (E.D. Mo. Mar. 24, 2020), denying motion to dismiss claims in putative class action concerning citronella candles.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 6699188 (N.D. Ill. Dec. 9, 2019), granting summary judgment on behalf of certified class in robocall class action.

*Krumm v. Kittrich Corp.*, 2019 WL 6876059 (E.D. Mo. Dec. 17, 2019), denying motion to dismiss claims in putative class action concerning mosquito repellent.

*Crespo v. S.C. Johnson & Son, Inc.*, 394 F. Supp. 3d 260 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding Raid insect fogger.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019), certifying a class of persons who received robocalls in the state of Illinois.

*Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding mosquito repellent.

*Hart v. BHH, LLC*, 323 F. Supp. 3d 560 (S.D.N.Y. 2018), denying defendants' motion for summary judgment in certified class action involving the sale of ultrasonic pest repellers.

*Hart v. BHH, LLC*, 2018 WL 3471813 (S.D.N.Y. July 19, 2018), denying defendants' motion to exclude plaintiffs' expert in certified class action involving the sale of ultrasonic pest repellers.

BURSOR & FISHER
P.A.

*Penrose v. Buffalo Trace Distillery, Inc.*, 2018 WL 2334983 (E.D. Mo. Feb. 5, 2018), denying bourbon producers' motion to dismiss fraud and consumer protection claims in putative class action.

*West v. California Service Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017), certifying a nationwide class of "wrong-number" robocall recipients.

*Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017), certifying nationwide class of purchasers of ultrasonic pest repellers.

*Browning v. Unilever United States, Inc.*, 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017), denying motion to dismiss fraud and warranty claims in putative class action concerning facial scrub product.

*Brenner v. Procter & Gamble Co.*, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016), denying motion to dismiss warranty and consumer protection claims in putative class action concerning baby wipes.

*Hewlett v. Consolidated World Travel, Inc.*, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016), denying telemarketer's motion to dismiss TCPA claims in putative class action.

*Bailey v. KIND, LLC*, 2016 WL 3456981 (C.D. Cal. June 16, 2016), denying motion to dismiss fraud and warranty claims in putative class action concerning snack bars.

*Hart v. BHH, LLC*, 2016 WL 2642228 (S.D.N.Y. May 5, 2016) denying motion to dismiss warranty and consumer protection claims in putative class action concerning ultrasonic pest repellers.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting clients' motion for judgment as a matter of law on claims for retaliation and defamation in employment action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015), denying diet pill manufacturers' motion to dismiss its purchasers' allegations for breach of express warranty in putative class action.

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014), denying online job board's motion to dismiss its subscribers' allegations of consumer protection law violations in putative class action.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*Hart v. BHH, LLC*, Case No. 1:15-cv-04804 (S.D.N.Y. Sept. 22, 2020), resolving class action claims regarding ultrasonic pest repellers.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014), resolving class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

*West v. California Service Bureau*, Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019), resolving class action claims against debt-collector for wrong-number robocalls for $4.1 million.

## FREDERICK J. KLORCZYK III

Frederick J. Klorczyk III is a Partner with Bursor & Fisher, P.A.  Fred focuses his practice on complex business litigation and consumer class actions.

Fred has substantial experience in successfully litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, and privacy violations. In 2019, Fred certified both a California and a 10-state express warranty class on behalf of purchasers of a butter substitute.  In 2014, Fred served on the litigation team in *Ebin v. Kangadis Food Inc*.  At class certification, Judge Rakoff adopted Fred's choice of law fraud analysis and research directly into his published decision certifying a nationwide fraud class.

Fred is admitted to the State Bars of California, New York, and New Jersey, and is a member of the bars of the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, the Southern, Eastern, and Northern Districts of New York, the District of New Jersey, the Northern District of Illinois, the Eastern District of Missouri, the Eastern District of Wisconsin, and the Eastern District of Michigan, as well as the bars of the United States Court of Appeals for the Second and Ninth Circuits.

Fred received his Juris Doctor from Brooklyn Law School in 2013, graduating m*agna cum laude* with two CALI Awards for the highest grade in his classes on conflict of laws and criminal law.  During law school, Fred served as an Associate Managing Editor for the Brooklyn Journal of Corporate, Financial and Commercial Law and as an intern to the Honorable Alison J. Nathan of the United States District Court for the Southern District of New York and the Honorable Janet Bond Arterton of the United States District Court for the District of Connecticut.  In 2010, Fred graduated from the University of Connecticut with a B.S. in Finance.

## *Selected Published Decisions:*

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), denying defendants' motions to dismiss consumer's allegations of state privacy law violations in putative class action.

*In re Welspun Litigation*, 2019 WL 2174089 (S.D.N.Y. May 20, 2019), denying retailers' and textile manufacturer's motion to dismiss consumers' allegations of false advertising relating to purported "100% Egyptian Cotton" linen products.

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (E.D. Cal. Mar. 29, 2019), granting class certification of California false advertising claims and multi-state express warranty claims brought by purchasers of a butter substitute.

*Porter v. NBTY, Inc.*, 2016 WL 6948379 (N.D. Ill. Nov. 28, 2016), denying supplement manufacturer's motion to dismiss consumers' allegations of false advertising relating to whey protein content.

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d. 282 (S.D.N.Y. 2015), denying supplement manufacturer's motion to dismiss consumers' allegations of false advertising relating to a homeopathic cold product.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, Case No. 13-4775 (2d Cir. Apr. 15, 2015), denying olive oil manufacturer's Rule 23(f) appeal following grant of nationwide class certification.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

## *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*In Re: Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) –final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – resolved class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

## YEREMEY O. KRIVOSHEY

Yeremey O. Krivoshey is a Partner with Bursor & Fisher, P.A.  Mr. Krivoshey has particular expertise in COVID-19 related consumer litigation, unlawful fees and liquidated damages in consumer contracts, TCPA cases, product recall cases, and fraud and false advertising litigation.  He has represented clients in a wide array of civil litigation, including appeals before the Ninth Circuit.

Mr. Krivoshey served as trial counsel with Mr. Bursor in *Perez. v. Rash Curtis & Associates*, where, in May 2019, the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.  Since 2017, Mr. Krivoshey has secured over $200 million for class members in consumer class settlements.  Mr. Krivoshey has been honored multiple times as a Super Lawyers Rising Star.

Mr. Krivoshey is admitted to the State Bar of California.  He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, as well as the District of Colorado.

Mr. Krivoshey graduated from New York University School of Law in 2013, where he was a Samuel A. Herzog Scholar.  Prior to Bursor & Fisher, P.A., Mr. Krivoshey worked as a Law Clerk at Vladeck, Waldman, Elias & Engelhard, P.C, focusing on employment discrimination and wage and hour disputes.  In law school, he has also interned at the American Civil Liberties Union and the United States Department of Justice.  In 2010, Mr. Krivoshey graduated *cum laude* from Vanderbilt University.

### *Representative Cases:*

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. May 13, 2019).  Mr. Krivoshey litigated claims against a national health-care debt collection agency on behalf of people that received autodialed calls on their cellular telephones without their prior express consent.  Mr. Krivoshey successfully obtained nationwide class certification, defeated the defendant's motion for summary judgment, won summary judgment as to the issue of prior express consent and the use of automatic telephone dialing systems, and navigated the case

towards trial.  With his partner, Scott Bursor, Mr. Krivoshey obtained a jury verdict finding that the defendant violated the Telephone Consumer Protection Act ("TCPA") 534,712 times.  Under the TCPA, class members are entitled to $500 per each call made in violation of the TCPA – in this case, $267 million for 534,712 unlawful calls.

### *Selected Published Decisions:*

*Goodrich, et al. v. Alterra Mountain Co., et al.,* 2021 WL 2633326 (D. Col. June 25, 2021), denying ski pass company's motion to dismiss its customers' allegations concerning refunds owed due to cancellation of ski season due to COVID-19.

*Bayol v. Zipcar, Inc*., 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014), denying enforcement of forum selection clause based on public policy grounds.

*Bayol v. Zipcar, Inc*., 78 F. Supp. 3d 1252 (N.D. Cal. Jan. 29, 2015), denying car-rental company's motion to dismiss its subscriber's allegations of unlawful late fees.

*Brown v. Comcast Corp*., 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016), denying internet service provider's motion to compel arbitration of claims alleged under the Telephone Consumer Protection Act.

*Chaisson, et al. v. University of Southern California* (Cal. Sup. Ct. Mar. 25, 2021), denying university's demurrer as to its students' allegations of unfair and unlawful late fees.

*Choi v. Kimberly-Clark Worldwide, Inc*., 2019 WL 4894120 (C.D. Cal. Aug. 28, 2019), denying tampon manufacturer's motion to dismiss its customer's design defect claims.

*Horanzy v. Vemma Nutrition Co*., Case No. 15-cv-298-PHX-JJT (D. Ariz. Apr. 16, 2016), denying multi-level marketer's and its chief scientific officer's motion to dismiss their customer's fraud claims.

*McMillion, et al. v. Rash Curtis & Associates*, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017), granting nationwide class certification of Telephone Consumer Protection Act claims by persons receiving autodialed and prerecorded calls without consent.

*McMillion, et al. v. Rash Curtis & Associates*, 2018 WL 692105 (N.D. Cal. Feb. 2, 2018), granting plaintiffs' motion for partial summary judgment on Telephone Consumer Protection Act violations in certified class action.

*Perez v. Indian Harbor Ins. Co*., 2020 WL 2322996 (N.D. Cal. May 11, 2020), denying insurance company's motion to dismiss or stay assigned claims of bad faith and fair dealing arising out of $267 million trial judgment.

*Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020), upholding constitutionality of $267 million class trial judgment award.

*Salazar v. Honest Tea, Inc*., 2015 WL 7017050 (E.D. Cal. Nov. 12, 2015), denying manufacturer's motion for summary judgment as to customer's false advertising claims.

### *Selected Class Settlements:*

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. Oct. 1, 2021) granting final approval to a $75.6 million non-reversionary cash common fund settlement, the largest ever consumer class action settlement stemming from a violation of the Telephone Consumer Protection Act.

*Strassburger v. Six Flags Theme Parks Inc., et al.* (Ill. Cir. Ct. 2021) pending approval to $83.6 million settlement to resolve claims of theme park members for alleged wrongful charging of fees during the COVID-19 pandemic.

*Juarez-Segura, et al. v. Western Dental Services, Inc*. (Cal. Sup. Ct. Aug. 9, 2021) granting final approval to $35 million settlement to resolve claims of dental customers for alleged unlawful late fees.

*Moore v. Kimberly-Clark Worldwide, Inc*. (Ill. Cir. Ct. July 22, 2020) granting final approval to $11.2 million settlement to resolve claims of tampon purchasers for alleged defective products.

*Retta v. Millennium Prods., Inc*., 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) granting final approval to $8.25 million settlement to resolve claims of kombucha purchasers for alleged false advertising.

*Cortes v. National Credit Adjusters, L.L.C.* (E.D. Cal. Dec. 7, 2020) granting final approval to $6.8 million settlement to resolve claims of persons who received alleged autodialed calls without prior consent in violation of the TCPA.

*Bayol et al. v. Health-Ade LLC, et al.* (N.D. Cal. Oct. 11, 2019) – granting final approval to $3,997,500 settlement to resolve claims of kombucha purchasers for alleged false advertising.

## PHILIP L. FRAIETTA

Philip L. Fraietta is a Partner with Bursor & Fisher, P.A.  Phil focuses his practice on data privacy, complex business litigation, consumer class actions, and employment law disputes.  Phil has been named a "Rising Star" in the New York Metro Area by Super Lawyers® every year since 2019.

Phil has significant experience in litigating consumer class actions, particularly those involving privacy claims under statutes such as the Michigan Preservation of Personal Privacy Act, the Illinois Biometric Information Privacy Act, and Right of Publicity statutes.  Since 2016, Phil has recovered over $100 million for class members in privacy class action settlements.  In addition to privacy claims, Phil has significant experience in litigating and settling class action claims involving false or misleading advertising.

Phil is admitted to the State Bars of New York, New Jersey, and Michigan, the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the Western District of New York, the Northern District of New York, the District of New Jersey, the Eastern District of Michigan, the Western District of Michigan, the Northern District

of Illinois, the Central District of Illinois, and the United States Court of Appeals for the Second, Third, and Ninth Circuits. Phil was a Summer Associate with Bursor & Fisher prior to joining the firm.

Phil received his Juris Doctor from Fordham University School of Law in 2014, graduating cum laude. During law school, Phil served as an Articles & Notes Editor for the Fordham Law Review, and published two articles.  In 2011, Phil graduated cum laude from Fordham University with a B.A. in Economics.

### *Selected Published Decisions:*

*Fischer v. Instant Checkmate LLC*, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022), certifying class of Illinois residents for alleged violations of Illinois' Right of Publicity Act by background reporting website.

*Kolebuck-Utz v. Whitepages Inc.,* 2021 WL 157219 (W.D. Wash. Apr. 22, 2021), denying defendant's motion to dismiss for alleged violations of Ohio's Right to Publicity Law.

*Bergeron v. Rochester Institute of Technology,* 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020), denying university's motion to dismiss for failure to refund tuition and fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Porter v. NBTY, Inc.,* 2019 WL 5694312 (N.D. Ill. Nov. 4, 2019), denying supplement manufacturer's motion for summary judgment on consumers' allegations of false advertising relating to whey protein content.

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

### *Selected Class Settlements:*

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Benbow v. SmileDirectClub, LLC*, Case No. 2020-CH-07269 (Cir. Ct. Cook Cnty. 2021) – final approval granted for $11.5 million class settlement to resolve claims for alleged TCPA violations.

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812-KMK (S.D.N.Y. 2018) – final approval granted for $8.225 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. American Media, Inc.*, Case No. 16-cv-11367-JEL (E.D. Mich. 2017) – final approval granted for $7.6 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Rocchio v. Rutgers, The State University of New Jersey*, Case No. MID-L-003039-20 (Sup. Ct. Middlesex Cnty. 2022) – final approval granted for $5 million class settlement to resolve claims for failure to refund mandatory fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Heigl v. Waste Management of New York, LLC*, Case No. 19-cv-05487-WFK-ST (E.D.N.Y. 2021) – final approval granted for $2.7 million class settlement to resolve claims for charging allegedly unlawful fees pertaining to paper billing.

*Frederick v. Examsoft Worldwide, Inc.*, Case No. 2021L001116 (Cir. Ct. DuPage Cnty. 2022) – final approval granted for $2.25 million class settlement to resolve claims for alleged BIPA violations.

## <u>SARAH N. WESTCOT</u>

Sarah N. Westcot is a Partner with Bursor & Fisher, P.A.  Ms. Westcot focuses her practice on complex business litigation, consumer class actions, and employment law disputes. She has represented clients in a wide array of civil litigation, and has substantial trial and appellate experience.

Ms. Westcot served as trial counsel in *Ayyad v. Sprint Spectrum L.P.*, where Bursor & Fisher won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

Ms. Westcot also has significant experience in high-profile, multi-district litigations.  She currently serves on the Plaintiffs' Steering Committee in *In re Zantac (Ranitidine) Products Liability Litigation,* MDL No. 2924 (S.D. Florida).

Ms. Westcot is admitted to the State Bars of California and Florida, and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California and the Southern and Middle Districts of Florida.

Ms. Westcot received her Juris Doctor from the University of Notre Dame Law School in 2009.  During law school, Ms. Westcot was a law clerk with the Cook County State's Attorney's

BURSOR&FISHER
P.A.

Office in Chicago and the Santa Clara County District Attorney's Office in San Jose, CA.  She graduated with honors from the University of Florida in 2005.

## ALEC M. LESLIE

Alec Leslie is a Partner with Bursor & Fisher, P.A.  He focuses his practice on consumer class actions, employment law disputes, and complex business litigation.

Alec is admitted to the State Bar of New York and is a member of the bar of the United States District Courts for the Southern and Eastern Districts of New York.  Alec was a Summer Associate with Bursor & Fisher prior to joining the firm.

Alec received his Juris Doctor from Brooklyn Law School in 2016, graduating *cum laude*.  During law school, Alec served as an Articles Editor for Brooklyn Law Review.  In addition, Alec served as an intern to the Honorable James C. Francis for the Southern District of New York and the Honorable Vincent Del Giudice, Supreme Court, Kings County.  Alec graduated from the University of Colorado with a B.A. in Philosophy in 2012.

### *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Wright v. Southern New Hampshire Univ.*, Case No. 1:20-cv-00609-LM (D.N.H. 2021) – final approval granted for class settlement to resolve claims over COVID-19 tuition and fee refunds to students.

*Mendoza et al. v. United Industries Corp.*, Case No. 21PH-CV00670 (Phelps Cnty. Mo. 2021) – final approval granted for class settlement to resolve false advertising claims on insect repellent products.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, Case No. 8:19-cv-01203-JVS-DFM (C.D. Cal. 2021) – final approval granted for class settlement involving allegedly defective and dangerous chainsaws.

*Rocchio v. Rutgers Univ.*, Case No. MID-L-003039-20 (Middlesex Cnty. N.J. 2021) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

*Malone v. Western Digital Corporation*, Case No. 5:20-cv-03584-NC (N.D. Cal.) – final approval granted for class settlement to resolve false advertising claims on hard drive products.

*Frederick et al. v. ExamSoft Worldwide, Inc.*, Case No. 2021L001116 (DuPage Cnty. Ill. 2021) – final approval granted for class settlement to resolve claims over alleged BIPA violations with respect to exam proctoring software.

### STEPHEN BECK

Stephen is an Associate with Bursor & Fisher, P.A. Stephen focuses his practice on complex civil litigation and class actions.

Stephen is admitted to the State Bar of Florida and is a member of the bars of the United States District Courts for the Southern and Middle Districts of Florida.

Stephen received his Juris Doctor from the University of Miami School of Law in 2018. During law school, Stephen received an Honors distinction in the Litigation Skills Program and was awarded the Honorable Theodore Klein Memorial Scholarship for excellence in written and oral advocacy. Stephen also received the CALI Award in Legislation for earning the highest grade on the final examination. Stephen graduated from the University of North Florida with a B.A. in Philosophy in 2015.

### BRITTANY SCOTT

Brittany Scott is an Associate with Bursor & Fisher, P.A.  Brittany focuses her practice on data privacy, complex civil litigation, and consumer class actions.  Brittany was an intern with Bursor & Fisher prior to joining the firm.

Brittany has substantial experience litigating consumer class actions, including those involving data privacy claims under statutes such as the Illinois Biometric Information Privacy Act, the Fair Credit Reporting Act, and the Michigan Preservation of Personal Privacy Act.  In addition to data privacy claims, Brittany has significant experience in litigating class action claims involving false and misleading advertising.

Brittany is admitted the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, the Eastern District of Wisconsin, and the Northern District of Illinois.

Brittany received her Juris Doctor from the University of California, Hastings College of the Law in 2019, graduating cum laude. During law school, Brittany was a member of the Constitutional Law Quarterly, for which she was the Executive Notes Editor.  Brittany published a note in the Constitutional Law Quarterly entitled "Waiving Goodbye to First Amendment Protections: First Amendment Waiver by Contract." Brittany also served as a judicial extern to the Honorable Andrew Y.S. Cheng for the San Francisco Superior Court.  In 2016, Brittany graduated from the University of California Berkeley with a B.A. in Political Science.

### *Selected Class Settlements:*

*Morrissey v. Tula Life, Inc.,* Case No. 2021L0000646 (18th Judicial Circuit Court DuPage County 2021) – final approval granted for $4 million class settlement to resolve claims of cosmetics purchasers for alleged false advertising.

BURSOR&FISHER
P.A.

## MAX ROBERTS

Max Roberts is an Associate with Bursor & Fisher, P.A.  Max focuses his practice on complex civil litigation, data privacy, and class actions.  Max was a Summer Associate with Bursor & Fisher prior to joining the firm.

Max is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Northern, Southern, and Eastern Districts of New York, the Northern and Central Districts of Illinois, the Eastern District of Michigan, the District of Colorado, and the United States Court of Appeals for the Ninth Circuit.

Max received his Juris Doctor from Fordham University School of Law in 2019, graduating *cum laude.*  During law school, Max was a member of Fordham's Moot Court Board, the Brennan Moore Trial Advocates, and the Fordham Urban Law Journal, for which he published a note entitled *Weaning Drug Manufacturers Off Their Painkiller: Creating an Exception to the Learned Intermediary Doctrine in Light of the Opioid Crisis*.  In addition, Max served as an intern to the Honorable Vincent L. Briccetti of the Southern District of New York and the Fordham Criminal Defense Clinic.  Max graduated from Johns Hopkins University in 2015 with a B.A. in Political Science.

Outside of the law, Max is an avid triathlete.

### *Selected Published Decisions:*

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), reversing district court and holding that the California Invasion of Privacy Act § 631 requires prior consent to wiretapping.  Max personally argued the appeal before the Ninth Circuit, which can be viewed here.

*Soo v. Lorex Corp.,* 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020), denying defendants' motion to compel arbitration and denying in part motion dismiss consumer protection claims in putative class action concerning security cameras.

*Salerno v. Florida Southern College*, 488 F. Supp. 3d 1211 (M.D. Fla. 2020), denying motion to dismiss student's allegations that university committed a breach of contract by failing to refund students after it shifted to online learning during the COVID-19 pandemic.

*Saleh v. Nike, Inc.*, --- F. Supp. 3d ---, 2021 WL 4437734 (C.D. Cal. Sept. 27, 2021), denying in part motion to dismiss alleged violations of California Invasion of Privacy Act.

*Bugarin v. All Nippon Airways Co.*, 2021 WL 4974978 (N.D. Cal. Oct. 26, 2021), denying motion to compel arbitration of airline passenger's breach of contract claims.

*Sholopa v. Turk Hava Yollari A.O., Inc. d/b/a Turkish Airlines*, 2022 WL 976825 (S.D.N.Y. Mar. 31, 2022), denying motion to dismiss passenger's allegations that airline committed a breach of contract by failing to refund passengers for cancelled flights during the COVID-19 pandemic.

### *Selected Class Settlements:*

*Miranda v. Golden Entertainment (NV), Inc.*, Case No. 2:20-cv-534-AT (D. Nev. 2021) – final approval granted for class settlement valued at over $4.5 million to resolve claims of customers and employees of casino company stemming from data breach.

*Malone v. Western Digital Corp.*, Case No. 5:20-cv-3584-NC (N.D. Cal. 2021) – final approval granted for class settlement valued at $5.7 million to resolve claims of hard drive purchasers for alleged false advertised.

*Frederick v. ExamSoft Worldwide, Inc.*, Case No. 2021-L-001116 (18th Judicial Circuit Court DuPage County, Illinois 2021) – final approval granted for $2.25 million class settlement to resolve claims of Illinois students for alleged violations of the Illinois Biometric Information Privacy Act.

## CHRISTOPHER R. REILLY

Chris Reilly is an Associate with Bursor & Fisher, P.A. Chris focuses his practice on consumer class actions and complex business litigation.

Chris is admitted to the State Bar of Florida and is a member of the bar of the United States District Courts for the Southern and Middle Districts of Florida.

Chris received his Juris Doctor from Georgetown University Law Center in 2020. During law school, Chris clerked for the Senate Judiciary Committee, where he worked on antitrust and food and drug law matters under Senator Richard Blumenthal.  He has also clerked for the Mecklenburg County District Attorney's Office, the ACLU Prison Project, and the Pennsylvania General Counsel's Office.  Chris served as Senior Editor of Georgetown's Journal of Law and Public Policy.  In 2017, Chris graduated from the University of Florida with a B.A. in Political Science.

## RACHEL MILLER

Rachel Miller is an Associate with Bursor & Fisher, P.A.  Rachel focuses her practice on complex civil litigation and class actions.

Rachel is admitted to the State Bar of Florida and is a member of the bar of the United States District Court for the Southern District of Florida.

Rachel received her Juris Doctor from the University of Chicago Law School in 2015. During law school, Rachel participated in the Criminal & Juvenile Justice Clinic and received the 2014 Public Interest Law Society Award for Public Service.  Rachel graduated *cum laude* from the University of Florida in 2012 with a B.A. in Political Science.

## JULIA VENDITTI

Julia Venditti is an Associate with Bursor & Fisher, P.A.  Julia focuses her practice on complex civil litigation and class actions.  Julia was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julia is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern and Southern Districts of California.

Julia received her Juris Doctor in 2020 from the University of California, Hastings College of the Law, where she graduated *cum laude* with two CALI Awards for the highest grade in her Evidence and California Community Property classes.  During law school, Julia was a member of the UC Hastings Moot Court team and competed at the Evans Constitutional Law Moot Court Competition, where she finished as a national quarterfinalist and received a best brief award.  Julia was also inducted into the UC Hastings Honors Society and was awarded Best Brief and an Honorable Mention for Best Oral Argument in her First-Year Moot Court section. In addition, Julia served as a Research Assistant for her Constitutional Law professor, as a Teaching Assistant for Legal Writing & Research, and as a Law Clerk at the San Francisco Public Defender's Office.  In 2017, Julia graduated *magna cum laude* from Baruch College/CUNY, Weissman School of Arts and Sciences, with a B.A. in Political Science.

## SEAN L. LITTERAL

Sean L. Litteral is an Associate with Bursor & Fisher, P.A.  Sean focuses his practice on complex business litigation, consumer class actions, and employment law disputes.  He holds degrees from Berea College, the London School of Economics and Political Science, and Berkeley Law.

Sean has represented clients in a variety of matters, including survivors against the Boy Scouts of America for covering up decades of sexual abuse; warehouse workers against Walmart for failing to comply with COVID-19 health and safety guidelines; and drivers against Corinthian International Parking Services for systematically violating California's wage and hour laws.

Sean clerked for the Alaska Supreme Court and served as a fellow for the U.S. House Committee on Education and Labor and the Atlanta City Council.  He previously externed for the Special Litigation Section, Civil Rights Division of the U.S. Department of Justice; the Berkeley Environmental Law Clinic; and the Corporate Sustainability Program at the Pontificia Universidad Católica de Chile.

He has published in the UC Davis Environmental Law & Policy Journal, the Harvard Latinx Law Review, and the Stanford Law and Policy Review on a broad scope of matters, including corporate sustainability, international trade, and national security.

BURSOR&FISHER
P.A.

## JULIAN DIAMOND

Julian Diamond is an Associate with Bursor & Fisher, P.A.  Julian focuses his practice on privacy law and class actions.  Julian was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julian received his Juris Doctor from Columbia Law School, where he was a Harlan Fiske Stone Scholar.  During law school, Julian was Articles Editor for the Columbia Journal of Environmental Law.  Prior to law school, Julian worked in education.  Julian graduated from California State University, Fullerton with a B.A. in History and a single subject social science teaching credential.

## MATTHEW GIRARDI

Matt Girardi is an Associate with Bursor & Fisher, P.A.  Matt focuses his practice on complex civil litigation and class actions, and has focused specifically on consumer class actions involving product defects, financial misconduct, false advertising, and privacy violations.  Matt was a Summer Associate with Bursor & Fisher prior to joining the firm.

Matt is admitted to the State Bar of New York, and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan

Matt received his Juris Doctor from Columbia Law School in 2020, where he was a Harlan Fiske Stone Scholar.  During law school, Matt was the Commentary Editor for the Columbia Journal of Tax Law, and represented fledgling businesses for Columbia's Entrepreneurship and Community Development Clinic.  In addition, Matt worked as an Honors Intern in the Division of Enforcement at the U.S. Securities and Exchange Commission.  Prior to law school, Matt graduated from Brown University in 2016 with a B.A. in Economics, and worked as a Paralegal Specialist at the U.S. Department of Justice in the Antitrust Division.

**EXHIBIT 90**



| HAVERFORD, | 361 West Lancaster Avenue<br>Haverford, PA 19041<br>Voice: 610-642-8500<br>Toll Free: 866-399-2487<br>Fax:  610-649-3633 |
|---|---|
| WILMINGTON, | 2711 Centerville Rd.<br>Suite 201<br>Wilmington, DE 19808<br>Voice: 302-656-2500<br>Fax: 302-656-9053 |

<u>OUR ATTORNEYS</u>

*Partners*

3       Nicholas E. Chimicles

6       Robert J. Kriner, Jr.

7       Steven A. Schwartz

10      Kimberly Donaldson Smith

12      Timothy N. Mathews

14      Benjamin F. Johns

17      Scott M. Tucker

*Of Counsel & Senior Counsel*

18      Anthony Allen Geyelin

19      Tiffany J. Cramer

21      Beena M. McDonald

24      Alison G. Gushue

*Associates*

25      Mark B. DeSanto

27      Stephanie E. Saunders

28      Zachary P. Beatty

30      Alex M. Kashurba

31      Samantha E. Holbrook

33      Emily L. Skaug

34      <u>PRACTICE AREAS</u>

38      <u>REPRESENTATIVE CASES</u>

# Our Attorneys-Partners

**Practice Areas:**

- Antitrust
- Automobile Defects and False Advertising
- Corporate Mismanagement & Shareholder Derivative Action
- Defective Products and Consumer Protection
- Mergers & Acquisitions
- Non-Listed REITs
- Other Complex Litigation
- Securities Fraud

**Education:**

- University of Virginia School of Law, J.D., 1973
- University of Virginia Law Review; co-author of a course and study guide entitled "Student's Course Outline on Securities Regulation," published by the University of Virginia School of Law
- University of Pennsylvania, B.A., 1970

**Memberships & Associations:**

- Supreme Court of Pennsylvania Disciplinary Board Hearing Committee Member, 2008-2014.
- Past President of the National Association of Securities and Commercial Law Attorneys based in Washington, D.C., 1999-2001
- Chairman of the Public Affairs Committee of the American Hellenic Institute, Washington, D.C.
- Member of the Boards of Directors of Opera Philadelphia, Pennsylvanians for Modern Courts, and the Public Interest Law Center of Philadelphia.

**Admissions:**

- Supreme Court of Pennsylvania
- United States Supreme Court
- Second Circuit Court of Appeals
- Third Circuit Court of Appeals

# NICHOLAS E. CHIMICLES



Mr. Chimicles has been lead counsel and lead trial counsel in major complex litigation, antitrust, securities fraud and breach of fiduciary duty suits for over 40 years. Representative Cases include:

- In three related cases involving the collection of improperly imposed telephone utility users taxes, Mr. Chimicles was co-lead counsel representing taxpayers in the Superior Court in Los Angeles, resulting in the creation of settlement funds totaling more than $120 million. *Ardon v. City of Los Angeles* ($92.5 million)(2016); *McWilliams v. City of Long Beach* ($16.6 million)(2018); and *Granados v. County of Los Angeles* ($16.9 million)(2018). The suits were settled after the Supreme Court of California unanimously upheld the rights of taxpayers to file class action refund claims under the California Government Code.

- *W2007 Grace Acquisition I, Inc., Preferred Stockholder Litigation,* Civ. No. 2:13-cv-2777, involved various violations of contractual, fiduciary and corporate statutory duties by defendants who engaged in various related-party transactions, wrongfully withheld dividends and financial information, and failed to timely hold an annual preferred stockholder meeting. This litigation resulted in a swift settlement valued at over $76 million after ten months of hard -fought litigation.

- *Lockabey v. American Honda Motor Co.,* Case No. 37-2010-87755 (Superior Ct., San Diego). A settlement valued at over $170 million resolved a consumer action involving false advertising claims relating to the sale of Honda Civic Hybrid vehicles as well as claims relating to a software update to the integrated motor assist battery system of the HCH vehicles. As a lead counsel, Mr. Chimicles led a case that, in the court's view, was "difficult and risky" and provided "significant public value."

- *City of St. Clair Shores General Employees Retirement System, et al. v. Inland Western Retail Real Estate Trust, Inc.,* Case No. 07 C 6174 (N.D. Ill.). A $90 million settlement was reached in 2010 in this class action challenging the accuracy of a proxy statement that sought (and received) stockholder approval of the merger of an external advisor and property managers by a multi-billion dollar real estate investment trust, Inland Western Retail Real Estate Trust, Inc. The settlement provided that the owners of the advisor/property

- Fourth Circuit Court of Appeals
- Sixth Circuit Court of Appeals
- Ninth Circuit Court of Appeals
- Tenth Circuit Court of Appeals
- Eleventh Circuit Court of Appeals
- Court of Appeals for the D.C. Circuit
- Eastern District of Pennsylvania
- Eastern District of Michigan
- Northern District of Illinois
- District of Colorado
- Eastern District of Wisconsin
- Court of Federal Claims
- Southern District of New York

**Honors:**

- Recipient of the American Hellenic Institute's Heritage Achievement & National Public Service Award (2019)
- Fellow of the American Bar Foundation (2017) - an honorary organization of lawyers, judges and scholars whose careers have demonstrated outstanding dedication to the welfare of their communities and to the highest principles of the legal profession.
- Prestigious 2016 Thaddeus Stevens Award of the Public Interest Law Center (Philadelphia) in recognition of his leadership and service to this organization.
- Ellis Island Medal of Honor in May 2004, in recognition of his professional achievements and history of charitable contributions to educational, cultural and religious organizations.
- Pennsylvania and Philadelphia SuperLawyers, 2006-present.
- AV® rated by Martindale-Hubbell

manager entities (who are also officers and/or directors of Inland Western) had to return nearly 25% of the Inland Western stock they received in the merger.

- *In re Real Estate Associates Limited Partnerships Litigation*, No. CV 98-7035 DDP, was tried in the federal district court in Los Angeles before the Honorable Dean D. Pregerson. Mr. Chimicles was lead trial counsel for the Class of investors in this six-week jury trial of a securities fraud/ breach of fiduciary duty case that resulted in a $185 million verdict in late 2002 in favor of the Class (comprising investors in the eight REAL Partnerships) and against the REALs' managing general partner, National Partnership Investments Company ("NAPICO") and the four individual officers and directors of NAPICO. The verdict included an award of $92.5 million in punitive damages against NAPICO. This total verdict of $185 million was among the "Top 10 Verdicts of 2002," as reported by the National Law Journal (verdictsearch.com).  On post-trial motions, the Court upheld in all respects the jury's verdict on liability, upheld in full the jury's award of $92.5 million in compensatory damages, upheld the Class's entitlement to punitive damages (but reduced those damages to $2.6 million based on the application of California law to NAPICO's financial condition), and awarded an additional $25 million in pre-judgment interest. Based on the Court's decisions on the post-trial motions, the judgment entered in favor of the Class on April 28, 2003 totaled over $120 million.

*CNL Hotels & Resorts, Inc. Securities Litigation*, Case No. 6:04-cv-1231 (M.D. Fla., Orl. Div. 2006).  The case settled Sections 11 and 12 claims for $35 million in cash and Section 14 proxy claims by significantly reducing the merger consideration by nearly $225 million (from $300 million to $73 million) that CNL paid for internalizing its advisor/ manager.

- *Prudential Limited Partnerships Litigation*, MDL 1005 (S.D.N.Y.). Mr. Chimicles was a member of the Executive Committee in this case where the Class recovered from Prudential and other defendants $130 million in settlements, that were approved in 1995. The Class comprised limited partners in dozens of public limited partnerships that were marketed by Prudential.

*PaineWebber Limited Partnerships Litigation*, 94 Civ. 8547 (S.D.N.Y.). Mr. Chimicles was Chairman of the Plaintiffs' Executive Committee representing limited partners who had invested in more than 65 limited partnerships that PaineWebber organized and/or marketed. The litigation was settled for a total of $200 million, comprising $125 million in cash and $75 million in additional benefits resulting from restructurings and fee concessions and waivers.

- *In Re Phoenix Leasing Incorporated Limited Partnership Litigation*, Superior Court of the State of California, County of Marin, Case No. 173739. In February 2002, the Superior Court of Marin County, California, approved the settlement of this case which involved five public partnerships sponsored by Phoenix Leasing Incorporated and

4

- *Continental Illinois Corporation Securities Litigation*, Civil Action No. 82 C 4712 (N.D. Ill.) involving a twenty-week jury trial in which Mr. Chimicles was lead trial counsel for the Class that concluded in July, 1987 (the Class ultimately recovered nearly $40 million).

# ROBERT J. KRINER, JR.

**Practice Areas:**

- Corporate Mismanagement & Shareholder Derivative Action
- Mergers & Acquisitions

**Education:**

- Delaware Law School of Widener University, J.D., 1988
- University of Delaware, B.S. Chemistry, 1983

**Memberships:**

- Delaware State Bar Association

**Admissions:**

- Supreme Court of Delaware



Robert K. Kriner, Jr. is a Partner in the Firm's Wilmington, Delaware office. From 1988 to 1989, Mr. Kriner served as law clerk to the Honorable James L. Latchum, Senior Judge of the United States District Court for the District of Delaware.  Following his clerkship and until joining the Firm, Mr. Kriner was an associate with a major Wilmington, Delaware law firm, practicing in the areas of corporate and general litigation.

Mr. Kriner has prosecuted actions, including class and derivative actions, on behalf of stockholders, limited partners and other investors with claims relating to mergers and acquisitions, hostile acquisition proposals, the enforcement of fiduciary duties, the election of directors, and the enforcement of statutory rights of investors such as the right to inspect books and records. Among his recent achievements are Sample v. Morgan, C.A. No. 1214-VCS (obtaining full recovery for shareholders diluted by an issuance of stock to management), In re Genentech, Inc. Shareholders Litigation, Consolidated C.A. No. 3911-VCS (leading to a nearly $4 billion increase in the price paid to the Genentech stockholders) and In re Kinder Morgan, Inc. Shareholders Litigation, Consolidated Case No. 06-C-801 (action challenging the management led buyout of Kinder Morgan, settled for $200 million).

Recently, Mr. Kriner led the prosecution of a derivative action in the Delaware Court of Chancery by stockholders of Bank of America Corporation relating to the January 2009 acquisition of Merrill Lynch & Co. In re Bank of America Corporation Stockholder Derivative Litigation, C.A. No. 4307-CS. The derivative action concluded in a settlement which included a $62.5 million payment to Bank of America.

# Steven A. Schwartz

**Practice Areas:**

- Antitrust
- Corporate Mismanagement & Shareholder Derivative Action
- Defective Products and Consumer Protection
- Other Complex Litigation
- Securities Fraud

**Education:**

- Duke University School of Law, J.D., 1987
- ◊ Law & Contemporary Problems Journal, Senior Editor
- University of Pennsylvania, B.A., 1984 - *cum laude*

**Memberships & Associations:**

- National Association of Shareholder and Consumer Attorneys (NASCAT) Executive Committee Member
- American Bar Association
- Pennsylvania Bar Association

**Admissions:**

- United States Supreme Court
- Pennsylvania Supreme Court
- Third Circuit Court of Appeals
- Sixth Circuit Court of Appeals
- Eighth Circuit Court of Appeals
- Ninth Circuit Court of Appeals
- Eastern District of Pennsylvania
- Western District of Pennsylvania
- Eastern District of Michigan
- District of Colorado

**Honors:**

- National Trial Lawyers Top 100
- AV Rating from Martindale Hubbell
- Pennsylvania Super Lawyer, 2006-Present
- America's Top 100 High Stakes Litigator



Steven A. Schwartz has prosecuted complex class actions in a wide variety of contexts. Notably, Mr. Schwartz has been successful in obtaining several settlements where class members received a full recovery on their damages. Representative cases include:

- *In re Cigna-American Specialty Health Administrative Fee Litigation*, No. 2:16-cv-03967-NIQA (E. D. Pa.). I served as co-lead counsel in this national class action alleging that defendant Cigna and its subcontractor, ASH, violated the written terms of ERISA medical benefit by treating ASH's administrative fees as medical expenses to artificially inflate the amount of "benefits" owed by plans and the cost-sharing obligations of plan participants and beneficiaries. The Court approved the $8.25 million settlement in which class members were automatically mailed checks representing a full or near-full recovery of the actual amount they paid for the administrative fees. ECF 101 at 4, 23-24.

- *Rodman v. Safeway Inc.*, No. 11-3003-JST (N.D. Cal.). Mr. Schwartz served as Plaintiffs' Lead Trial Counsel and presented all of the district court and appellate arguments in this national class action regarding grocery delivery overcharges. He was successful in obtaining a national class certification and a series of summary judgment decisions as to liability and damages resulting in a $42 million judgment, which represents a full recovery of class members' damages plus interest. The $42 million judgment was entered shortly after a scheduled trial was postponed due to Safeway's discovery misconduct, which resulted in the district court imposing a $688,000 sanction against Safeway. The Ninth Circuit affirmed the $42 million judgment. 2017 U.S. App. LEXIS 14397 (9th Cir. Aug. 4, 2017).

- *In re Apple iPhone/iPod Warranty Litig.*, No. 3:10-1610-RS (N.D. Cal.). Mr. Schwartz served as co-lead counsel in this national class action in which Apple agreed to a $53 million non-reversionary, cash settlement to resolve claims that it had improperly denied warranty coverage for malfunctioning iPhones due to alleged liquid damage. Class members were automatically mailed settlement checks for more than 117% of the average replacement costs of their iPhones, net of attorneys' fees, which represented an average payment of about $241.

- *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, (N.D. Ill.) & Case 1:09-wp-65003-CAB (N. D. Ohio) (MDL No. 2001). Mr. Schwartz served as co-lead class counsel in this case which related to defective central control units ("CCUs") in front load washers manufactured by Whirlpool and sold by Sears. After extensive litigation, including two trips to the Seventh Circuit and a trip to the United States Supreme Court challenging the certification of the plaintiff class, he negotiated a settlement shortly before trial that the district court held, after a contested proceeding approval proceeding, provided a "full-value, dollar-for-dollar recovery" that was "as good, if not a

better, [a] recovery for Class Members than could have been achieved at trial." 2016 U.S. Dist. LEXIS 25290 at *35 (N.D. Ill. Feb. 29, 2016).

- *Chambers v. Whirlpool Corp., et al., Case No.* 11-1773 FMO (C.D. Cal.). Mr. Schwartz served as co-lead counsel in this national class action involving alleged defects resulting in fires in Whirlpool, Kenmore, and KitchenAid dishwashers. The district court approved a settlement which he negotiated that provides wide-ranging relief to owners of approximately 24 million implicated dishwashers, including a full recovery of out-of-pocket damages for costs to repair or replace dishwashers that suffered overheating Events. In approving the settlement, Judge Olguin of the Central District of California described Mr. Schwartz as "among the most capable and experienced lawyers in the country in [consumer class actions]." 214 F. Supp. 3d 877, 902 (C.D. Cal. 2016).

- *Wong v. T-Mobile*, No. 05-cv-73922-NGE-VMM (E.D. Mich.). In this billing overcharge case, Mr. Schwartz served as co-lead class counsel and negotiated a settlement where T-Mobile automatically mailed class members checks representing a 100% net recovery of the overcharges and with all counsel fees paid by T-Mobile in addition to the class members' 100% recovery.

- *In re Certainteed Corp. Roofing Shingle Products Liability Litig.*, No, 07-md-1817-LP (E.D. Pa.). In this MDL case related to defective roof shingles, Mr. Schwartz served as Chair of Plaintiffs' Discovery Committee and worked under the leadership of co-lead class counsel. The parties reached a settlement that provided class members with a substantial recovery of their out-of-pocket damages and that the district court valued at between $687 to $815 million.

- *Shared Medical Systems 1998 Incentive Compensation Plan Litig.*, Mar. Term 2003, No. 0885 (Phila. C.C.P.). In this case on behalf of Siemens employees, after securing national class certification and summary judgment as to liability, on the eve of trial, Mr. Schwartz negotiated a net recovery for class members of the full amount of the incentive compensation sought (over $10 million) plus counsel fees and expenses. At the final settlement approval hearing, Judge Bernstein remarked that the settlement "should restore anyone's faith in class action[s]. . . ." Mr. Schwartz served as co-lead counsel in this case and handled all of the arguments and court hearings.

- *In re Pennsylvania Baycol: Third-Party Payor Litig.*, Sept. Term 2001, No. 001874 (Phila. C.C.P.) ("Baycol"). Mr. Schwartz served as co-lead class counsel in this case brought by health and welfare funds and insurers to recover damages caused by Bayer's withdrawal of the cholesterol drug Baycol. After extensive litigation, the court certified a nationwide class and granted plaintiffs' motion for summary judgment as to liability, and on the eve of trial, he negotiated a settlement providing class members with a net recovery that approximated the maximum damages (including pre-judgment interest) that class members suffered. That settlement represented three times the net recovery of Bayer's voluntary claims process (which AETNA and CIGNA had negotiated and was accepted by many large insurers who opted out of the class early in the litigation).

8

- *Wolens v. American Airlines, Inc.* Mr. Schwartz served as plaintiffs' co-lead counsel in this case involving American Airlines' retroactive increase in the number of frequent flyer miles needed to claim travel awards. In a landmark decision, the United States Supreme Court held that plaintiffs' claims were not preempted by the Federal Aviation Act. 513 U.S. 219 (1995). After eleven years of litigation, American Airlines agreed to provide class members with mileage certificates that approximated the full extent of their alleged damages, which the Court, with the assistance of a court-appointed expert and after a contested proceeding, valued at between $95.6 million and $141.6 million.

- *In Re ML Coin Fund Litigation*, (Superior Court of the State of California for the County of Los Angeles). Mr. Schwartz served as plaintiffs' co-lead counsel and successfully obtained a settlement from defendant Merrill Lynch in excess of $35 million on behalf of limited partners, which represented a 100% net recovery of their initial investments (at the time of the settlement the partnership assets were virtually worthless due to fraud committed by Merrill's co-general partner Bruce McNall, who was convicted of bank fraud).

- *Nelson v. Nationwide*, July Term 1997, No. 00453 (Phila. C.C.P.). Mr. Schwartz served as lead counsel on behalf of a certified class. After securing judgment as to liability in the trial court (34 Pa. D. & C. 4th 1 (1998)), and defeating Nationwide's Appeal before the Pennsylvania Superior Court, 924 PHL 1998 (Dec. 2, 1998), he negotiated a settlement whereby Nationwide agreed to pay class members approximately 130% of their bills.

# Kimberly Donaldson Smith

**Practice Areas:**

- Securities Fraud
- Non-Listed REITs
- Corporate Mismanagement & Shareholder Derivative Action
- Mergers & Acquisitions

**Education:**

- Villanova University School of Law, J.D., 1999 - *cum laude*
- Boston University, B.A. Political Science, 1996
- 

**Memberships & Associations:**

- Pennsylvania Bar Association
- Villanova Law School Alumni Association

**Admissions:**

- Pennsylvania Supreme Court
- New Jersey Supreme Court
- Third Circuit Court of Appeals
- District of New Jersey
- Eastern District of Pennsylvania

**Honors:**

- Pennsylvania SuperLawyer: 2013– Present
- Named Pennsylvania Rising Star by Super Lawyers: 2006-2012
- Sutton Who's Who in American Law



Kimberly Donaldson Smith is a partner in the Firm's Haverford Office. Kimberly has been counseling clients and prosecuting cases on complex issues involving securities, business transactions and other class actions for over 15 years.

Kimberly concentrates her practice in sophisticated securities class action litigation in federal courts throughout the country, and has served as lead or co-lead counsel in over a dozen class actions. She is very active in investigating and initiating securities and shareholder class actions.

Kimberly is currently prosecuting federal securities claims on behalf of investors in numerous cases. Kimberly was instrumental in the outstanding settlements achieved for investors in:

- *W2007 Grace Acquisition I, Inc., Preferred Stockholder Litigation,* Civ. No. 2:13-cv-2777 (W.D. Tenn.)(a settlement valued at over $76 million for current and former W2007 Grace preferred stockholders);

- *In re Empire State Realty Trust, Inc. Investor Litigation*, Case 650607/2012, NY Supreme Court (a $55,000,000 cash settlement fund and $100 million tax savings for the Empire investors);

- *CNL Hotels & Resorts Inc. Federal Securities Litigation*, Case No. 04-cv-1231 (M.D. Fla.)(a $35,000,000 cash settlement fund and a $225 million savings for the CNL shareholders);

- *Inland Western Retail Real Estate Trust, Inc., et al. Litigation*, Case 07 C 6174 (U.S.D.C. N.D. Ill) (a $90 million savings for the Inland shareholders subjected to a self-dealing transaction); and

- *Wells REIT Securities Litigation*, Case 1:07-cv-00862/1:07-cv-02660 (U.S.D.C. N.D. GA)(a $7 million cash settlement fund for the Wells REIT investors).

Notably, Kimberly was an integral member of the trial team that successfully litigated the *In re Real Estate Associates Limited Partnership Litigation*, No. CV 98-7035 DDP (CD. Cal.) through a six-week jury trial that resulted in a landmark $184 million plaintiffs' verdict, which is one of the largest jury verdicts since the passage of the Private Securities Litigation Reform Act of 1995. The Real Estate Associates judgment was settled for $83 million, which represented full recovery for the Class (and an amount in excess of the damages calculated by Plaintiffs' expert).

Kimberly's pro bono activities include serving as a volunteer attorney with the Support Center for Child Advocates, a Philadelphia-based, nonprofit organization that provides legal and social services to abused and neglected children. Since 2006, Kimberly has been recognized by

Law & Politics and the publishers of Philadelphia Magazine as a Pennsylvania Super Lawyer or Rising Star, as listed in the Super Lawyers' publications.

**Practice Areas:**

- Antitrust
- Corporate Mismanagement
- Consumer Fraud & Deceptive Products
- Securities Fraud Litigation

**Education:**

- Rutgers School of Law-Camden, J.D., 2003 - *with High Honors*
- Rutgers University-Camden, B.A., 2000 - *with Highest Honors*

**Memberships & Associations:**

- National Association of Shareholder and Consumer Attorneys (NASCAT) Amicus Committee Member
- Rutgers Journal of Law & Religion – Lead Marketing Editor (2002-2003)

**Admissions:**

- Pennsylvania
- New Jersey
- Eastern District of Pennsylvania
- District of New Jersey
- United States Court of Appeals for the Third Circuit
- United States Court of Appeals for the Fourth Circuit
- United States Court of Appeals for the Ninth Circuit
- United States Court of Appeals for the Eleventh Circuit

**Honors:**

- 2019-2021 Lawdragon 500 Leading Plaintiff Lawyer
- Super Lawyers 2019-2021
- Pennsylvania Super Lawyers Rising Star 2008, 2010, 2013-2014
- Rutgers Law Legal Writing Award 2003

# Timothy N. Mathews



Tim Mathews is a partner in the firm's Haverford office.  He has been described as "among the most capable and experienced lawyers in the country" in consumer class action litigation.  *Chambers v. Whirlpool*, 214 F. Supp 3d 877 (C.D.Cal. 2016).  He is also an experienced appellate attorney in the United States Courts of Appeals for the Third, Fourth, Ninth, and Eleventh Circuits, as well as the Supreme Court of California.  Representative cases in which Mr. Mathews has held a lead role include:

- *Suarez v. Nissan North America* (M.D.Tenn.) – over $50 million settlement providing reimbursements, free repairs, and extended warranty for Nissan Altima headlamps;

- *Rodman v. Safeway, Inc.* (N.D.Cal.) – $42 million judgment against Safeway, Inc., representing 100% of damages plus interest for grocery delivery overcharges;

- *Ardon v. City of Los Angeles* (Superior Court, County of Los Angeles) – $92.5 million tax refund settlement with the City of Los Angeles after winning landmark decision in the Supreme Court of California securing the rights of taxpayers to file class-wide tax refund claims under the CA Government Code;

- *McWilliams v. City of Long Beach* (Superior Court, County of Los Angeles) - $16.6 million telephone tax refund settlement;

- *Granados v. County of Los Angeles* - $16.9 million telephone tax refund settlement;

- *In re 24 Hour Fitness Prepaid Memberships. Litig.* (N.D.Cal.) - Full-relief settlement providing over $8 million in refunds and an estimated minimum of $16 million in future rate reductions, for class of consumers who purchased prepaid gym memberships;

- *Chambers v. Whirlpool Corp.* (C.D.Cal.) – Settlement providing 100% of repair costs and other benefits for up to 24 million dishwashers that have an alleged propensity to catch fire due to a control board defect;

- *Livingston v. Trane U.S. Inc.* (D.N.J.) – multimillion-dollar settlement providing repair reimbursements, extended warranty coverage, and free service for owners of defective air conditioners;

- *In re Apple iPhone Warranty Litig.* (N.D.Cal.) – $53 million settlement in case alleging improper iPhone warranty denials; class members received on average 118% of their damages;

- *In re Colonial Bancgroup, Inc.*– Settlements totaling $18.4 million for shareholders in securities lawsuit involving one of the largest U.S.

bank failures of all time;

- *International Fibercom* (D.Ariz.) – Represented plaintiff in insurance coverage actions against D&O carriers arising out of securities fraud claims; achieved a near-full recovery for the plaintiff; and

- *In re Mutual Funds Investment Litigation*, MDL 1586 (D.Md.) – Lead Fund Derivative Counsel in the multidistrict litigation arising out of the market timing and late trading scandal of 2003, which involved seventeen mutual fund families and hundreds of parties, and resulted in over $250 million in settlements.

Mr. Mathews graduated from Rutgers School of Law-Camden with high honors, where he served as Lead Marketing Editor for the Rutgers Journal of Law & Religion, served as a teaching assistant for the Legal Research and Writing Program, received the 1L legal Writing Award, and received a Dean's Merit Scholarship and the Hamerling Merit Scholarship.  He received his B.A. from Rutgers University-Camden in 2000 with highest honors, where he was inducted into the Athenaeum honor society.

Mr. Mathews also serves as Co-Chair of the Planning Commission for the township of Lower Merion.  His pro bono work has included representation of the Holmesburg Fish and Game Protective Association in Philadelphia.  He also served on the Amicus Committee for the National Association of Shareholder and Consumer Attorneys (NASCAT) for over ten years.

**Practice Areas:**

- Antitrust
- Automobile Defects and False Advertising
- Defective Products and Consumer Protection
- Other Complex Litigation
- Securities Fraud
- Data Breach

**Education:**

- Penn State Dickinson School of Law, J.D., 2005 - Woolsack Honor Society
- Penn State Harrisburg, M.B.A., 2004 - Beta Gamma Sigma Honor Society
- Washington and Lee University, B.S., 2002 - *cum laude*

**Memberships & Associations:**

- Executive Committee, Young Lawyers Division of the Philadelphia Bar Association (2011-2014)
- Board Member, The Dickinson School of Law Alumni Society
- Editorial Board, Philadelphia Bar Reporter (2013-2016)
- The Federalist Society

**Admissions:**

- Supreme Court of Pennsylvania
- Supreme Court of New Jersey
- Third Circuit Court of Appeals
- Fifth Circuit Court of Appeals
- Ninth Circuit Court of Appeals
- D.C. Circuit Court of Appeals
- Eastern District of Pennsylvania
- Middle District of Pennsylvania
- Western District of Pennsylvania
- District of New Jersey
- District of Colorado
- Northern District of Illinois
- Central District of Illinois
- Eastern District of Michigan
- U.S. Court of Federal Claims

# Benjamin F. Johns



Benjamin F. Johns first began working at the firm as a Summer Associate while pursuing a J.D./M.B.A. joint degree program in business school and law school. He became a full-time Associate upon graduation, and is now a Partner. Over the course of his legal career, Ben has argued in state and federal courts across the country, including the Pennsylvania Supreme Court (won unanimous reversal), Pennsylvania Commonwealth Court (won), and U.S. Court of Appeals for the D.C. Circuit (lost, 2-1). He has taken and defended hundreds of depositions, including those of c-suite level executives of Fortune 500 companies, lawyers, bankers, experts, engineers, prison guards, I.R.S. officials, and information technology personnel.

Ben is currently serving as Court appointed interim co-lead counsel in several consumer data breach class actions, including *Perdue et al. v. Hy-Vee, Inc.*, No. 1:19-cv-01330-MMM-JEH (C.D. Ill.); *In re Wawa, Inc. Data Security Litig.*, Lead Case No. 2:19-cv-06019-GEKP (E.D. Pa); *Kostka v. Dickey's Barbeque Rests.*, Civil Action No. 3:20-cv—3424-K (N.D. Tex.); and *In re Rutter's Inc. Data Security Breach Litig.*, No. 1:20-cv-382 (M.D. Pa.). He has also been appointed Chair of the Executive Committee in *In re Subaru Battery Drain Prods. Liab. Litig.*, Civil Action No. 1:20-cv-03095-JHR -JS (D.N.J.), a consumer automobile case that largely withstood a motion to dismiss, and is among the lead lawyers prosecuting a case against Apple related to allegedly defective MacBook keyboards. *In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD (N.D. Cal.). Along with his co-counsel, Ben successfully argued against two motions to dismiss and for class certification in that case.

Over the course of his career, Ben has provided substantial assistance in the prosecution of the following cases:

- *Udeen v. Subaru of Am., Inc.,* 18-17334 (RBK/JS) (D.N.J.) (Mr. Johns was co-lead counsel in this consumer class action involving allegedly defective infotainment systems in certain Subaru automobiles, which resulted a settlement valued at $6.25 million. At the hearing granting final approval of the settlement, the district court commented that the plaintiffs' team "are very skilled and very efficient lawyers…They've done a nice job.")

- *In re Nexus 6P Product Liability Litig.*, No. 5:17-cv-02185-BLF (N.D. Cal.) (Mr. Johns served as co-lead counsel – and argued two of the motions to dismiss – in this defective smartphone class action.  The case resulted in a settlement valued at $9.75 million, which Judge Beth Labson Freeman described as "substantial" and an "excellent resolution of the case.")

- *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal.) (Mr. Johns served as court-appointed co-lead counsel in this consumer class action concerning allegedly defective MyFord Touch infotainment systems, which settled for $17 million shortly before trial)

- *Weeks v. Google LLC*, No. 5:18-cv-00801-NC, 2019 U.S. Dist. LEXIS 215943, at *8-9 (N.D. Cal. Dec. 13, 2019) (Mr. Johns was co-lead counsel – and successfully argued against a motion to dismiss – in this defective smartphone class action. A $7.25 million settlement was

reached, which Magistrate Judge Nathanael M. Cousins described as being an "excellent result.")

- *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC (D. Colo.) (Mr. Johns served as co-lead counsel of behalf of a class of millions of cardholders who were impacted by a data breach at Chipotle restaurants. After largely defeating a motion to dismiss filed by Chipotle, the case resulted in a favorable settlement for affected consumers. At the final approval of the settlement, the district court noted that class counsel has "extensive experience in class action litigation, and are very familiar with claims, remedies, and defenses at issue in this case.")

- *Bray et al. v. GameStop Corp.*, No. 1:17-cv-01365-JEJ (D. Del.) (Mr. Johns served as co-lead counsel for consumers affected by a data breach at GameStop. After largely defeating a motion to dismiss, the case was resolved on favorable terms that provided significant relief to GameStop customers. At the final approval hearing, the District Judge found the settlement to be "so comprehensive that really there's nothing else that I need developed further," that "the settlement is fair," "reasonable," and "that under the circumstances it is good for the members of the class under the circumstances of the claim.")

- *In re: Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litig.*, No. 15-cv-18-JLL-JAD (D.N.J.) (Mr. Johns served on the Plaintiffs' Steering Committee in this MDL proceeding, which involved allegedly defective wood-composite decking, and which ultimately resulted in a $20 million settlement)

- *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.). (Ben was actively involved in these Multidistrict Litigation proceedings, which involve allegations that dozens of banks reorder and manipulate the posting order of debit transactions.  Settlements collectively in excess of $1 billion were reached with several banks.  Ben was actively involved in prosecuting the actions against U.S. Bank ($55 million settlement) and Comerica Bank ($14.5 million settlement)

- *In re Flonase Antitrust Litig.*, 2:08-cv-03301-AB (E.D. Pa.). (indirect purchaser plaintiffs alleged that the manufacturer of Flonase (a nasal allergy spray) filed "sham" citizen petitions with the FDA in order to delay the approval of less expensive generic versions of the drug.  A $46 million settlement was reached on behalf of all indirect purchasers.  Ben argued a motion before the District Court.)

- *In re TriCor Indirect Purchasers Antitrust Litig.*, No. 05-360-SLR (D. Del.).  ($65.7 million settlement on behalf of indirect purchasers who claimed that the manufacturers of a cholesterol drug engaged in anticompetitive conduct designed to keep generic versions off of the market.)

- *Physicians of Winter Haven LLC, d/b/a Day Surgery Center v. STERIS Corporation,* No. 1:10-cv-00264-CAB (N.D. Ohio). ($20 million settlement on behalf of hospitals and surgery centers that purchased a sterilization device that allegedly did not receive the required pre-sale authorization from the FDA.)

- *West v. ExamSoft Worldwide, Inc.*, No. 14-cv-22950-UU (S.D. Fla.) ($2.1 million settlement on behalf of July 2014 bar exam applicants in several states who paid to use software for the written portion of the exam which allegedly failed to function properly)

- *Henderson v. Volvo Cars of North America, LLC,* No. 2:09-cv-04146-

CCC-JAD (D. N.J.). (provided substantial assistance in this consumer automobile case that settled after the plaintiffs prevailed, in large part, on a motion to dismiss)

- *In re Marine Hose Antitrust Litig.*, No. 08-MDL-1888 (S.D. Fla.) (Settlements totaling nearly $32 million on behalf of purchasers of marine hose)

- *In re Philips/Magnavox Television Litig.*, No. 2:09-cv-03072-CCC-JAD (D. N.J.).  (Settlement in excess of $4 million on behalf of consumers whose flat screen televisions failed due to an alleged design defect.  Ben argued against one of the motions to dismiss.)

- *Allison, et al. v. The GEO Group*, No. 2:08-cv-467-JD (E.D. Pa.), and *Kurian v. County of Lancaster*, No. 2:07-cv-03482-PD (E.D. Pa.).  (Settlements totaling $5.4 million in two civil rights class action lawsuits involving allegedly unconstitutional strip searches at prisons)

- *In re Canon Inkjet Printer Litig.*, No. 2-14-cv-03235-LDW-SIL (E.D.N.Y.) (Ben was co-lead counsel in this consumer class action involving allegedly defective printers that resulted in a $930,000 settlement.)

- *In re Recoton Sec. Litig.*, 6:03-cv-00734-JA-KRS (M.D.Fla.).  ($3 million settlement for alleged violations of the Securities Exchange Act of 1934)

- *Smith v. Gaiam, Inc.*, No. 09-cv-02545-WYD-BNB (D. Colo.). (Obtained a settlement in this consumer fraud case that provided full recovery to approximately 930,000 class members)

Ben has also had success at the appellate level in cases to which he substantially contributed.  *See Cohen v. United States*, 578 F.3d 1 (D.C. Cir. 2009), *reh'g granted per curiam*, 599 F.3d 652 (D.C. Cir. 2010), *remanded by*, 650 F.3d 717 (D.C. Cir. 2011) (en banc) (reversing district court's decision to the extent that it dismissed taxpayers' claims under the Administrative Procedure Act); *Lone Star Nat'l Bank, N.A. v. Heartland Payment Sys.*, No. 12-20648, 2013 U.S. App. LEXIS 18283 (5th Cir. Sept. 3, 2013) (reversing district court's decision dismissing financial institutions' common law tort claims against a credit card processor).

Ben was elected by fellow members of the Philadelphia Bar Association to serve  a three year term on the Executive Committee of the organization's Young Lawyers Division. He also served on the Editorial Board of the Philadelphia Bar Reporter, and the Board of Directors for the Dickinson School of Law Alumni Society. Ben was also a head coach in the Narberth basketball summer league for several years.  He has been published in the Philadelphia Lawyer magazine and the Philadelphia Bar Reporter, presented a Continuing Legal Education course , and spoken to a class of law school students about the practice.  While in college, Ben was on the varsity basketball team and spent a semester studying abroad in Osaka, Japan. Ben has been named a "Lawyer on the Fast Track" by The Legal Intelligencer, a "Top 40 Under 40" attorney by The National Trial Lawyers, and a Pennsylvania "Rising Star" for the past nine years.

# Scott M. Tucker

**Practice areas:**

- Corporate Mismanagement and Shareholder Derivative Actions

- Mergers and Acquisitions

**Education:**

- SUNY Cortland, B.S., 2002, *cum laude*

- Syracuse University College of Law, 2006, J.D., *cum laude*

- Whitman School of Management at Syracuse University, 2006, M.B.A

**Admissions:**

- Supreme Court of Delaware

- Supreme Court of Connecticut

- District of Colorado

- District of Delaware

- Third Circuit Court of Appeals

**Honors:**

- Named a 2016, 2017, 2018, and 2019 Delaware "Rising Star"

- Martindale Hubbell-Distinguished rated

- 2015–2017 Secretary of the Board of Bar Examiners of the Supreme Court of the State of Delaware

- 2013 – 2015 Assistant Secretary of the Board of Bar Examiners of the Supreme Court of the State of Delaware

- 2010 – 2013 Associate Member of the Board of Bar Examiners of the Supreme Court of the State of Delaware

- Member, Richard S. Rodney Inn of Court



Scott M. Tucker is a Partner in the Firm's Wilmington Office. Mr. Tucker is a member of the Firm's Mergers & Acquisitions and Corporate Mismanagement and Shareholder Derivative Action practice areas. Together with the Firm's Partners, Mr. Tucker assisted in the prosecution of the following actions:

- *In re Kinder Morgan, Inc. Shareholders Litigation*, Consol. C.A. No. 06-C-801 (Kan.) (action challenging the management led buyout of Kinder Morgan Inc., which settled for $200 million).

- *In re J.Crew Group, Inc., Shareholders Litigation.* C.A. No. 6043-CS (Del. Ch.) (action that challenged the fairness of a going private acquisition of J.Crew by TPG and members of J.Crew's management which resulted in a settlement fund of $16 million and structural changes to the go-shop process, including an extension of the go-shop process, elimination of the buyer's informational and matching rights and requirement that the transaction be approved by a majority of the unaffiliated shareholders).

- *In re Genentech, Inc. Shareholder Litigation*, C.A. No. 3911-VCS (Del. Ch.) (action challenging the attempt by Genentech's controlling stockholder to take Genentech private which resulted in a $4 billion increase in the offer).

- *City of Roseville Employees' Retirement System, et al. v. Ellison, et al.*, C.A. No. 6900-VCP (Del. Ch.) (action challenging the acquisition by Oracle Corporation of Pillar Data Systems, Inc., a company majority-owned and controlled by Larry Ellison, the Chief Executive Officer and controlling shareholder of Oracle, which led to a settlement valued at $440 million, one of the larger derivative settlements in the history of the Court of Chancery.

- *In re Sanchez Derivative Litigation*, C.A. No. 9132-VCG (Del. Ch.) (action challenging a related party transaction between Sanchez Energy Inc. and Sanchez Resources, LLC a privately held company, which settled for roughly $30 million in cash and assets)

Mr. Tucker is a Member of the Richard S. Rodney Inn of Court. While attending law school, Mr. Tucker was a member of the Securities Arbitration Clinic and received a Corporate Counsel Certificate from the Center for Law and Business Enterprise.

# Anthony Allen Geyelin

**Practice Areas:**

- Antitrust
- Automotive Defects and False Advertising
- Defective Products and Consumer Protection
- Other Complex Litigation

**Education:**

- Villanova Law School, J.D. - *cum laude*
- ◊ *Villanova Law Review*, Associate Editor
- ◊ *Villanova Moot Court Board*
- ◊ Obert Corporation Law Prize
- University of Virginia, B.A., English literature

**Memberships & Associations:**

- Pennsylvania Bar Association
- Passé´ International

**Admissions:**

- Pennsylvania
- Eastern District of Pennsylvania
- Federal Circuit



Tony is of Counsel to the firm at the Haverford office, where for the last decade he has used his extensive private and public sector corporate and regulatory experience to assist the firm in the effective representation of its many clients. Tony has previously worked as an associate in the business department of a major Philadelphia law firm; served as Chief Counsel and then Acting Insurance Commissioner with the Pennsylvania Insurance Department in Harrisburg; and represented publicly traded insurance companies based in Pennsylvania and Georgia as their senior vice president, general counsel and corporate secretary.

Tony has represented the firm's clients in a number of significant litigations, including the AHERF, Air Cargo, Certainteed, Cipro, Clear Channel, Del Monte, Honda Hybrid Vehicles, Insurance Brokers, iPhone LDI, Intel, Marine Hoses, Phoenix Leasing, and Reliance Insolvency matters.

Outside of the office Tony's pro bono, professional and charitable activities have included volunteering as a Federal Public Defender; service as a member and officer of White-Williams Scholars, the Schuylkill Canal Association, and the First Monday Business Club of Philadelphia; and serving as a member of the National Association of Insurance Commissioners and the Radnor Township (PA) Planning Commission.

# Tiffany J. Cramer

**Practice Areas:**

- Corporate Mismanagement & Shareholder Derivative Action
- Mergers & Acquisitions

**Education:**

- Villanova University School of Law, J.D., 2007
- ◊ Co-President of Asian-Pacific American Law Students Association
- Tufts University, B.A., 2002 – *cum laude* in Political Science

**Memberships & Associations:**

- Delaware State Bar Association
- The Richard S. Rodney American Inn of Court

**Admissions:**

- Delaware, 2007
- U.S. District Court for the District of Delaware, 2008



Tiffany J. Cramer is Senior Counsel in the Wilmington office. Her entire practice is devoted to litigation, with an emphasis on corporate mismanagement & derivative stockholder actions and mergers & acquisitions.

Together with the Firm's Partners, Ms. Cramer has assisted in the prosecution of numerous shareholder and unitholder class and derivative actions arising pursuant to Delaware law, including:

- *In re Starz Stockholder Litigation,* C.A. No. 12584-VCG (Del. Ch.) (Co-Lead Counsel in Court of Chancery class action challenging the acquisition of Starz by Lions Gate Entertainment Corporation, which led to a settlement of $92.5 million).

- *In re Freeport McMoRan Copper & Gold, Inc. Deriv. Litig.,* C.A. No. 815-VCN (Del. Ch.) (Co-Lead Counsel in Court of Chancery derivative litigation arising from Freeport McMoRan Copper & Gold, Inc.'s acquisition of Plains Exploration Production Co. and McMoran Exploration Production Co, which led to a settlement valued at nearly $154 million, including an unprecedented $147.5 million dividend paid to Freeport's stockholders).

- *City of Roseville Employees' Retirement System, et al. v. Ellison, et al.,* C.A. No. 6900-VCP (Del. Ch.) (Co-Lead Counsel in the Court of Chancery derivative action challenging the acquisition by Oracle Corporation of Pillar Data Systems, Inc., a company majority-owned and controlled by Larry Ellison, the Chief Executive Officer and largest shareholder of Oracle, which led to a settlement valued at $440 million, one of the larger derivative settlements in the history of the Court of Chancery).

- *In Re Genentech, Inc. Shareholders Litigation*, Consol. C.A. No. 3911-VCS (Del. Ch.) (Co-Lead Counsel in the Court of Chancery class action litigation challenging Roche Holding's buyout of Genentech, Inc., which resulted in a settlement providing for, among other things, an additional $4 billion in consideration paid to the minority shareholders of Genentech, Inc.).

- *In re Atlas Energy Resources, LLC Unitholder Litigation*, Consol. C.A. No. 4589-VCN (Co-Lead Counsel in the Court of Chancery class action litigation challenging Atlas America, Inc.'s acquisition of Atlas Energy Resources, LLC, which resulted in a settlement providing for an additional $20 million fund for former Atlas Energy Unitholders).

- *In re Barnes & Noble Stockholder Derivative Litigation*, C.A. No. 4813-CS (Del. Ch.) (Co-Lead Counsel in the Court of Chancery derivative litigation arising from Barnes & Noble, Inc.'s acquisition of Barnes & Noble College Booksellers, Inc., which resulted in a settlement of nearly $30 million).

Ms. Cramer is a Member of the Richard S. Rodney American Inn of Court. Ms. Cramer has also been selected to the Delaware "Rising Stars" list from Super Lawyers: 2016 and 2017. While in law school, she served as law clerk to the Honorable Jane R. Roth of the United States Court of Appeals for the

Third Circuit. While in college, she played the bassoon as a member of the Tufts Symphony Orchestra.

# Beena M. McDonald

**Practice Areas:**

- Securities Fraud

- Corporate Mismanagement and Shareholder Derivative Action

- Defective Products and Consumer Protection

- Other Complex Litigation

- Client Business Development

**Education:**

- Widener University Delaware Law School, J.D., 1998

- Pennsylvania State University, B.A., 1995

**Memberships and Associations:**

- The Sedona Conference, Working Group 1

- ABA, Class & Derivative Suits Committee

- Member, American Association of Justice (AAJ)

- Member, Philadelphia Bar Association

- Member, South Asian Bar Association, Philadelphia Chapter

**Admissions:**

- Pennsylvania

- District of Columbia

- Eastern District of Pennsylvania

- Western District of Pennsylvania

- Middle District of Pennsylvania

- Eastern District of Michigan



Beena Mallya McDonald is Senior Counsel in the Firm's Haverford office. She is an experienced federal and state trial attorney, having first-chaired numerous civil and criminal jury trials, hundreds of bench trials, and innumerable arbitrations, motions, and depositions. She has also successfully argued before the Judicial Panel on Multidistrict Litigation for centralization of large-scale nationwide class actions.

Beena focuses her practice on complex litigation including consumer protection, ERISA, and securities fraud cases. She manages cases that demand significant motion practice, massive e-discovery, and numerous depositions of Fortune 500 corporate 30(b)(6) witnesses and fiduciaries, product design and development engineers, marketing heads, investment company executives, and liability and damages experts. She also serves as part of the firm's Client Business Development group, responsible for overseeing client portfolio monitoring, evaluation, and litigation, and maintaining client relationships.

Prior to joining the firm Beena served as a Special Assistant U.S. Attorney in the Southern District of California where she prosecuted major corruption, drug importation and immigration cases. Upon initially receiving her law degree, she rose through the ranks at the Defender Association of Philadelphia. She also served as lead counsel in cases throughout the Philadelphia area while in-house at Allstate Insurance Company.

Beena's extensive trial experience is also bolstered by her business management experience working for a Fortune 200 company, allowing her to bring this business acumen to her current practice representing defrauded consumers and investors.

- *In re: MacBook Keyboard Litig.*, No: 5:18-cv-02813-EJD (N.D. Cal.) (class action lawsuit alleging that Apple sold MacBook, MacBook Pro, and MacBook Air butterfly keyboard laptops from 2015 – 2020 with a known defect of allowing dust and debris to disrupt the keyboard use; CSK&D is class counsel);

- *In re Phillips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litigation* (MDL No. 3014) (W.D. Pa.) (successfully argued before the Judicial Panel on Multidistrict Litigation for centralization of more than 100 class action and personal injury cases to the Western District of Pennsylvania, arising out of Philips' recall of certain Continuous Positive Airway Pressure (CPAP), Bi-Level Positive Airway Pressure (Bi-Level PAP), and mechanical ventilator devices, due to the potential that its polyester-based polyurethane (PE-PUR) sound abatement foam may degrade into particles or off-gas volatile organic compounds that may then be ingested or inhaled by the user, causing injury);

- *In re Chevy Bolt EV Battery Litigation*, No. 2:21-cv-13256-TGB-CI (E.D. Mich.) (argued before the Judicial Panel on Multidistrict Litigation, that was ultimately centralized in the Eastern District of Michigan, in this class action against General Motors LLC and

various LG entities alleging that the Chevy Bolt EV is defective, causing its electric battery to overheat when charged to full or nearly full capacity, which has resulted in devastating fires and created an unreasonable safety risk to these vehicle owners. The operative complaint covers all Model Year 2020 – 2022 Chevy Bolts EVs and asserts that the defendants, as claimed by both GM and LG, were "strategic partners" in researching, developing, and manufacturing the Bolt EV and its critical components, including the defective electric battery cells and pack);

- *In re Nexus 6P Prods. Liab. Litig.*, No. 5:17-cv-02185-BLF (N.D. Cal.) (class action lawsuit alleging that smartphones manufactured by Google and Huawei contain defects that cause the phones to "bootloop" and experience sudden battery drain; after overcoming a motion to dismiss, a $9.75 million settlement was reached, which Judge Beth Labson Freeman described as "substantial" and an "excellent resolution of the case.");

- *Weeks v. Google LLC*, No. 5:18-cv-00801-NC (N.D. Cal.) (consumer class action against Google relating to Pixel smartphones, alleging that Google sold these phones with a known microphone defect; after defeating a motion to dismiss, a $7.25 million settlement was reached, which Magistrate Judge Nathanael M. Cousins described as being an "excellent result.");

- *Gordon v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-01415- CMA (D. Colo.) (class action relating to a data breach suffered by Chipotle that allegedly exposed consumers' payment card data to hackers, in which case CSK&D has been appointed interim co-lead counsel);

- *Christofferson v. Creation Entertainment, Inc.*, No. 19STCV11000 (Sup. Ct. CA). (class action relating to a data breach suffered by Creation Entertainment that allegedly exposed consumers' payment card data to hackers, in which case CSK&D is interim co-lead counsel);

- *Turner v. Sony Interactive Entertainment LLC*, No. 4:21-cv-02454-DMR (N.D. Cal.) (class action lawsuit alleging that Sony's PlayStation 5 DualSense Controller suffers from a "drift defect" that results in character or gameplay moving on the screen without user command or manual operation of the controller thereby compromising its core functionality);

- *Davis v. Washington University*, No. 4:17-cv-01641-RLW (E.D. Missouri) (ERISA class action lawsuit alleging breach of fiduciary duties in managing the Washington University in St. Louis Retirement Plan – one of the largest university retirement plans in the country with $5.8 billion in assets and more than 27,000 participants – causing it to incur unreasonable and excessive recordkeeping fees);

- *Spitzley v. Mercedes-Benz U.S. Int'l, Inc.*, 7:21-cv-00074-RDP (N.D. Ala.) (ERISA class action lawsuit alleging breach of fiduciary duties in managing the Mercedes-Benz International Retirement and Savings Plan – a $934 million plan with more than 4,400 participants – causing it to incur unreasonable and excessive fees for retirement plan services);

- *Mator v. Wesco Distribution, Inc.*, No. 2:21-cv-00403-MJH (W.D. Pa.) (ERISA class action lawsuit alleging breach of fiduciary duties by imprudently allowing the Wesco Distribution, Inc. Retirement Savings Plan – a $837 million plan with more than 8,200 participants – to pay unreasonable recordkeeping and administrative expenses and retain higher-cost share classes of funds when lower-cost funds were

available);

- *Hummel v. East Penn Mfg. Co., Inc.*, No. 5:21-cv-01652 (E.D. Pa.) - (ERISA class action lawsuit alleging breach of fiduciary duties in managing the East Penn Manufacturing Co., Inc. Profit Sharing & 401(k) Savings Plan – with $279 million in assets and over 10,000 participants – by imprudently failing to monitor recordkeeping fees and determine the reasonableness of those fees);

- *Cunningham v. USI Ins. Services LLC*, No. 7:21-cv-01819-NSR (S.D.N.Y.) (ERISA class action lawsuit alleging breach of fiduciary duties in managing the USI 401(k) Plan – a $848 million plan with over 9,800 participants – by paying unreasonable and excessive retirement plan services fees);

- *Westmoreland County v. Inventure Foods*, No. CV2016-002718 (Super Ct. Ariz.) (state securities shareholder class action filed against Inventure Foods., Inc., after identifying that the company's stock price had suffered a precipitous decline due to troubles at a manufacturing facility, including a major food recall.  After mediation, a preliminary settlement was reached that recovers over 35% of damages for investors.); and

- *Orrstown Financial Services, Inc., et al., Securities Litig.*, No. 12-cv-00793 (USDC M.D. Pa.) (federal securities class action lawsuit by large transportation authority institutional investor client, named sole lead plaintiff, challenging false and misleading statements made by Orrstown to investors about its internal controls and financial condition).

# Alison Gabe Gushue

**Practice Areas:**

- Automobile Defects and False Advertising
- Defective Products and Consumer Protection
- Other Complex Litigation
- Securities Fraud

**Education:**

- Villanova University School of Law, J.D., 2006
- ◊ Villanova Environmental Law Journal – managing editor of student works (2006), staff writer (2005)
- University of California, Los Angeles, B.A., 2003 – *cum laude*

**Membership & Associations:**

- Member, Philadelphia Bar Association

**Admissions:**

- Pennsylvania
- New Jersey
- Eastern District of Pennsylvania
- District of New Jersey
- District of Colorado

**Honors:**

- Pennsylvania Super Lawyers 2019-present
- Pennsylvania Super Lawyers Rising Star 2013-2016



Alison G. Gushue is Of-Counsel at the Firm's Haverford Office. Her practice is devoted to litigation, with an emphasis on consumer fraud, securities, and derivative cases. Ms. Gushue also provides assistance to the Firm's Institutional Client Services Group.

Prior to joining the firm, Ms. Gushue was counsel to the Pennsylvania Securities Commission in the Division of Corporation Finance. In this capacity, she was responsible for reviewing securities registration filings for compliance with state securities laws and for working with issuers and issuers' counsel to bring noncompliant filings into compliance.

Together with the Partners, Ms. Gushue has provided substantial assistance in the prosecution of the following cases:

- *Lockabey et al. v. American Honda Motor Co., Inc.*, Case No. 37-2010-00087755-CU-BT (San Diego Super. Ct.) (settlement valued by court at $170 million for a class of 460,000 purchasers and lessees of Honda Civic Hybrids to resolve claims that the vehicle was advertised with fuel economy representations it could not achieve under real-world driving conditions, and that a software update to the IMA system further decreased fuel economy and performance)

- *In re DVI Inc. Securities Litigation*, Case No. 2:03-cv-05336-LDD (over $17m in settlements recovered for the shareholder class in lawsuit alleging that the company's officers and directors, in conjunction with its external auditors and outside counsel, violated the federal securities laws)

- *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06-cv-7023 (N.D. Ill.) & Case No. 09-wp-65003-CAB (N.D. Ohio) (MDL No. 2001)(settlement providing a "full-value, dollar-for-dollar recovery" that was "as good, if not a better, recovery for Class Members than could have been achieved at trial" in a lawsuit relating to defective central control units in front-load washers manufactured by Whirlpool and sold by Sears.) 2016 U.S. Dist. LEXIS 20290 at *35 (N.D. Ill. Feb. 29, 2016)

- *Orrstown Financial Services, Inc., et al., Securities Litig.*, No. 12-cv-00793 (M. D. Pa.) (pending federal securities lawsuit challenging false and misleading statements made by Orrstown Bank to investors about its internal controls and financial condition);

Ms. Gushue has also provided pro bono legal services to nonprofit organizations in Philadelphia such as the Philadelphia Bankruptcy Assistance Project, the Public Interest Law Center of Philadelphia, and the Community Legal Services of Philadelphia..

# Our Attorneys Associates

**Practice Areas:**

- Securities Fraud Class Actions & Complex Litigation

- Consumer Protection and Multi-District Litigation

- Other Complex Litigation/ Mass Actions

**Education:**

- University of Miami School of Law, J.D. 2013 – *cum laude*

    ◊ University of Miami NSAC Law Review

    ◊ Dean's List-Spring 2013 (4.0 GPA); Spring 2012; Fall 2012

    ◊ Advanced Business Litigation Skills-honors recognition

- University of Miami, B.B.A.,2009 – Finance

**Admissions:**

- Member, Florida Bar

- Member, Pennsylvania Bar

- Member, New Jersey Bar

- Admitted, United States District Court for the Eastern District of Pennsylvania

- Admitted, United States District Court for the Southern District of Florida

- Admitted, United States District Court for the District of New Jersey

- Admitted, United States District Court for the District of Colorado

**Publications:**

- Practicing Law Institute's 23rd Annual Consumer Financial Services Institute - Chapter 57: The Impact of *Payment Card II* on Class Action Litigation & Settlements

**Honors:**

- Pennsylvania Super Lawyers Rising Star 2018

- Pennsylvania Super Lawyers Rising Star 2019

- Pennsylvania Super Lawyers Rising Star 2020

# Mark B. DeSanto



**Mark B. DeSanto** is an Associate Attorney in the Firm's Haverford office. He has extensive experience in ERISA, securities, data breach, TCPA, all types of consumer protection, and other forms of class actions. Prior to joining the Firm, he was an attorney in the Radnor office of a national class action law firm where he represented sophisticated institutional and individual investors in complex class actions against corporate defendants and their executives for violations of federal securities laws, as well as consumers in nationwide consumer protection class actions. To date, Mr. DeSanto has been involved in the prosecution of the following federal court class actions:

- *Snitzer et al v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund et al*, No. 1:17-cv-5361 (S.D.N.Y) (settled – **$26.85 Million**) (represented a class of pension participants of the American Federation of Musicians and Employers' Pension Plan, alleging that the Board of Trustees breached their fiduciary duties of prudence and loyalty under ERISA by, inter alia, over-allocating plan assets to high-risk asset classes);

- *Lacher et al v. Aramark Corp.*, 2:19-cv-00687 (E.D. Pa. 2019) (represented a class of Aramark's current and former managers alleging that Aramark breached its employment contracts by failing to pay bonuses and restricted stock unit compensation to managers nationwide);

- *High St. Rehab., LLC v. Am. Specialty Health Inc.*, No. 2:12-cv-07243-NIQA, 2019 U.S. Dist. LEXIS 147847 (E.D. Pa. Aug. 29, 2019) (settled – **$11.75 million**) (represented a class of chiropractors and other similar healthcare practitioners alleging, inter alia, that Cigna and its third-party claims management provider's use of utilization management review ("UMR") when evaluating out-of-network claims for chiropractic services performed on individuals who participated in employer-sponsored health benefits Plans that Cigna insured and/or for which Cigna administered benefits claims violated ERISA);

- *Lietz v. Cigna Corp. (In re Cigna-American Specialty Health Admin. Fee Litig.)*, No. 2:16-cv-03967-NIQA, 2019 U.S. Dist. LEXIS 146899 (E.D. Pa. Aug. 29, 2019) (settled – **$8.25 million**) (represented insureds alleging that Cigna violated ERISA by charging an elevated amount for services that included an administrative fee charged by Cigna's third-party claims management provider, and only passing on a small portion of the elevated amount charged to the doctor, while knowingly hiding this fee from insureds);

- *Louisiana Municipal Police Employees' Retirement System v. Green Mountain Coffee Roasters, Inc. et al.*, Civ. No. 2:11-cv-00289 (D. Vt.) (settled – **$36.5 million**) (represented financial institutions in class action lawsuit brought on behalf of all Keurig Green Mountain shareholders, alleging that the company and its executives violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934);

- *In re St. Jude Medical, Inc. Securities Litigation*, Civ. No. 10-0851 (D. Minn.) (settled – **$39.25 million**) (represented financial institutions in class action lawsuit brought on behalf of all St. Jude Medical Inc. shareholders, alleging that the company and its executives violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934);

- *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 14–2522 (D. Minn.) (settled – **$39 million**) (represented a class of payment card issuing financial institutions in nationwide class action against Target for its highly-publicized 2013 data breach in which roughly 110 million Target customers' personal and financial information was compromised by hackers);

- *Smith v. ComplyRight, Inc.*, No. 1:18-cv-4990, 2019 U.S. Dist. LEXIS 174217 (N.D. Ill. Oct. 7, 2019) (settled – **$3 million**) (represented a class of consumers whose personal information was maintained on ComplyRight's website during a data breach that occurred from at least April 20, 2018 through May 22, 2018);

- *In re Wawa, Inc. Data Security Litig.*, Lead Case No. 2:19-cv-06019-GEKP (E.D. Pa) (representing a class of consumers whose personal information was compromised in the highly-publicized Wawa data breach);

- *Kyles et al v. Stein Mart, Inc.* et al, No. 1:19-cv-00483-CFC (D. Del. 2018) (represented a class of consumers whose personal information was compromised in a data breach involving Stein Mart and Annex Cloud at various times between December 28, 2017 and July 9, 2018);

Mr. DeSanto is admitted to practice law in Pennsylvania, New Jersey, and Florida.  He earned his Juris Doctor, cum laude, from the University of Miami School of Law in 2013, where he was also a member of the NSAC Law Review. During his second and third years of law school, Mr. DeSanto worked at a boutique securities litigation firm on Brickell Avenue in Downtown Miami.  Mr. DeSanto earned his Bachelor of Business Administration, with a major in Finance, from the University of Miami in 2009.

**Practice Areas:**

- Securities Fraud
- Corporate Mismanagement and Shareholder Derivative Action
- Defective Products and Consumer Protection
- Other Complex Litigation

**Education:**

- Drexel University Thomas R. Kline School of Law, J.D., 2015
- Drexel University, B.S. in Business Administration, 2005

**Memberships and Associations:**

- Member, Philadelphia Bar Association
- Member, Pennsylvania Bar Association

**Admissions:**

- Pennsylvania, 2015

# Stephanie E. Saunders



Stephanie E. Saunders is an associate in the Firm's Haverford office. She focuses her practice on complex litigation including securities fraud, shareholder derivative, and consumer protection cases. She also provides assistance to the Firm's Client Development Group which is responsible for establishing and maintaining strong client relations.

Stephanie received her law degree from the Drexel University Thomas R. Kline School of Law in 2015. Her law school career was marked by several academic honors which included being named the CALI Excellence for the Future Award® recipient in Legal Methods & Legal Writing for earning the highest grade in the class. While in law school, she clerked for the Firm and conducted her practice-intensive semester long co-op with the Firm during her second year of law school.

Upon graduating from Drexel University's LeBow College of Business in 2005, Stephanie began her professional career in marketing. She was an integrated marketing and promotions manager with Condé Nast Publications in Manhattan where she managed and executed print and digital advertising campaigns. Upon returning to the Philadelphia region, she joined PNC Wealth Management where she was the marketing segment manager of Hawthorn, an ultra-high net worth multi-family office, where she was responsible for the development of integrated marketing plans, advertising, and client events.

# Zachary P. Beatty

**Practice Areas:**

- Securities Fraud

- Corporate Mismanagement and Shareholder Derivative Action

- Defective Products and Consumer Protection

- Other Complex Litigation

**Education:**

- Michigan State University College of Law, J.D. *summa cum laude*, 2017

- Michigan State Law Review – managing editor (2016-2017), staff editor (2015-2016)

- York College of Pennsylvania, B.A. *magna cum laude*, 2013

**Admissions:**

- Pennsylvania

- Eastern District of Pennsylvania

- United States Court of Appeals for the Ninth Circuit

**Honors:**

- 2019-2021 Rising Star, Pennsylvania Super Lawyers



Zachary P. Beatty is an associate in the Firm's Haverford office. He focuses his practice on complex litigation including securities fraud, shareholder derivative suits, and consumer protection class actions.

Zachary received his law degree from Michigan State University College of Law in 2017. While in law school, Zachary served as a managing editor for the Michigan State Law Review. His law school career was marked by several academic honors including earning Jurisprudence Awards for receiving the highest grades in his Corporate Finance, Business Enterprises, Constitutional Law II, and Advocacy classes. Zachary clerked for a small central Pennsylvania law firm and clerked for the Honorable Carol K. McGinley in the Lehigh County Court of Common Pleas. He also clerked for the Firm's Haverford office. Zachary graduated from York College of Pennsylvania where he majored in history.

Zach has assisted in prosecuting the following matters, among others:

- *Oddo v. Arcoaire Air Conditioning & Heating*, No. 8:15-cv-01985-CAS-E (C.D. Cal.) (consumer class action against Carrier Corporation arising out of the sale of air conditioners that contained an unapproved rust inhibitor in the compressor, which causes widespread failures of thermostatic expansion valves. The plaintiffs allege that the unapproved rust inhibitor was present in virtually all Carrier-manufactured air conditioners from December 2013 through August 2014);

- *Livingston v. Trane U.S. Inc.*, No. 2:17-cv-06480-ES-MAH (D.N.J.) (consumer class action against Trane U.S. Inc. arising out of the sale of air conditioners that contained an unapproved rust inhibitor in the compressor, which causes widespread failures of thermostatic expansion valves);

- *In re MyFord Touch Consumer Litig.*, No. C-13-3072 EMC (N.D. Cal.) (consumer class action against Ford alleging flaws, bugs, and failures in certain Ford automobile infotainment systems. CSK&D is co-lead counsel in this certified class action);

- *Weeks v. Google LLC*, No. 5:18-cv-00801-NC (N.D. Cal.) (consumer class action against Google relating to Pixel smartphones alleging that Google sold these phones with a known defect);

- *In re Nexus 6P Prods. Liab. Litig.*, No. 5:17-cv-02185-BLF (N.D. Cal.) (class action lawsuit alleging that smartphones manufactured by Google and Huawei contain defects that cause the phones to "bootloop" and experience sudden battery drain; CSK&D has been

appointed interim co-lead class counsel;

- *Gordon v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-01415- CMA (D. Colo.) (class action relating to a data breach suffered by Chipotle that allegedly exposed consumers' payment card data to hackers, in which case CSK&D has been appointed interim co-lead counsel); and

- *Chambers v. Whirlpool Corp.*, No. 11-1773-0FMO (C.D. Cal.) (a national class action involving alleged defects resulting in fires in Whirlpool, Kenmore, and KitchenAid dishwashers. The district court approved a settlement which he negotiated that provides wide-ranging relief to owners of approximately 24 million implicated dishwashers, including a full recovery of out-of-pocket damages for costs to repair or replace dishwashers that suffered Overheating Events).

# Alex M. Kashurba

**Practice Areas:**

- Defective Products and Consumer Protection

- Securities Fraud Class Actions

- Other Complex Litigation

**Education:**

- University of Michigan Law School, J.D. cum laude, 2014

- The College of William & Mary, B.A. cum laude, 2011

**Admissions:**

- Pennsylvania

- New Jersey

- Western District of Pennsylvania

- Eastern District of Pennsylvania

- Middle District of Pennsylvania

- District of New Jersey

- Central District of Illinois

- Eastern District of Michigan

**Honors:**

- 2021 Rising Star, Pennsylvania Super Lawyers



Alex M. Kashurba is an associate in the Firm's Haverford office.  He focuses his practice on complex litigation including securities, consumer protection, and data privacy class actions.

Alex received his law degree from the University of Michigan Law School.  While in law school, he interned for the United States Attorney's Office for the Eastern District of Pennsylvania as well as the Office of General Counsel for the United States House of Representatives.  Prior to joining the Firm, Alex served as a law clerk in the United States District Court for the Western District of Pennsylvania, including for the Honorable Kim R. Gibson and the Honorable Nora Barry Fischer.  Alex graduated from The College of William & Mary where he majored in Government.

Alex has assisted in prosecuting the following matters, among others:

- *Suarez v. Nissan North America*, No. 3:21-cv-00393 (M.D. Tenn.) (appointed lead class counsel in a consumer class action alleging defective headlamps in Nissan Altima vehicles, a settlement valued at over $50 million that provided reimbursements, free repairs, and an extended warranty received final approval from the Court);

- *Udeen, et al. v. Subaru of America, Inc.*, No. 1:18-cv-17334-RBK-JS (D.N.J.) (final approval granted of a settlement valued at $6.25 million in this consumer class action involving defective infotainment systems in certain Subaru automobiles);

- *In re: MacBook Keyboard Litig.*, No: 5:18-cv-02813-EJD (N.D. Cal.) (class action lawsuit alleging that Apple sold 2015 and later MacBook and 2016 and later MacBook Pro laptops with a known defect plaguing the butterfly keyboards, and allowing dust and other debris to disrupt keyboard use; CSK&D is appointed interim co-lead counsel);

- *In re Nexus 6P Prods. Liab. Litig.*, No. 5:17-cv-02185-BLF (N.D. Cal.) (final approval of a $9.75 million settlement granted in this class action lawsuit which alleged that Google smartphones contained a defect that caused "bootlooping" and sudden battery drain; CSK&D served as co-lead class counsel);

- *Weeks, et al. v. Google LLC,*  5:18-cv-00801-NC (N.D. Cal.) (final approval of a $7.25 million settlement granted in this consumer class action alleging that Google sold first-generation Pixel smartphones with a known microphone defect; CSK&DS was appointed co-lead class counsel);

- *Gordon, et al. v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-01415-CMA (D. Colo.) (final approval granted in class action relating to a data breach that allegedly exposed consumers' payment card data to hackers; CSK&D served as co-lead class counsel).

**Practice Areas:**

- Consumer protection
- Consumer fraud and defective products
- Other complex litigation

**Education:**

- Temple Beasley School of Law, J.D., 2011
- Pennsylvania State University, B.A., Political Science, 2007
- Pennsylvania State University, B.A., Spanish, 2007

**Admissions:**

- Pennsylvania
- Eastern District of Pennsylvania
- New Jersey

# Samantha E. Holbrook



Samantha E. Holbrook is an Associate Attorney in the firm's Haverford office. She has extensive experience in consumer protection class action litigation. Prior to joining the firm, Sam was an attorney in the Radnor office of a national class action law firm where she represented consumers and investors in nationwide class actions. Sam has experience handling and litigating all aspects of the prosecution of national class action litigation asserting claims under state and federal law challenging predatory lending practices, product defects, breach of fiduciary duty, antitrust claims, consumer fraud and unfair and deceptive acts and practices in federal courts throughout the country.

Over the course of her career, Sam has provided substantial assistance in the prosecution of the following cases:

- *Suarez v. Nissan North America,* No. 3:21-cv-00393 (M.D. Tenn.) (appointed lead class counsel in a consumer class action alleging defective headlamps in Nissan Altima vehicles which reached a settlement valued at over $50 million that provides reimbursements, free repairs, and an extended warranty);

- *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K (N.D. Tex.) (appointed as additional interim class counsel on behalf of consumers whose sensitive payment card information was exposed in a data breach at Dickey's restaurant chains);

- *In re Wawa, Inc. Data Security Litig.*, No. 2:19-cv-06019-GEKP (E.D. Pa.) (achieved $12 million settlement on behalf of consumers whose sensitive payment card information was exposed to criminals as part of a highly-publicized data breach);

- *Lacher et al v. Aramark Corp.*, 2:19-cv-00687 (E.D. Pa. 2019) (represented a class of Aramark's current and former managers alleging that Aramark breached its employment contracts by failing to pay bonuses and restricted stock unit compensation to managers nationwide);

- *Turner v. Sony Interactive Entertainment LLC*, No. 4:21-cv-02454-DMR (N.D. Cal.) (class action lawsuit alleging that Sony's PlayStation 5 DualSense Controller suffers from a "drift defect" that results in character or gameplay moving on the screen without user command or manual operation of the controller thereby compromising its core functionality);

- *Board of Trustees of the AFTRA Retirement Fund, et al. v. JPMorgan Chase Bank, N.A.,* 09-CV-686 (SAS), 2012 WL 2064907 (S.D.N.Y. June 7, 2012) (approving $150 million settlement); and

- *In re 2008 Fannie Mae ERISA Litigation*, Case No. 09-cv-1350 (S.D.N.Y.) ($9 million settlement on behalf of participants in the Federal National Mortgage Association Employee Stock Ownership Plan).

Sam has also obtained favorable recoveries on behalf of multiple nationwide classes of borrowers whose insurance was force-placed by their mortgage services.

Sam received her law degree from Temple University Beasley School of Law. While in law school, she served as the President of the Moot Court Honor Society and President of the Student Animal Legal Defense Fund. She was also a member of nationally-recognized Temple's Trial Team. Upon graduating, she served as an adjunct professor for Temple coaching its Trial Team from 2013-2018. She received her undergraduate degrees from the Pennsylvania State University in Political Science and Spanish. While in college, Sam spent a semester studying abroad in Sevilla, Spain. She currently serves as the Board President for Citizens for a No-Kill Philadelphia, a Philadelphia-based animal welfare advocacy organization, and serves on the Board of Directors of City of Elderly Love, a senior-focused animal rescue organization.

Sam has been recognized by Pennsylvania Super Lawyers as a Rising Star for 2020-2022. She has also been recognized as a Top Young Rising Attorney in Pennsylvania in 2020, and a Pennsylvania & Delaware Top Attorneys Rising Stars in 2021.

# Emily L. Skaug

**Education:**

- Widener University Delaware Law School, J.D., 2018

- University of Delaware, B.A., 2015

**Admissions:**

- Pennsylvania

- New Jersey

- Delaware



Emily L. Skaug is an associate in the Firm's Wilmington office.  Together with the Firm's Partners, she focuses her practice on complex litigation, including shareholder derivative and other investor rights cases.

Emily received her Bachelor of Arts in Psychology from University of Delaware. She received her law degree from Widener University Delaware Law School in 2018. While in law school, Emily was a student ambassador and was involved in Wills for Heroes and Delaware Volunteer Legal Services.  After graduating law school, Emily interned in the Delaware Superior Court for the Honorable Jan R. Jurden, President Judge and later served as a law clerk for the Honorable John A. Parkins, Jr. and the Honorable Calvin L. Scott, Jr.

# Practice Areas

**Health & Welfare Fund Assets**

*CSK&D Protects Clients' Health & Welfare Fund Assets Through Monitoring Services & Vigorously Pursuing Health & Welfare Litigation.*

At no cost to the client, CSK&D seeks to protect its clients' health & welfare fund assets against fraud and other wrongdoing by monitoring the health & welfare fund's drug purchases, Pharmacy benefit Managers and other health service providers.  In addition, CSK&D investigates potential claims and, on a fully-contingent basis, pursues legal action for the client on meritorious claims involving the clients' heath & welfare funds.  These claims could include: the recovery of excessive charges due to misconduct by health service providers; antitrust claims to recover excessive prescription drug charges and other costs due to corporate collusion and misconduct; and, cost-recovery claims where welfare funds have paid for health care treatment resulting from defective or dangerous drugs or medical devices.

**Monitoring Financial Investments**

*CSK&D Protects Clients' Financial Investments Through Securities Fraud Monitoring Services.*

Backed by extensive experience, knowledge of the law and successes in this field, CSK&D utilizes various information systems and resources (including forensic accountants, financial analysts, seasoned investigators, as well as technology and data collection specialists, who can cut to the core of complex financial and commercial documents and transactions) to provide our institutional clients with a means to actively protect the assets in their equity portfolios.  As part of this no-cost service, for each equity portfolio, CSK&D monitors relevant financial and market data, pricing, trading, news and the portfolio's losses.  CSK&D investigates and evaluates potential securities fraud claims and, after full consultation with the client and at the client's direction, CSK&D will, on a fully-contingent basis, pursue legal action for the client on meritorious securities fraud claims.

**Corporate Transactional**

*CSK&D Protects Shareholders' Interest by Holding Directors Accountable for Breaches of Fiduciary Duties*

Directors and officers of corporations are obligated by law to exercise good faith, loyalty, due care and complete candor in managing the business of the corporation.  Their duty of loyalty to the corporation and its shareholders requires that they act in the best interests of the corporation at all times.  Directors who breach any of these "fiduciary" duties are accountable to the stockholders and to the corporation itself for the harm caused by the breach.  A substantial part of the practice of Chimicles Schwartz Kriner & Donaldson-Smith LLP involves representing shareholders in bringing suits for breach of fiduciary duty by corporate directors.

# Practice Areas

**Securities Fraud**

*CSK&D Protects and Recovers Clients' Assets Through the Vigorous Pursuit of Securities Fraud Litigation.*

CSK&D has been responsible for recovering over $1 billion for institutional and individual investors who have been victims of securities fraud.  The prosecution of securities fraud often involves allegations that a publicly traded corporation and its affiliates and/or agents disseminated materially false and misleading statements to investors about the company's financial condition, thereby artificially inflating the price of that stock.  Often, once the truth is revealed, those who invested at a time when the company's stock was artificially inflated incur a significant drop in the value of their stock.  CSK&D's securities practice group comprises seasoned attorneys with extensive trial experience who have successfully litigated cases against some of the nation's largest corporations.  This group is strengthened by its use of forensic accountants, financial analysts, and seasoned investigators.

**Antitrust and Unfair Competition**

*CSK&D Enforces Clients' Rights Against Those Who Violated Antitrust Laws.*

CSK&D successfully prosecutes an array of anticompetitive conduct, including price fixing, tying agreements, illegal boycotts and monopolization, anticompetitive reverse payment accords, and other conduct that improperly delays the market entry of less expensive generic drugs .  As counsel in major litigation over anticompetitive conduct by the makers of brand-name prescription drugs, CSK&D has helped clients recover significant amounts of price overcharges for blockbuster drugs such as BuSpar, Coumadin, Cardizem, Flonase , Relafen, and Paxil, Toprol-XL, and TriCor.

**Real Estate Investment Trusts**

*CSK&D is a Trail Blazer in Protecting Clients' Investments in Non-Listed Equities.*

CSK&D represents limited partners and purchaser of stock in limited partnerships and real estate investment trusts (non-listed REITs) which are publicly-registered but not traded on a national stock exchange.  These entities operate outside the realm of a public market that responds to market conditions and analysts' scrutiny, so the investors must rely entirely on the accuracy and completeness of the financial and other disclosures provided by the company about its business, its finances, and the value of its securities.  CSK&D prosecutes: (a) securities law violations in the sale of the units or stock; (b) abusive management practices including self-dealing transactions and the payment of excessive fees; (c) unfair transactions involving sales of the entities' assets; and (d) buy-outs of the investors' interests.

# Practice Areas

**Shareholder Derivative Action**

*CSK&D is a Leading Advocate for Prosecuting and Protecting Shareholder Rights through Derivative Lawsuits and Class Actions.*

CSK&D is at the forefront of persuading courts to recognize that actions taken by directors (or other fiduciaries) of corporations or associations must be in the best interests of the shareholders.  Such persons have duties to the investors (and the corporation) to act in good faith and with loyalty, due care and complete candor.  Where there is an indication that a director's actions are influenced by self-interest or considerations other than what is best for the shareholders, the director lacks the independence required of a fiduciary and, as a consequence, that director's decisions cannot be honored.  A landmark decision by the Supreme Court of Delaware underscored the sanctity of this principal and represented a major victory for CSK&D's clients.

**Corporate Mismanagement**

*CSK&D is a Principal Advocate for Sound Corporate Governance and Accountability.*

CSK&D supports the critical role its investor clients serve as shareholders of publicly held companies.  Settlements do not provide exclusively monetary benefits to our clients.  In certain instances, they may include long term reforms by a corporate entity for the purpose of advancing the interests of the shareholders and protecting them from future wrongdoing by corporate officers and directors.  On behalf of our clients, we take corporate directors' obligations seriously.  It's a matter of justice. That's why CSK&D strives not to only obtain maximum financial recoveries, but also to effect fundamental changes in the way companies operate so that wrongdoing will not reoccur.

**Defective Products and Consumer Protection**

*CSK&D Protects Consumers from Defective Products and Deceptive Conduct.*

CSK&D frequently represents consumers who have been injured by false advertising, or by the sale of defective goods or services.  The firm has achieved significant recoveries for its clients in such cases, particularly in those involving defectively designed automobiles and other consumer products.  CSK&D has also successfully prosecuted actions against banks and other large institutions for engaging in allegedly deceptive conduct.

# Practice Areas

**Data Breaches**

*CSK&D Protects Consumers Affected by Data Breaches*

CSK&D has significant experience in prosecuting class action lawsuits on behalf of consumers who have been victimized by massive payment card data breaches. Large-scale payment data breaches have been on the rise over the past couple years. These breaches occur when cybercriminals gain unauthorized access to a company's payment systems or computer servers. When they occur, consumers are forced to take significant precautionary measures such as cancelling other cards and accounts, obtaining replacement cards (often for a fee), purchasing credit monitoring and identity theft, and spending large amounts of time reviewing accounts and statements for incidences of fraud. Two recent examples of settlements that CSK&D has resolved are: *Crystal Bray v. GameStop Corp.,* No. 1:17-cv-01365 (D. Del.) and *Gordon, et al. v. Chipotle Mexican Grille, Inc.,* No. 1:17-cv-01415-CMA-SKC (D. Colo.).

# Representative Cases

## Securities Cases Involving Real Estate Investments

*CNL Hotels & Resorts Inc. Securities Litigation*, **Case No. 6:04-CV-1231, United States District Court, Middle District of Florida.**

CSK&D was Lead Litigation Counsel in CNL Hotels & Resorts Inc. Securities Litigation**,** representing a Michigan Retirement System, other named plaintiffs and over 100,000 investors in this federal securities law class action that was filed in August 2004 against the nation's second largest hotel real estate investment trust, CNL Hotels & Resorts, Inc. (f/k/a CNL Hospitality Properties, Inc.) ("CNL Hotels") and certain of its affiliates, officers and directors.  CNL raised over $3 billion from investors pursuant to what Plaintiffs alleged to be false and misleading offering materials. In addition, in June 2004 CNL proposed an affiliated-transaction that was set to cost the investors and the Company over $300 million ("Merger").

The Action was filed on behalf of: (a) CNL Hotels shareholders entitled to vote on the proposals presented in CNL Hotels' proxy statement dated June 21, 2004 ("Proxy Class"); and (b) CNL Hotels' shareholders who acquired CNL Hotels shares pursuant to or by means of CNL Hotels' public offerings, registration statements and/or prospectuses between August 16, 2001 and August 16, 2004 ("Purchaser Class").

The Proxy Class claims were settled by (a) CNL Hotels having entered into an Amended Merger Agreement which significantly reduced the amount that CNL Hotels paid to acquire its Advisor, CNL Hospitality Corp., compared to the Original Merger Agreement approved by CNL Hotels' stockholders pursuant to the June 2004 Proxy; (b) CNL Hotels having entered into certain Advisor Fee Reduction Agreements, which significantly reduced certain historic, current, and future advisory fees that CNL Hotels paid its Advisor before the Merger; and (c) the adoption of certain corporate governance provisions by CNL Hotels' Board of Directors. **In approving the Settlement, the Court concluded that in settling the Proxy claims, "a substantial benefit [was] achieved (estimated at approximately $225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."**   The Purchaser Class claims were settled by Settling Defendants' payment of **$35,000,000,** payable in three annual installments (January 2007 to January 2009).

On August 1, 2006, the Federal District Court in Orlando, Florida granted final approval of the Settlement as fair, reasonable, and adequate, and in rendering its approval of an award of attorneys' fees and costs to Plaintiffs' Counsel, the Court noted that "Plaintiffs' counsel pursued this complex case diligently, competently and professionally" and "achieved a successful result."  More than 100,000 class members received notice of the proposed settlement and no substantive objection to the settlement, plan of allocation or fee petition was voiced by any class member.

# Representative Cases

## Securities Cases Involving Real Estate Investments

*In re Real Estate Associates Limited Partnership Litigation*, **Case No. CV 98-7035, United States District Court, Central District of California.**

Chimicles Schwartz Kriner & Donaldson-Smith LLP achieved national recognition for obtaining, in a federal securities fraud action, the first successful plaintiffs' verdict under the PSLRA. Senior partner Nicholas E. Chimicles was Lead Trial Counsel in the six-week jury trial in federal court in Los Angeles, in October 2002. The jury verdict, in the amount of $185 million (half in compensatory damages; half in punitive damages), was ranked among the top 10 verdicts in the nation for 2002.  After the court reduced the punitive damage award because it exceeded California statutory limits, the case settled for $83 million, representing full recovery for the losses of the class**.**  At the final hearing, held in November 2003, the Court praised Counsel for achieving both a verdict and a settlement that "qualif[ied] as an exceptional result" in what the Judge regarded as "a very difficult case…" In addition, the Judge noted the case's "novelty and complexity…and the positive reaction of the class. Certainly, there have been no objections, and I think Plaintiffs' counsel has served the class very well."

**Case Summary:** In August of 1998, over 17,000 investors ("Investor Class") in 8 public Real Estate Associates Limited Partnerships ("REAL Partnerships") were solicited by their corporate managing general partner, defendant National Partnership Investments Corp. ("NAPICO"), and other Defendants via Consent Solicitations filed with the Securities and Exchange Commission ("SEC"), to vote in favor of the sale of the REAL Partnerships' interests in 98 limited partnerships ("Local Partnerships").  In a self-dealing and interested transaction, the Investor Class was asked to consent to the sale of these interests to NAPICO's affiliates ("REIT Transaction").  In short, Plaintiffs alleged that defendants structured and carried out this wrongful and self-dealing transaction based on false and misleading statements, and omissions in the Consent Solicitations, resulting in the Investor Class receiving grossly inadequate consideration for the sale of these interests.  Plaintiffs' expert valued these interests to be worth a minimum of $86,523,500 (which does not include additional consideration owed to the Investor Class), for which the Investor Class was paid only $20,023,859.

Plaintiffs and the Certified Class asserted claims under Section 14 of the Securities Exchange Act of 1934 ("the Exchange Act"), alleging that the defendants caused the Consent Solicitations to contain false or misleading statements of material fact and omissions of material fact that made the statements false or misleading.  In addition, Plaintiffs asserted that Defendants breached their fiduciary duties by using their positions of trust and authority for personal gain at the expense of the Limited Partners.  Moreover, Plaintiffs sought equitable relief for the Limited Partners including, among other things, an injunction under Section 14 of the Exchange Act for violation of the "anti-bundling rules" of the SEC, a declaratory judgment decreeing that defendants were not entitled to indemnification from the REAL Partnerships.

**Trial:** This landmark case is the *first* Section 14 – proxy law- securities class action seeking damages, a significant monetary recovery, for investors that has been tried, and ultimately won, before a jury anywhere in the United States since the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Trial began on October 8, 2002 before a federal court jury in Los Angeles.  The jury heard testimony from over 25 witnesses, and trial counsel moved into evidence approximately 4,810 exhibits; out of those 4,810 exhibits, witnesses were questioned about, or referred to, approximately 180 exhibits.

# Representative Cases

## Securities Cases Involving Real Estate Investments

On November 15, 2002, the ten‑member jury, after more than four weeks of trial and six days of deliberation, unanimously found that Defendants knowingly violated the federal proxy laws and that NAPICO breached its fiduciary duties, and that such breach was committed with oppression, fraud and malice.  The jury's unanimous verdict held defendants liable for compensatory damages of $92.5 million in favor of the Investor Class.  On November 19, 2002, a second phase of the trial was held to determine the amount of punitive damages to be assessed against NAPICO.  The jury returned a verdict of $92.5 million in punitive damages.  In total, trial counsel secured a unanimous jury verdict of $185 million on behalf of the Investor Class.

With this victory, Mr. Chimicles and the trial team secured the 10th largest verdict of 2002.  (See, National Law Journal, "The Largest Verdicts of 2002", February 2, 3003; National Law Journal, "Jury Room Rage", Feb. 3. 2002).  Subsequent to post-trial briefing and rulings, in which the court reduced the punitive damage award because it exceeded California statutory limits, the case settled for $83 million.  The settlement represented full recovery for the losses of the class.

**Prosecuting and trying this Case required dedication, tenacity, and skill:**  This case involved an extremely complex transaction.  As Lead Trial Counsel, CSK&D was faced with having to comprehensively and in an understandable way present complex law, facts, evidence and testimony to the jury, without having them become lost (and thus, indifferent and inattentive) in a myriad of complex terms, concepts, facts and law. The trial evidence in this case originated almost exclusively from the documents and testimony of Defendants and their agents.  As Lead Trial Counsel, CSK&D was able, through strategic cross-examination of expert witnesses, to effectively stonewall defendants' damage analysis.  In addition, CSK&D conducted thoughtful and strategic examination of defendants' witnesses, using defendants' own documents to belie their testimony.

**The significance of the case:** The significance of this trial and the result are magnified by the public justice served via this trial and the novelty of issues tried.  This case involved a paradigm of corporate greed, and CSK&D sent a message to not only the Defendants in this Action, but to all corporate fiduciaries, officers, directors and partners, that it does not pay to steal, lie and cheat.  There needs to be effective deterrents, so that "corporate greed" does not pay.  The diligent and unrelenting prosecution and trial of this case by CSK&D sent that message.

Moreover, the issues involved were novel and invoked the application of developing case law that is not always uniformly applied by the federal circuit courts.  In Count I, Plaintiffs alleged that defendants violated § 14 of the Exchange Act.  Subsequent to the enactment of the PLSRA, the primary relief sought and accorded for violations of the proxy laws is a preliminary injunction.  Here, the consummation of the REIT Transaction foreclosed that form of relief.  Instead, Plaintiffs' Counsel sought significant monetary damages for the Investor Class on account of defendants' violations of the federal proxy laws.  CSK&D prevailed in overcoming defendants' characterization of the measure of damages that the Investor Class was required to prove (defendants argued for a measure of damages equivalent to the difference in the value of the security prior to and subsequent to the dissemination of the Consent Solicitations), and instead, successfully recouped damages for the value of the interests and assets given up by the Investor Class.   The case is important in the area of enforcement of fiduciary duties in public partnerships which are a fertile ground for unscrupulous general partners to cheat the public investors.

# Representative Cases

## Securities Cases Involving Real Estate Investments

### *Aetna Real Estate Associates LP*

Nicholas Chimicles and Pamela Tikellis represented a Class of unitholders who sought dissolution of the partnership because the management fees paid to the general partners were excessive and depleted the value of the partnership.  The Settlement, valued in excess of $20 million, included the sale of partnership property to compensate the class members, a reduction of the management fees, and a special cash distribution to the class.

### *City of St. Clair Shores General Employees Retirement System, et al. v. Inland Western Retail Real Estate Trust, Inc., Case No. 07 C 6174*, United States District Court, Northern District of Illinois .

CSK&D was principal litigation counsel for the plaintiff class of stockholders that challenged the accuracy of a proxy statement that was used to secure stockholder approval of a merger between an external advisor and property managers and the largest retail real estate trust in the country.   In 2010, in a settlement negotiation lead by the Firm, we succeeded in having $90 million of a stock, or 25% of the merger consideration, paid back to the REIT.

### *Wells and Piedmont Real Estate Investment Trust, Inc., Securities Litigation, Case Nos. 1:07-cv-00862, 02660*, United States District Court, Northern District of Georgia.

CSK&D served as co-lead counsel in this federal securities class action on behalf of Wells REIT/Piedmont shareholders.  Filed in 2007, this lawsuit charged Wells REIT, certain of its directors and officers, and their affiliates, with violations of the federal securities laws for their conducting an improper, self-dealing transaction and recommending that shareholders reject a mid-2007 tender offer made for the shareholders' stock.  On the verge of trial, the Cases settled for $7.5 million and the Settlement was approved in 2013.

### *In re Cole Credit Property Trust III, Inc. Derivative and Class Litigation, Case No. 24-C-13-001563,* Circuit Court for Baltimore City.

In this Action filed in 2013, CSK&D, as chair of the executive committee of interim class counsel, represents Cole Credit Property Trust III ("CCPT III") investors, who were, without their consent, required to give Christopher Cole (CCPT III's founder and president) hundreds of millions of dollars' worth of consideration for a business that plaintiffs allege was worth far less.  The Action also alleges that, in breach of their fiduciary obligations to CCPT III investors, CCPT III's Board of Directors pressed forward with this wrongful self-dealing transaction rebuffing an offer from a third party that proposed to acquire the investors' shares in a $9 billion dollar deal.  Defendants have moved to dismiss the complaint, and plaintiffs have filed papers vigorously opposing the motion.

# Representative Cases

## Securities Cases Involving Real Estate Investments

---

***Roth v. The Phoenix Companies, Inc. and U.S. Bank National Association, in its capacity as Indenture Trustee, Index No. 650634/2016 (N.Y. Sup. Ct.).***

CSK&D served as lead counsel in this action on behalf of bondholders in connection with a 2015 going-private merger.  In early 2016, Phoenix sought Bondholder's consent to amend the Company's Indenture to severely limit Bondholder's access to financial information and to allow the Trustee to waive certain of its oversight responsibilities.  CSK&D promptly filed a complaint seeking injunctive relief, and within seven days, CSK&D secured material benefits for Bondholders, including, most significantly, ongoing access to material financial and corporate information which increased the value of the Bonds by $17.5 million and secured ongoing liquidity for the Bonds. In approving the settlement, the Court stated that "I think the plaintiffs were successful in getting everything they could have gotten …. I think it's a great settlement."

***Gamburg, et al., v. Hines Real Estate Investment Trust, Inc., et al, Case No. 24C16004496 (Cir. Ct. Baltimore City, MD).***

CSK&D served as co-lead counsel in this direct and derivative action filed in 2016 on behalf of Hines REIT and its stockholders which challenges various self-dealing conduct by the managers and directors of Hines REIT.  The action alleged, among other things, that $15 million in fees were paid to affiliates in violation of contractual and fiduciary duties.  Defendants moved to dismiss the action, and the Court held a hearing in December 2015.  In an expedited partial ruling on an issue of first impression, the Court held that plaintiffs were entitled to proceed with their derivative claims even subsequent to the then-impending liquidation – a crucial initial decision in favor of the stockholders that preserved rights that could have otherwise been extinguished upon the liquidation.  While the Court's ruling on the remaining issues raised in Defendants' motion was pending, the parties reached a settlement in January 2018.  On June 6, 2018 the court granted final approval of the Settlement which provides for the cash payment of $3.25 million, which represents a recovery of over 20% of the fees paid to affiliates.

***In re Empire State Realty Trust, Inc. Investor Litigation, Case 650607/2012,*** **New York Supreme Court.**

In this action filed in 2012, CSK&D represents investors who own the Empire State Building, as well as several other Manhattan properties, whose interests and assets are proposed to be consolidated into a new entity called Empire State Realty Trust Inc.  The investors filed an action against the transaction's chief proponents, members of the Malkin family, certain Malkin-controlled companies, and the estate of Leona Helmsley, claiming breaches of fiduciary for, among other things, such proponents being disproportionately favored in the transaction. A Settlement of the Litigation has been reached and was approved in full by the Court.  The Settlement consists of: a cash settlement fund of $55 million, modifications to the transaction that result in an over $100 million tax deferral benefit to the investors, and defendants will provide additional material information to investors about the transaction.

# Representative Cases

## Securities Cases Involving Real Estate Investments

***Delaware County Employees Retirement Fund v. Barry M. Portnoy, et al.***, **Case No. 1:13-cv-10405, United States District Court, District Court of Massachusetts.**

CSK&D is lead counsel in an action pending in federal court in Boston filed on behalf of Massachusetts-based CommonWealth REIT ("CWH") and its shareholders against CWH's co-founder Barry Portnoy and his son Adam Portnoy ("Portnoys"), and their wholly-owned entity Reit Management & Research, LLC ("RMR"), and certain other former and current officers and trustees of CWH (collectively, "Defendants"). The Action alleges a long history of management abuse, self-dealing, and waste by Defendants, which conduct constitutes violations of the federal securities laws and fiduciary duties owed by Defendants to CWH and its shareholders. Plaintiff seeks damages and to enjoin Defendants from any further self-dealing and mismanagement. The Defendants sought to compel the Plaintiff to arbitrate the claims, and Plaintiff has vigorously opposed such efforts on several grounds including that CWH and its shareholders did not consent to arbitration and the arbitration clause is facially oppressive and illegal. The parties are awaiting the Court's ruling on that matter.

# Representative Cases

## Securities Cases (Non-Real Estate)

### *Westmoreland County v. Inventure Foods, Case No. CV2016-002718 (Super. Ct. Ariz.)*

In this securities shareholder class action, CSK&D served as Lead Counsel against Inventure Foods, and certain of its officers and underwriters, arising out of the company's secondary stock offering held in September 2014. As portfolio monitoring counsel for Westmoreland, CSK&D first identified that the company's stock price had suffered a precipitous decline, rather soon after the offering, due to troubles at the Company's manufacturing facility, including a major food recall. Before filing a complaint, CSK&D investigated the potential causes of the problems – including securing documents from the FDA and GA Department of Agriculture, talking to former employees and engaging a listeria expert. Subsequent to the investigation, CSK&D filed the first complaint alleging that the Defendants violated the Securities Act of 1933 by issuing a false and misleading Registration Statement and Prospectus in connection with the stock offering. In a pair of rulings entered on February 24, 2017, and August 4, 2017, the Court rejected defendants' motions to dismiss the action. The parties proceeded with Mediation and reached a proposed Settlement which was preliminarily approved by the court on June 6, 2018. On November 2, 2018 the court granted final approval of the settlement which recovers over 35% of damages for investors (which percentage even assumes all offering shares were damaged).

### *Orrstown Financial Services, Inc., et al,* **Securities Litigation***, Case No. 12-cv-00793 United States District Court, Middle District of Pennsylvania.*

In this federal securities fraud class action filed in 2012, CSK&D serves as Lead Counsel on behalf of Lead Plaintiff Southeastern Pennsylvania Transportation Authority (SEPTA). The action alleges that Orrstown bank, its holding company, and certain of its officers, violated the Securities Exchange Act by misleading investors concerning material information about Orrstown's loan portfolio, underwriting practices, and internal controls. CSK&D investigated the cause of the decline which included reviewing Orrstown's filings with the SEC, making FOIA requests on the Federal Reserve Bank of Philadelphia and the PA Department of Banking, and interviewing former employees of Orrstown. The Court denied in large part Defendants' motions to dismiss, and the parties are currently engaged in discovery. This case demonstrates CSK&D's ability to identify potential claims, fully investigate them, bring litigation on behalf of a pension fund, secure appointment of lead plaintiff for its client and then vigorously prosecute the case.

### *ML-Lee Litigation, ML Lee Acquisition Fund L.P.* **and** *ML-Lee Acquisition Fund II L.P.* **and** *ML-Lee Acquisition Fund (Retirement Accounts)***, (C.A. Nos. 92-60, 93-494, 94-422, and 95-724), United States District Court, District of Delaware.*

CSK&D represented three classes of investors who purchased units in two investment companies, ML-Lee Funds (that were jointly created by Merrill Lynch and Thomas H. Lee). The suits alleged breaches of the federal securities laws, based on the omission of material information and the inclusion of material misrepresentations in the written materials provided to the investors, as well as breaches of fiduciary duty and common law by the general partners in regard to conduct that benefited them at the expense of the limited partners. The complaint included claims under the often-ignored Investment Company Act of 1940, and the case witnessed numerous opinions that are considered seminal under the ICA. The six-year litigation resulted in **$32 million** in cash and other benefits to the investors.

# Representative Cases

## Securities Cases (Non-Real Estate)

***In re Colonial BancGroup, Inc. Securities Litigation***, **Case No. 09-CV-00104, United States District Court, Middle District of Alabama.**

CSK&D is actively involved in prosecuting this securities class action arising out of the 2009 failure of Colonial Bank, in which Norfolk County Retirement System, State-Boston Retirement System, City of Brockton Retirement System, and Arkansas Teacher Retirement System are the Court-appointed lead plaintiffs.  The failure of Colonial Bank was well-publicized and ultimately resulted in several criminal trials and convictions of Colonial officers and third parties involved in a massive fraud in Colonial's mortgage warehouse lending division.  The pending securities lawsuit includes allegations arising out of the mortgage warehouse lending division fraud, as well as allegations that Colonial misled investors concerning its operations in connection with two public offerings of shares and bonds in early 2008, shortly before the Bank's collapse.  In April 2012, the Court approved a $10.5 million settlement of Plaintiffs' claims against certain of Colonial's directors and officers.  Plaintiffs' claims against Colonial's auditor, PwC, and the underwriters of the 2008 offerings are ongoing.

***Continental Illinois Corporation Securities Litigation***, **Civil Action No. 82 C 4712, United States District Court, Northern District of Illinois.**

Nicholas Chimicles served as lead counsel for the shareholder class in this action alleging federal securities fraud.  Filed in the federal district court in Chicago, the case arose from the 1982 oil and gas loan debacle that ultimately resulted in the Bank being taken over by the FDIC.  The case involved a twenty-week jury trial conducted by Mr. Chimicles in 1987.  Ultimately, the Class recovered nearly $40 million.

***PaineWebber Limited Partnerships Litigation, 94 Civ. 8547,*** **United States District Court, Southern District of New York .**

The Firm was chair of the plaintiffs' executive committee in a case brought on behalf of tens of thousands of investors in approximately 65 limited partnerships that were organized or sponsored by PaineWebber.  In a landmark settlement, investors were able to recover $200 million in cash and additional economic benefits following the prosecution of securities law and RICO (Racketeer Influenced and Corrupt Organizations Act) claims.

# Representative Cases

## Delaware and Other Merger and Acquisition Suits

### *In re: Starz Shareholder Litigation, Cons. C.A. No. 12584-VCG (Del. Ct. Ch.)*

In this stockholder class action, CSK&D served as co-lead counsel in this stockholder class action lawsuit against Starz, its controlling stockholder, John C. Malone ("Malone"), and certain of its officers and directors, arising out of the acquisition of Starz by Lions Gate Entertainment Corp. ("Lions Gate") (the "Merger").  Pursuant to the Merger, Malone who is also a director of Lions Gate, was to receive superior consideration, including voting rights in Lions Gate, while the remaining Starz stockholders would receive less valuable consideration and lose their voting rights.  The Action alleges that the process undertaken by the Starz's board of directors in connection with the Merger was orchestrated by Malone and tainted by multiple conflicts.  The Complaint also alleges that the consideration proposed is unfair and represents an effort by Malone to enlarge his already-massive media empire and to ensure his control position, to the detriment of Starz's minority stockholders.   On August 16, 2016, the Court appointed Norfolk County as Co-Lead Plaintiff and CSK&D, specifically Robert Kriner, as Co-Lead Counsel.  After a 2-day mediation session in August 2018, the parties have reached a proposed settlement of a $92.5 million payment to former shareholder of Starz.  The Settlement Agreement and supporting papers were filed with the court on October 9, 2018, and the court has scheduled the settlement hearing for December 10, 2018.

### *In re Sanchez Energy Derivative Litigation*, C.A. No. 9132-VCG (Del. Ch.).

In this derivative action, CSK&D served as co-lead counsel for plaintiffs in this derivative action which challenged the acquisition by Sanchez Energy Corporation of assets in the Tuscaloosa Marine Shale from Sanchez Resources LLC, an affiliate of Sanchez Energy's CEO, Tony Sanchez, III, and Executive Chairman Tony Sanchez, Jr.  The case alleged wrongful self-dealing in the acquisition in which Sanchez Energy paid the affiliate acreage prices which far exceeded prices paid in comparable transactions.  On November 6, 2017, the Delaware Court of Chancery approved a Settlement valued at more than $30 million. In approving the Settlement, the Court characterized it as a very good result in CSK&D having obtained a substantial portion of the home-run damages available at trial.

### *In re Freeport-McMoran Sulphur, Inc. Shareholder Litigation*, C.A. No. 16729, Delaware Court of Chancery.

In this shareholder class action, CSK&D served as Lead Plaintiffs' Counsel representing investors in a stock-for-stock merger of two widely held public companies, seeking to remedy the inadequate consideration the stockholders of Sulphur received as part of the merger. In June 2005, the Court of Chancery  denied defendants' motions for summary judgment, allowing Plaintiffs to try each and every breach of fiduciary duty claim asserted in the Action.  In denying defendants' motions for summary judgment the Court held there were material issues of fact regarding certain board member's control over the Board including the Special Committee members and the fairness of the process employed by the Special Committee implicating the duty of entire fairness and raising issues regarding the validity of the Board action authorizing the merger. The decision has broken new ground in the field of corporate litigation in Delaware.  Before the trial commenced, Plaintiffs and Defendants agreed in principle to settle the case. The settlement, which was approved in April 2006, provides for a cash fund of $17,500,000.

# Representative Cases

## Delaware and Other Merger and Acquisition Suits

**In re Genentech, Inc. Shareholders Litigation**, C.A. No. 3911-VCS, Delaware Court of Chancery.

In this shareholder class action, CSK&D served as Co-Lead Counsel representing minority stockholders of Genentech, Inc. in an action challenging actions taken by Roche Holdings, Inc. ("Roche") to acquire the  remaining approximately 44% of the outstanding common stock of Genentech, Inc. ("Genentech") that Roche did not already own.  In particular, Plaintiffs challenged that Roche's conduct toward the minority was unfair and violated pre-existing governance agreements between Roche and Genentech.  During the course of the litigation, Roche increased its offer from $86.50 per share to %95 per share, a $4 billion increase in value for Genentech's minority shareholders.  That increase and other protections for the minority provided the bases for the settlement of the action, which was approved by the Court of chancery on July 9, 2009.

**In re Kinder Morgan Shareholder Litigation**, C.A. No. 06-c-801, District Court of Shawnee County, Kansas

In this shareholder class action, CSK&D served as Co-Lead Counsel representing former stockholders of Kinder Morgan, Inc. (KMI) in an action challenging the acquisition of Kinder Morgan by a buyout group lead by KMI's largest stockholder and Chairman, Richard Kinder.  Plaintiffs alleged that Mr. Kinder and a buyout group of investment banks and private equity firms leveraged Mr. Kinder's knowledge and control of KMI to acquire KMI for less than fair value.  As a result of the litigation, Defendants agreed to pay $200 million into a settlement fund, believed to be the largest of its kind in any buyout-related litigation.  The district Court of Shawnee County, Kansas approved the settlement on November 19, 2010.

**In re Chiron Shareholder Deal Litigation**, Case No. RG05-230567 (Cal. Super.) &  **In re Chiron Corporation Shareholder Litigation**, C.A. No. 1602-N, Delaware Court of Chancery

CSK&D represents stockholders of Chiron Corporation in an action which challenged the proposed acquisition of Chiron Corporation by its 42% stockholder, Novartis AG.  Novartis announced a $40 per share merger proposal on September 1, 2005, which was rejected by Chiron on September 5, 2005. On October 31, Chiron announced an agreement to merge with Novartis at a price of $45 per share. CSK&D was co-lead counsel in the consolidated action brought in the Delaware Court of Chancery. Other similar actions were brought by other Chiron shareholders in the Superior Court of California, Alameda City. The claims in the Delaware and California actions were prosecuted jointly in the Superior Court of California. CSK&D, together with the other counsel for the stockholders, obtained an order from the California Court granting expedited proceedings in connection with a motion preliminary to enjoin the proposed merger.  Following extensive expedited discovery in March and April, 2006, and briefing on the stockholders' motion for injunctive relief, and just days prior to the scheduled hearing on the motion for injunctive relief, CSK&D, together with Co-lead counsel in the California actions, negotiated an agreement to settle the claims which included, among other things, a further increase in the merger price to $48 per share, or an additional $330 million for the public stockholders of Chiron.  On July 25, 2006, the Superior Court of California, Alameda County, granted final approval to the settlement of the litigation.

# Representative Cases

## Delaware and Other Merger and Acquisition Suits

### *Gelfman v. Weeden Investors, L.P., Civ. Action No. 18519-NC, Delaware Court of Chancery*

Chimicles Schwartz Kriner & Donaldson-Smith LLP served as class counsel, along with other plaintiffs' firms, in this action against the Weeden Partnership, its General Partner and various individual defendants filed in the Court of Chancery in the State of Delaware.  In this Class Action, Plaintiffs alleged that Defendants breached their fiduciary duties to the investors and breached the Partnership Agreement. The Delaware Chancery Court conducted a trial in this action which was concluded in December 2003. Following the trial, the Chancery Court received extensive briefing from the parties and heard oral argument. On June 14, 2004, the Chancery Court issued a memorandum opinion, which was subsequently modified, finding that the Defendants breached their fiduciary duties and the terms of the Partnership Agreement, with respect to the investors, and that Defendants acted in bad faith ("Opinion"). This Opinion from the Chancery Court directed an award of damages to the classes of investors, in addition to other relief.  In July 2004, Class Counsel determined that it was in the best interests of the investors to settle the Action for over 90% of the value of the monetary award under the Opinion (over $8 million).


### *I.G. Holdings Inc., et al.  v. Hallwood Realty, LLC, et al., C.A. No. 20283, Delaware Court of Chancery.*

In the Delaware Court of Chancery, C& T represented the public unitholders of Hallwood Realty L.P.  The action challenged the general partner's refusal to redeem the Partnership's rights plan or to sell the Partnership to maximize value for the public unitholders. Prior to the filing of the action, the Partnership paid no distributions and  Units of the Partnership normally traded in the range of $65 to $85 per unit. The prosecution of the action by CSK&D caused the sale of the Partnership, ultimately yielding approximately $137 per Unit for the unitholders plus payment of the attorneys' fees of the Class.

# Representative Cases

## Delaware and Other Merger and Acquisition Suits

***Southeastern Pennsylvania Transportation Authority v. Josey***, et. al., **C.A. No. 5427, Delaware Court of Chancery.**

Chimicles Schwartz Kriner & Donaldson-Smith served as class counsel in this action challenging the acquisition of Mariner Energy, Inc. by Apache Corporation.  Following expedited discovery, CSK&D negotiated a settlement which led to the unprecedented complete elimination of the termination fee from the merger agreement and supplemental disclosures regarding the merger.  On March 15, 2011, the Delaware Court of Chancery granted final approval to the settlement of the litigation.

***In re Pepsi Bottling Group, Inc. Shareholders Litigation***, **C.A. No. 4526, Delaware Court of Chancery.**

The Firm served as class counsel, along with several other firms challenging PepsiCo's buyout of Pepsi Bottling Group, Inc. CSK&D's efforts prompted PepsiCo to raise its buyout offer for Pepsi Bottling Group, Inc. by approximately $1 billion and take other steps to improve the buyout on behalf of public stockholders.

***In re Atlas Energy Resources LLC, Unitholder Litigation***, **Consol C.A. No. 4589, Delaware Court of Chancery.**

The Firm was co-lead counsel in an action challenging the fairness of the acquisition of Atlas Energy Resources LLC by its controlling shareholder, Atlas America, Inc.  After over two-years of complex litigation, the Firm negotiated a $20 million cash settlement, which was finally approved by the court on May 14, 2012.

***In re J. Crew Group, Inc. S'holders Litigation***, **C.A. No. 6043, Delaware Court of Chancery.**

The Firm was co-lead counsel challenging the fairness of a going private acquisition of J.Crew by TPG and members of J.Crew's management.  After hard-fought litigation, the action resulted in a settlement fund of $16 million and structural changes to the go-shop process, including an extension of the go-shop process, elimination of the buyer's informational and matching rights and requirement that the transaction to be approved by a majority of the unaffiliated shareholders.  The settlement was finally approved on December 16, 2011.

# Representative Cases

## Delaware and Other Merger and Acquisition Suits

***In re McKesson Derivative Litigation, Saito*, et al.  v. McCall, et al., C.A. No. 17132, Delaware Court of Chancery.**

As Lead Counsel in this stockholder derivative action, CSK&D challenged the actions of the officers, directors and advisors of McKesson and HBOC in proceeding with the merger of the two companies when their managements were allegedly aware of material accounting improprieties at HBOC.  In addition, CSK&D also brought (under Section 220 of the Delaware Code) a books and records case to discover information about the underlying events. CSK&D successfully argued in the Delaware Courts for the production of the company's books and records which were used in the preparation of an amended derivative complaint in the derivative case against McKesson and its directors. Seminal opinions have issued from both the Delaware Supreme Court and Chancery Court about Section 220 actions and derivative suits as a result of this lawsuit. Plaintiffs agreed to a settlement of the derivative litigation subject to approval by the Delaware Court of Chancery, pursuant to which the Individual Defendants' insurers will pay $30,000,000 to the Company. In addition, a claims committee comprised of independent directors has been established to prosecute certain of Plaintiffs' claims that will not be released in connection with the proposed settlement. Further, the Company will maintain important governance provisions among other things ensuring the independence of the Board of Directors from management. On February 21, 2006, the Court of Chancery approved the Settlement and signed the Final Judgment and Order and Realignment Order.

***Barnes & Noble Inc.,* C.A. No. 4813, Delaware Court of Chancery.**

CSK&D served as Co-Lead Counsel in a shareholder lawsuit brought derivatively on behalf of Barnes & Noble ("B&N") alleging wrongdoing by the B&N directors for recklessly causing B&N to acquire Barnes & Noble College Booksellers, Inc. ("College Books") the "Transaction") from B&N's founder, Chairman and controlling stockholder, Leonard Riggio ("Riggio") at a grossly excessive price, subjecting B&N to excessive risk.  The case settled for nearly $30 million and finally approved by the court on September 4, 2012.

***Sample v. Morgan*, et. al., C.A. No. 1214-VCS, Delaware Court of Chancery.**

Action alleging that members of the board of directors of Randall Bearings, Inc. breached their fiduciary duties to the company and its stockholders and committed corporate waste. The action resulted in an eve-of-trial settlement including revocation of stock issued to insiders, a substantial cash payment to the corporation and reformation of the Company's corporate governance. The Court finally approved the settlement on August 5, 2008.

***Manson v. Northern Plain Natural Gas Co.*, LLC, et. al., C.A. No. 1973-N, Delaware Court of Chancery.**

Chimicles Schwartz Kriner & Donaldson-Smith served as counsel in a class and derivative action asserting contract and fiduciary duty claims stemming from dropdown asset transactions to a partnership from an affiliate of its general partner. The case settled for a substantial adjustment (valued by Plaintiff's expert to be worth more than $100 million) to the economic terms of units issued by the partnership in exchange for the assets.  The settlement was finally approved by the Court on January 18, 2007.

# Representative Cases

## Consumer Cases

***Lockabey v. American Honda Motors Co., Inc.*, Case No. 37-2010-00087755-CU-BT-CTL, San Diego County Superior Court**

Mr. Chimicles is co-lead counsel in a nationwide class action involving fuel economy problems encountered by purchasers of Honda Civic Hybrids ("HCH").  *Lockabey v. American Honda Motors Co., Inc.*, Case No. 37-2010-00087755-CU-BT-CTL (Super. Ct. San Diego).  After nearly five years of litigation in both the federal and state courts in California, a settlement benefiting nearly 450,000 consumers who had leased or owned HCH vehicles from model years 2003 through 2009.   Following unprecedented media scrutiny and review by the attorneys general of each state as well as major consumer protection groups, the settlement was approved on March 16, 2012 in a 40 page opinion by the Honorable Timothy B. Taylor of the San Diego County (CA) Superior Court in which the Court stated:

> The court views this as a case which was difficult and risky...  The court also views this as a case with significant public value which merited the 'sunlight' which Class Counsel have facilitated..

Depending on the number of claims that are filed (deadline will not expire until 6 months after a pending single appeal is resolved), the Class will garner benefits ranging from $100 million to $300 million.

***In re Pennsylvania Baycol: Third-Party Payor Litigation*, Case No. 001874, Court of Common Pleas, Philadelphia County**.

In connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, CSK&D represents various Health and Welfare Funds, including the Pennsylvania Employees Benefit Trust Fund, and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plaintiffs' motion for summary judgment as to liability; this is the first and only judgment that has been entered against Bayer anywhere in the United States in connection with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties reached a settlement (recently approved by the court) in which Bayer agreed to pay class members a net recovery that approximates the maximum damages (including pre-judgment interest) suffered by class members.  The class settlement negotiated by CSK&D represents a net recovery for third party payors that is between double and triple the net recovery pursuant to a non-litigated settlement negotiated by lawyers representing third party payors such as AETNA and CIGNA that was made available to and accepted by numerous other third party payors (including the TRS).   CSK&D had advised its clients to reject that offer and remain in the now settled class action. On June 15, 2006 the court granted final approval of the settlement.

# Representative Cases

## Consumer Cases

***Shared Medical Systems 1998 Incentive Compensation Plan Litigation, Philadelphia County Court of Common Pleas, Commerce Program, No. 0885.***

Chimicles Schwartz Kriner & Donaldson-Smith LLP is lead counsel in this action brought in 2003 in the Philadelphia County Court of Common Pleas. The case was brought on behalf of approximately 1,300 persons who were employees of Defendant Siemens Medical Solutions Health Services Corporation (formerly Shared Medical Systems, Inc.) who had their 1998 incentive compensation plan ("ICP") compensation reduced 30% even though the employees had completed their performance under the 1998 ICP contracts and had earned their incentive compensation based on the targets, goals and quotas in the ICPs.   The Court had scheduled trial to begin on February 4, 2005. On the eve of trial, the Court granted Plaintiffs' motion for summary judgment as to liability on their breach of contract claim.  With the rendering of that summary judgment opinion on liability in favor of Plaintiffs, the parties reached a settlement in which class members will receive a net recovery of the full amount of the amount that their 1998 ICP compensation was reduced. On May 5, 2005, the Court approved the settlement, stating that the case "should restore anyone's faith in class actions as a reasonable way of proceeding on reasonable cases."

***Wong v. T-Mobile USA, Inc.*, Case No. CV 05-cv-73922-NGE-VMM, United States District Court, Eastern District of Michigan.**

Chimicles Schwartz Kriner & Donaldson-Smith LLP and the Miller Law Firm P.C. filed a complaint alleging that defendant T-Mobile overcharged its subscribers by billing them for data access services even though T-Mobile's subscribers had already paid a flat rate monthly fee of $5 or $10 to receive unlimited access to those various data services. The data services include Unlimited T-Zones, Any 400 Messages, T-Mobile Web, 1000 Text Messages, Unlimited Mobile to Mobile, Unlimited Messages, T-Mobile Internet, T-Mobile Internet with corporate My E-mail, and T-Mobile Unlimited Internet and Hotspot. Chimicles Schwartz Kriner & Donaldson-Smith LLP and the Miller Law Firm defeated a motion by T-Mobile to force resolution of these claims via arbitration and successfully convinced the Court to strike down as unconscionable a provision in T-Mobile's subscription contract prohibiting subscribers from bringing class actions. After that victory, the parties reached a settlement requiring T-Mobile to provide class members with a net recovery of the full amount of the un-refunded overcharges with all costs for notice, claims administration, and counsel fees paid in addition to class members' 100% net recovery. The gross amount of the overcharges, which occurred from April 2003 through June 2006, is approximately $6.7 million. To date, T-Mobile has refunded approximately $4.5 million of those overcharges. A significant portion of those refunds were the result of new policies T-Mobile instituted after the filing of the Complaint. Pursuant to the Settlement, T-Mobile will refund the remaining $2.2 million of un-refunded overcharges.

***In re Checking Account Overdraft Litig.*,  No. 1:09-MD-02036-JLK, United States District Court, Southern District of Florida.**

These Multidistrict Litigation proceedings involve allegations that dozens of banks reorder and manipulate the posting order of consumer debit transactions to maximize their revenue from overdraft fees.  Settlements in excess of $1 billion have been reached with several banks.  CSK&D was active in the overall prosecution of these proceedings, and was specifically responsible for prosecuting actions against US Bank (pending $55 million settlement) and Comerica Bank (pending $14.5 million settlement).

# Representative Cases

## Consumer Cases

***In re Apple iPhone/iPod Warranty Litig.,*** **No. 10-CV-01610, United States District Court, Northern District of California** .

CSK&D is interim co-lead counsel in this case brought by consumers who allege that that Apple improperly denied warranty coverage for their iPhone and iPod Touch devices based on external "Liquid Submersion Indicators" (LSIs).  LSIs are small paper-and-ink laminates, akin to litmus paper, which are designed to turn red upon exposure to liquid.  Plaintiffs alleged that external LSIs are not a reliable indicator of liquid damage or abuse and, therefore, Apple should have provided warranty coverage.   The district court recently granted preliminary approval to a settlement pursuant to which Apple has agreed to pay $53 million to settle these claims.

***Henderson v. Volvo Cars of North America LLC, et al.,*** **No. 2:09-CV-04146-CCC-JAD, United States District Court, District of New Jersey.**

CSK&D was lead counsel in this class action lawsuit brought behalf of approximately 90,000 purchasers and lessees of Volvo vehicles that contained allegedly defective automatic transmissions.  After the plaintiffs largely prevailed on a motion to dismiss, the district court granted final approval to a nationwide settlement in March 2013.

***In re Philips/Magnavox Television Litig.***, **No. 2:09-cv-03072-CCC-JAD, United States District Court, District of New Jersey.**

This class action was brought by consumers who alleged that a defective electrical component was predisposed to overheating, causing their televisions to fail prematurely.  After the motion to dismiss was denied in large part, the parties reached a settlement in excess of $4 million.

***Physicians of Winter Haven LLC, d/b/a Day Surgery Center v. STERIS Corporation***, **No. 1:10-cv-00264-CAB, United States District Court, Northern District of Ohio.**

This case was brought on behalf of a class of hospitals and surgery centers that purchased a sterilization device that allegedly did not receive the required pre-sale authorization from the FDA.  The case settled for approximately $20 million worth of benefits to class members.  CSK&D, which represented an outpatient surgical center, was the sole lead counsel in this case.

***Smith v. Gaiam, Inc.***, **No. 09-cv-02545-WYD-BNB, United States District Court, District of Colorado.**

CSK&D was co-lead counsel in this consumer case in which a settlement that provided full recovery to approximately 930,000 class members was achieved.

***In re Certainteed Corp. Roofing Shingle Products Liability Litigation***, **No, 07-MDL-1817-LP, United States District Court, Eastern District of Pennsylvania.**

This was a consumer class action involving allegations that CertainTeed sold defective roofing shingles. The parties reached a settlement which was approved and valued by the Court at between $687 to $815 million.

# Representative Cases

## Antitrust Cases

***In re TriCor Indirect Purchasers Antitrust Litig.*, No. 05-360-SLR, United States District Court, District of Delaware.**

CSK&D was liaison counsel in this indirect purchaser case which resulted in a $65.7 million settlement. The plaintiffs alleged that manufacturers of a cholesterol drug engaged in anticompetitive conduct, such as making unnecessary changes to the formulation of the drug, which was designed to keep generic versions off of the market.

***In re Flonase Antitrust Litig.*, No. 2:08-cv-3301, United States District Court, Eastern District of Pennsylvania.**

CSK&D was liaison counsel and trial counsel on behalf of indirect purchaser plaintiffs in this pending antitrust case.  The plaintiffs allege that the manufacturer of Flonase engaged in campaign of filing groundless citizens petitions with the Food and Drug Administration which was designed to delay entry of cheaper, generic versions of the drug.  The court has granted class certification, and denied motions to dismiss and for summary judgment filed by the defendant.  A $46 million settlement was reached on behalf of all indirect purchasers a few months before trial was to commence.

***In re In re Metoprolol Succinate End-Payor Antitrust Litig.*, No. 1:06-cv-00071, United States District Court, District of Delaware.**

CSK&D was liaison counsel for the indirect purchaser plaintiffs in this case, which involved allegations that AstraZeneca filed baseless patent infringement lawsuits in an effort to delay the market entry of generic versions of the drug Toprol-XL. After the plaintiffs defeated a motion to dismiss, the indirect purchaser case settled for $11 million.

***In re Insurance Brokerage Antitrust Litigation*, No. 2:04-cv-05184-GEB-PS, United States District Court, District of New Jersey.**

This case involves allegations of bid rigging and steering against numerous insurance brokers and insurers.  The district court has granted final approval to settlements valued at approximately $218 million.

**EXHIBIT 91**

# ANASTOPOULO LAW FIRM

## COLLEGE / UNIVERSITY REFUND LITIGATION



| North Carolina | South Carolina | California |
|:---:|:---:|:---:|
| Wilmington, Charlotte | Charleston, N. Charleston Columbia, Greenville Florence, Myrtle Beach | Los Angeles |

# Firm Statement Relevant to This Litigation

Anastopoulo Law Firm filed the first wave of university tuition and fee refund litigation in the nation, with the first cases being filed in early April 2020, just as announcements came from universities about their refusal to rebate or refund any money back to student consumers.  Commensurate with its 25-year track record of only taking on litigation its attorneys truly believe in, Anastopoulo Law Firm is highly selective in its class and mass tort-based litigation.  Since taking on the college and university refund litigation, Anastopoulo Law Firm is believed to have filed more national class actions in more jurisdictions than any other single firm.  Currently, Anastopoulo Law Firm has roughly 40 putative class action college and university tuition and fee refund cases pending in at least 15 different states.  This is not just another group of cases in a portfolio for Anastopoulo Law Firm; this is a national cause to ensure that our college and university students are treated fairly and not taken advantage of during this turbulent time.

Anastopoulo Law Firm does not hope simply to push these cases towards a quick settlement, but will prosecute the actions on behalf of the students as if they are going to trial, and will be prepared to take them to trial if resolution is not proposed on fair terms to the student consumers.  This case will get specialized attention, and be fully funded. No stone will be left unturned.

# Statement of Firm Resources

In 2020 alone, the Anastopoulo Law Firm recovered over $60,000,000 on behalf of its clients. The Anastopoulo Law Firm employs over 100 dedicated legal professionals, including 25+ attorneys.  In addition, the Anastopoulo Law Firm is among the remaining

few firms nationally that regularly tries cases to verdict. For this purpose, the Firm employs four full time investigators, and maintains an internal focus group and mock trial program that allow it to test and develop theories and case strategies from the outset.

Specific to tuition refund litigation, the Anastopoulo Law Firm has assembled an in-house team of five lawyers who are working exclusively on such cases, and has set aside the resources necessary to grow this team as needed. Collectively, the team has already invested over 22,000 hours on research, drafting, and filings specific to the tuition refund litigation nationwide.

The Anastopoulo Law Firm has never utilized third party litigation funding and is committed to self-funding all of its cases on behalf of its clients.  Anastopoulo Law Firm is willing to commit whatever resources are necessary to adequately represent the Class in this matter.

## **Relevant Leadership Appointments**

The leadership team representing Anastopoulo Law Firm in this action has already been appointed Lead or Co-Lead Counsel in the *In Re Columbia University Tuition Refund Litigation*, 1:20-cv-03208-JMF (S.D.N.Y.); *In Re: University of Miami COVID-19 Tuition and Fee Refund Litigation, 20-cv-60851-CIV-SINGAL (S.D. Fla.); Montesano v. Catholic University of America*, 1:20-cv-01496 (D.D.C.); *Faber v. Cornell University*, 3:20-cv-00467-MAD-ML (N.D.N.Y.); *Bergeron v. Rochester Institute of Technology*, 6:20-cv-06283-CJS (W.D.N.Y.); *Levin v. Bd. of Regents of University of Colorado*, Case No. 20 CV31409 (St. Ct. Denver Co.); and *Ford v. Rensselaer Polytechnic Institute, Case No.* 20-cv-00470 (N.D.N.Y).

# **Relevant Representative Cases**

| Date Filed | University / College | Case | Court Pending | Case No. |
|---|---|---|---|---|
| 4/8/2020 | Drexel University | *Rickenbaker et al. v. Drexel University* | Eastern District of Pennsylvania | 20-cv-03353 |
| 4/8/2020 | University of Miami | *In re: University of Miami Covid-19 Tuition and Fee Litigation* | Southern District of Florida | 20-cv-60851 |
| 4/15/2020 | University of Colorado | *Levin v. The Board of Regents of the University of Colorado* | District Court, City and County of Denver, Colorado | 2020-cv-31409 |
| 4/23/2020 | Pace University | *Elizabeth Tapinekis v. Pace University* | Second Circuit Court of Appeals | 22-1058 |
| 4/23/2020 | Manhattan College | *Czigany Beck v. Manhattan College* | Southern District of New York | 20-cv-03229 |
| 4/25/2020 | Cornell University | *Faber v. Cornell University* | Northern District of New York | 20-cv-00467 |
| 4/25/2020 | Rensselaer Polytechnic Institute | *Morgan Ford v. Rensselaer Polytechnic Institute* | Northern District of New York | 20-cv-00470 |
| 4/29/2020 | Boston University | *In Re: Boston University COVID-19 Refund Litigation* | District of Massachusetts | 20-cv-10827 |
| 4/30/2020 | University of Pennsylvania | *Smith et al. v. University of Pennsylvania* | Eastern District of Pennsylvania | 20-cv-02086 |
| 4/30/2020 | The Pennsylvania State University | *Ramey v. The Pennsylvania State University* | Western District of Pennsylvania | 20-cv-00753 |
| 5/1/2020 | American University | *Qureshi v. American University* | District Court for the District of Columbia | 20-cv-01141 |
| 5/1/2020 | Rochester Institute of Technology | *Nicholas Bergeron v. Rochester Institute of Technology* | Western District of New York | 20-cv-06283 |

| | | | | |
|---|---|---|---|---|
| 5/5/2020 | Pennsylvania College of Technology | *Michael James Lawson, Jr. and Tara Lawson v. Pennsylvania College of Technology* | Court of Common Pleas – Lycoming County | 21-1134 |
| 5/5/2020 | Temple University | *Ryan v. Temple University* | Third Circuit Court of Appeals | 21-2016 |
| 5/6/2020 | Indiana University | *Justin Spiegel v. The Trustees of Indiana University* | Monroe Circuit Court | 21-CT-175 |
| 5/13/2020 | Kean University | *Mueller, et al  v. Kean University* | Superior Court of New Jersey | A-001843-20 |
| 5/14/2020 | University of Rhode Island | *Thomson v. Board of Trustees of the University of Rhode Island* | District of RI | 1:20-cv-00295 |
| 5/15/2020 | University of Massachusetts | *Spencer Holmes and Student B v. University of Massachusetts* | Superior Court - Suffolk County | 2084-cv-01025 |
| 5/20/2020 | Purdue University | *Elijah Seslar v. The Trustees of Purdue University* | Tippecanoe Circuit Court | 79D02-2005-PL-000059 |
| 5/20/2020 | Illinois Institute of Technology | *Omar Hernandez v. Illinois Institute of Technology* | Seventh Circuit Court of Appeals | 22-1741 |
| 5/21/2020 | Suffolk University | *Julia Durbeck v. Suffolk University* | District of Massachusetts - Boston | 1:20-cv-10985 |
| 5/22/2020 | UNC System | *Deena Dieckhaus, et al v. Board of Governors of the University of North Carolina* | North Carolina Court of Appeals | 21-797 |
| 5/29/2020 | Brandeis University | *Alan Thomas Omori and John Doe v. Brandeis University* | District of Massachusetts - Boston | 1:20-cv-11021 |
| 6/5/2020 | Baylor University | *Allison King v. Baylor University* | Fifth Circuit Court of Appeals | 21-50352 |
| 6/9/2020 | University of Nevada | *Kelsie Ballas v. State of Nevada et al.* | Nevada District Court | CV20-00922 |
| 6/11/2020 | The Catholic University of America | *Montesano v. The Catholic University of America* | District Court for the District | 1:20-cv-01496 |

| | | | of Columbia | |
|---|---|---|---|---|
| 6/16/2020 | Louisiana State University | *Michael Miazza v. Board of Supervisors of Louisian State University and Agricultural and Mechanical College* | 19th Judicial District Court – East Baton Rouge Parish, Louisiana | C-69691824 |
| 7/21/2020 | St. John's University | *Brian Gallagher v. St. John's University* | Eastern District of New York | 1:20-cv-3274 |
| 7/29/2020 | University of Pittsburgh | *Hickey et al. v. University of Pittsburgh* | Third Circuit Court of Appeals | 21-02013 |
| 8/31/2020 | Long Island University | *Moore v. Long Island University* | Second Circuit Court of Appeals | 22-393 |
| 10/22/2020 | University of New Haven | *Wnorowski v. University of New Haven* | Connecticut District Court | 3:20-cv-01589 |
| 12/14/2020 | University of Delaware | *Russo v. University of Delaware* | Delaware District Court | 1:20-cv-01693 |
| 1/12/2021 | Manhattanville College | *Laudati v. Manhattanville College* | Southern District of New York | 7:21-cv-00272 |
| 3/9/2021 | Touro College and University System | *Yodice v. Touro College and University System* | Second Circuit Court of Appeals | 21-2986 |
| 6/7/2021 | New York University | *Nelcy Mabel Garcia De León v. New York University* | Southern District of New York | 21-cv-5005 |

# Other Class and Mass Action Experience

The Firm's founding member, Akim Anastopoulo, has been representing Plaintiffs for the majority of his over 30 years of practice, and has extensive experience in mass and class actions.

Anastopoulo Law Firm represented over 500 potential claimants in the In Re: Vioxx Products Liability Litigation, 2:05-md-01657-EEF-DEK.   Likewise, the Firm represented over 1,000 claimants in the In Re Baycol Prods.. Liab.. Litig., MDL No. 1431, Case No. 02-0160 (MJD/SRN) and State Actions Consolidated Under THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT Master File No.: 2002-CP-43-1041, where Mr. Anastopoulo served as lead counsel on two state bellwether cases.

Mr. Anastopoulo also served as joint lead counsel on multiple state cases that were eventually consolidated to a state class action regarding In Re OxyContin Products Liability Class Action, and served as sole lead counsel in South Carolina's first opioid state action, Ken Love, et al Civil Action No.: O1-CP-38-1059 (SC) vs. Purdue Pharma A, L.P, et. al.

Mr. Anastopoulo also served on the Daubert Submissions committee for the Thimerosal Litigation MDL and represented hundreds of individual clients in In Re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., 2000 U.S. Dist. LEXIS 12275, *47-48 (D. Pa. 2000).

# <u>Anastopoulo Law Firm's Roster of Attorneys</u>

The leadership team representing Anastopoulo Law Firm in this action leads the nation's trial bar in areas as diverse as insurance contract law and professional negligence, having recovered over $58 million for clients in the last year alone. The team also serves in various national, state, and local leadership positions in an effort to give back to their communities.

Recognized among *America's Top 100 High Stakes Litigators,* by *Super Lawyers* and receiving top verdicts year after year in their respective jurisdictions, the attorneys of Anastopoulo Law Firm are respected legal advocates who are known for aggressive and compassionate representation and who leave no stone unturned on behalf of their clients.



## Eric M. Poulin

Email: Eric@akimlawfirm.com

**Education**
Presbyterian College, B.S.
Charleston School of Law, J.D., *magna cum laude*

Eric Poulin is the Director of Litigation at Anastopoulo Law Firm, responsible for managing all litigation practice groups.  Eric also serves as co-chair of the firm's College University Litigation Team, where he brings his leadership style known for aggressive representation and creative litigation solutions to bear for clients across the country.

Eric has tried multiple cases to verdict, resulting in over $60,000,000 in single event personal injury jury verdicts.  Licensed in California, Georgia, North Carolina, and South Carolina, together with many Federal District Courts, Eric has litigated hundreds or thousands of cases through settlement or verdict and has recovered over $100,000,000 for his clients over the course of his career.  Eric has also handled appellate cases in the South Carolina Court of Appeals, the South Carolina Supreme Court, and the 4th Circuit Court of Appeals.

In 2016, Eric was tapped by the South Carolina Supreme Court to record a video CLE on insurance law as part of the State Bar's "Essentials" series that is required viewing for all new admittees to the Bar.

Eric is a member of the South Carolina Association of Justice and the American Association of Justice. Eric has been featured in South Carolina Lawyers Weekly's yearly top 10 verdicts and settlements profile for 3 of the last 4 years. In 2014, Eric was featured in the U.S. Verdicts' "Top 100" national verdicts report. Eric is a Super Lawyers' Rising Star, a National Trial Lawyers' Top 40 Under 40 recipient, and two-time National Academy of Professional Injury Attorneys' Top 10 Under 40 recipient.

Eric is also a leading innovator and strong advocate for utilizing technology to further the practice of law and better represent his clients. Eric has written and lectured on the topic of utilizing technology at trial to present stronger cases to juries and has led his Law Firm's push to "go digital." This has resulted in increased efficiency across the board, lower costs, and better results for clients.

**Bar Admissions**

- State Bar of California
- State Bar of Georgia
- State Bar of North Carolina
- State Bar of South Carolina

- District of South Carolina
- Eastern District of North Carolina
- Middle District of North Carolina
- Western District of North Carolina
- Central District of California
- Northern District of California
- Northern District of New York
- District of Colorado
- Northern District of Illinois General Bar
- Western District of Texas
  (List Not Inclusive of *Pro Hac Vice* Admissions)

- 2nd Circuit Court of Appeals
- 4th Circuit Court of Appeals
- 8th Circuit Court of Appeals
- 11th Circuit Court of Appeals

**Practice Areas**

- Complex Litigation
- Appellate Litigation
- Class Action Litigation
- Commercial Litigation
- Products Liability Litigation
- Mass Tort Litigation
- Bad Faith Insurance Litigation
- Wrongful Death Litigation

**Cases Pending in MDL**

- Incretin Mimetics MDL (Southern District of California)
- Xarelto MDL (Eastern District of Louisiana)
- Talcum Powder MDL (District of New Jersey)
- Roundup MDL (Northern District of California)

**Selected Professional Awards & Recognition**

| | |
|---|---|
| 2014 | TOP 100 U.S. VERDICTS |
| 2016-18 | SC LAWYERS WEEKLY - TOP 10 JURY VERDICTS / SETTLEMENTS |
| 2017 | SC LAWYERS WEEKLY - MOST IMPORTANT COURT OPINIONS |
| 2016-17 | NAT'L ACADEMY OF PERSONAL INJURY ATTYS TOP 10 UNDER 40 |
| 2019 | NAT'L TRIAL LAWYERS TOP 40 UNDER 40 |
| 2018-20 | SUPER LAWYERS RISING STAR |

**Presentations and Professional Education Programs**

December 2017  Advanced Trial Tactics
December 2016  Advanced Trial Tactics

Eric is most proud of the results he has garnered for his clients, including several significant seven-figure jury verdicts, more than $60,000,000.00 in single event personal injury jury verdicts, and more than $100,000,000.00 recovered for clients.



### Roy T. Willey IV

Email: Roy@akimlawfirm.com

**Education**
Harvard College, B.A.
Charleston School of Law, J.D., *cum laude*

Roy has been named among America's Top 100 High Stakes Litigators, a Super Lawyers Rising Star, and in the National Top 10 Under 40, and he is well known for his community and professional involvement. He has **achieved record results for his clients** and is **fond of encouraging all at the firm to treat each client like family**.

Nationally recognized as a **leader in complex, contract based, and high stakes litigation**, Roy is the Chairman of the Insurance Law Section for the American Association of Justice (AAJ), a national co-chair of AAJ's Business Interruption Litigation Taskforce, and the state Chairman of South Carolina Equality (which is responsible for winning legalization of same-sex marriage in South Carolina). On the local level he serves on the executive board of his local Charleston County Bar Association and a host of other non-profit boards and committees.

In recoveries for clients he has had a jury verdict named among the largest verdicts in the nation, is a multi-year winner of top verdicts in South Carolina where he regularly tries complex cases, and he is regularly called on by political leadership for advice on complex issues. He is a known **problem solver, with a servant's heart.**

**Bar Admissions**

- State Bar of South Carolina
- State Bar of Kentucky

- District of South Carolina
- District of Colorado
- Northern District of Illinois General Bar
- Northern District of New York
- Western District of Texas
  (List Not Inclusive of *Pro Hac Vice* Admissions)

- 2nd Circuit Court of Appeals

- 4th Circuit Court of Appeals
- 9th Circuit Court of Appeals
- 11th Circuit Court of Appeals

**Practice Areas**

- Complex Litigation
- Appellate Litigation
- Class Action Litigation
- Commercial Litigation
- Products Liability Litigation
- Mass Tort Litigation
- Bad Faith Insurance Litigation
- Wrongful Death Litigation

**Cases Pending in MDL**

- Incretin Mimetics MDL (Southern District of California)
- Xarelto MDL (Eastern District of Louisiana)
- Talcum Powder MDL (District of New Jersey)
- Roundup MDL (Northern District of California)

**Professional and Philanthropic Involvement**

- AMERICAN ASSOC. FOR JUSTICE (AAJ) - INSURANCE SECTION
  Chairman, National Executive Board

- AAJ BUSINESS INTERRUPTION LITIGATION TASKFORCE
  National Co-Chair

- SOUTH CAROLINA EQUALITY
  Chairman of the Board

- CHARLESTON COUNTY BAR ASSOCIATION
  Executive Committee Member

**Selected Professional Awards & Recognition**

| 2014 | TOP 100 U.S. VERDICTS |
| 2016-18 | SC LAWYERS WEEKLY - TOP 10 JURY VERDICTS / SETTLEMENTS |
| 2017 | SC LAWYERS WEEKLY - MOST IMPORTANT COURT OPINIONS |

2016-17      NAT'L ACADEMY OF PERSONAL INJURY ATTYS TOP 10 UNDER 40
2018-19      AMERICA'S TOP 100 HIGH STAKES LITIGATORS
2018-20      SUPER LAWYERS RISING STAR

**Professional Education Programs Presented**

- South Carolina Association of Justice Annual Conference
  - Topic: FLSA and Collective Actions – Focusing on Certification
- South Carolina Small Firm Business Luncheon
  - Topic: FLSA and Collective Actions – Focusing on Your Practice (March 2015)
- Wrongful Death Litigation Start to Finish CLE
  - Topic: Upholding Ethical Standards in Wrongful Death Cases (February 2017)
- Ultimate Guide to Evidence CLE
  - Topic: Using Motions to Exclude Evidence & Legal Ethics of Evid. (August 2017)
- Advanced Trial Tactics CLE - Topic: Ethics (December 2017)
- Legal Ethics: Top Challenges CLE
  - Topic: Online Ethics & Duties to Prospective Clients (February 2018)
- Top Trial Strategies the Pros Use to Win Their Cases CLE
  - Topic: Effective Exhibits and Courtroom Technology (November 2018)
- Webinar: Navigating Pre-Litigation Business Interruption Bad Faith Claims CLE
  - Moderator (May 2020)

---



### Akim A. Anastopoulo

Email: Akim@akimlawfirm.com

**Education**
University of Louisville
University of South Carolina, J.D.

Akim has been practicing law for more than 30 years, representing tens of thousands of consumers and individuals who have been injured due to corporate malfeasance and negligence.  He is the founder and chair of Anastopoulo Law Firm, a national law firm that has represented clients across the United States during that time.

12

**Bar Admissions**

- State Bar of South Carolina
- District of South Carolina
  (List Not Inclusive of *Pro Hac Vice* Admissions)

**Practice Areas**

- Complex Litigation
- Class Action Litigation
- Commercial Litigation
- Products Liability Litigation
- Mass Tort Litigation
- Bad Faith Insurance Litigation
- Wrongful Death Litigation

---



### Constance A. Anastopoulo

Email: Constance@akimlawfirm.com

**Education**
University of Virginia, B.A.
University of North Carolina School of Law, J.D.

Constance Anastopoulo was the **2018 Democratic Nominee for SC Attorney General and won more votes than any other woman in SC history, including former Gov. Nikki Haley.** She currently serves as an associate professor at the Charleston School of Law, where she lectures on torts, insurance law, and professional responsibility. She has been named "Professor of the Year" and an honoree of the Black Law Students' Association for "Commitment to Bringing About Meaningful Legal and Political Change." She is currently of counsel at Anastopoulo Law Firm, where she is a trusted mentor and advisor to the firm's lawyers, including the firm's College and University Litigation Team.

**Bar Admissions**

- State Bar of South Carolina

- District of South Carolina
  (List Not Inclusive of *Pro Hac Vice* Admissions)

- United States Federal Court of Claims
- 4th Circuit Court of Appeals

**Practice Areas**

- Complex Litigation
- Appellate Litigation
- Class Action Litigation
- Products Liability Litigation
- Mass Tort Litigation
- Catastrophic Injury Litigation
- Bad Faith Insurance Litigation

**Litigation Leadership**

In Re: Oxycontin, Plaintiffs' Class Counsel Committee (2005-2008)

Gaskins v. Southern Farm Bureau, 354 S.C. 416 (2003)
    Top ten most important decisions by SC Lawyers Weekly for 2003

**Professional and Philanthropic Involvement**

- JAMES L. PETIGRU AMERICAN INN OF COURT
    Member
- INSTITUTE OF INTERNATIONAL AND COMPARATIVE LAW at STETSON
  UNIV.
    Visiting Professor
- THE RILEY INSTITUTE AT FURMAN UNIVERSITY
    Diversity Fellow
- LEAGUE OF WOMEN VOTERS CHARLESTON AREA
    Vice President, Board
- COLLEGE OF CHARLESTON WOMEN AND GENDER STUDIES
    Chair, Board of Advisors

**Professional Education Publications and Programs**

- *A New Twist on Remedies: Judicial Assignment of Bad Faith Claims*
    Indiana L. Rev., Vol. 50, No. 3 (2017)

- *Taking No Prisoners: Captive Insurance as an Alternative to Traditional or Commercial Insurance* - 8 Ohio St. Entrepren. Bus. L.J. 209 (2013)

- *Race and Gender on the Bench: How Best to Achieve Diversity in Judicial Selection*
    8 Nw. J. L. & Soc. Pol'y. 174 (2013).

- *Where's the Outrage: "Outrageous" Conduct in Analyzing the Tort of Intentional Infliction of Emotional Distress in the Wake of <u>Snyder v. Phelps</u>*
    19 Tex. Wesleyan L. Rev. 667 (2013*)*

- *Bad Faith: Building a House of Straw, Sticks, or Bricks* - Memphis L. Rev., Vol. 43, Bk. 3 (2012)

- *Teaching Privacy in the Age of Octomom –Enhancing Case/Socratic Method with Structured Class Discussion,* 44 Val. U. L. Rev. 391 (2010)

- *Bad Faith in South Carolina Insurance Contracts: From <u>Tyger River Pine Co. v. Maryland Cas. Co.</u> to <u>Mitchell v. Fortis Ins. Co.</u>* - 22 S.C. Law. 18 (July 2010).

- *Bad Faith in North Carolina Insurance Contracts: A Growing Part of Insurance Practice* - Published in June 2010 Issue of North Carolina Bar Journal.

- *How Judicial Selection Impacts the Criminal Justice System*
    <u>Presenter</u> *February 25, 2013*

- *The State of the Judiciary: From Research to Reality <u>Organizer and Moderator</u>* of Panel presented at conclusion of the League of Women Voters of South Carolina's two-year study of the judicial selection process in South Carolina. University of South Carolina School of Law, Columbia, SC. *August 10, 2012*

- *Insurance Law – Advanced Uninsured Motorist/Underinsured Motorist Law Seminar*
    <u>Ethics Presenter</u> - Presenting on "Ethical Traps to Avoid"

- *Insurance Law –"Ethical Considerations" <u>Presenter</u>* - *December 6, 2011*

- *Judicial Selection in South Carolina*  Coastal Carolina University <u>Moderator</u> of panel consisting of Justice Kaye Hearn, S.C. Supreme Court; Counselor Leslie Caggiolla, counsel to Commission on Judicial Conduct; Rep. George Hearn, S.C. House of Representatives; Solicitor Ernest Finney, III;  and Judge Jennifer Wilson.

- *The Impact of the Judicial Process on Citizens; Why Does Judicial Diversity and Independence Matter* Francis Marion University <u>Panelist/Presenter</u>

- *Ensuring Judicial Independence and Diversity in South Carolina <u>Organizer and moderator</u>* of Forum.  *October 2010*

- *State Constitutional Reform in the New South*  <u>Panelist/moderator</u> discussing judicial selection process in South Carolina with panelists including Chief Justice Jean H. Toal, Judge Alex Sanders, Rep James Smith, S.C. House of Representatives.

- *Judicial Selection in South Carolina – Ensuring Quality, Diversity, and Independence*

---



## Blake G. Abbott

Email: blake@akimlawfirm.com

**Education**
Illinois State University, B.S., Biology
Charleston School of Law, J.D., *cum laude*

Blake is an associate attorney that is currently involved in class action litigation. Eager to begin practicing, Blake graduated from Charleston School of Law in two years' time, and was a recipient of the Presidential Honors Scholarship. In addition to law school, Blake interned at the Medical University of South Carolina, served as the Sergeant at Arms on the Charleston School of Law Moot Court Board, and instructed as a Legal Research and Writing Fellow.

Prior to law school, Blake was a collegiate baseball player as well as a high school valedictorian. He enjoys staying active by golfing and running.

**Bar Admissions**

- State of South Carolina
- State of North Carolina

- District of South Carolina
- Northern District of New York
- District of Colorado

- 2nd Circuit Court of Appeals
- 7th Circuit Court of Appeals

**Practice Areas**
- Complex Litigation
- Class Action Litigation
- Products Liability Litigation
- Mass Tort Litigation

**Honors**
- **Presidential Honors**
- **Charleston School of Law Dean's List**
- **CALI Award: Pleadings & Practice**
- **Moot Court Board Sergeant at Arms**
- **Phi Delta Phi Honors Society**

## Paul Doolittle

Email: [pauld@akimlawfirm.com](mailto:pauld@akimlawfirm.com)

**Education**
University of South Carolina, B.A.
University of South Carolina School of Law, J.D.

Mr. Doolittle is an experienced trial attorney who has been recognized for his courtroom skills and verdicts. He feels helping ordinary people have their day in court is a great honor. He is proud to help level the playing field for individuals and is relentless is seeking justice for his clients.

Mr. Doolittle attended the University of South Carolina School of Law for his legal education where he graduated in the top 20% of his class. After law school, Mr. Doolittle worked at Foster & Foster handling a vast array of cases from auto accidents to complex automobile dealer buy/sell transactions.  After gaining experience in and out of the court room, Mr. Doolittle joined Motley Rice where he eventually became partner. Mr. Doolittle co-chaired the firm's Catastrophic Injury Group which was started to handle the firm's most complex and high damage cases at the firm. He stills hold the highest verdict ever received in a Minnesota asbestos trial. Since joining Anastopoulo Law Firm, Mr. Doolittle has worked in the firm's Class & Mass Action Division.

**Bar Admissions**

- State of South Carolina

- District of South Carolina

**Practice Areas**
- Complex Litigation
- Class Action Litigation
- Products Liability Litigation
- Mass Tort Litigation

---

## Jacqueline A. Dufour

Email: jacquelined@akimlawfirm.com

**Education**
St. Lawrence University, B.S.
Vermont Law School, J.D.

**Bar Admissions**

- State of South Carolina

**Practice Areas**
- Complex Litigation

18

- Class Action Litigation
- Products Liability Litigation
- Mass Tort Litigation

## Ralph D'Agostino III

Email: ralph.dagostino@akimlawfirm.com

**Education**
Syracuse University, B.A.
Wake Forest University School of Law, J.D.

**Bar Admissions**

- Washington, D.C.

**Practice Areas**
- Complex Litigation
- Class Action Litigation
- Products Liability Litigation
- Mass Tort Litigation

## Chase Cobble

Email: chase.coble@akimlawfirm.com

**Education**
Elon University, B.A.
University of South Carolina School of Law, J.D.



## Herbert F. Glass

Email: Herb@akimlawfirm.com

**Education**

State University of New York at Albany, B.A.
Charleston School of Law, J.D.

Herb is a Senior Associate at Anastopoulo Law Firm and concentrates his practice in the areas of personal injury, general negligence, and products liability cases. Herb has successfully represented thousands of injured South Carolinians and recovered millions of dollars on their behalf due to the negligence of others, large corporations, and government entities. Herb recently recovered over $350,000.00 for a client who was rear ended by a careless driver.

Over the past five years, Herb has been an active member of the Charleston County Bar. Prior to joining Anastopoulo Law Firm, Mr. Glass worked at boutique civil litigation firm and represented people and small businesses throughout South Carolina.

**Bar Admissions**

- State of South Carolina

**Honors and Associations**

- Charleston School of Law Dean's List
- CALI Award for Future Excellence-Business Associations
- Finalist for the National Football Foundation National Scholar-Athlete of the Year Award presented by Fidelity Investments (2011)
- Semi-Finalist for the William V. Campbell Trophy (2011)
- Academic All-Conference (2008-2011)

**Selected Publications and Presentations**

*Workouts - The Various Tools in the Toolbox for Working out Troubled Real Estate Loans*, January 2014, NBI (Assisted Senior Partner in drafting/uncredited)



## Lane D. Jefferies

Email: Lane@akimlawfirm.com
**Education**
Charleston School of Law, J.D, *summa cum laude*
        College of Charleston, B.S. in Biology, *summa cum laude*
St. Andrews Presbyterian College, B.A. in Business Administration

Prior to becoming an attorney, Lane spent twenty years in business, during which he founded, built, and ultimately sold several businesses in the hospitality and yachting industries. At the Anastopoulo Law Firm, Lane leads the firm's Commercial and Construction Liability Division where he takes on the nation's largest corporations and construction firms.

**Bar Admissions**

- State of South Carolina

- District of South Carolina

**Honors/Achievements**

- 2013 National Tax Moot Court 1st Place team
- 2013 National Tax Moot Court Best Oralist
- 2014 National Tax Moot Court 1st Place team
- 2014 National Tax Moot Court Best Oralist
- 15 CALI Excellence for the Future Awards



## Joshua E. Jones

Email: Josh@akimlawfirm.com

**Education**
        University of South Carolina, B.A.
        Charleston School of Law, J.D.

Josh graduated from the University of South Carolina with a degree in Criminal Justice before beginning his legal studies at Charleston School of Law. During law school, he began working at Anastopoulo Law Firm as a law clerk while also completing pro bono work with the Charleston County Probate Court. Since passing the

South Carolina Bar and being sworn in, he has been an associate attorney with the firm, assisting in cases involving auto incidents, premises liability, medical malpractice, and general negligence.

**Bar Admissions**
- State of South Carolina

---

## Julia Pirillo

Email: juliap@akimlawfirm.com

**Education**
West Virginia University, B.A.
West Virginia University College of Law, J.D.

**Bar Admissions**
- State of West Virginia

**Practice Areas**
- Complex Litigation
- Class Action Litigation
- Products Liability Litigation
- Mass Tort Litigation

---



## India Shaw

Email: India@akimlawfirm.com

**Education**
North Carolina A&T State University, B.A.
North Carolina Central University, J.D.

Dual licensed in the District of Columbia and South Carolina. India has been at Anastopoulo Law Firm in Charleston, SC since 2017. India grew up in Charleston, SC,

where her desire to practice law began. She graduated from North Carolina Central University School of Law with a Certification in Taxation. Her time at the firm has involved helping clients navigate through traumatic incidents in civil litigation, as well as through financial and lien negotiations. Her goal with every client is to ensure they are on the right path to attaining justice. She also has a passion for serving the underserved, is a devoted runner, and is an active member of her church.

**Bar Admissions**

- District of Columbia
- State of South Carolina

## Andrew Smith

Email: andrew.smith@akimlawfirm.com

**Education**
College of Charleston, B.A.
Charleston School of Law, J.D., *summa cum laude*

## Lisa M. Whiteleather

Email: lisa.whiteleather@akimlawfirm.com

Education
Salisbury University, B.A.
University of Baltimore School of Law, J.D.

**EXHIBIT 92**



**Cross & Simon, LLC attorneys have litigated and tried cases in every Delaware court, including matters of corporate governance and valuation, trust and estate disputes, trade secret misappropriation claims, breach of fiduciary duty claims, contract actions and bad faith claims, intellectual property disputes, consumer class actions, and other complex civil actions.**

Cross & Simon, LLC attorneys have extensive courtroom experience and understand the challenges of complex civil litigation, including class action litigation. The firm pursues claims on behalf of people harmed by wrongdoing, bad faith and negligence, and, where warranted due to widespread and similar misconduct, actively pursues certification of cases as class actions under the federal rules of civil procedure.

The firm also advises and represents clients and co-counsel in multi-district litigation, as well as securities class action and shareholder derivative cases filed in the Chancery Court for the State of Delaware. The firm has taken the lead role in these cases, and has also worked together with some of the nation's premier complex and securities litigation firms to hold parties accountable for actionable conduct. The firm's attorneys have experience in jury and bench trials, and expedited proceedings, and all aspects of civil motion practice and briefing, all of which are necessary skills

to prosecute this type of litigation. The firm also has the skill and resources to engage in protracted and intense discovery efforts.

Notably, in December 2009, the United States District Court for the District of Delaware certified a consumer class action case captioned, *Johnson, et al. v. Government Employees Insurance Co., et al.*, D. Del. C.A. No. 1:06-cv-408, with Cross & Simon, LLC named as lead counsel. Cross & Simon, LLC is counsel in other consumer class action cases and multi-district litigation, including *Hart v. Nationwide Mutual Fire Insurance Company*, D. Del. C.A. No. 1:07-cv-678-JJF; *Jameson v. Metropolitan Group Property and Casualty Insurance Company d/b/a Metlife Auto & Home*, D. Del. C.A. No. 1:10-cv-310-GMS; *Dungee v. Davison Design & Development, Inc. formerly known as Davison & Associates, Inc.*, D. Del. C.A. No. 1:10-cv-325-GMS; *Xenakes v. Johnson & Johnson, et al.*, D. Del. C.A. No. 09-503-SLR (as part of *In re: Levaquin Products Liability Litigation*, D. Minn. MDL 09-1943-JRT); *Green v. GEICO*, C.A. No. N17C-03-242 (Del. Super.); *Gonzales v. Cornerstone Legal Group*, LLC, C.A. No. 11034-VCG (Del. Ch.); *Kurt Fox v. CDX Holdings, Inc*, C.A. No. 8031-VCL (Del. Ch.) (Cross & Simon was co-counsel with Cahill Gambino LLP); *Lunger v. DuPont (In re: Imprelis Herbicide)* E.D. Pa. C.A. No. 11-284-GIP (co-counsel to lead plaintiff).

The firm also serves, or has served as counsel to plaintiffs in shareholder class action and derivative liability cases, including the following representative actions:

- *In re Answers Corporation Shareholder Litigation*, Consol. C.A. No. 6170-VCN

- *In re Capital Gold Corporation Shareholder Litigation*, Consol. C.A. No. 5899-VCN

- *In re Cogent, Inc. Shareholders Litigation*, Consol. C.A. No. 5780-VCP

- *In re J.Crew Group, Inc. Shareholders Litigation*, Consol. C.A. No. 6043-VCS

- *In re Valeant Pharmaceuticals International Shareholders Litigation*, Consol. C.A. No. 5644-VCS

- *Milton Pfeiffer v. Beazer Homes USA, Inc., et al.*, C.A. No. 10-1063-PD

- *Robert A. Lorber v. ON Semiconductor Corporation, et al.*, C.A. No. 10-1101-GMS

- *Milton Pheiffer v. Valero Energy Corporation*, C.A. No. 10-1000-SLR



**Christopher P. Simon** has practiced law for more than twenty years in Delaware, a diverse career spent litigating a wide range of complex factual and legal issues for clients, negotiating complicated settlements, and trying cases in Delaware's state and federal courts.  Today, his practice focuses primarily on litigating commercial and business disputes, trust and estate/fiduciary issues, advising on corporate bankruptcy restructuring and creditor rights, and counseling individuals and companies on issues relating to transactions and litigation.  Prior to founding Cross & Simon with Richard H. Cross, Jr., Mr. Simon worked at The Bayard Firm (now Bayard, P.A.) in Wilmington, Delaware.

Mr. Simon began his career as a trial attorney with the Office of the Public Defender for the State of Delaware.  His first argument after being admitted to the bar was an appeal before the Delaware Supreme Court.  He has tried cases in every court in Delaware, including the Delaware Superior Court, the Delaware Court of Chancery, and the U.S. District Court.  He regularly appears as lead counsel for clients, but also works extensively with some of the largest and most sophisticated law firms in the United States who need experienced Delaware counsel.  Additionally, Mr. Simon has represented corporate debtors, trustees, official committees of unsecured creditors, landlords, equity holders and all types of creditors in bankruptcy cases.  He has served as counsel to corporations in dissolution proceedings, and to receivers appointed by the Delaware Chancery Court.  He has been a appointed a receiver by the Chancery Court.  He has argued on appeal in the Delaware Supreme Court and the United States Court of Appeals for the Third Circuit.  Mr. Simon is listed on the Register of Mediators and Arbitrators Pursuant to Bankruptcy Local Rule 9019-4 for the United States Bankruptcy Court for the District of Delaware.

Mr. Simon has also litigated a number of class action cases in Delaware.  Mr. Simon and his partner, Richard H. Cross, Jr., investigated and filed their first class action in 2006, in the Delaware federal case captioned, *Johnson, et al. v. Government Employees Insurance Co., et al.,* D. Del. C.A. No. 1:06-cv-408.  Mr. Simon and Mr. Cross were appointed lead counsel in that case, as well as in a related state court case, and have served as lead counsel in other consumer class action cases filed in Delaware.  Mr. Simon served as co-counsel to plaintiffs in a class action trial before the Delaware Court of Chancery, in the case captioned, *Kurt Fox v CDx Holdings, Inc.,* Del. Ch. Ct. C.A. No. 8031-VCL, a case where the Chancery Court awarded plaintiffs more than $16 million in damages.  He is currently co-counsel for plaintiffs in a putative class action case involving the University of Delaware, and tuition charges during the Covid-19 pandemic.

From time to time, Mr. Simon advises companies on general matters, including issues with contracts, personnel and governance.

Mr. Simon graduated from Washington and Lee University in Lexington, Virginia in 1992 with a Bachelor of Arts degree and received his Juris Doctorate from Widener University Delaware Law School in Wilmington, Delaware.  During law school, he served on the law review for the Delaware Journal of Corporate Law.

Before beginning his legal career, Mr. Simon worked as a journalist. His articles have appeared in *The News Journal*, *The Baltimore Sun* and *The Wall Street Journal*, where he worked as an intern staff reporter.  He credits his time as an investigative journalist with fostering his pursuit of facts and aggressive discovery in civil cases.

From 2002 to 2011, Mr. Simon served as a Commissioner for the Wilmington Housing Authority. He served for nine years as a Commissioner for the Ethics Commission for New Castle County, Delaware. Mr. Simon is a past member of the Board of Trustees for Christ Church Episcopal Preschool, and a volunteer guardian *ad litem* for the Office of the Child Advocate. He is a member of the Delaware State Bar Association, the Delaware Trial Lawyers Association, the American Bankruptcy Institute, and the American Bar Association.

Since 2012, Chris has been recognized by *Super Lawyers* as a Top Rated Business Litigation Attorney.  He has also been selected in the peer reviewed *Best Lawyers* and, in 2021, was honored by Delaware Today magazine in its 2021 Top Lawyers edition.



**Michael L. Vild** joined the firm in 2019 after serving as the Director of the Fraud and Consumer Protection Division of the Delaware Department of Justice. That position was his second foray into government service, having previously served as the Deputy Insurance Commissioner of Delaware where he was responsible for consumer protection, company financial solvency regulation, receivership and liquidation, market regulation and fraud investigations.

Following his time in the Department of Insurance, Mike worked in the gaming and racing industry, first as General Counsel of Delaware Park in Wilmington, Delaware and then in the same position for Saratoga Casino and Raceway in Saratoga Springs, New York.

Mike began his legal career as law clerk to the Honorable Walter K. Stapleton of the United States Court of Appeals for the Third Circuit. He then spent nearly 15 years in private law practice in Delaware, focusing his practice on corporate advice, litigation and business restructuring and insolvency. Mike received his J.D. *summa cum laude* from the Notre Dame Law School and a bachelor's degree in music *summa cum laude* from The Ohio State University.

Mike's practice areas include corporate and commercial litigation, insurance regulatory work, and gaming and entertainment law, and corporate bankruptcy, insolvency and restructuring.

Mike is a member of the board of directors of Opera Saratoga, a nationally renowned regional opera company in Saratoga Springs, New York. He is a past member of the Delaware Board of Bar Examiners, and he also serves on several corporate boards of directors in the insurance industry.

**CROSS & SIMON, LLC**
1105 North Market Street
Suite 901
Wilmington, DE 19801
Phone: (302) 777-4200
FAX: (302) 777–4224
Email: info@crosslaw.com

**EXHIBIT 93**

# CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# FILED UNDER SEAL

**EXHIBIT 94**

FILED
COURT OF CLAIMS COURT OF CL
OF OHIO

2021 DEC 13  AM 11: 13

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| MACKENZIE WEIMAN<br>  Plaintiff | Case Nos. 2020-00614JD and<br>  2020-00644JD |
| v. | Judge Dale A. Crawford |
| MIAMI UNIVERSITY<br>  Defendant | <u>DECISION</u> |
| AND | |
| SARAH BAUMGARTNER<br>  Plaintiff | |
| v. | |
| MIAMI UNIVERSITY<br>  Defendant | |

### I.  Introduction

Before the Court are Plaintiff Mackenzie Weiman's motion for class certification and Plaintiff Sarah Baumgartner's motion for class certification filed in consolidated Ct. of Cl. No. 2020-00614JD and Ct. of Cl. No. 2020-00644JD, respectively.  Weiman and Baumgartner bring class-action lawsuits against Defendant Miami University (University) that present claims of breach of contract and unjust enrichment.  Weiman and Baumgartner generally contend that, beginning with the University's Spring 2020 semester, the University breached an implied contract with them, and others similarly situated, by providing online education, instead of an in-person college experience, during a pandemic of the Novel Coronavirus Disease 2019 (COVID-19).

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13  AM 11: 13

-2-

## II. Weiman's and Baumgartner's motions for class certification are considered at a hearing.

The Court held a hearing on November 19, 2021, on Weiman's and Baumgartner's motions for class certification.[1]   At the hearing, Weiman and Baumgartner urged there was one implied contract (not individual contracts) that the

---

[1] Plaintiff Mackenzie Weiman proposed the following classes and class exclusions:

This action is brought, and may properly be maintained as, a class action pursuant to FED. R. CIV. P. 23(b)(3) on behalf of the following classes:
a): Spring 2020 Semester Class

Plaintiff seeks to represent a class defined as all people who paid Miami University Spring Semester 2020 tuition and/or fees for in-person educational services that Miami University did not provide, and whose tuition and fees have not been refunded (the "Spring 2020 Semester Class"). Specifically excluded from the Spring 2020 Semester Class are Miami University, Miami University's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Miami University, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Miami University and/or Miami University's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.
b): Fall 2020 Semester and Beyond Class

Plaintiff seeks to represent a class defined as all people who paid Miami University Fall Semester 2020 and/or any subsequent semester tuition and/or fees for in-person educational services that Miami University did not provide, and whose tuition and fees have not been refunded (the "Fall 2020 Semester Class"). Specifically excluded from the Fall 2020 Semester Class are Miami University, Miami University's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Miami University, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Miami University and/or Miami University's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

(Emphasis omitted.)  (Weiman Amended Complaint, ¶ 60.)

Plaintiff Sarah Baumgartner proposed the following class and exclusions from the proposed class:

Plaintiff seeks to represent a class defined as all [Miami University] students who paid Defendant Spring Semester 2020 tuition and/or fees for in-person educational services that Defendant failed to provide, and whose tuition and fees have not been refunded (the "Class"). Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

(Baumgarter Complaint, at ¶ 21.)

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13  AM 11: 13

-3-

University breached and, in view of this alleged breach, their cases are suitable for class certification.

In response, the University concedes that Weiman and Baumgartner have met four requirements for class certification, but the University maintains that class certification is not warranted because neither Weiman nor Baumgartner have satisfied by a preponderance of the evidence three prerequisites for class certification. The University maintains that (1) the proposed classes are not identifiable due to overbreadth, (2) neither Weiman nor Baumgartner are adequate class representatives, and (3) the proposed classes lack commonality. The University represents that in April 2020—before Weiman and Baumgartner filed their lawsuits—the University refunded on a pro rata basis seven fifteenths of certain fees (i.e., resident fees, parking fees, portions of general fees, and certain course fees identified by deans at the University), which in total exceed $27 million. But, according to the University, instructional fees and fees charged to out-of-state students were not refunded to undergraduate students.

The University asserts that a proposed class of all University students who paid "tuition/and or fees" for classes is overbroad because, before the University pivoted to online classes, some students were enrolled in online courses by choice. The University reasons that, if the proposed class is certified, some students would receive compensation even though they expressly chose to enroll in online courses. Moreover, in the University's view, under Weiman's and Baumgartner's proposed classes, students who receive certain financial aid—e.g., grants, and scholarships—and who did not pay tuition would receive a benefit even though they were not damaged. And in the University's view, the proposed refund of a fee charged to out-of-state students which, according to the University, is legislatively mandated, may not be returned. The University maintains that Weiman and Baumgartner are inadequate class representatives because during the Spring 2020 semester they lived off campus in non-university housing and they were able to enter the University's Oxford campus even

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13  AM 11: 13

-4-

though in-person classes were transitioned to online classes.  The University further maintains that Weiman and Baumgartner are inadequate class representatives because, when they were deposed, neither Weiman nor Baumgartner knew what constituted tuition or the nature of certain fees.  And, in the University's view, differences in damages militate against commonality and the actions taken by the University differentiate Weiman's and Baumgartner's cases from other class-action lawsuits against other state universities in Ohio.

Upon questioning by the Court, Weiman's and Baumgartner's counsel acknowledged that the University refunded many of the fees, but, as a matter of streamlining this case, counsel for Weiman and Baumgartner advised that the sole focus of the cases was on the reimbursement of instructional fees and out-of-state surcharge fees that the University has not refunded.  Weiman and Baumgartner maintain that they, as well as other similarly situated, were damaged because they did not receive the benefit of their bargain with the University.

At the close of the hearing, the Court announced that it intended to certify a class and the Court proposed that the parties submit a redefined class for the Court's consideration.

### III. Weiman and Baumgartner propose a redefined class after the hearing on Weiman's and Baumgartner's motions for class certification.

Weiman and Baumgartner have submitted a proposed redefined class, which they define as:

> All undergraduate students enrolled in classes at the Oxford campus of Miami University during the Spring 2020 semester who paid the Instructional Fee and/or the Non-Resident Surcharge, and who were not given a full refund of those fees (pro-rated for the number of days remaining in the semester from when classes transitioned online to the

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13   AM 11: 13

-5-

last day of exams).

(Amended Class Definition Submission, November 29, 2021.)[2]

## IV. Law and Analysis

The relationship between a student and a university is contractual in nature.  The Ohio Supreme Court has remarked,

> Students evaluate and determine which university best meets their needs, and then pay a fee to attend that university.   The relationship formed under these conditions has previously been characterized as contractual.
>
> * * * The student pays a fee and agrees to abide by the university rules.  In exchange, the university provides the student with a worthwhile education.

*Hanson v. Kynast*, 24 Ohio St.3d 171, 174, 494 N.E.2d 1091 (1986).  *Accord Behrend v. State*, 55 Ohio App.2d 135, 139, 379 N.E.2d 617 (10th Dist.1977) ("[g]enerally it may be stated that when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature").

Civ.R. 23 governs class actions in Ohio.[3]  Civ.R. 23(C)(1)(a) provides, "At an early practicable time after a person sues or is sued as a class representative, the court

---

[2] In the Amended Class Definition Submission, Weiman and Baumgartner state:

> Defendant, through counsel, does not object to the amendment but in so doing does not waive any of its objections previously stated in its class certification briefing and/or at the November 19, 2021 class certification hearing. Further, by not objecting to the amended class definition, the Defendant is not waiving its right to appeal any class certification Order in this case.

> Defendant otherwise has no objection to Plaintiff's amended class definition in light of the Judge's determination that class certification is warranted.

(Amended Class Definition Submission, November 29, 2021.)

[3] The Ohio Supreme Court has determined that federal authority may aid Ohio courts in interpreting Civ.R. 23.  *See Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 14, quoting *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987).

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13  AM 11: 13

-6-

shall determine by order whether to certify the action as a class action."  Under Civ.R. 23(C)(1)(c), "[a]n order that grants or denies class certification may be altered or amended before final judgment."  The party who seeks to maintain a class action under Civ.R. 23 "'bears the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in the rule.'" *Madyda v. Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 20AP-217, 2021-Ohio-956, ¶ 12 (quoting *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 15), *appeal not accepted*, 163 Ohio St.3d 1505, 2021-Ohio-2401, 170 N.E.3d 904, *reconsideration denied*, 164 Ohio St.3d 1449, 2021-Ohio-3336, 173 NE.3d 1247.  And a party who seeks to maintain a class action "satisfies its burden when it establishes that all the prerequisites of Civ.R. 23(A) are met and that at least one of the conditions of Civ.R. 23(B) exists." *Madyda* at ¶ 12.

A trial judge "has broad discretion in determining whether a class action may be maintained." *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus.  The Ohio Supreme Court has cautioned, however, that the trial court's discretion in deciding whether to certify a class action "is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23." *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998).  The Ohio Supreme Court has further cautioned: "The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." *Hamilton* at 70.  The Ohio Supreme Court has stated, "In resolving a factual dispute when a requirement of Civ.R. 23 for class certification and a merit issue overlap, a trial court is permitted to examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the requirement of the rule is satisfied*." Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, paragraph two of the syllabus, clarifying *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 466

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13   AM 11: 13

-7-

N.E.2d 875 (1984).  And the Tenth District Court of Appeals has stated that, "although it is the preferred course, Civ.R. 23 does not mandate that the trial court make specific findings on each of the seven prerequisites for class certification, nor that it articulate its reasoning for such findings as part of its rigorous analysis." *Madyda v. Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 20AP-217, 2021-Ohio-956, ¶ 10, citing *Hamilton* at 70-71.

The Ohio Supreme Court has enumerated requirements for maintaining a class action under Civ.R 23.  The Ohio Supreme Court has stated:

> Civ.R. 23 provides seven requirements for maintaining a class action:
>
> > "(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met."
>
> *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, at ¶ 6, quoting *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 71, 1998-Ohio-365, 694 N.E.2d 442 (1998), citing Civ.R. 23(A) and (B) and *Warner v. Waste Mgt.*, 36 Ohio St. 3d 91, 521 N.E.2d 1091 (1988).

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13 AM 11: 13

-8-

*Cullen* at ¶ 12.[4]   *Accord Madyda* at ¶ 11.   *See* Civ.R. 23(A) (prerequisites) and (B) (types of class actions).[5]

---

[4] Some commentators have suggested that the Ohio Supreme Court may have crafted an eighth requirement: whether the definition of the class is too "broad." *Weissenberger's Ohio Civil Procedure Litigation Manual* 210 (2021 Ed.). Adjunct Professor A.J. Stephani and Professor of Law Emeritus Glen Weisssenberger state, "Gently probing the facts of the case, the *Stammco* court [*Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d, 231, 2013-Ohio-3019, 994 N.E.2d 408] noted that the defendant had 'no records regarding which charges are authorized and which are not.... [and thus] [u]nauthorized third-party charges are better resolved on an individual basis with the third party or UTO [United Telephone Company of Ohio].' *Id.* at ¶ 65." Supreme Court may have crafted an eighth requirement: whether the definition of the class is too "broad." *Weissenberger's Ohio Civil Procedure Litigation Manual* at 210.

[5] Civ.R. 23 provides:
**(A)Prerequisites.**
One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
**(1)** the class is so numerous that joinder of all members is impracticable,
**(2)** there are questions of law or fact common to the class,
**(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class, and class.
**(4)** the representative parties will fairly and adequately protect the interests of the class.

**(B)Types of class actions.**
A class action may be maintained Civ.R. 23(A) is satisfied, and if:
**(1)** prosecuting separate actions by or against individual class members would create a risk of:
**(a)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
**(b)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; or
**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
**(a)** the class members' interests in individually controlling the prosecution or defense of separate actions;
**(b)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
**(c)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
**(d)** the likely difficulties in managing a class action.
* * * .

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13   AM 11: 13

-9-

The Ohio Supreme Court has stated that "any doubts about adequate representation, potential conflicts, or class affiliation should be resolved in favor of upholding the class, subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand, including the augmentation or substitution of representative parties." *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 487, 727 N.E.2d 1265 (2000). *See* Civ.R. 23(C)(1)(c) (altering or amending an order of class certification).

The Court finds that the proffered redefined class is identifiable and unambiguous, *see State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 11 (stating that "no clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous"), and that, if individual class members were to separately prosecute actions against the University, inconsistent or varying adjudications may establish incompatible standards for the University.

The Court also finds that, whether Weiman and Baumgartner, as well as those similarly situated, are entitled to remediation for payment of an instructional fee or non-resident surcharge, or both, are questions of law or fact common to Weiman, Baumgartner, and those similarly situated. And the Court finds that questions of law or fact common to the putative class members predominate over any questions affecting only individual members. *See Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, ¶ 33 (plaintiffs in class-action suits "must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions. * * * Although plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by each class member, * * * they must adduce common evidence that shows all class members suffered *some* injury"). *See generally* 5 Moore's Federal

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13  AM 11: 13

-10-

Practice – Civil, Section 23.45[1] (2021) (absence of bright-line test for determining whether common questions of law or fact predominate).[6]

The Court further finds that Weiman's and Baumgartner's claims relative to remediation for payment of an instructional fees or non-resident surcharge, or both, are typical of the claims of the proposed redefined class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury'").

The Court also finds that the particular context of this case demonstrates that a class is superior to joinder, given the number of undergraduate students who may have paid the University's instructional fee or non-resident surcharge, or both, for the Spring 2020 semester at the Oxford campus, and who have not been refunded the instructional

---

[6] Commentators have noted in 5 Moore's Federal Practice – Civil, Section 23.45[1] (2021):

There is no precise test for determining whether common questions of law or fact predominate, however. Instead, the Rule requires a pragmatic assessment of the entire action and all the issues involved. In making that assessment, courts have enunciated a number of standards, finding predominance if:

- The plaintiff can establish that resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and that these particular issues are more substantial than the issues subject to individualized proof.
- The substantive elements of class members' claims require the same proof for each class member.
- The proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interests.
- The resolution of an issue common to the class would significantly advance the litigation.
- One or more common issues constitute significant parts of each class member's individual cases.
- The common questions are central to all of the members' claims.
- The same theory of liability is asserted by or against all class members, and all defendants raise the same basic defenses.
- It is more efficient, in terms both of economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis, rather than decide all issues in separate trials.

(Footnotes omitted.)

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13  AM 11: 13

-11-

fee or non-resident surcharge, or both, on a pro rata basis from the date that the University's Spring 2020 semester classes transitioned to online instruction until the last day of final exams.  Factors of geographic dispersion of students who attended the Spring 2020 semester at the University's Oxford campus, potential requests for relief from other students who attended the Spring 2020 semester at the Oxford campus, as well as judicial economy, favor certification of a class rather than joinder.  *See Pennsylvania Pub. School Emp. Retirement Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir.2014) ("[n]umerosity is presumed for classes larger than forty members* * *  However, the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members").

The Court further finds that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy presented by Weiman and Baumgartner, especially given a requirement and desirability that litigation of the presented claims should be litigated in this forum.  *See* Civ.R. 23(B)(3); R.C. 2743.03(A)(1) (providing that the Ohio Court of Claims "has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in [R.C. 2743.02] and exclusive jurisdiction of the causes of action of all parties in civil actions that are removed to the court of claims").

The Court also finds that Weiman and Baumgartner, as the named representatives, are members of the proposed redefined class.  And the Court finds that it has no reason to doubt that either Weiman or Baumgartner, or both, will fairly and adequately protect the interests of the proposed class.

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13  AM 11: 13

-12-

Based on Weiman's and Baumgartner's counsel's representations, the Court finds no reason to doubt that Weiman's and Baumgartner's counsel would adequately represent the interests of the proposed redefined class.   *See* Civ.R. 23(F)(1) (appointment of class counsel).  The Court notes that, at the class-certification hearing, the University did not object to Weiman's and Baumgartner's counsel's fitness to serve as class counsel.

In sum, the Court determines that Weiman and Baumgartner have satisfied requirements for class certification by a preponderance of the evidence.  A class action would achieve economies of time, expense and effort, as well as promote a uniformity of decisions relative to similarly situated persons.   And the Court determines that Weiman or Baumgartner, or both, would adequately represent the interests of the proposed redefined class and that their counsel would adequately represent the interests of the proposed redefined class.

### V. Litigation and judicial economy would not be advanced if Weiman's **and** Baumgartner's motions for class certification were granted.

On Weiman and Baumgartner's joint motion, the Court previously ordered that Ct. of Cl. Nos. 2020-00614JD and 2020-00644JD continued to maintain their separate character and that the consolidation of these cases did not make a single multiple party, multiple claim action. (Entry, February 22, 2021.)  *See generally E.C. Redman v. Ohio Dept. of Indus. Relations*, 10th Dist. Franklin No. 93APE12-1670, 1994 Ohio App. LEXIS 3953, at *14 (Sep. 6, 1994) ("hold[ing] that, although actions may be consolidated, they continue to maintain their separate character and do not make a single multiple party, multiple claim action").   Thus, if the Court were to grant both Weiman's motion for class certification and Baumgartner's motion for class certification, then the Court would be presented with two class-action cases against the same defendant that contain identical classes and two different class representatives.  Such a circumstance would frustrate efficiency and economy of litigation—a principal purpose

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13   AM II: 13

-13-

of a class action—and defy common sense. *See* 5 Moore's Federal Practice - Civil Section 23.02 (2021) ("[c]lass action suits serve several basic purposes. One primary purpose is to promote judicial economy and efficiency by avoiding multiple adjudications of the same issues" (footnote omitted)).

Under Ohio law a trial court has inherent authority to manage its own proceedings and control its own docket. *See State ex rel. Charvat v. Frye*, 114 Ohio St.3d 76, 2007-Ohio-2882, 868 N.E.2d 270, ¶ 23; *Lupo v. City of Columbus*, 10th Dist. Franklin No. 13AP-1063, 2014-Ohio-2792, ¶ 20.  But, as the Third District Court of Appeals stated, "[W]hile we are mindful that a trial court has the inherent authority to manage its own proceedings and control its own docket, this authority must be exercised within bounds of due process." *State v. Orta*, 3d Dist. Seneca No. 13-20-05, 2020-Ohio-4514, ¶ 30.

The Court advises the parties that the Court intends to combine Ct. of Cl. Nos. 2020-00614JD and 2020-00644JD into <u>one case</u>, <u>with one set of lead counsel for each party</u>, and <u>to limit the potential award of attorney fees to one set of lead counsel</u>. Weiman and Baumgartner, as well as the University, therefore should confer about Ct. of Cl. Nos. 2020-00614JD and 2020-00644JD, respectively.   If Weiman and Baumgartner, as well as the University, can agree how to proceed with the prosecution of Ct. of Cl No. 2020-00614JD and Ct. of Cl. No. 2020-00644JD, respectively, then they should <u>jointly</u> inform the Court.  If Weiman and Baumgartner, as well as the University, cannot agree how to proceed with the prosecution of Ct. of Cl. No. 2020-00614JD and 2020-00644JD, or both, then the Court sua sponte will combine Ct. of Cl. No. 2020-00614JD and Ct. of Cl. No. 2020-00644 into one case and sua sponte dismiss either Ct. of Cl. No. 2020-00614JD or Ct. of Cl. No. 2020-00644JD.  *See generally* Civ.R. 23(D)(1) (providing that in conducting an action under Civ.R. 23, the court "may issue orders that: * * * (c) impose conditions on the representative parties or on intervenors; * * * or (e) deal with similar procedural matters"); *In re NHL Players' Concussion Injury*

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13  AM 11: 13

-14-

*Litigation*, D.Minn. No. 14-2551 (SRN/BRT), 2017 U.S. Dist. LEXIS 115159, at *5
(July 24, 2017) (courts possess administrative and procedural authority over the course
of class action proceedings under Fed.R.Civ.P. 23(d)(1)(A) and 23(d)(1)(E) and inherent
authority to manage their own affairs so as to achieve the orderly and expeditious
disposition of cases).

**VI. Conclusion**

The Court holds that Weiman's and Baumgartner's proposed redefined class
satisfies requirements for class certification by a preponderance of the evidence.

DALE A. CRAWFORD
Judge



FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13  AM 11: 13

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| MACKENZIE WEIMAN<br>Plaintiff | Case Nos. 2020-00614JD and<br>2020-00644JD |
| v. | Judge Dale A. Crawford |
| MIAMI UNIVERSITY<br>Defendant | <u>JUDGMENT ENTRY</u> |
| AND | |
| SARAH BAUMGARTNER<br>Plaintiff | |
| v. | |
| MIAMI UNIVERSITY<br>Defendant | |

For reasons set forth in the Decision filed concurrently herewith, the Court holds that Plaintiff Mackenzie Weiman's and Plaintiff Sarah Baumgartner's proposed redefined class in Ct. of Cl. No. 2020-00614JD and Ct. of Cl. No. 2020-00644JD, respectively, satisfies requirements for class certification by a preponderance of the evidence.

The Court advises the parties that the Court intends to combine Ct. of Cl. Nos. 2020-00614JD and 2020-00644JD into <u>one case</u>, <u>with one set of lead counsel for each party</u>, and <u>to limit the potential award of attorney fees to one set of lead counsel</u>. Plaintiff Weiman and Plaintiff Baumgartner, as well as Defendant Miami University (University), therefore should confer about Ct. of Cl. Nos. 2020-00614JD and 2020-00644JD, respectively.  If Weiman and Baumgartner, as well as the University, can

JOURNALIZED

FILED
COURT OF CLAIMS
OF OHIO

2021 DEC 13  AM 11: 13

-2-

agree how to proceed with the prosecution of Ct. of Cl No. 2020-00614JD and Ct. of Cl. No. 2020-00644JD, respectively, then they should jointly inform the Court within *30 days* of the date of this entry.

If Weiman and Baumgartner, as well as the University, cannot agree how to proceed with the prosecution of Ct. of Cl. No. 2020-00614JD and 2020-00644JD, or both, then the Court sua sponte will combine Ct. of Cl. No. 2020-00614JD and Ct. of Cl. No. 2020-00644 into one case and sua sponte dismiss either Ct. of Cl. No. 2020-00614JD or Ct. of Cl. No. 2020-00644JD.

_____
DALE A. CRAWFORD
Judge

cc:

Mitchel Luxenburg
P.O. Box 22282
Beachwood, OH  44122

Larry P Smith
55 West Monroe Street Suite 1200
Chicago, IL  60603

Diane Marie Menashe
Madison Rae Troyer
250 West Street, Suite 700
Columbus, OH  43215

Scott D Simpkins
55 Public Square, Suite 1950
Cleveland, OH  44113

John Soumilas
James A Francis
1600 Market Street, Suite 2510
Philadelphia, PA  19103

Josh Arisohn
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY  10019

009

JOURNALIZED

**EXHIBIT 95**

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| BROOKE SMITH, Indv. | Case No. 2020-00321JD |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>DECISION</u> |
| THE OHIO STATE UNIVERSITY | |
| Defendant | |

FILED
COURT OF CLAIMS
OF OHIO
2022 JAN 21  AM 10: 42

     This matter is before the Court on Plaintiff's motion for class certification.  Plaintiff Brooke Smith was a senior at Defendant The Ohio State University (Defendant or OSU), at the Columbus campus, during the Spring 2020 semester.  She seeks to represent a class of all undergraduate students enrolled in classes at the Columbus campus of OSU during the Spring 2020 semester who paid tuition and/or fees.  Plaintiff asserts that she and her fellow students contracted with OSU for in-person classes, and when OSU closed its Columbus campus and switched to online classes in March 2020 in response to the Novel Coronavirus Disease 2019 (COVID-19), it breached her contract.  Plaintiff claims that the class is entitled to a partial refund of the tuition and fees that they paid.  On December 13, 2021, the Court conducted a hearing on Plaintiff's Civ.R. 23 motion.

     The Ohio Supreme Court, in its seminal class action case, *Cullen v. State Farm Mut. Auto. Ins. Co.*, held:

> A trial court must conduct a rigorous analysis when determining whether to certify a class pursuant to Civ.R. 23 and may grant certification only after finding that all of the requirements of the rule are satisfied; the analysis requires the court to resolve factual disputes relative to each requirement and to find, based upon those determinations, other relevant facts, and the applicable legal standard, that the requirement is met.



FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21  AM 10: 42

Case No. 2020-00321JD                    -2-                         DECISION

137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, paragraph one of the syllabus. The party seeking class certification must demonstrate by a preponderance of the evidence that the proposed class meets each of the requirements of Civ.R. 23.  *Cullen*, at paragraph three of the syllabus.  Upon review of the evidence and applicable law, the Court finds that class certification is appropriate.

**Factual Background**

On March 16, 2020, OSU closed its Columbus campus in response to the COVID-19 pandemic.[1]  OSU refunded a prorated portion of some fees when it closed the campus, such as the room and board and the recreational fee, but it did not refund any tuition or any of the following fees:  general fee, student activity fee, student union facility fee, learning technology fee, course fees, program fees, and the COTA bus fee.[2]

Plaintiff argues that OSU should have refunded a prorated amount of tuition because the students lost part of the benefit of the bargain for which they paid tuition when the school transitioned from in-person classes to online classes.  (Motion, p. 1.) Plaintiff also asserts that OSU should have refunded a prorated amount of the fees listed above when OSU closed the campus because the students could no longer use any of the facilities that the fees were paid to secure.  (Motion, p. 3.)

**Proposed Class**

Plaintiff moves the Court to certify a class of "all undergraduate students enrolled in classes at the Columbus campus of The Ohio State University during the Spring 2020

---

[1] Plaintiff asserts that OSU closed its campus on March 9, 2020.  However, March 9, 2020 was the beginning of spring break.  If not for the COVID-19 pandemic, in-person classes would have resumed on March 16, 2020.  (Bricker Aff., ¶ 21.)

[2] The motion for class certification does not include a list of the fees for which Plaintiff seeks a prorated reimbursement.  Counsel for Plaintiff provided the list of fees to the Court during the December 13, 2021 hearing.  Counsel also listed the instructional fee and the non-resident surcharge, which for purposes of this decision shall be referred to as "tuition."

FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21  AM 10: 42

Case No. 2020-00321JD                    -3-                              DECISION

semester who paid tuition and/or fees."   During the hearing, counsel for Plaintiff provided the following list of fees: general fee, student activity fee, student union facility fee, learning technology fee, course fees, program fees, and the COTA bus fee.

During the hearing, the undersigned requested that the parties confer and refine the proposed class definition.   On December 22, 2021, the parties filed a notice informing the Court that they were unable to reach an agreement on a revised class definition.   Nevertheless, the Court itself has the authority to modify the class definition when the Court concludes that it is warranted.   *See* Civ.R. 23(C)(1)(b); *see also* Civ.R. 23(D)(1) (providing that in conducting an action under Civ.R. 23, the court "may issue orders that: * * * (c) impose conditions on the representative parties or on intervenors; * * * or (e) deal with similar procedural matters")*; Ritt v. Billy Blanks Enters,* 171 Ohio App.3d 204, 2007-Ohio-1695, 870 N.E.2d 212, ¶ 104-105 (8th Dist.) (modifying the class definition); *In re NHL Players' Concussion Injury Litigation*, D.Minn. No. 14-2551 (SRN/BRT), 2017 U.S. Dist. LEXIS 115159, at *5 (July 24, 2017) (courts possess administrative and procedural authority over the course of class action proceedings under Fed.R.Civ.P. 23(d)(1)(A) and 23(d)(1)(E) and inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases).

In another case before this Court against this same Defendant, *McDermott v. The Ohio State University*, Ct. of Cl. No. 2020-00286JD, the Court certified a class of undergraduate and graduate students enrolled at the Columbus campus of OSU for the Spring 2020 semester who paid the student union fee.   If Plaintiff's proposed class definition were certified in this case, it would overlap with the class in *McDermott* in regard to the student union fee.   Because the class in *McDermott* was certified first, the Court concludes that the *McDermott* class effectively has staked its claim on the student

FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21  AM 10: 42

Case No. 2020-00321JD                      -4-                                      DECISION

union fee.[3]  *See EEOC v. Univ. of Pennsylvania*, 850 F.2d 969 (3rd Cir.1988) (providing an overview of the first-filed rule, which is analogous to the instant situation).  Therefore, the Court modifies the class definition in the instant case to exclude the student union fee.

The Court hereby defines the class as "all undergraduate students enrolled in classes at the Columbus campus of The Ohio State University during the Spring 2020 semester who paid tuition, the general fee, student activity fee, learning technology fee, course fees, program fees, and/or the COTA bus fee."

**Requirements for Class Certification**

Rule 23 of the Ohio Rules of Civil Procedure governs class actions in Ohio.  *See* Civ.R. 23.[4]  A trial judge "has broad discretion in determining whether a class action may be maintained."  *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus.  The Ohio Supreme Court has cautioned, however, that the trial court's discretion in deciding whether to certify a class action "is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23."  *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998).  The Ohio Supreme Court has further cautioned: "The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied."  *Hamilton* at 70.

The United States Supreme Court too has emphasized that courts should engage in rigorous analysis in determining whether a proposed class should be certified

---

[3] Every student who would have been a member of the class in this case due to paying the student union fee is also included in the *McDermott* class.

[4] The Ohio Supreme Court has determined that federal authority may aid Ohio courts in interpreting Civ.R. 23.  *See Cullen* at ¶ 14, quoting *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201, 31 Ohio B. 398, 509 N.E.2d 1249 (1987) ("[b]ecause Civ.R. 23 is virtually identical to Fed.R.Civ.P. 23, we have recognized that 'federal authority is an appropriate aid to interpretation of the Ohio rule'").



FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21   AM 10: 42

Case No. 2020-00321JD                    -5-                         DECISION

in class action case. In *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013), the Court stated:

> Repeatedly, we have emphasized that it "'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id. at 350-351* (quoting *General Telephone Co. of Southwest* v. *Falcon*, 457 U.S. 147, 160-161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). Such an analysis will frequently entail "overlap with the merits of the plaintiff's underlying claim." 564 U.S., at 351, 131 S. Ct. 2541, 180 L. Ed. 2d 374.  That is so because the "'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Ibid.* (quoting *Falcon*, *supra*, at 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740).

A party seeking class certification must meet the following requirements before the action may be maintained as a class pursuant to Civ.R. 23:

> (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.

*Cullen*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, at ¶ 11 (citations omitted).

FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21  AM 10: 42

Case No. 2020-00321JD                    -6-                         DECISION

**Identifiable Class**

"An identifiable class must exist before certification is permissible.  The definition of the class must be unambiguous."  *Warner v. Waste Mgt.,* 36 Ohio St.3d 91, 521 N.E.2d 1091 (1988), paragraph two of the syllabus.  "[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 71-72, 69 N.E.2d 442 (1998) (citations omitted).  The class definition "must be precise enough 'to permit identification within a reasonable effort.'"  *Id.* at 72, quoting *Warner* at 96.

Plaintiff argues that the proposed class is identifiable and unambiguous because "[e]ach member of this class can be easily identified from Defendant's records." (Motion, p. 6.)

Defendant does not argue that it is unable to identify class members from its records.  Instead, Defendant argues that the proposed class is defined too broadly such that it includes members who have not been harmed.  For instance, the class is overly broad because there were 826 students who were exclusively enrolled in distance learning classes and thus could not be part of Plaintiff's class.  And other students "took a mixture of both in-person classes and classes through another mode of instruction." (Memorandum in Opposition, p. 7.)  Defendant cites an Ohio Supreme Court case for the proposition that if "a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 53, citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir.2012).  In *Stammco*, some of the putative class members may not have been harmed because they may have authorized the allegedly improper charges on their accounts.  *Stammco* was thus unsuitable for class certification because the court would

FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21  AM 10: 42

Case No. 2020-00321JD                    -7-                              DECISION

have to determine, on an individual basis, whether each putative class member authorized the charges.

However, *Stammco* does not apply here because Defendant is able to clearly identify from its records which students paid tuition and the various fees. Furthermore, because the class has been defined as students enrolled in classes at the Columbus campus, the 826 students who were exclusively enrolled in distance learning are clearly not part of the class.[5] The students who were enrolled in a mixture of in-person classes on the Columbus campus and other modes of instruction clearly fall within the class. The Court need not consider at this time how the amount of damages will be affected for those students.  *See Behrend*, 569 U.S. at 35 ("calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case); *see also Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, ¶ 33 (plaintiffs in class-action suits "must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions. * * * Although plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by each class member, * * * they must adduce common evidence that shows all class members suffered *some* injury").

Defendant also argues that "some students who exclusively took in-person classes suffered no injury as a result of the transition to virtual instruction." (Memorandum in Opposition, p. 7.)  However, as the Court previously stated, the Court will not recast Plaintiff's claim.  (Entry Denying Defendant's Motion to Dismiss, Sept. 9, 2020.)  The injury suffered by the class, according to Plaintiff's theory of the case, is losing the benefit for which they contracted: in-person classes and access to the campus.  The terms of an implied contract can be inferred from the parties' external

---

[5] Plaintiff's original proposed class definition also limited the class to students "enrolled in classes at the Columbus campus of The Ohio State University."

FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21   AM 10: 42

Case No. 2020-00321JD                    -8-                         DECISION

conduct.  *See Hercules Inc. v. United States*, 516 U.S. 417, 424, 116 S.Ct. 981 (1996)
("An agreement implied in fact is founded upon a meeting of minds, which, although not
embodied in an express contract, is inferred, as a fact, from conduct of the parties
showing, in light of the surrounding circumstances, their tacit understanding."); *see also
Columbus H. v. & T. R. Co. v. Gaffney*, 65 Ohio St. 104, 115, 61 N.E. 152 (1901)
("whereas in the other case the contract is established by the conduct of the parties,
viewed in the light of surrounding circumstances, and is called a contract implied in
fact").  In this case, OSU advertised in-person classes as an option and advertised its
campus on which the students would take said classes.  OSU charged tuition and fees.
And the students paid the tuition and fees and could not attend classes or use campus
facilities.

Therefore, the Court finds that the proposed class is not overbroad, but rather is
identifiable and unambiguous.

**Class Representative and Membership**

In order to establish class membership, it is necessary to demonstrate that "the
representative[s] have proper standing. In order to have standing to sue as a class
representative, the plaintiff must possess the same interest and suffer the same injury
shared by all members of the class that he or she seeks to represent." *Hamilton*, 82
Ohio St.3d at 74, 694 N.E.2d 442.

Plaintiff was an undergraduate student at the Columbus campus of OSU during
the 2020 Spring semester.  She asserts that she possesses the same interest and
suffered the same injury as the other class members because none of them received
the benefit of their bargain.

Defendant argues, however, that Plaintiff's experiences and alleged injuries
differed from other undergraduate students because she was a student teacher in the
Spring 2020 semester.  According to Plaintiff's deposition, she took two classes during
the Spring 2020 semester: a student teaching field placement and a seminar at OSU



FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21  AM 10: 42

Case No. 2020-00321JD                    -9-                         DECISION

that reflected on the student teaching experience.  (Smith Depo., p. 55.)   Prior to March 16, 2020, Plaintiff's seminar was taught in-person at the Columbus campus. (Zurmehly Aff., Ex. D.)  Starting March 16, 2020, the seminar was taught online.  (Smith Depo., p. 281-282.)   Therefore, even though her student teaching assignment was conducted off-campus, Plaintiff still took one class at the Columbus campus that was converted to online learning due to the pandemic.  It is not necessary that the class representative be the most injured member of the class.  Furthermore, the fact that she only took one class on campus and how that might affect the damages she is due is not relevant at this time.  *See Felix, supra*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, at ¶ 33.  Therefore, the Court finds that Plaintiff possesses the same interests and suffered the same injury shared by all members of the class.

**Numerosity**

"Numerosity is presumed for classes larger than forty members * * * However, the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pennsylvania Pub. School Emp. Retirement Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir.2014); *see also Warner v. Waste Mgmt.*, 36 Ohio St.3d 91, 521 N.E.2d 1091 (1988) (approving the maxim that if a class has more than forty people in it, numerosity is satisfied).

Defendant argues in a footnote that the proposed class does not meet the numerosity requirement because the proposed class includes uninjured class members. The Court already addressed this argument in analyzing whether there is an identifiable class.  For the same reasons given above, the Court rejects that argument here.  The Court finds that joinder of all members of the proposed class is impractical due to,



FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21  AM 10: 42

Case No. 2020-00321JD            -10-                        DECISION

among other things, the number of students who have been affected by OSU's response to the COVID-19 pandemic, judicial economy, and potential requests for relief that would involve future class members.  Therefore, the numerosity requirement has been met.

**Commonality**

Pursuant to Civ.R. 23(A)(2), there must be the presence of "questions of law or fact common to the class."  Courts have generally given a permissive application to this requirement.  *Warner*, 36 Ohio St.3d at paragraph three of the syllabus, 521 N.E.2d 1091.  It requires a "common nucleus of operative facts."  *Id.*  However, "it is not necessary that all the questions of law or fact raised in the dispute be common to all the parties." *Hamilton* at 77.

Plaintiff asserts that there are common questions as to (1) "whether OSU was contractually bound to provide her with in-person classes[,]" (2) "whether [that contract] was breached[,]" and (3) "whether it was unjustified for OSU to retain the entirety of her tuition and fee payments even though it failed to provide in-person classes for the entirety of the Spring 2020 semester." (Motion, p. 8.)

Defendant argues that Plaintiff has not met the commonality requirement because there is no common, classwide proof of breach of contract because "an in-person class may be conducted between 0-24% by virtual means" and "when a course had reached more than 24% of online instruction in the spring 2020 semester will vary with each course and with each professor."  (Memorandum in Opposition, p. 9.) However, Defendant also states that "the semester was nearly two-thirds complete when OSU transitioned to virtual instruction." (Memorandum in Opposition, p. 9.)  Doing the math, while the alleged contract may not have been breached on the same day for each class member, it was certainly breached for all of them by the end of the semester.

Defendant also argues that there is no common, classwide proof of injury because "not all putative class members were injured by OSU's transition to virtual

FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21  AM 10: 42

Case No. 2020-00321JD                    -11-                              DECISION

instruction in March 2020." (Memorandum in Opposition, p. 10.) However, as stated above in the analysis regarding whether the class was identifiable, the injury suffered by the class is losing the benefit for which they contracted: in-person classes and access to the campus. Proof of injury is therefore susceptible to classwide determination. Therefore, the commonality requirement has been met.

**Typicality**

"Under Civ.R. 23(A)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. The typicality requirement has been found to be satisfied where there is no express conflict between the representatives and the class." *Warner*, 36 Ohio St.3d at 97-98, 512 N.E.2d 442.

> [A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

*Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 485, 727 N.E.2d 1265 (2000).

Defendant argues that Plaintiff is atypical of her class because her alleged injuries are unique to her. In thus arguing, Defendant focuses on Plaintiff's injury of not being able to finish her student teaching assignment in-person, allegedly due to her assigned local school's—not OSU's—decisions. However, Plaintiff's injury is typical of the class because of her other course—the seminar that was originally scheduled to be taught in-person on OSU's Columbus campus. While Plaintiff also took a rather unique course, that does not put her interests in conflict with the class, and "the typicality

FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21  AM 10: 42

Case No. 2020-00321JD                    -12-                                    DECISION

requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Baughman*, at 485.  Therefore, the typicality requirement has been satisfied.

**Fair and Adequate Representation**

Adequate representation requires the Court to examine: (1) the adequacy of the representative class members themselves; and (2) the adequacy of counsel for the representative class members. *Warner* at 98. "A representative is deemed adequate so long as his interest is not antagonistic to that of other class members." *Marks v. C.P. Chemical Co., Inc.*, 31 Ohio St.3d 200, 203, 509 N.E.2d 1249 (1987), quoting 3B Moore's Federal Practice (1987) 23-188, paragraph 23.07[1]. Regarding the adequacy of counsel requirement,

> [t]he issue of whether counsel is competent to handle the action can be the most difficult in the Rule 23 analysis.  The fact that an attorney has been admitted to practice does not end the judicial inquiry.  An attorney should be experienced in handling litigation of the type involved in the case before class certification is allowed.  Close scrutiny should be given to the attorney's qualifications to handle the matter with which he is entrusted.

*Warner,* 36 Ohio St.3d at 98, 521 N.E.2d 1091.

Defendant first contests the adequacy of Plaintiff to serve as class representative with the same arguments, and indeed in the same section of its brief, that it set forth regarding typicality—that she did not suffer the same injury as the class members. And for the same reasons, the Court finds this argument to be unpersuasive.

Defendant next argues that "Plaintiff and her counsel are inadequate representatives of the 33,334 class members who paid in-state tuition or the 3,669 international students who paid an International Undergraduate Student Fee in the spring 2020 semester." (Memorandum in Opposition, p. 18.) Defendant argues that Plaintiff, an out-of-state student, cannot adequately represent in-state students because

```
            FILED
       COURT OF CLAIMS
          OF OHIO

    2022 JAN 21  AM 10: 42
```

Case No. 2020-00321JD                    -13-                        DECISION

it is in her interest to increase the recovery for out-of-state students at the expense of in-state students.   However, the case law cited by Defendant is not applicable, and the Court finds Defendant's argument to be unpersuasive.   Plaintiff possesses the same interest and suffered the same injury as the other members of the class.   Furthermore, even if she wanted to, it is not apparent to the Court—nor does Defendant explain—how Plaintiff herself could inappropriately influence the survey proposed by her experts. Therefore, the Court finds that Plaintiff is an adequate class representative.

While Defendant briefly asserts that Plaintiff's counsel are not adequate class counsel, it does provide a reason.   Upon review of Plaintiff's exhibits A and B, the Court finds that Bursor & Fisher, P.A. and Climaco Wilcox Peca & Garfoli Co, LPA are both law firms with extensive experience with class actions and that the individual attorneys have experience with class actions.   Furthermore, two of Plaintiff's attorneys, Scott Simpkins and Joshua Arisohn, have already been appointed class counsel in another case before this Court.   *See Weiman v. Miami Univ.*, Ct. of Cl. Nos. 2020-00614JD and 2020-00644JD (Dec. 13, 2021).   Therefore, the Court finds that Scott Simpkins, Joshua Arisohn, and Sarah Westcot are adequate class counsel.

**Predominance and Superiority**

In order for a class to be certified, it must meet one of the Civ.R. 23(B) requirements.   Plaintiff seeks class certification under Civ.R. 23(B)(3).   Civ.R. 23(B)(3) requires the trial court to make the following findings:

> [F]irst, "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and, second, "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."   This inquiry requires a court to balance questions common among class members with any dissimilarities between them, and if the court is satisfied that common questions predominate, it then should "consider whether any alternative

FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21   AM 10: 43

Case No. 2020-00321JD                    -14-                              DECISION

methods exist for resolving the controversy and whether the class action method is in fact superior."

*Cullen,* 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, at ¶ 29, quoting *Ealy v. Pinkerton Govt. Servs., Inc.,* 514 Fed. Appx. 299 (4th Cir. 2013). "The purpose of Civ.R. 23(B)(3) was to bring within the fold of maintainable class actions cases in which the efficiency and economy of common adjudication outweigh the interests of individual autonomy." *Hamilton,* 82 Ohio St.3d at 80, 69 N.E.2d 442.

Plaintiff argues that each of the elements for the breach of contract claim presents a common question for the class and that they each have a common answer. Plaintiff asserts that the contents of the contract between each student and OSU will be determined by the same handbooks, catalogs, policies, and brochures. "Accordingly, whether OSU and class members were parties to a contract, and whether that contract contained a requirement that OSU would provide in-person classes, are questions that can be answered for all class members in one fell swoop." (Motion, p. 12.)   Plaintiff further asserts that the elements for a claim of unjust enrichment are equally well suited to classwide treatment.  Lastly, Plaintiff asserts that a class action would be superior to thousands of individual actions.

Regarding damages, Plaintiff avers that her experts have set out a method for measuring damages on a classwide basis regarding tuition.  Plaintiff's experts propose to conduct a market research survey and analysis, using a conjoint analysis, to compare the market value for in-person classes and full access to OSU's campus and facilities to the market value of virtual classes and no access to OSU's campus and facilities. (Motion, p. 13-14.)   The experts will then use those numbers to determine the percent by which in-state students and out-of-state students overpaid for tuition.

Defendant argues that predominance is lacking because "the transition to virtual instruction is not itself an injury." (Memorandum in Opposition, p. 11.)  Accordingly, the Court would have to examine whether each class member suffered an injury.

FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21  AM 10: 43

Case No. 2020-00321JD                    -15-                              DECISION

Therefore, class certification is not appropriate.  Defendant illustrates its argument by comparing the students within Plaintiff's academic program and by comparing students across several different programs and types of classes.  However, as stated above in the analysis regarding whether the class was identifiable, the injury suffered by the class is losing the benefit of in-person classes and access to the campus.  The determination of whether in-person classes ceased and whether the campus was closed is well suited for classwide determination.

Defendant next argues that predominance is lacking because students were assessed different rates of fees and received different amounts of financial aid.  However, Plaintiff has proposed a model of determining damages that is consistent with its liability case.  The precise application of Plaintiff's model to the students' various circumstances, and the resultant amount of damages for each student, is not addressed at this time.  *See Behrend*, *supra*, 569 U.S. at 35; *see also Felix*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, at ¶ 33.

The Court agrees with Plaintiff that the elements of each claim are well suited for classwide determination.  Accordingly, the Court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  *See McDermott v. Ohio State University*, Ct. of Cl. No. 2020-00286JD (Dec. 27, 2021); *see also Cross v. Univ. of Toledo*, Ct. of Cl. No. 2020-00274JD, 2021 Ohio Misc. LEXIS 43 (April 26, 2021); *Weiman v. Miami Univ.*, Ct. of Cl. Nos. 2020-00614JD and 2020-00644JD (Dec. 13, 2021).

The Court further finds that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy presented by Plaintiff, especially given a requirement and desirability that litigation of the presented claims should be litigated in this forum.  *See* Civ.R. 23(B)(3); *see also* R.C. 2743.03(A)(1) (providing that the Ohio Court of Claims "has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in [R.C. 2743.02] and exclusive

FILED
COURT OF CLAIMS
OF OHIO

2022 JAN 21  AM 10: 43

Case No. 2020-00321JD                    -16-                              DECISION

jurisdiction of the causes of action of all parties in civil actions that are removed to the court of claims").

**Conclusion**

For the reasons discussed above, the Court concludes that Plaintiff's motion for class certification will be granted.

DALE A. CRAWFORD
Judge

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| BROOKE SMITH, Indv. | Case No. 2020-00321JD |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>JUDGMENT ENTRY</u> |
| THE OHIO STATE UNIVERSITY | |
| Defendant | |

For the reasons set forth in the decision filed concurrently herewith, the Court GRANTS Plaintiff's motion for class certification.   The Court hereby certifies the following class: all undergraduate students enrolled in classes at the Columbus campus of The Ohio State University during the Spring 2020 semester who paid tuition, the general fee, student activity fee, learning technology fee, course fees, program fees, and/or the COTA bus fee.

Pursuant to Civ.R. 23(C)(1)(c), this Court may alter or amend the class certifications before final judgment.

The Court appoints the following attorneys as class counsel:   Scott Simpkins (0066775), Joshua Arisohn (admitted pro hac vice), and Sarah Westcot (admitted pro hac vice).

_____
DALE A. CRAWFORD
Judge

JOURNALIZED

Case No. 2020-00321JD                    -2-                    JUDGMENT ENTRY

cc:

Josh Arisohn                              Scott D Simpkins
Bursor & Fisher, P.A.                     55 Public Square, Suite 1950
888 Seventh Avenue                        Cleveland, OH  44113
New York, NY  10019

John Ryan Gall                            Sarah N Westcot
Aneca Elizabeth Lasley                    Bursor & Fisher, P.A.
E Joseph DAndrea II                       701 Brickell Avenue, Suite 1420
2000 Huntington Center                    Miami, FL  33131
41 South High Street
Columbus, OH  43215-6106

012

2022 JAN 21  AM 10: 43
FILED
COURT OF CLAIMS
OF OHIO

JOURNALIZED

**EXHIBIT 96**

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| CAITLYN WAITT, et al. | Case No. 2020-00392JD |
| Plaintiffs | Judge Dale A. Crawford |
| v. | <u>DECISION</u> |
| KENT STATE UNIVERSITY | |
| Defendant | |

Before the Court is a motion for class certification filed by Plaintiffs Caitlyn Waitt and Jordan Worrell. Defendant Kent State University (KSU or University) opposes Waitt and Worrell's motion. Waitt and Worrell's motion for class certification has been fully briefed.

### I. Introduction

Waitt and Worrell generally contend in a Second Amended Complaint that, beginning with the University's Spring 2020 semester, KSU breached an implied contract or, express contract, with them, and others similarly situated, by providing online education, instead of an in-person college experience during a pandemic of the Novel Coronavirus Disease 2019 (COVID-19). Waitt and Worrell present a claim of breach of contract and, in the alternative, unjust enrichment. KSU generally disputes Waitt and Worrell's claims.

### II. Waitt and Worrell's motion for class certification is considered at a hearing.

The Court held a hearing on December 22, 2021, on Waitt and Worrell's motion for class certification. The parties did not call witnesses to testify at the hearing. Rather, the parties presented oral argument and relied on the written briefings that had been submitted to the Court in advance of the hearing.



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11  PM 4: 20

Case No. 2020-00392JD                    -2-                              DECISION

Before the hearing, Waitt and Worrell proposed the following proposed class:

> Plaintiffs bring this case on behalf of themselves and, pursuant to
> Rule 23 of the Ohio Rules of Civil Procedure, on behalf of the class
> defined as all persons who paid tuition and/or the Mandatory Fees for a
> student to be enrolled at Kent State for an on-campus program for the
> Spring 2020 Semester affected by Covid-19 and had their class(es) were
> moved to remote learning (the "Class").

(Second Amended Class-Action Complaint, ¶ 52.)  Upon questioning by the Court, Waitt
and Worrell revised the proposed class to consist of the following:

> All undergraduate students who paid an instructional fee, general
> fee, or non-resident fee for the Spring 2020 semester at Kent State
> University when classes were moved to remote learning.  Excluded from
> the class are those undergraduate students who did not pay any fees.

At the hearing, Plaintiffs asserted that, in their view, two issues were in dispute:
(1) whether Plaintiffs, and members of the proposed class, sustained a "common injury,"
and (2) whether Plaintiffs have shown a method for calculating class-wide damages.
Plaintiffs further asserted that, when Plaintiffs (and members of the proposed class)
enrolled in classes for the Spring 2020 semester at KSU, Plaintiffs (and members of the
proposed class) expected to have access to in-person classes and on-campus services
and, as a result of the pandemic, did not have access to in-person classes and on-
campus services for a portion of the 2020 semester.  Plaintiffs maintained that there is a
"market difference" between what they expected to receive from KSU and what they
actually received from KSU.  Plaintiffs represented that the "common injury" among the
proposed class consists of whether, if Plaintiffs (and members of the proposed class)
had known in advance that they would not have access to in-person classes or on-
campus services, or both, whether Plaintiffs (and members of the proposed class)
would have agreed to pay the same price for tuition and fees.

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11  PM 4: 20

Case No. 2020-00392JD                    -3-                          DECISION

In response, KSU maintained that, if there are injuries-in-fact to quantify, then it is impossible to quantify them with a common methodology that is non-speculative and that survives a rigorous analysis that is just and reasonable.  KSU noted that Plaintiffs' proposed methodology rests on experts who have not yet conducted a survey or testified in this case.  KSU contended that the Court should not certify a class without a common methodology having been identified.  KSU disputed whether a methodology consisting of conjoint analysis was a proper methodology, because, according to KSU, conjoint analysis typically is used with consumer goods.  KSU maintained that conjoint analysis that—(1) consists of a survey of people who are not involved in this case, (2) asks about preferences about online classes as opposed to in-person classes, and (3) asks about preferences about on-campus services as opposed to non-campus services—is not a proper methodology, especially if the circumstance of a pandemic is not included in the survey's methodology.

KSU contended that the facts of this case show a lack of injury.  KSU acknowledged that—about 9 weeks after the Spring 2020 semester began—KSU pivoted to online learning for safety reasons due to the COVID-19 pandemic.  And KSU acknowledged that, at the beginning of the Spring 2020 semester, about 57% percent of undergraduate students had enrolled in at least one online course.  But, according to KSU, about 98.5% of students enrolled in the Fall 2020 semester and paid the same fees as they did in the Spring 2020 semester—despite KSU's announcement before Fall enrollment that all classes would be taught in an online format after the Thanksgiving break and that classes would proceed on in-person basis or on a hybrid basis before Thanksgiving break.  KSU reasoned that such evidence demonstrates an absence of injury-in-fact in this case.  KSU further noted that Worrell graduated from KSU after the Spring 2020 semester and that Waitt was on pace to graduate from KSU.  KSU urged that Worrell's graduation from KSU and Waitt's progress toward graduation support its position of a lack of injury-in-fact.



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11  PM 4:20

Case No. 2020-00392JD                    -4-                    DECISION

At the hearing the Court inquired of Plaintiffs about the nature of the proposed conjoint analysis.  And the Court inquired of KSU whether its criticism about the suitability of conjoint analysis concerned the merits of Plaintiffs' case, rather than whether prerequisites for class certification had been satisfied.

### III. Law and Analysis

The relationship between a student and a university is contractual in nature.  The Ohio Supreme Court has remarked,

> Students evaluate and determine which university best meets their needs, and then pay a fee to attend that university.  The relationship formed under these conditions has previously been characterized as contractual.
>
> * * * The student pays a fee and agrees to abide by the university rules.  In exchange, the university provides the student with a worthwhile education.

*Hanson v. Kynast*, 24 Ohio St.3d 171, 174, 494 N.E.2d 1091 (1986).  *Accord Behrend v. State*, 55 Ohio App.2d 135, 139, 379 N.E.2d 617 (10th Dist.1977) ("[g]enerally it may be stated that when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature").

Civ.R. 23 governs class actions in Ohio.[1]  Civ.R. 23(C)(1)(a) provides, "At an early practicable time after a person sues or is sued as a class representative, the court shall determine by order whether to certify the action as a class action."  Under Civ.R. 23(C)(1)(c), "[a]n order that grants or denies class certification may be altered or amended before final judgment."  The party who seeks to maintain a class action under Civ.R. 23 "'bears the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in the rule.'"  *Madyda v.*

---

[1] The Ohio Supreme Court has determined that federal authority may aid Ohio courts in interpreting Civ.R. 23.  *See Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 14, quoting *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987).



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11  PM 4: 20

Case No. 2020-00392JD                    -5-                    DECISION

*Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 20AP-217, 2021-Ohio-956, ¶ 12
(quoting *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733,
999 N.E.2d 614, ¶ 15), *appeal not accepted*, 163 Ohio St.3d 1505, 2021-Ohio-2401,
170 N.E.3d 904, *reconsideration denied*, 164 Ohio St.3d 1449, 2021-Ohio-3336, 173
NE.3d 1247.   And a party who seeks to maintain a class action "satisfies its burden
when it establishes that all the prerequisites of Civ.R. 23(A) are met and that at least
one of the conditions of Civ.R. 23(B) exists." *Madyda* at ¶ 12.

A trial judge "has broad discretion in determining whether a class action may be
maintained." *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987),
syllabus.   The Ohio Supreme Court has cautioned, however, that the trial court's
discretion in deciding whether to certify a class action "is not unlimited, and indeed is
bounded by and must be exercised within the framework of Civ.R. 23."   *Hamilton v.
Ohio Savs. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998).   The Ohio Supreme
Court has further cautioned: "The trial court is required to carefully apply the class
action requirements and conduct a rigorous analysis into whether the prerequisites of
Civ.R. 23 have been satisfied." *Hamilton* at 70.   The Ohio Supreme Court has stated,
"In resolving a factual dispute when a requirement of Civ.R. 23 for class certification and
a merit issue overlap, a trial court is permitted to examine the underlying merits of the
claim as part of its rigorous analysis, but only to the extent necessary to determine
whether the requirement of the rule is satisfied*." Cullen v. State Farm Mut. Auto. Ins.
Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, paragraph two of the
syllabus, clarifying *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 466
N.E.2d 875 (1984).   *Accord Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d
231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 44 ("hold[ing] that at the certification stage in a
class-action lawsuit, a trial court must undertake a rigorous analysis, which may include
probing the underlying merits of the plaintiff's claim, but only for the purpose of



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11  PH 4:20

Case No. 2020-00392JD                    -6-                    DECISION

determining whether the plaintiff has satisfied the prerequisites of Civ.R. 23"). In *Stammco* at ¶ 33, the Ohio Supreme Court stated:

> [A] trial court's consideration of the underlying merits of a plaintiff's claim at the certification stage is not unfettered. "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. ___, 133 S.Ct. 1184, 1191, 185 L.Ed.2d 308 (2013). *Amgen* confirmed that the rigorous analysis at the certification stage "may 'entail some overlap with the merits of plaintiff's underlying claim'" but stated: "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1194-1195, quoting [*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)].

The Tenth District Court of Appeals has stated that, "although it is the preferred course, Civ.R. 23 does not mandate that the trial court make specific findings on each of the seven prerequisites for class certification, nor that it articulate its reasoning for such findings as part of its rigorous analysis." *Madyda v. Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 20AP-217, 2021-Ohio-956, ¶ 10, citing *Hamilton* at 70-71.

The Ohio Supreme Court has enumerated requirements for maintaining a class action under Civ.R. 23. The Ohio Supreme Court has stated:

> Civ.R. 23 provides seven requirements for maintaining a class action:
>
> > "(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11 PM 4: 22

Case No. 2020-00392JD                    -7-                    DECISION

> numerous that joinder of all members is impracticable;
> (4) there must be questions of law or fact common to the
> class; (5) the claims or defenses of the representative
> parties must be typical of the claims or defenses of the class;
> (6) the representative parties must fairly and adequately
> protect the interests of the class; and (7) one of the three
> Civ.R. 23(B) requirements must be met."

*Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-
Ohio-1042, 926 N.E.2d 292, at ¶ 6, quoting *Hamilton v. Ohio Sav. Bank*,
82 Ohio St.3d 67, 71, 1998-Ohio-365, 694 N.E.2d 442 (1998), citing
Civ.R. 23(A) and (B) and *Warner v. Waste Mgt.*, 36 Ohio St. 3d 91, 521
N.E.2d 1091 (1988).

*Cullen* at ¶ 12.[2]   *Accord Madyda* at ¶ 11.   *See* Civ.R. 23(A) (prerequisites) and (B)
(types of class actions).[3]

---

[2] Some commentators have suggested that the Ohio Supreme Court may have crafted an eighth
requirement: whether the definition of the class is too "broad."   *Weissenberger's Ohio Civil Procedure
Litigation Manual* 210 (2021 Ed.).   Adjunct Professor A.J. Stephani and Professor of Law Emeritus Glen
Weisssenberger state, "Gently probing the facts of the case, the *Stammco* court [*Stammco, L.L.C. v.
United Tel. Co. of Ohio*, 136 Ohio St.3d, 231, 2013-Ohio-3019, 994 N.E.2d 408] noted that the defendant
had 'no records regarding which charges are authorized and which are not.... [and thus] [u]nauthorized
third-party charges are better resolved on an individual basis with the third party or UTO [United
Telephone Company of Ohio].' *Id.* at ¶ 65." Supreme Court may have crafted an eighth requirement:
whether the definition of the class is too "broad."   *Weissenberger's Ohio Civil Procedure Litigation Manual*
at 210.

[3] Civ.R. 23 provides:
**(A)Prerequisites.**
One or more members of a class may sue or be sued as representative parties on behalf of all
members only if:
**(1)** the class is so numerous that joinder of all members is impracticable,
**(2)** there are questions of law or fact common to the class,
**(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the
class, and class.
**(4)** the representative parties will fairly and adequately protect the interests of the class.

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11 PM 4: 22

Case No. 2020-00392JD                    -8-                          DECISION

The Ohio Supreme Court has stated that "any doubts about adequate representation, potential conflicts, or class affiliation should be resolved in favor of upholding the class, subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand, including the augmentation or substitution of representative parties." *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 487, 727 N.E.2d 1265 (2000).   *See* Civ.R. 23(C)(1)(c) (altering or amending an order of class certification).

The Court finds that the proffered class, as identified at the hearing, is identifiable and unambiguous, *see State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 11 (stating that "no clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous"), and that, if individual class members were to separately prosecute actions against the University, inconsistent or varying adjudications may establish incompatible standards for the University.

---

**(B)Types of class actions.**
A class action may be maintained Civ.R. 23(A) is satisfied, and if:
**(1)** prosecuting separate actions by or against individual class members would create a risk of:
**(a)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
**(b)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; or
**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
**(a)** the class members' interests in individually controlling the prosecution or defense of separate actions;
**(b)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
**(c)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
**(d)** the likely difficulties in managing a class action.

* * * .



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11 PM 4:22

Case No. 2020-00392JD                    -9-                    DECISION

The Court also finds that, whether Waitt and Worrell, as well as those similarly situated, are entitled to remediation for payment of an instructional fee, general fee, or non-resident surcharge, are questions of law or fact common to Waitt, Worrell, and those similarly situated.  And the Court finds that questions of law or fact common to the putative class members predominate over any questions affecting only individual members.  *See Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, ¶ 33 (plaintiffs in class-action suits "must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions. * * * Although plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by each class member, * * *  they must adduce common evidence that shows all class members suffered *some* injury"); *Comcast Corp. v. Behrend* , 569 U.S. 27, 35, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (observing that, at the class-certification stage, any model supporting a plaintiff's damages case must be consistent with its liability case).  *See generally* 5 Moore's Federal Practice – Civil, Section 23.45[1] (2021) (absence of bright-line test for determining whether common questions of law or fact predominate).[4]

---

[4] Commentators have noted in 5 Moore's Federal Practice – Civil, Section 23.45[1] (2021): There is no precise test for determining whether common questions of law or fact predominate, however. Instead, the Rule requires a pragmatic assessment of the entire action and all the issues involved. In making that assessment, courts have enunciated a number of standards, finding predominance if:

- The plaintiff can establish that resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and that these particular issues are more substantial than the issues subject to individualized proof.
- The substantive elements of class members' claims require the same proof for each class member.
- The proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interests.
- The resolution of an issue common to the class would significantly advance the litigation.
- One or more common issues constitute significant parts of each class member's individual cases.
- The common questions are central to all of the members' claims.



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11 PM 4:22

Case No. 2020-00392JD                    -10-                              DECISION

*See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-454, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016).[5]

The Court further finds that Waitt and Worrell's claims relative to remediation for payment of an instructional fee, general fee, or non-resident surcharge, are typical of the claims of the proposed class that was identified at the hearing.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury'").

The Court also finds that the particular context of this case demonstrates that a class is superior to joinder, given the number of undergraduate students who may have paid the University's instructional fee, general fee, or non-resident surcharge, for the Spring 2020 semester, and who have not been refunded the instructional fee, general fee, or non-resident surcharge, on a pro rata basis from the date that the University's Spring 2020 semester classes transitioned to online instruction until the last day the Spring 2020 semester.  Factors of geographic dispersion of students who attended the

---

- The same theory of liability is asserted by or against all class members, and all defendants raise the same basic defenses.
- It is more efficient, in terms both of economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis, rather than decide all issues in separate trials.

(Footnotes omitted.)

[5] In *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-454, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016), the United States Supreme Court stated,

The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  [2 W. Rubenstein, Newberg on Class Actions., §4:49, pp. 195-196. (5th Ed. 2012)].  When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members. " 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1778, pp. 123-124 (3d ed. 2005) (footnotes omitted).

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11 PM 4:22

Case No. 2020-00392JD                    -11-                         DECISION

Spring 2020 semester at KSU, potential requests for relief from other students who attended the Spring 2020 semester at KSU, as well as judicial economy, favor certification of a class rather than joinder.    *See Pennsylvania Pub. School Emp. Retirement Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir.2014) ("[n]umerosity is presumed for classes larger than forty members * * * However, the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members").

The Court further finds that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy presented by Waitt and Worrell, especially given a requirement and desirability that litigation of the presented claims should be litigated in this forum.  *See* Civ.R. 23(B)(3); R.C. 2743.03(A)(1) (providing that the Ohio Court of Claims "has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in [R.C. 2743.02] and exclusive jurisdiction of the causes of action of all parties in civil actions that are removed to the court of claims").

The Court also finds that Waitt and Worrell, as the named representatives, are members of the proposed redefined class.  And the Court finds that it has no reason to doubt that either Waitt or Worrell, or both, will fairly and adequately protect the interests of the proposed class.

In sum, the Court determines that Waitt and Worrell have satisfied requirements for class certification by a preponderance of the evidence.  A class action would achieve economies of time, expense and effort, as well as promote a uniformity of decisions relative to similarly situated persons.  *See Cross v. Univ. of Toledo*, Ct. of Cl. No. 2020-00274JD, 2021 Ohio Misc. LEXIS 43 (Apr. 26, 2021) (granting class certification to,

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11 PM 4:22

Case No. 2020-00392JD                    -12-                        DECISION

among others, all people who people who were charged for or paid tuition for students
enrolled in classes at the University of Toledo for the Spring 2020 semester who were
denied live in-person instruction and forced to use online distance learning platforms for
the remainder of the academic year), *on appeal*, 10th Dist. Franklin No. 21-AP-000279;
*Weiman v. Miami Univ. & Baumgartner v. Miami Univ.*, Ct. of Cl. Nos. 2020-00614JD &
2020-00644JD (Dec. 13, 2021) (holding that a class defined as all undergraduate
students enrolled in classes at the Oxford campus of Miami University during the Spring
2020 semester who paid certain fees during the COVID-19 pandemic satisfied
requirements for class certification by a preponderance of the evidence), *on appeal*,
10th Dist. Franklin No. 22-AP-000036; *Morgan McDermott v. The Ohio State Univ.*, Ct.
of Cl. No. 2020-00286JD (Dec. 27, 2021) (granting class certification to all students
enrolled in graduate or undergraduate academic courses at the Columbus, Ohio
campus of Ohio State University (OSU) for the Spring 2020 semester and who paid
OSU's Student Union Facility Fee for that semester, and to all students enrolled in OSU
College of Dentistry DDS courses for the Spring 2020 and/or Summer 2020 semesters
and who paid OSU's clinical Education Support Fee for one or both semesters), *on
appeal*, 10th Dist. Franklin No. 22-AP-000076.

### IV. Waitt and Worrell are asked to inform the Court of a preference for appointment of class counsel.

A review of the docket shows that Plaintiffs presently are represented by five
attorneys from four different law firms.  The Court asks Waitt and Worrell to inform the
Court whether they have a preference concerning the appointment of class counsel
and, if so, whom they prefer to be appointed class counsel with reasons therefor, and to
provide any supporting evidence regarding the adequacy of proposed class counsel.

The Court advises Waitt and Worrell that, pursuant to Civ.R. 23(F)(2), this Court
may appoint an applicant as class counsel "only if the applicant is adequate under
Civ.R. 23(F)(1) and (4)" and, if more than one adequate applicant seeks appointment,



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 11  PM 4:22

Case No. 2020-00392JD                    -13-                    DECISION

this Court is required to "appoint the applicant best able to represent the interests of the class." *See* Civ.R. 23(F)(1) and (4).[6] *See generally In re NHL Players' Concussion Injury Litigation*, D.Minn. No. 14-2551 (SRN/BRT), 2017 U.S. Dist. LEXIS 115159, at *5 (July 24, 2017) (courts possess administrative and procedural authority over the course of class action proceedings under Fed.R.Civ.P. 23(d)(1)(A) and 23(d)(1)(E) and inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases).

## V. Conclusion

The Court holds that Waitt and Worrell's proposed class, as stated at the class-certification hearing, satisfies requirements for class certification by a preponderance of the evidence.

DALE A. CRAWFORD
Judge

---

[6] Civ.R. 23(F)(1) provides:
A court that certifies a class shall appoint class counsel. In appointing class counsel, the court:
(a) shall consider:
(i) the work counsel has done in identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class;
(b) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
(c) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;
(d) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Civ.R. 23(G); and
(e) may make further orders in connection with the appointment.
Civ.R. 23(F)(4) provides: "Class counsel shall fairly and adequately represent the interests of the class."

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| CAITLYN WAITT, et al. | Case No. 2020-00392JD |
| Plaintiffs | Judge Dale A. Crawford |
| v. | <u>JUDGMENT ENTRY</u> |
| KENT STATE UNIVERSITY | |
| Defendant | |

2022 FEB 11  PM 4: 22

FILED
COURT OF CLAIMS
OF OHIO

For reasons set forth in the Decision filed concurrently herewith, the Court holds that Plaintiff Caitlyn Waitt and Plaintiff Jordan Worrell's proposed class, as stated at a class-certification hearing of December 22, 2021, satisfies requirements for class certification by a preponderance of the evidence.  Plaintiffs may inform the Court on or before *February 28, 2022*, whether they have a preference concerning the appointment of class counsel and, if so, whom they prefer to be appointed class counsel with reasons therefor, and to provide any supporting evidence regarding the adequacy of proposed class counsel.

_____
DALE A. CRAWFORD
Judge

cc:

Clifford P Bendau II
P.O. Box 97066
Phoenix, AZ  85060

James L Simon
5000 Rockside Road, Suite 520
Independence, OH  44131

JOURNALIZED

Case No. 2020-00392JD                   -2-                   JUDGMENT ENTRY

Randall W Knutti                    Edward W Ciolko
Peter E DeMarco                     Gary F Lynch
Jeanna V Jacobus                    1133 Penn Avenue 5th Floor
Lindsey M Grant                     Pittsburgh, PA  15222
Assistant Attorneys General
30 East Broad Street, 16th Floor
Columbus, OH  43215

Kathleen P Lally
Carlson Lynch, LLP
111 West Washington Street Suite 1240
Chicago, IL  60602

009



FILED
COURT OF CLAIMS
OF OHIO
2022 FEB 11 PM 4: 22

JOURNALIZED

**EXHIBIT 97**

# IN THE COURT OF CLAIMS OF OHIO

2022 FEB 25  PM 4: 37    FILED COURT OF CLAIMS OF OHIO

| | |
|---|---|
| GILA DUKE, Indv. | Case No. 2021-00036JD |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>DECISION</u> |
| OHIO UNIVERSITY | |
| Defendant | |

This matter is before the Court on Plaintiff's motion for class certification.  Plaintiff Gail (Gila) Duke was a senior at Defendant Ohio University (Defendant or OU), at the Athens campus, during the Spring 2020 semester.  She seeks to represent a class of all undergraduate students enrolled in classes at the Athens Campus of OU during the Spring 2020 semester who paid tuition and/or fees.  Plaintiff asserts that undergraduate students attending OU's Athens campus were consistently promised access to on-campus and in-person classes and services.  Plaintiff argues that when OU closed its campus and switched to online classes in response to the COVID-19 pandemic, it breached an implied contract with her and the other undergraduate students who were enrolled in in-person classes.  Plaintiff claims that the class is entitled to a partial refund of the tuition and fees that they paid.  On January 18, 2022, the Court conducted a hearing on Plaintiff's Civ.R. 23 motion.[1]

The Ohio Supreme Court, in its seminal class action case, *Cullen v. State Farm Mut. Auto. Ins. Co.*, held:

> A trial court must conduct a rigorous analysis when determining whether
> to certify a class pursuant to Civ.R. 23 and may grant certification only
> after finding that all of the requirements of the rule are satisfied; the

---

[1] At the beginning of the hearing, Defendant's motion in limine, which was filed early the morning of the hearing or after the Court closed the previous day, was DENIED as untimely.

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4: 37

Case No. 2021-00036JD                    -2-                         DECISION

> analysis requires the court to resolve factual disputes relative to each
> requirement and to find, based upon those determinations, other relevant
> facts, and the applicable legal standard, that the requirement is met.

137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, paragraph one of the syllabus. The party seeking class certification must demonstrate by a preponderance of the evidence that the proposed class meets each of the requirements of Civ.R. 23. *Cullen*, at paragraph three of the syllabus. Upon review of the evidence and applicable law, the Court finds that class certification is appropriate.

**Factual Background**

In March 2020, OU closed its Athens campus in response to the COVID-19 pandemic.[2] OU refunded a prorated portion of some fees when it closed the campus, such as housing and meal plans and certain class fees. However, it did not refund any tuition or certain other fees.

The parties diverge on how they define "tuition" for purposes of this case. Plaintiff uses the term tuition to refer to the instructional fee and the non-resident surcharge, when applicable. (Memorandum in Support, p. 4.) Defendant uses the term tuition, in its briefing and in its internal materials, to mean the instructional fee, the non-resident surcharge (when applicable), and the general fee. (Motion, Ex. X; Affidavit of Sherry Rossiter, ¶ 7.) The general fee is defined by Defendant thus: "The general fee is a required component of tuition, and it provides funding for non-instructional services. The fee is charged to every student who is enrolled in at least one class. The services and activities supported by the fee promote students' emotional and physical well-being, as well as their cultural and social development outside the classroom." (Motion, Ex. X.)

---

[2] Neither party provided in their memoranda a concrete date on which classes would have resumed after spring break if not for the pandemic. Plaintiff asserts that March 10, 2020 was the last day of in-person classes, but Plaintiff herself testified that OU announced the transition to online classes during spring break, which was then extended to prepare for the transition.



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4:37

Case No. 2021-00036JD                    -3-                              DECISION

Plaintiff argues that OU should have refunded a prorated amount of tuition for the proposed class because they paid for in-person classes and yet, for part of the semester, received little more than OU's eCampus students, who pay less for an exclusively online education.  (Memorandum in Support, p. 5.)  Plaintiff also asserts that OU should have refunded a prorated amount of fees, though Plaintiff did not specify which fees beyond the general fee.

**Proposed Class**

Plaintiff moves the Court to certify a class of "all undergraduate students enrolled in classes at the Athens Campus of OU during the Spring 2020 Semester who paid tuition and/or fees."  During the hearing, Plaintiff presented evidence that she was enrolled in classes at the Athens campus of OU during the Spring 2020 semester and that she paid the instructional fee and the general fee.  (Plaintiff's Hearing Ex. 11.) However, Plaintiff did not specify any other fees—with the exception of the non-resident surcharge for out-of-state students—which she seeks to recover for herself and on behalf of the class.

The evidence presented shows that the only fee Plaintiff paid other than the instructional fee and the general fee is a digital course materials fee for an Operations Management course in which she was enrolled.  (Plaintiff's Hearing Ex. 11.)  During the hearing, the Bursar for OU explained that the digital course materials fee is for digital materials that replace a physical textbook.  She further testified that the fee was unrelated to the transition to online classes due to the COVID-19 pandemic.  The Court finds that the digital course materials fee is a one-time fee similar to the purchase of an item, such as a textbook.  It is not a fee for services throughout the semester, like room and board; nor does paying the fee grant one access to a physical part of campus or an activity conducted on campus, such as a recreation fee.  *Compare Smith v. The Ohio State University*, Ct. of Cl. No. 2020-00321JD (Jan. 21, 2022) (certifying a class of students who paid tuition and fees including a general fee, student activity fee, learning



Case No. 2021-00036JD                    -4-                                    DECISION

technology fee, course fees, program fees, and bus fee).  Furthermore, Plaintiff alleges
that Defendant failed to fulfill its obligation under the implied contract to provide in-
person classes and services, but Plaintiff does not allege that Defendant failed to
provide her with the digital course materials for which this fee was charged.

At the end of the hearing, the undersigned announced that the class would only
be certified as to tuition and not as to fees.  At the time, the undersigned had in mind
Defendant's definition of tuition, which includes the general fee.  However, the Court
has since reviewed the similar cases before this Court in which class actions have been
brought against public universities for reimbursements as a result of pandemic-related
transitions to online classes.  In *Smith v. The Ohio State University*, Ct. of Cl. No. 2020-
00321JD, the Court considered a fee named "general fee" to be a fee instead of tuition.
For the sake of consistency and for this decision as to class certification only, the Court
will consider the general fee to be a fee.  When the merits of the case are argued before
the Court, the parties may address whether the general fee should be considered a fee
or part of tuition for the sake of calculating damages, if any.  Accordingly, the Court
defines tuition, for purposes of this decision only, as the instructional fee and the non-
resident surcharge.

The Court has the authority to modify the class definition when the Court
concludes that it is warranted.  *See* Civ.R. 23(C)(1)(b); *see also* Civ.R. 23(D)(1)
(providing that in conducting an action under Civ.R. 23, the court "may issue orders that:
* * * (c) impose conditions on the representative parties or on intervenors; * * * or
(e) deal with similar procedural matters")*; Ritt v. Billy Blanks Enters*, 171 Ohio App.3d
204, 2007-Ohio-1695, 870 N.E.2d 212, ¶ 104-105 (8th Dist.) (modifying the class
definition); *In re NHL Players' Concussion Injury Litigation*, D.Minn. No. 14-2551
(SRN/BRT), 2017 U.S. Dist. LEXIS 115159, at *5 (July 24, 2017) (courts possess
administrative and procedural authority over the course of class action proceedings



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4:37

Case No. 2021-00036JD                    -5-                                    DECISION

under Fed.R.Civ.P. 23(d)(1)(A) and 23(d)(1)(E) and inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases).

The Court hereby defines the class as follows: "all undergraduate students enrolled in classes at the Athens campus of Ohio University during the Spring 2020 semester who paid tuition and/or the general fee."

**Requirements for Class Certification**

Rule 23 of the Ohio Rules of Civil Procedure governs class actions in Ohio.  *See* Civ.R. 23.[3]  A trial judge "has broad discretion in determining whether a class action may be maintained."  *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus.  The Ohio Supreme Court has cautioned, however, that the trial court's discretion in deciding whether to certify a class action "is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23."  *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998).  The Ohio Supreme Court has further cautioned: "The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." *Hamilton* at 70.

The United States Supreme Court too has emphasized that courts should engage in rigorous analysis in determining whether a proposed class should be certified in a class action.  In *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013), the Court stated:

> Repeatedly, we have emphasized that it "'may be necessary for the court
> to probe behind the pleadings before coming to rest on the certification
> question,' and that certification is proper only if 'the trial court is satisfied,

---

[3] The Ohio Supreme Court has determined that federal authority may aid Ohio courts in interpreting Civ.R. 23.  *See Cullen*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, at ¶ 14, quoting *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201, 31 Ohio B. 398, 509 N.E.2d 1249 (1987) ("[b]ecause Civ.R. 23 is virtually identical to Fed.R.Civ.P. 23, we have recognized that 'federal authority is an appropriate aid to interpretation of the Ohio rule'").



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4: 37

Case No. 2021-00036JD                    -6-                         DECISION

after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id. at 350-351* (quoting *General Telephone Co. of Southwest* v. *Falcon*, 457 U.S. 147, 160-161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). Such an analysis will frequently entail "overlap with the merits of the plaintiff's underlying claim." 564 U.S., at 351, 131 S. Ct. 2541, 180 L. Ed. 2d 374. That is so because the "'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Ibid.* (quoting *Falcon*, *supra*, at 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740).

A party seeking class certification must meet the following requirements before the action may be maintained as a class pursuant to Civ.R. 23:

> (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.

*Cullen*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, at ¶ 11 (citations omitted).

**Identifiable Class**

"An identifiable class must exist before certification is permissible. The definition of the class must be unambiguous." *Warner v. Waste Mgt.,* 36 Ohio St.3d 91, 521 N.E.2d 1091 (1988), paragraph two of the syllabus. "[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4: 37

Case No. 2021-00036JD                    -7-                    DECISION

individual is a member." *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 71-72, 69 N.E.2d 442 (1998) (citations omitted).  The class definition "must be precise enough 'to permit identification within a reasonable effort.'" *Id.* at 72, quoting *Warner* at 96.

Plaintiff asserts that the class is definite and unambiguous because OU tracks student enrollment and payments.  The class can thus be easily identified through a search of OU's records.

Defendant, however, argues that there is no identifiable class because it is not administratively feasible to determine who paid tuition and fees for the Spring 2020 Semester.  Defendant specifically argues that its records do not indicate for each student whether the student actually paid the money received by OU for each student's tuition and fees, or whether the tuition and fees were paid by a parent or other family member.  "At best, the financial records for each individual student would need to be reviewed to determine what identifying information, if any, is available." (Memorandum in Opposition, p. 7.)

The Court finds that the class is identifiable and unambiguous.  While it is common for parents or other family members to pay all or some of a student's tuition, it is the student who is billed and who is financially responsible for the bill.  Defendant's own Financial Obligation Agreement shows that OU considered the students themselves to be responsible for paying tuition, fees, and other associated costs, even if a student is a minor. (Defendant's Hearing Ex. L.)  Even if a parent, guardian, or other family member paid the tuition bill for a student, they paid it on the student's behalf. Therefore, this requirement is satisfied.

**Class Representative and Membership**

In order to establish class membership, it is necessary that "the representative have proper standing.  In order to have standing to sue as a class representative, the plaintiff must possess the same interest and suffer the same injury shared by all



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4: 37

Case No. 2021-00036JD                    -8-                    DECISION

members of the class that he or she seeks to represent." *Hamilton*, 82 Ohio St.3d at 74, 694 N.E.2d 442.

Plaintiff asserts that she is a member of the proposed class because she "paid tuition and fees during Spring 2020 Semester to attend the undergraduate program at OU's Athens Campus, had her access to campus restricted, and her classes moved from in-person to remote formats." (Memorandum in Support, p. 7.)

Defendant argues that Plaintiff is not a member of the class because she did not pay her tuition for the Spring 2020 semester. Defendant points to the Complaint, which states that Plaintiff's mother, Yana Duke, who was formerly a plaintiff in this action herself, paid Plaintiff's tuition and fees. However, for the same reason explained above regarding how there is an identifiable class, the Court also rejects Defendant's argument here. Even if Plaintiff's mother paid her tuition bill, she paid it on Plaintiff's behalf. The Court therefore finds that Plaintiff has the same interests and suffered the same injury shared by all members of the class.

**Numerosity**

"Numerosity is presumed for classes larger than forty members. * * * However, the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pennsylvania Pub. School Emp. Retirement Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir.2014); *see also Warner v. Waste Mgmt.*, 36 Ohio St.3d 91, 521 N.E.2d 1091 (1988) (approving the maxim that if a class has more than forty people in it, numerosity is satisfied).

Defendant does not appear to dispute that this requirement has been met. The evidence before the Court reveals that there were approximately 14,976 undergraduate

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4: 37

Case No. 2021-00036JD                    -9-                    DECISION

students enrolled in classes at the Athens campus for the Spring 2020 semester. (Motion, Ex. JJ.)  Therefore, the numerosity requirement has been established.

**Commonality**

Pursuant to Civ.R. 23(A)(2), there must be the presence of "questions of law or fact common to the class."  Courts have generally given a permissive application to this requirement.  *Warner*, 36 Ohio St.3d 91, 521 N.E.2d 1091, at paragraph three of the syllabus.  It requires a "common nucleus of operative facts."  *Id.*  However, "[i]t is not necessary that all the questions of law or fact raised in the dispute be common to all the parties."  *Hamilton*, 82 Ohio St.3d at 77, 694 N.E.2d 442.

Plaintiff asserts that there are common questions as to "(1) the existence of an implied or expressed (sic) contract for access to campus, on-campus and in-person educational services, opportunities, and classes; (2) whether OU breached that contract; and (3) the economic difference between what was contracted for and what was provided."  (Memorandum in Support, p. 8.)

Defendant's arguments that the proposed class lacks commonality are set forth under the predominance standard in Civ.R. 23(B)(3).  (Memorandum in Opposition, p. 7-13.)  Therefore, they will be addressed below in that section.  As to the commonality requirement in Civ.R. 23(A)(2), the Court finds that it has been met.  The questions set forth by Plaintiff are well suited for classwide determination.

**Typicality**

"Under Civ.R. 23(A)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class.  The typicality requirement has been found to be satisfied where there is no express conflict between the representatives and the class."  *Warner*, 36 Ohio St.3d at 97-98, 512 N.E.2d 442.

[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members,



FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4: 37

Case No. 2021-00036JD                    -10-                         DECISION

and if his or her claims are based on the same legal theory.  When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

*Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 485, 727 N.E.2d 1265 (2000).

Plaintiff asserts that she and the proposed class "bargained and paid for on-campus and in-person educational services, opportunities, and classes that she did not receive during a portion of the Spring 2020 Semester." (Memorandum in Support, p. 10.) Therefore, Plaintiff's claims and the proposed class's claims are the same, and they seek the same damages.

Defendant argues that Plaintiff's claims are not typical of the class because Plaintiff is not a member of the class.  Defendant makes its argument with the same reasoning and indeed in the same section of its brief as it argued that that there was not an identifiable class.  Accordingly, for the same reason explained above regarding how there is an identifiable class, the Court also rejects Defendant's argument here.  The Court finds no conflict between Plaintiff and the proposed class.  Therefore, this requirement has been satisfied.

**Fair and Adequate Representation**

Adequate representation requires the Court to examine: (1) the adequacy of the representative class members themselves; and (2) the adequacy of counsel for the representative class members. *Warner*, 36 Ohio St.3d at 98, 521 N.E.2d 1091. "A representative is deemed adequate so long as his interest is not antagonistic to that of other class members." *Marks v. C.P. Chemical Co., Inc.*, 31 Ohio St.3d 200, 203, 509 N.E.2d 1249 (1987), quoting 3B Moore's Federal Practice (1987) 23-188, paragraph 23.07[1].  Regarding the adequacy of counsel requirement:

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4: 37

Case No. 2021-00036JD                    -11-                              DECISION

The issue of whether counsel is competent to handle the action can be the
most difficult in the Rule 23 analysis.  The fact that an attorney has been
admitted to practice does not end the judicial inquiry.  An attorney should
be experienced in handling litigation of the type involved in the case
before class certification is allowed.  Close scrutiny should be given to the
attorney's qualifications to handle the matter with which he is entrusted.

*Warner,* at 98.

Plaintiff asserts that her interests are aligned with those of the proposed class
because she suffered the same injury and seeks the same relief as the class.  She
further asserts that her counsel are qualified, experienced, and able to conduct the
litigation.

Defendant does not challenge the adequacy of class counsel.   However,
Defendant argues that Plaintiff is not an adequate class representative due to her
"alarming lack of familiarity with this lawsuit."  (Memorandum in Opposition, p. 3.)
Defendant points out several instances in Plaintiff's deposition in which she provided an
answer not to Defendant's satisfaction, gave an incorrect answer on an immaterial
issue, failed to answer a procedural or technical legal question to the standard of a
lawyer, or refused to answer questions after receiving advice from her attorney.

Notably, Defendant does not mention the standard cited above for evaluating
whether a class representative is adequate or explain how Plaintiff does not meet that
standard.   Instead, in support of its argument, Defendant cites *Byes v. Telecheck
Recovery Services, Inc.*, 173 F.R.D. 421 (E.D.La.1997.)  In *Byes*, a court found a class
representative to be inadequate because she was convicted of a crime that, in light of
the alleged facts of the case, impugned her honesty; she provided incorrect answers to
many questions; she signed an affidavit that was "clearly false"; and, most importantly,
there was substantial evidence of insufficient communication between class counsel
and Byes. *Byes*, at 427.

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25 PM 4: 37

Case No. 2021-00036JD                     -12-                          DECISION

It is true that a class representative must take an active role in the litigation. But "[a] class representative is not required to understand the meaning of complex legal terms or to direct litigation strategies." *Byers*, at 426. Plaintiff has provided information and documents through discovery, was deposed, and attended and testified at the hearing on her motion for class certification. After reviewing Plaintiff's deposition and hearing her testimony in Court, the Court is satisfied that she has adequately participated in the litigation and is capable of diligently representing the class. Furthermore, it is clear that her interest is not antagonistic to that of the other class members. *Marks*, 31 Ohio St.3d at 203. Therefore, the Court finds that Plaintiff is an adequate class representative.

Plaintiff provided evidence that attorneys James Simon, Kathleen Lally, and Joshua Arisohn are adequate class counsel. However, Plaintiff did not provide any evidence regarding attorneys Scott Simpkins or Clifford Bendau, II. The Court finds that attorneys Simon, Lally, and Arisohn are adequate class counsel. However, as will be further discussed below, the Court requests that Plaintiff clarify whom she is requesting to be appointed as class counsel.

**Civil Rule 23(B) Requirement**

In order for a class to be certified, it must meet one of the Civ.R. 23(B) requirements. Plaintiff seeks class certification under either Civ.R. 23(B)(1) or Civ.R. 23(B)(3). Civ.R. 23(B)(1)(a) permits a class action if "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Civ.R. 23(B)(1)(a).

Civ.R. 23(B)(3) permits a class action if the court finds that common questions of law or fact predominate and a class action would be superior to other methods of adjudication. Civ.R. 23(B)(3) requires the trial court to make the following findings:

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4: 37

Case No. 2021-00036JD                    -13-                    DECISION

> [F]irst, "that the questions of law or fact common to the members of the
> class predominate over any questions affecting only individual members"
> and, second, "that a class action is superior to other available methods for
> the fair and efficient adjudication of the controversy."  This inquiry requires
> a court to balance questions common among class members with any
> dissimilarities between them, and if the court is satisfied that common
> questions predominate, it then should "consider whether any alternative
> methods exist for resolving the controversy and whether the class action
> method is in fact superior."

*Cullen,* 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, at ¶ 29, quoting *Ealy v. Pinkerton Govt. Servs., Inc.*, 514 Fed. Appx. 299 (4th Cir. 2013).  "The purpose of Civ.R. 23(B)(3) was to bring within the fold of maintainable class actions cases in which the efficiency and economy of common adjudication outweigh the interests of individual autonomy."  *Hamilton*, 82 Ohio St.3d at 80, 69 N.E.2d 442.

The Court will first analyze whether the class may be certified under Civ.R. 23(B)(3).  Plaintiff asserts that "whether there is a contract between the Class and OU for access to campus and in-person educational services, opportunities, and classes can be proven or disproven with generalized proof, as the same brochures, catalogs, admission, registration process, and course of dealing – in other words, the same promises – were provided to and made to all students."  (Memorandum in Support, p. 12-13.)  And if the contract exists, then the issue of whether the contract was breached by the termination of in-person classes and closing of the campus will be answered the same for all students.  Plaintiff makes a similar argument that "whether OU was unjustly enriched can also be proven or disproven with common evidence."  (Memorandum in Support, p. 13.)  "The litigation of this question will largely focus on OU's conduct, namely the form of classes, access to campus, and services OU provided in the Spring 2020 Semester, and whether the payment that it received for

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4: 37

Case No. 2021-00036JD                    -14-                          DECISION

those classes, access, and services was unjust considering what was provided."
(Memorandum in Support, p. 13.)

Regarding damages, Plaintiff avers that her experts have provided a method to
measure damages on a classwide bass, such that even questions of damages will be
common to the class.  Plaintiff's experts propose to conduct a market research survey
and analysis, using a conjoint analysis, to compare the market value for in-person
classes and full access to OU's campus and facilities to the market value of virtual
classes and no access to OU's campus or facilities.  If there is a difference, the experts
will use those numbers to determine the percent by which in-state students and out-of-
state students overpaid for tuition.

Defendant argues that whether or not an implied contract for in-person classes
exists between OU and the students is an individualized issue for each student.  To the
extent that an implied contract was formed by the reading of brochures and exposure to
other advertising materials, Defendant asserts the Court would have to make an
individualized determination as to what each putative class member read or saw.
Defendant later makes the same argument regarding Plaintiff's unjust enrichment
claim.[4]

The Court does not need to examine which student was exposed to which
advertisement or discern each student's inner thoughts when they signed up for
classes.  The terms of an implied contract can be inferred from the parties' external
conduct.  *See Hercules Inc. v. United States*, 516 U.S. 417, 424, 116 S.Ct. 981 (1996)
("An agreement implied in fact is founded upon a meeting of minds, which, although not
embodied in an express contract, is inferred, as a fact, from conduct of the parties
showing, in light of the surrounding circumstances, their tacit understanding."); *see also*

---

[4] Defendant's other arguments against Plaintiff's unjust enrichment claim argue against the merits
of the claim instead of addressing its suitability to classwide determination.  Accordingly, they will not be
addressed at this stage of the litigation.

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25 PM 4: 37

Case No. 2021-00036JD                    -15-                              DECISION

*Columbus H. v. & T. R. Co. v. Gaffney*, 65 Ohio St. 104, 115, 61 N.E. 152 (1901)
("whereas in the other case the contract is established by the conduct of the parties,
viewed in the light of surrounding circumstances, and is called a contract implied in
fact"). Similarly, whether a benefit was conferred upon Defendant by the students and
whether retention of the benefit would be unjust can also be determined by external
conduct. OU advertised in-person classes as an option and advertised its campus on
which the students would take said classes. OU charged tuition to attend the classes.
And the students paid the tuition and fees and yet could not attend the classes in-
person. In short, the Court does not need to delve into the weeds of which student was
exposed to which—if any—advertisement to know that a student who signed up for in-
person classes would expect them to be in person, in line with the traditional college
experience.

Defendant next argues that individual issues predominate regarding whether
online classes were materially deficient compared to in-person classes. Some students,
Defendant explains, may learn better in an online environment and "student success is
uniquely personal and depends on a number of highly individualized factors."
(Memorandum in Opposition, p. 12.) However, the crux of Plaintiff's claims is not that
the quality of the education she received was poorer than what she contracted for; it is
that the education she received should have cost less. The injury is not a diminished
quality of education; the injury is that she contracted for in-person classes and did not
receive in-person classes for part of the semester. The Court is thus unpersuaded by
this argument.

Defendant argues that Plaintiff cannot establish classwide damages. Defendant
asserts, and its expert averred, that the conjoint analysis method that Plaintiff proposes
to use to determine damages fails to account for the presence of COVID-19, fails to use
an appropriate universe of survey respondents, and fails to account for supply-side
factors. However, Plaintiff's experts addressed those concerns to the Court's

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4: 37

Case No. 2021-00036JD                -16-                           DECISION

satisfaction.  Indeed, because the alleged implied contract was entered into before the arrival of COVID-19 to the United States, the survey and conjoint analysis should not take COVID-19 into account.  The Court is satisfied that Plaintiff's model for determining damages is consistent with its liability case.  *See Behrend*, 569 U.S. at 35, 133 S.Ct. 1426, 185 L.Ed.2d 515.

The Court agrees with Plaintiff that the elements of each claim are well suited for classwide determination.  Accordingly, the Court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

The Court further finds that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy presented by Plaintiff, especially given a requirement and desirability that litigation of the presented claims should be litigated in this forum.  *See* Civ.R. 23(B)(3); *see also* R.C. 2743.03(A)(1) (providing that the Ohio Court of Claims "has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in [R.C. 2743.02] and exclusive jurisdiction of the causes of action of all parties in civil actions that are removed to the court of claims").  Furthermore, a class action would achieve economies of time, expense, and effort, as well as promote a uniformity of decisions relative to similarly situated persons.  *See Cross v. Univ. of Toledo*, Ct. of Cl. No. 2020-00274JD, 2021 Ohio Misc. LEXIS 43 (Apr. 26, 2021), *on appeal*, 10th Dist. Franklin No. 21-AP-000279; *see also Weiman v. Miami Univ. & Baumgartner v. Miami Univ.*, Ct. of Cl. Nos. 2020-00614JD & 2020-00644JD (Dec. 12, 2021), *on appeal*, 10th Dist. Franklin No. 22-AP-000036; *McDermott v. The Ohio State Univ.*, Ct. of Cl. No. 2020-00286JD (Dec. 27, 2021); *Smith v. The Ohio State Univ.*, Ct. of Cl. No. 2020-00321JD (Jan. 21, 2022).

Therefore, the Court finds that this action is appropriate for class certification under Civ.R. 23(B)(3).  Because the Court concludes that the action is appropriate for

FILED
COURT OF CLAIMS
OF OHIO

2022 FEB 25  PM 4: 37

Case No. 2021-00036JD                    -17-                         DECISION

class certification under Civ.R. 23(B)(3), there is no need to assess whether it is appropriate for certification under Civ.R. 23(B)(1).

**Conclusion**

For the reasons discussed above, the Court concludes that the proposed class, as defined above, satisfies the requirements for class certification by a preponderance of the evidence.  A review of the docket shows that Plaintiff is represented by five attorneys from five different law firms.  The Court requests Plaintiff to inform the Court which attorneys she seeks to have certified as class counsel, with reasons therefor, and to provide any supporting evidence regarding the adequacy of proposed class counsel.

DALE A. CRAWFORD
Judge

**IN THE COURT OF CLAIMS OF OHIO**

FILED
COURT OF CLAIMS
OF OHIO
2022 FEB 25  PM 4:31

| | |
|---|---|
| GILA DUKE, Indv. | Case No. 2021-00036JD |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO UNIVERSITY | |
| Defendant | |

For the reasons set forth in the Decision filed currently herewith, the Court holds that Plaintiff's proposed class, as defined in the Decision, satisfies the requirements for class certification by a preponderance of the evidence.  Plaintiff may inform the Court on or before *March 14, 2022*, whether she has a preference concerning the appointment of class counsel and, if so, whom she prefers to be appointed class counsel with reasons therefor, and to provide any supporting evidence regarding the adequacy of proposed class counsel.

DALE A. CRAWFORD
Judge

cc:

Michael H Carpenter
Michael N Beekhuizen
Timothy R Bricker
280 Plaza, Suite 1300
280 North High Street
Columbus, OH  43215

Randall W Knutti
Peter E DeMarco
Jeanna V Jacobus
Assistant Attorneys General
30 East Broad Street, 16th Floor
Columbus, OH  43215

JOURNALIZED

Case No. 2021-00036JD                    -2-                        JUDGMENT ENTRY

Kathleen P Lally                         Josh Arisohn
Carlson Lynch, LLP                       Bursor & Fisher, P.A.
111 West Washington Street Suite 1240    888 Seventh Avenue
Chicago, IL  60602                       New York, NY  10019

James L Simon                            Scott D Simpkins
5000 Rockside Road, Suite 520            55 Public Square, Suite 1950
Independence, OH  44131                  Cleveland, OH  44113

Clifford P Bendau II                     Jamisen Etzel
P.O. Box 97066                           1133 Penn Avenue, 5th Floor
Phoenix, AZ  85060                       Pittsburgh, PA  15222

012



JOURNALIZED

**EXHIBIT 98**

## IN THE COURT OF CLAIMS OF OHIO



| | |
|---|---|
| LAWRENCE KEBA, Indv. | Case No. 2020-00639JD |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>DECISION</u> |
| BOWLING GREEN STATE UNIVERSITY | |
| Defendant | |

Pursuant to Civ.R. 23, Plaintiff Lawrence Keba moves for certification of this action as a class action.  Defendant Bowling Green State University (BGSU) opposes Keba's motion.  Keba's Civ.R. 23 motion has been fully briefed.  The Court also has held a hearing on Keba's Civ.R. 23 motion.  For reasons set forth below, the Court holds that the parties' proposed amended class, as modified by the Court, satisfies requirements for class certification by a preponderance of the evidence.

### I.    Introduction

Lawrence Keba represents in his Complaint that he "is a citizen of Pennsylvania who resides in Emmaus, Pennsylvania." (Complaint, ¶ 8.)  Keba also represents that he "is an undergraduate student at BGSU where he is studying to be a commercial pilot and pursuing a degree in Flight Technology and Operations." (Complaint, ¶ 8.)

Keba generally contends in the Complaint that, based on BGSU's response to a pandemic of the Novel Coronavirus Disease 2019 (COVID-19) during BGSU'S Spring 2020 academic semester, he, and others similarly situated, lost the benefit of the education for which they paid or, the services for which their fees paid, or both, since BGSU did not refund tuition and fees to Keba, as well as others similarly situated.  In the Complaint, Keba, on behalf of himself and other similarly situated, presents claims of breach of contract, unjust enrichment, and conversion.  On BGSU's motion, the Court

FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30  PM 3: 03

Case No. 2020-00639JD                    -2-·                       DECISION

dismissed the claim of conversion pursuant to Civ.R. 12(B)(6).  Two claims remain for adjudication: breach of contract and unjust enrichment.  BGSU generally disputes Keba's claims.

## II.    Keba seeks certification of this case as a class action.

Keba sought in the Complaint "to represent a class defined as all BGSU students who paid [BGSU] Spring Semester 2020 tuition and/or fees for in-person educational services that [BGSU] failed to provide, and whose tuition and fees have not been refunded."   (Complaint, ¶ 23.)   Keba asserts in the Complaint that "[s]pecifically excluded from the Class are [BGSU], [BGSU's] officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by [BGSU], and its heirs, successors, assigns, or other persons or entities related to or affiliated with [BGSU] and/or [BGSU's] officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family."  (Complaint, ¶ 23.)

In Keba's Civ.R. 23 motion filed on October 1, 2021, Keba modified the definition of the proposed class, as set forth in the Complaint.  In Keba's Civ.R. 23 motion, Keba proposes the following class: "All undergraduate students enrolled in classes at the Main campus of Bowling Green State University during the Spring 2020 semester who paid tuition and/or fees." (Motion For Class Certification, 6.)  Keba maintains that this redefined proposed class is identifiable, that he is a member of the proposed redefined class, that the Civ.R. 23 elements of numerosity, commonality, and typicality are satisfied, that Keba and the proposed redefined class have fair and adequate representation, that common issues predominate, and that a class action is superior to thousands of individual actions.

In opposition, BGSU maintains that Keba's arguments—and Keba's experts' proposed damages model—fail to account for individualized factors, which, in BGSU's view, predominate over any common issues.  BGSU further maintains that, despite the

FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30   PM 3: 03

Case No. 2020-00639JD                    -3-                              DECISION

COVID-19 pandemic, students at BGSU received access to education, the opportunity to earn credit for that education, and diplomas.  BGSU maintains that determining what each student contracted for requires an individualized inquiry. BGSU reasons that, because there is no tuition distinction between in-person and online classes at BGSU, then there is no injury in fact.  And, according to BGSU, governmental health orders prohibited provision of in-person learning and other on campus activities, thereby excusing the alleged contractual obligations of BGSU.   And in BGSU's view, such governmental health orders justified the provision of remote learning.   Additionally, BGSU maintains that Keba's proposed methodology for determining damages is flawed and unreliable because Keba's proposed methodology ignores the COVID-19 pandemic (which created a high risk of infection in public settings) and governmental health orders that essentially prohibited in-person university operations.

In reply, Keba contends that BGSU'S online classes do not defeat the element of predominance, that his theory of damages is not based on lost credit hours; that the doctrine of impossibility has no bearing on the issue of class certification, and that his methodology for determining damages is reliable.  Keba maintains that the market price of tuition at BGSU was based, in part, on the ability of students to take in-person classes and an ability to access the BGSU campus. According to Keba, after March 13, 2020, students were not given the opportunity to take in-person classes and could not access the BGSU campus. Keba maintains that students who enrolled in online classes were still supposed to receive access to the BGSU campus and that they did not receive the benefit of their bargain.

### III.   The Court holds a hearing on Keba's motion for class certification.

On March 11, 2022, after Keba's Civ.R. 23 motion had been fully briefed, the Court held a hearing on Keba's Civ.R. 23 motion.  Keba, through counsel, informed the Court that the definition of the proposed class should be amended because BGSU has refunded fees for housing, dining, and parking, but BGSU has not refunded a general



FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30  PM 3: 03

Case No. 2020-00639JD                    -4-                              DECISION

fee.  Keba, through counsel, urged that this case is similar to other cases against state universities for which the Court has granted motions for class certification.

BGSU, through counsel, advised the Court that an aviation fee and certain other miscellaneous fees have been refunded.  BGSU, through counsel, maintained that the proposed class should not be certified because Keba's proposed class is overbroad as proof of damages in a breach-of-contract action requires an individualized determination, which varies based on students' enrollment preferences and expectations.  Keba's counsel further maintained that most contract cases are not amenable to class certification because contract cases are dependent on the parties' bargain, the parties' expectations, and whether expectations have been met.  Keba's counsel also maintained that it was impossible for BGSU to provide in-person classes during portions of the COVID-19 pandemic due to state health orders.  And, according to BGSU, assuming for the sake of argument that it was possible for BGSU to perform its part of the parties' alleged contract, then BGSU substantially performed any contract because, during the COVID-19 pandemic, BGSU provided students with an opportunity to complete their academic studies on schedule, which, in turn, resulted in no injury to enrolled students affected by the COVID-19 pandemic.  BGSU also questioned the methodology proposed by Keba's expert witnesses.

In response, Keba, through counsel, noted that students at BGSU were still injured because students paid fees to access certain buildings at BGSU and these students were denied access.  Keba, through counsel, maintained that the issue of impossibility concerned an issue pertaining to the merits of the case.  And, according to Keba's counsel, BGSU's claim of impossibility as a defense is unavailing because BGSU could have delayed its performance to a time when BGSU could fully perform under the parties' contract.  Keba's counsel advised the Court that Keba's education has been delayed and that Keba has not graduated from BGSU yet.



FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30  PM 3: 03

Case No. 2020-00639JD                          -5-                                    DECISION

At the conclusion of the hearing, the Court announced that class certification was warranted, but the Court asked the parties to file a proposed redefined class.

### IV.     The parties submit a proposed redefined class definition.

On March 17, 2022, in accordance with the Court's request, the parties jointly submitted the following amended class definition:

> All undergraduate students enrolled in classes at the Main Campus of Bowling Green State University during the Spring 2020 semester who paid tuition and/or fees who: (a) paid tuition and fees, but only to the extent they were not refunded; and (b) did not withdraw from classes before March 13, 2020.

In the joint submission, BGSU informed the Court that it "does not object to the amended class definition, but in so doing does not waive any of its objections previously stated in its class certification briefing and/or at the class certification hearing. Further, by not objecting to the amended class definition, [BGSU] is not waiving its right to appeal any class certification Order in this case. [BGSU] otherwise has no objection to Plaintiffs [sic] amended class definition in light of the Judge's determination that class certification is warranted."

### V.     The Court modifies the jointly proposed amended class definition.

Civ.R. 23 governs class actions in Ohio. Pursuant to Civ.R. 23(C)(1)(c), an order that grants or denies class certification "may be altered or amended before final judgment." As one federal district court sitting in Ohio has observed,

> District courts have the discretion and even the obligation "to reassess their class rulings as the case develops." *McNamara v. Felderhof*, 410 F.3d 277, 281 n.8 (5th Cir. 2005) (citing Fed. R. Civ. P. 23(c)(1)(C) and quoting *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2nd Cir.1999)). The Court's "discretion extends to defining the scope of the class."

FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30  PM 3: 03

Case No. 2020-00639JD                    -6-                            DECISION

> *Shapiro v. Midwest Rubber Reclaiming Co.*, 626 F.2d 63, 71 (8th Cir.
> 1980). Thus, a class may be redefined or decertified entirely at any time
> prior to final judgment. *See General Tel. Co. of SW v. Falcon*, 457 U.S.
> 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ("Even after a [class]
> certification order is entered, the judge remains free to modify it in light of
> subsequent developments in the litigation. '); *McNamara*, 410 F.3d at 280
> n.8 ("a trial court overseeing a class action retains the ability to monitor the
> appropriateness of class certification throughout the proceedings and to
> modify or decertify a class at any time before final judgment") (quoting *In
> re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004)).
> Indeed, "changes in proposed class definitions are commonplace in
> litigation under Rule 23." *Ammons v. La Z-Boy Inc.*, 2009 U.S. Dist.
> LEXIS 96963, 2009 WL 3460306 at *5 (D. Utah Oct. 20, 2009).

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litigation*, 302 F.R.D. 448, 459
(N.D.Ohio 2014).[1].

The Court finds that, for the sake of clarity, the parties' proposed amended class
definition should be modified, as follows:

> All undergraduate students enrolled in classes at the Main Campus of
> Bowling Green State University during the Spring 2020 semester who (a)
> paid tuition or fees, or both, but only to the extent that such tuition or fees,
> or both, were not refunded, and who (b) did not withdraw from classes
> before March 13, 2020.

For reasons discussed *infra*, the Court concludes that the proposed amended class
definition, as modified by the Court, should be approved.

---

[1] The Ohio Supreme Court has determined that federal authority may aid Ohio courts in
interpreting Civ.R. 23. *See Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-
4733, 999 N.E.2d 614, ¶ 14, quoting *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201, 509 N.E.2d
1249 (1987).

FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30  PM 3: 03

Case No. 2020-00639JD                         -7-                              DECISION

## VI.    Law and Analysis

The relationship between a student and a university is contractual in nature.  The Ohio Supreme Court has remarked,

> Students evaluate and determine which university best meets their needs, and then pay a fee to attend that university.  The relationship formed under these conditions has previously been characterized as contractual.
>
> * * * The student pays a fee and agrees to abide by the university rules.  In exchange, the university provides the student with a worthwhile education.

*Hanson v. Kynast*, 24 Ohio St.3d 171, 174, 494 N.E.2d 1091 (1986).  *Accord Behrend v. State*, 55 Ohio App.2d 135, 139, 379 N.E.2d 617 (10th Dist.1977) ("[g]enerally it may be stated that when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature").

Civ.R. 23(C)(1)(a) provides, "At an early practicable time after a person sues or is sued as a class representative, the court shall determine by order whether to certify the action as a class action."   The party who seeks to maintain a class action under Civ.R. 23 "'bears the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in the rule.'" *Madyda v. Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 20AP-217, 2021-Ohio-956, ¶ 12 (quoting *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 15), *appeal not accepted*, 163 Ohio St.3d 1505, 2021-Ohio-2401, 170 N.E.3d 904, *reconsideration denied*, 164 Ohio St.3d 1449, 2021-Ohio-3336, 173 NE.3d 1247.  A party who seeks to maintain a class action "satisfies its burden when it establishes that all the prerequisites of Civ.R. 23(A) are met and that at least one of the conditions of Civ.R. 23(B) exists."  *Madyda* at ¶ 12.

A trial judge "has broad discretion in determining whether a class action may be maintained."  *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987),

FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30  PM 3: 03

Case No. 2020-00639JD                    -8-                         DECISION

syllabus.   The Ohio Supreme Court has cautioned, however, that the trial court's discretion in deciding whether to certify a class action "is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23." *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998).   The Ohio Supreme Court has further cautioned: "The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." *Hamilton* at 70.   The Ohio Supreme Court has stated, "In resolving a factual dispute when a requirement of Civ.R. 23 for class certification and a merit issue overlap, a trial court is permitted to examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the requirement of the rule is satisfied." *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, paragraph two of the syllabus, clarifying *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 466 N.E.2d 875 (1984).   *Accord Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 44 ("hold[ing] that at the certification stage in a class-action lawsuit, a trial court must undertake a rigorous analysis, which may include probing the underlying merits of the plaintiff's claim, but only for the purpose of determining whether the plaintiff has satisfied the prerequisites of Civ.R. 23").   In *Stammco*, 136 Ohio St.3d 231 at ¶ 33, the Ohio Supreme Court stated:

> [A] trial court's consideration of the underlying merits of a plaintiff's claim at the certification stage is not unfettered. "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. ___, 133 S.Ct. 1184, 1191, 185 L.Ed.2d 308 (2013).   *Amgen* confirmed that the rigorous analysis at the certification stage "may 'entail some overlap with the merits of plaintiff's underlying claim'" but stated:



FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30  PM 3:03

Case No. 2020-00639JD                    -9-                    DECISION

> "Rule 23 grants courts no license to engage in free-ranging merits
> inquiries at the certification stage.  Merits questions may be considered to
> the extent—but only to the extent—that they are relevant to determining
> whether the Rule 23 prerequisites for class certification are satisfied." *Id.*
> at 1194-1195, quoting [*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131
> S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)].

And the Tenth District Court of Appeals has stated that, "although it is the preferred
course, Civ.R. 23 does not mandate that the trial court make specific findings on each of
the seven prerequisites for class certification, nor that it articulate its reasoning for such
findings as part of its rigorous analysis."  *Madyda v. Ohio Dept. of Pub. Safety*, 10th
Dist. Franklin No. 20AP-217, 2021-Ohio-956, ¶ 10, citing *Hamilton* at 70-71.

The Ohio Supreme Court has enumerated requirements for maintaining a class
action under Civ.R 23.  The Ohio Supreme Court has stated:

> Civ.R. 23 provides seven requirements for maintaining a class action:
>
> "(1) an identifiable class must exist and the definition of the class must be
> unambiguous; (2) the named representatives must be members of the
> class; (3) the class must be so numerous that joinder of all members is
> impracticable; (4) there must be questions of law or fact common to the
> class; (5) the claims or defenses of the representative parties must be
> typical of the claims or defenses of the class; (6) the representative parties
> must fairly and adequately protect the interests of the class; and (7) one of
> the three Civ.R. 23(B) requirements must be met."
>
> *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-
> Ohio-1042, 926 N.E.2d 292, at ¶ 6, quoting *Hamilton v. Ohio Sav. Bank*,
> 82 Ohio St.3d 67, 71, 1998-Ohio-365, 694 N.E.2d 442 (1998), citing
> Civ.R. 23(A) and (B) and *Warner v. Waste Mgt.*, 36 Ohio St. 3d 91, 521
> N.E.2d 1091 (1988).



FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30  PM 3: 03

Case No. 2020-00639JD                    -10-                              DECISION


*Cullen* at ¶ 12.[2]   *Accord Madyda* at ¶ 11.   *See* Civ.R. 23(A) (prerequisites) and (B) (types of class actions).[3]

The Ohio Supreme Court has stated that "any doubts about adequate representation, potential conflicts, or class affiliation should be resolved in favor of

---

[2] Some commentators have suggested that the Ohio Supreme Court may have crafted an eighth requirement: whether the definition of the class is too "broad." *Weissenberger's Ohio Civil Procedure Litigation Manual* 210 (2021 Ed.).  Adjunct Professor A.J. Stephani and Professor of Law Emeritus Glen Weissenberger state, "Gently probing the facts of the case, the *Stammco* court [*Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d, 231, 2013-Ohio-3019, 994 N.E.2d 408] noted that the defendant had 'no records regarding which charges are authorized and which are not.... [and thus] [u]nauthorized third-party charges are better resolved on an individual basis with the third party or UTO [United Telephone Company of Ohio].' *Id.* at ¶ 65." Supreme Court may have crafted an eighth requirement: whether the definition of the class is too "broad." *Weissenberger's Ohio Civil Procedure Litigation Manual* at 210.

[3] Civ.R. 23 provides:
**(A)Prerequisites.**
One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
**(1)** the class is so numerous that joinder of all members is impracticable,
**(2)** there are questions of law or fact common to the class,
**(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class, and class.
**(4)** the representative parties will fairly and adequately protect the interests of the class.

**(B)Types of class actions.**
A class action may be maintained Civ.R. 23(A) is satisfied, and if:
**(1)** prosecuting separate actions by or against individual class members would create a risk of:
**(a)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
**(b)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; or
**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
**(a)** the class members' interests in individually controlling the prosecution or defense of separate actions;
**(b)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
**(c)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
**(d)** the likely difficulties in managing a class action.
* * *



upholding the class, subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand, including the augmentation or substitution of representative parties." *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 487, 727 N.E.2d 1265 (2000). *See* Civ.R. 23(C)(1)(c) (altering or amending an order of class certification).

Upon consideration of the parties' briefings and arguments, and after undertaking a rigorous analysis, as required under Ohio law, the Court finds that the proposed amended class, as modified by the Court, is identifiable and unambiguous, *see State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 11 (stating that "no clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous"), and that, if individual class members were to separately prosecute actions against BGSU, inconsistent or varying adjudications may establish incompatible standards for BGSU.

The Court also finds that, whether Keba, as well as those similarly situated, are entitled to remediation for payment of tuition or fees, or both presents questions of law or fact common to Keba, and those similarly situated.   And the Court finds that questions of law or fact common to the putative class members predominate over any questions affecting only individual members.  *See Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, ¶ 33 (plaintiffs in class-action suits "must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions. * * * Although plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by each class member, * * *  they must adduce common evidence that shows all class members suffered *some* injury"); *Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (observing that, at the class-certification stage, any model supporting a plaintiff's damages case must be consistent with its liability case). *See generally* 5 Moore's Federal Practice – Civil,



FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30  PM 3: 03

Case No. 2020-00639JD                   -12-                          DECISION

Section 23.45[1] (2021) (absence of bright-line test for determining whether common questions of law or fact predominate).[4]  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-454, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016).[5]

The Court further finds that Keba's claims relative to remediation for payment of tuition or fees, or both, are typical of the claims of the proposed amended class, as redefined by the Court.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350,

---

[4] Commentators have noted in 5 Moore's Federal Practice – Civil, Section 23.45[1] (2021):

There is no precise test for determining whether common questions of law or fact predominate, however. Instead, the Rule requires a pragmatic assessment of the entire action and all the issues involved. In making that assessment, courts have enunciated a number of standards, finding predominance if:

- The plaintiff can establish that resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and that these particular issues are more substantial than the issues subject to individualized proof.
- The substantive elements of class members' claims require the same proof for each class member.
- The proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interests.
- The resolution of an issue common to the class would significantly advance the litigation.
- One or more common issues constitute significant parts of each class member's individual cases.
- The common questions are central to all of the members' claims.
- The same theory of liability is asserted by or against all class members, and all defendants raise the same basic defenses.
- It is more efficient, in terms both of economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis, rather than decide all issues in separate trials.

(Footnotes omitted.)

[5] In *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-454, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016), the United States Supreme Court stated,

The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  [2 W. Rubenstein, Newberg on Class Actions., §4:49, pp. 195-196. (5th Ed. 2012)].  When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members. " 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1778, pp. 123-124 (3d ed. 2005) (footnotes omitted).



FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30 PM 3: 03

Case No. 2020-00639JD                    -13-                         DECISION

131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury'").

The Court also finds that the particular context of this case demonstrates that a class is superior to joinder, given the number of undergraduate students at BGSU's main campus who may have paid fees or tuition, or both, for the Spring 2020 semester, and who have not been refunded tuition or fees, or both, on a pro rata basis. Factors of geographic dispersion of students who attended the Spring 2020 semester at BGSU's main campus, potential requests for relief from other students who attended the Spring 2020 semester at BGSU's main campus, as well as judicial economy, favor certification of a class rather than joinder. *See Pennsylvania Pub. School Emp. Retirement Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir.2014) ("[n]umerosity is presumed for classes larger than forty members* * *  However, the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members").

The Court further finds that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy presented by Keba, especially given a requirement and desirability that litigation of the presented claims should be litigated in this forum. *See* Civ.R. 23(B)(3); R.C. 2743.03(A)(1) (providing that the Ohio Court of Claims "has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in [R.C. 2743.02] and exclusive jurisdiction of the causes of action of all parties in civil actions that are removed to the court of claims").

FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30  PM 3: 03

Case No. 2020-00639JD                    -14-                         DECISION

      The Court also finds that Keba, as the named representative, is a member of the proposed redefined class.  And the Court finds that it has no reason to doubt that Keba will fairly and adequately protect the interests of the proposed class.

      In sum, the Court determines that Keba has satisfied requirements for class certification by a preponderance of the evidence.  A class action would achieve economies of time, expense and effort, as well as promote a uniformity of decisions relative to similarly situated persons.

### VII.  Keba should inform the Court of a preference, if any, for appointment of class counsel.

      The Court advises Keba that it intends to limit the potential award of attorney fees to one set of class counsel.  A review of this case's docket shows that Keba presently is represented by two attorneys—Ohio attorney Scott D. Simpkins (0066775) and Joshua Arisohn (pro hac vice) (PHV 22138 – 2022).  The Court asks Keba to inform the Court whether he has a preference concerning the appointment of class counsel and, if so, whom he prefers to be appointed class counsel with reasons therefor, and to provide any supporting evidence regarding the adequacy of proposed class counsel. *See generally In re NHL Players' Concussion Injury Litigation*, D.Minn. No. 14-2551 (SRN/BRT), 2017 U.S. Dist. LEXIS 115159, at *5 (July 24, 2017) (courts possess administrative and procedural authority over the course of class action proceedings under Fed.R.Civ.P. 23(d)(1)(A) and 23(d)(1)(E) and inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases).

      The Court advises Keba that, pursuant to Civ.R. 23(F)(2), this Court may appoint an applicant as class counsel "only if the applicant is adequate under Civ.R. 23(F)(1) and (4)" and, if more than one adequate applicant seeks appointment, then this Court is required to "appoint the applicant best able to represent the interests of the class." *See*



Case No. 2020-00639JD                    -15-                            DECISION

Civ.R. 23(F)(1) and (4).[6]  The Court also advises Keba that Rule 12 of The Supreme
Court of Ohio's Rules For The Government Of The Bar of Ohio imposes limits on the
number of proceedings in which an attorney who has been granted permission to
appear pro hac vice may appear.  *See* Gov.Bar.R. XII, Section 2(A)(6).[7]  Attorney
Joshua Arisohn (pro hac vice) (PHV 22138 – 2022) who has been granted permission
to appear pro hac vice in this matter on behalf of Keba or, an out-of-state attorney who
may seek permission to appear pro hac vice in this matter on behalf of Keba and the

---

[6] Civ.R. 23(F)(1) provides:

A court that certifies a class shall appoint class counsel. In appointing class counsel, the court:

(a) shall consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class;

(b) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(c) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(d) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Civ.R. 23(G); and

(e) may make further orders in connection with the appointment.

Civ.R. 23(F)(4) provides: "Class counsel shall fairly and adequately represent the interests of the class."

[7] Section 2(A)(6) of Gov.Bar.R. XII provides:

An attorney who has been granted permission to appear pro hac vice may participate in no more than three proceedings under this rule in the same calendar year the application is filed. In the event a proceeding continues to the next or subsequent calendar years, the proceeding will not count toward the annual limitation. An appeal from a trial court or court of appeals, an appeal of an administrative agency order or ruling, a transfer of an action to a court of competent jurisdiction, or the consolidation of two or more cases, where the attorney participated in the initial proceeding, shall not be counted toward the annual limitation. Participation for the first time by an attorney at any stage during a proceeding shall count toward the annual limitation.

FILED
COURT OF CLAIMS
OF OHIO

2022 MAR 30  PM 3: 03

Case No. 2020-00639JD                    -16-                              DECISION

class, therefore may be subject to certain requirements under Gov.Bar.R. XII that may or, may not, affect such attorney's eligibility to serve as class counsel in this matter.

### VIII.    Conclusion

The Court holds that the parties' proposed amended class, as modified by the Court, satisfies requirements for class certification by a preponderance of the evidence.


DALE A. CRAWFORD
Judge

# IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| LAWRENCE KEBA, Indv. | Case No. 2020-00639JD |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>JUDGMENT ENTRY</u> |
| BOWLING GREEN STATE UNIVERSITY | |
| Defendant | |

2022 MAR 30 PM 3: 03
FILED
COURT OF CLAIMS
OF OHIO

For reasons set forth in the Decision filed concurrently herewith, the Court holds that the parties' proposed amended class, as modified by the Court, satisfies requirements for class certification by a preponderance of the evidence.

On or before *April 8, 2022,* Plaintiff Lawrence Keba may inform the Court whether he has a preference concerning the appointment of class counsel and, if so, whom he prefers to be appointed class counsel with reasons therefor, and any supporting evidence regarding the adequacy of proposed class counsel.

DALE A. CRAWFORD
Judge

cc:

Jared J Lefevre
Nicholas W. Bartlett
Stephen E Chappelear
100 East Broad Street, Suite 2100
Columbus, OH  43215

Scott D Simpkins
55 Public Square, Suite 1950
Cleveland, OH  44113



Case No. 2020-00639JD                    -2-                         JUDGMENT ENTRY

Josh Arisohn
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY  10019

009

FILED
COURT OF CLAIMS
OF OHIO
2022 MAR 30  PM 3:03

JOURNALIZED