**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PENNY NINIVAGGI et al., individually and on behalf of all others similarly situated, | Civil Action No. 20-cv-1478-SB |
| *Plaintiffs*, | |
| v. | |
| UNIVERSITY OF DELAWARE, | |
| *Defendant*. | |
| HANNAH RUSSO, individually and on behalf of all others similarly situated, | Civil Action No. 20-cv-1693-SB |
| *Plaintiffs*, | |
| v. | |
| UNIVERSITY OF DELAWARE, | |
| *Defendant*. | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION
<u>FOR CLASS CERTIFICATION</u>**

**SAUL EWING ARNSTEIN & LEHR LLP**

James D. Taylor, Jr. (#4009)
Marisa R. De Feo (#6778)
Juliana G. Clifton (#6980)

**OF COUNSEL**                                    1201 N. Market Street , Suite 2300
                                                 Wilmington, DE  19801
**SAUL EWING ARNSTEIN & LEHR LLP**               (302) 421-6800
                                                 james.taylor@saul.com
Jonathan A. Singer (admitted *pro hac vice*)     marisa.defeo@saul.com
1001 Fleet Street, 9th Floor                     juliana.clifton@saul.com
Baltimore, MD 21202
(410) 332-8690                                   *Counsel for Defendant University of Delaware*
jon.singer@saul.com

Dated: August 26, 2022

## **TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF THE PROCEEDING & SUMMARY OF THE ARGUMENT ....... 1

STATEMENT OF FACTS .............................................................................................. 1

ARGUMENT ................................................................................................................. 2

I.      PLAINTIFFS LACK ARTICLE III STANDING ............................................... 2

II.     THE PROPOSED CLASS IS NOT ASCERTAINABLE ................................... 3

        A.      The Putative Class is Not Defined By Objective Criteria...................... 4

        B.      The Class is Not Administratively Feasible.......................................... 5

III.    PLAINTIFFS CANNOT SATISFY RULE 23(A) ............................................. 6

        A.      Plaintiffs' Proposed Class Fails Rule 23(a)'s Numerosity Requirement. ............... 6

        B.      Plaintiffs' Individual Claims are Not Typical of the Proposed Class. ................... 6

        C.      Plaintiffs are Inadequate Class Representatives Under Rule 23(a). ...................... 9

        D.      Plaintiffs' Proposed Class Counsel is Also Inadequate. ...................... 13

IV.     RULE 23(B)(3) CANNOT BE MET AS A MATTER OF LAW .................................... 14

        A.      Plaintiffs Cannot Meet Commonality and Predominance Requirements. ............ 14

                1.      Plaintiffs' Breach of Implied Contract Claims Require an Individualized
                        Showing of Contract Formation Via Mutual Assent. ............................ 15

                2.      Plaintiffs' Unjust Enrichment Claims are Inherently Individualized. ..... 16

        B.      Individualized Damages Issues Predominate Over Common Damages Issues. ... 18

        C.      Plaintiffs Cannot Satisfy Superiority Because Individualized Inquiries Render the
                Class Unmanageable. ......................................................................... 19

CONCLUSION ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

CASES

*Abla v. Brinker Rest. Corp.*,
   279 F.R.D. 51 (D. Mass. 2011)................................................................15

*Bogosian v. Gulf Oil Corp.*,
   561 F.2d 434, 449 (3d Cir. 1977)..............................................................9

*Boley v. Universal Health Services*,
   36 F.4th 124 (3d Cir. 2022) .....................................................................7

*Bontempo v. Wolpoff & Abramson, L.L.P.*,
   2008 WL 163051 (W.D. Pa. Jan. 15, 2008)...........................................9

*Byrd v. Aaron's, Inc.*,
   784 F.3d 154 (3d Cir. 2015)..............................................................4, 6

*Cap. Mgmt. Co. v. Brown*,
   813 A.2d 1094 (Del. 2002) ....................................................................15

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013)................................................................4, 5

*Coyle v. Hornell Brewing Co.*,
   2011 WL 2147218 (D.N.J. May 26, 2011) .........................................9, 11

*De Ascenio v. Tyson Foods, Inc.*,
   342 F.3d 301 (3d Cir. 2003).....................................................................15

*Dover v. British Airways, PLC (UK)*,
   321 F.R.D. 49 (E.D.N.Y. 2017)..............................................................12

*Evans v. Brigham Young*,
   2022 WL 596862, at *3-4 (D. Utah Feb. 28, 2022)..............................4, 6

*Garcia De León v. New York Univ.*,
   2019 WL 1436938 (W.D. Pa. Mar. 31, 2019) ......................................14

*Garcia De León v. New York Univ.*,
   2022 WL 2237452 (S.D.N.Y. June 22, 2022) ...........................13, 14, 19

*Goldman v. Alhadeff*,
   131 F.R.D. 188 (W.D. Wash. 1990) .......................................................12

*Grandalski v. Quest Diagnostics, Inc.*,
   767 F.3d 175 (3d Cir. 2014)............................................................14, 16

*Guidry v. Wilmington Trust.*,
   333 F.R.D. 324 (D. Del. 2019) ..................................................................7

*Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharm.*,
   529 F. Supp.3d 385 (E.D. Pa. 2021) ......................................................14

*Henkel v. Highgate Hotels, LP*,
   2021 WL 2550203 (M.D. Pa. June 22, 2021) ........................................13

*Jackson v. Se. Pennsylvania Transp. Auth.*,
   260 F.R.D. 168 (E.D. Pa. 2009)................................................................4

*Kauffman v. Dreyfus Fund, Inc.*,
   434 F.2d 727 (3d Cir. 1970), *cert. denied*, 401 U.S. 974 (1971)..............3

*Kondratick v. Beneficial Consumer Disc. Co.*,
   2006 WL 305399 (E.D. Pa. Feb. 8, 2006) ...............................................4

*Long v. Se. Pennsylvania Transp. Auth.*,
   903 F.3d 312 (3d Cir. 2018)......................................................................2

*Manchester Equip. Co., Inc. v. Am. Way Moving and Storage, Co.*,
   176 F. Supp.2d 239 (D. Del. 2011)........................................................15

*Martin v. Ford Motor Co.*,
   292 F.R.D. 252 (E.D. Pa. 2013)................................................................7

*McDaniel v. Cty. Of Schenectady*,
   2005 WL 1745566 (N.D.N.Y. July 21, 2005) ........................................12

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016)........................................................... passim

*Neale v. Volvo Cars of N. Am., LLC*,
   794 F.3d 353 (3d Cir. 2015)................................................................2, 3

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) ..............................................................17, 18

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001)....................................................................20

*Ninivaggi v. Univ. of Delaware*,
   555 F. Supp.3d 44 (D. Del. 2021)......................................................3, 16

*Norman v. Arcs Equities Corp.*,
 72 F.R.D. 502 (S.D.N.Y. 1976) ..............................................................................12

*Patel v. Univ. of Vermont and State Agric. Coll.*,
 2021 WL 3109908 (D. Vt. July 22, 2021) ..............................................................3

*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*,
 763 F. Supp.2d 671 (D. Del. 2010).......................................................................12

*Rockford Principals and Supervisors Ass'n v. Bd. of Educ. Of Rockford Sch. Dist. No. 205*,
 721 F. Supp. 948 (N.D. Ill. 1989) .........................................................................15

*Scott v. New York City. Dist. Council of Carpenters Pension Plan*,
 224 F.R.D. 353 (S.D.N.Y. 2004) ...........................................................................11

*In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*,
 421 F. Supp.3d 12 (E.D. Pa. 2019), *aff'd.* 967 F.3d 264 (3d Cir. 2020)..................9

*Sullivan v. DB Invests. Inc.*,
 667 F.3d 273 (3d Cir. 2011)...................................................................................14

*Tyson Foods, Inc. v. Bouaphakeo*,
 577 U.S. 442 (2016)...............................................................................................14

*Vega v. T-Mobile USA, Inc.*,
 564 F.3d 1256 (11th Cir. 2009) ......................................................................17, 18

*Vichi v. Koninklijke Philips Elecs. N.V.*,
 62 A.3d 26 (Del. Ch. 2012)...................................................................................17

*Vrakas v. U.S. Steel Corp.*,
 2019 WL 7372041 (W.D. Pa. Dec. 31, 2019).......................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011)..........................................................................................18, 19

*Walney v. SWEPI LP*,
 2015 WL 5333541 (W.D. Pa. Sept. 14, 2015) ................................................14, 17

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ...................................................................................... *passim*

## NATURE AND STAGE OF THE PROCEEDING & SUMMARY OF THE ARGUMENT

Plaintiffs, all former or current students at the University of Delaware ( "UD"), filed this consolidated class action complaint on September 3, 2021 seeking a refund of tuition paid for the Spring 2020 semester after COVID-19 erupted.  D.I. 19.  The Court granted the Motion to Dismiss as to the conversion and express breach of contract claims, but permitted Plaintiffs' implied contract and unjust enrichment theories to survive the preliminary motion pleading stage.  *See* D.I. 15; D.I. 19.  Now that fact discovery is complete, and as will be more fully argued in UD's forthcoming Motion for Summary Judgment, Plaintiffs have no record to support either claim and they, too, fail as a matter of law.  Nevertheless, Plaintiffs ask this Court to certify a narrowed, proposed class of "[a]ll ***undergraduate students*** enrolled in classes at [UD] during the Spring 2020 semester ***who paid tuition***."  *See* D.I. 76 at 1 (emphasis added).  For the reasons explained below, the proposed class does not satisfy the requirements of Rule 23(a) and 23(b).

## STATEMENT OF FACTS

In early 2020, UD welcomed students back from winter break for the Spring 2020 semester.  At that time, over 22,000 students were enrolled at UD, including a mix of graduate and undergraduate, domestic and international, resident and non-resident, and part-time and full-time students.  Some students received scholarships and financial aid that covered all or a portion of their attendance at UD.  Students were charged separate, individually determined tuition and fees based on their unique status, financial aid, course selections, and program of study.  *See* Ex. 51 at ¶ 6.  Some students may have paid their tuition directly to UD, but most had their tuition paid by third parties.  *Id.* at ¶ 7.

On March 11, 2020, a University professor became the first recorded case of COVID-19 in the State of Delaware.  Ex. 05.  UD acted quickly to protect the UD community by temporarily suspending in-person classes.  Ex. 45 at 62:17-23.  UD canceled classes on March 12 and 13, Ex. 12, and then extended its Spring Break by one week, in hopes that students could return to campus by April 5th.  *See* Ex. 10; *see also* Ex. 11.  We now know, of course, that was not to be.  As COVID-19 continued to evolve, Delaware Governor John Carney issued a series of emergency orders.  The orders, among other things, prohibited gatherings of fifty (50) persons or more, closed all "non-essential business," and instituted a state-wide shelter in place. Ex. 06; Ex. 07; Ex. 08; Ex. 09.  Education was deemed a "non-essential business,"  Ex. 08, and UD was ***prohibited*** from providing in-person classes.

To ensure students could continue with courses and obtain credits, UD worked through Spring Break to transition in-person classes to an online format.  *See e.g.* Ex. 45 at 83:18-20, 138:5-14.  UD's efforts were a success—the temporary transition to a virtual platform did not affect the named Plaintiffs' ability to continue their course of study or progress towards their respective degrees.  *See* Ex. 44 at 101:9-12; Ex. 49 at 248:19-23; Ex. 46 at 146:15-18; Ex. 48 at 201:16-21.  And, in fact, the majority of the named Plaintiffs achieved their highest GPA's to date in the Spring 2020 semester.  Ex. 13; Ex. 14; Ex. 15.

## ARGUMENT

## I.     PLAINTIFFS LACK ARTICLE III STANDING

To maintain a class action, at least one proposed class representative must have Article III standing.  *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 366-67 (3d Cir. 2015).  For a purported class action, proposed class representatives "must allege...they personally have been injured, not that injury has been suffered by other[s]..."  *Long v. Se. Pennsylvania Transp. Auth.*,

903 F.3d 312, 325 (3d Cir. 2018); *see also Neale*, 794 F.3d at 366 (noting injury must be both "personalized [and] redressable."). If the Plaintiffs do not have standing to pursue this action, then they are likewise inadequate to serve as class representatives as a matter of law. *See Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970), *cert. denied*, 401 U.S. 974 (1971) (noting a plaintiff without standing "is certainly not in a position to 'fairly insure the adequate representation'" of the putative class).

None of the named Plaintiffs have standing because none actually paid tuition for the Spring 2020 semester. Ex. 44 at 21:14-23; 86:16-23; Ex. 49 at 27:21-24, 28:1-2; Ex. 46 at 20:16-22; 172:8-176:22; Ex. 48 at 47:6-13. Thus, they cannot establish they personally suffered any injury as a result of UD's temporary transition to an online platform. *See Ninivaggi v. Univ. of Delaware*, 555 F. Supp.3d 44, 48 (D. Del. 2021) (holding parents of University students (not the students themselves) had standing because they were the source of payment); *Patel v. Univ. of Vermont and State Agric. Coll.*, 2021 WL 3109908, at *4-5 (D. Vt. July 22, 2021) (concluding students who did not directly pay tuition to university lacked standing). Moreover, even if Plaintiffs could establish an injury, they lack standing because the alleged "injury" is not capable of being redressed by the Court. *See e.g. Patel*, 2021 WL 3109908, at *4-5. In *Patel*, where neither of the plaintiffs paid tuition themselves, the court held the student plaintiffs lacked standing because (like here) their alleged injuries were "unredressable." *Id.*

## II.        THE PROPOSED CLASS IS NOT ASCERTAINABLE

The Plaintiffs' proposed class fares no better, for there is no reliable or administratively feasible mechanism to determine class membership. The ascertainability of a proposed class "is an essential prerequisite of a class action," and the "court must undertake a rigorous analysis of the evidence to determine if [ascertainability] is met." *Carrera v. Bayer Corp.*, 727 F.3d 300,

306 (3d Cir. 2013).   A plaintiff must "affirmatively demonstrate by a preponderance of the evidence," that the proposed class satisfies ascertainability through a two-prong test.   *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).   First, the class definition must be "precise, objective, and presently ascertainable," *Jackson v. Se. Pennsylvania Transp. Auth.*, 260 F.R.D. 168, 182 (E.D. Pa. 2009), and must not require "individualized fact-finding or 'mini-trials'" to identify class members.   *Byrd*, 784 F.3d at 163; *see also Kondratick v. Beneficial Consumer Disc. Co.*, 2006 WL 305399, at *8 (E.D. Pa. Feb. 8, 2006).   Then, the "method of determining whether someone is in the class must be 'administratively feasible.'"   *Carrera*, 727 F.3d at 307 (internal quotations omitted).   Neither is present here.

### A.   The Putative Class is Not Defined By Objective Criteria.

Plaintiffs' proposed definition, while seemingly simple, fails to set forth objective criteria to ascertain class members and, instead, is based on vague and unworkable terms.

*First*, the phrase "who paid tuition" is (perhaps intentionally) vague.   A plain reading includes only students who actually paid tuition themselves.   Plaintiffs appear to concede as much when they state that the class is ascertainable because, *inter alia*, students "either paid tuition or they did not."   D.I. 76 at 20.   As noted above, that definition excludes the Plaintiffs themselves.   Plaintiffs suggest, though, that "paid tuition" could include students who paid "with the assistance of parents and/or loans."   D.I. 76 at 20.   Yet this attempted explanation, absent from the official class definition, only muddies the waters.   What does "assistance" mean?   Does it include circumstances where students pay *no* tuition and parents/loans pay all of it?   Plaintiffs' proposed definition suffers from the same defect as in *Evans v. Brigham Young*, another COVID-19-related tuition refund class action in which class certification was denied. 2022 WL 596862, at *3 (D. Utah Feb. 28, 2022).   There, because the plaintiff failed to identify

an "ascertainable number of individuals who **paid tuition** to attend in-person classes," the proposed class definition failed. *Id.* (emphasis added).

*Second*, the phrase "enrolled during the Spring 2020 semester" is also vague and imprecise. According to University policy, undergraduate students who enroll in class, but later withdraw before the conclusion of the designated add/drop period, are refunded tuition and fees in their entirety. Ex. 03. Thus, based on the "enrollment" language in the proposed definition, the putative class includes students who enrolled in classes and paid tuition for the Spring 2020 semester, but later withdrew from classes and **received a full refund.** In fact, a significant portion of UD's international students withdrew from classes and received tuition refunds after COVID-19-related border closures prevented them from attending class in any format. Ex. 30; Ex. 31. Yet Plaintiffs' proposed definition would potentially include them. Nor do Plaintiffs explain at what precise point a student would have had to remain "enrolled" or in "attendance" to qualify as a class member. Plaintiffs, who bear the burden, have provided no guidance to reconcile these significant ascertainability problems and, consequently, the class definition fails.

**B.      The Class is Not Administratively Feasible.**

Plaintiffs propose a review of UD's "records" as the method for ascertaining class members. D.I. 76 at 20 (suggesting UD consult its billing statements **for each individual student** enrolled in the Spring 2020 semester as a means to "easily identify" "which students 'paid tuition'… and which received a 'free ride' through financial aid."). Those are not of course the only two possibilities, and by their own admission, Plaintiffs' "method" requires the precise type of individual factual inquires that are inappropriate in a class action. *See Carrera*, 727 F.3d at 307-08. Moreover, Plaintiffs offer no evidence that such a review would answer the question, and UD billing statements do not reflect the source of tuition payments. Ex. 17; Ex.

18; Ex. 19; Ex. 20; Ex. 51 at ¶ 8.  Indeed, UD learned only from Russo's deposition that she received various scholarships and grants from external entities.  Ex. 20; Ex. 48 at 36:1-37:23.

As in *Evans*, even if the records "show where tuition was paid by loan, scholarship, or grant…[they] do not reflect whether the student or a third party paid the tuition."  *Evans*, 2022 WL 596862, at *3.  Because "the Court would have to individually inquire into all [] students enrolled…to determine who paid tuition," ascertainability cannot be met.  *Id.* at *4.

## III.    PLAINTIFFS CANNOT SATISFY RULE 23(A)

The burden is on the party seeking class certification to "establish[] by a preponderance of the evidence that the requirements of Rule 23(a) have been met."  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016).  Plaintiffs "cannot merely provide assurances … that it will later meet [them]."  *Byrd*, 784 F.3d at 164.

### A.    Plaintiffs' Proposed Class Fails Rule 23(a)'s Numerosity Requirement.

Certainly a class of 17,000 students is numerous—but the Plaintiffs have made no showing that this many students actually paid tuition.  Plaintiffs' identification of 17,138 students who "paid [UD] tuition to attend the Spring 2020 semester" is incorrect, for this number captures only students who **enrolled** in the Spring 2020 semester.  *Contrast* D.I. 76 at 12 with Ex. 21 at No. 4.  In *Evans* the plaintiff purported to identify a class of 33,000 students who enrolled in classes at BYU, but the court held that numerosity could not be established because the plaintiff did "not identif[y] any ascertainable number of individuals who paid tuition."  *Evans*, 2022 WL 596862, at *3-*4.  The same applies here.

### B.    Plaintiffs' Individual Claims are Not Typical of the Proposed Class.

Class certification requires a showing "that the class representatives' claims [are] 'typical of the claims . . . of the class.'"  *In re Nat'l Football League Players Concussion Injury*

*Litig.*, 821 F.3d at 427 (quoting Fed. R. Civ. P. 23(a)(3)).  Certification is not appropriate where "the class representatives' legal theor[ies] and claim[s], or the individual circumstances on which those theories and claims are based, are different from those of the class."  *Boley v. Universal Health Services*, 36 F.4th 124, 133 (3d Cir. 2022); *see also Guidry v. Wilmington Trust.*, 333 F.R.D. 324, 329 (D. Del. 2019).  The named Plaintiffs' claims are not only atypical of the putative class, but are also atypical of each other because:

- ***Plaintiffs did not pay tuition themselves.***  Because none of the Plaintiffs are members of the proposed class, their claims are atypical.  Ex. 44 at 21:11-17; Ex. 46 at 20:16-22; Ex. 48 at 47:6-13; Ex. 49 at 27:18-28:2; *see Martin v. Ford Motor Co.*, 292 F.R.D. 252, 276 (E.D. Pa. 2013) (denying class certification because the plaintiff was not a class member).

- ***Three Plaintiffs concede there was no promise.***  Russo, Mickey, and Ninivaggi conceded there was no implied promise, and thus their claims are atypical of the class.  Russo admitted she "assumed" classes would be in-person; not that she was promised they would be. Ex. 48 at 108:1-13.  Mickey and Ninivaggi likewise admitted UD never promised to provide in-person instruction or access to campus during the Spring 2020 semester, rendering their claims atypical as well.  Ex. 44 at 127:21-23, 128:8-11; Ex. 46 at 168:8-13.

- ***Russo voluntarily left campus.***  Russo's claims are further rendered atypical because she left campus as a direct response to the discovery of a positive COVID-19 case at UD.  Ex. 48 at 69:20-24, 70:1-14.  Russo's unilateral decision to leave campus without having been prompted to do so by UD exposes her breach of implied contract claim to unique defenses, such as waiver, which are not typical of the putative class.

- ***Plaintiffs are not typical of all class members.***  All of the named Plaintiffs were full-time, in-person, non-resident students at UD's Newark Campus.  These circumstances not

only influenced the amount of tuition paid by each, but also affected Plaintiffs' educational experience and access to certain facilities, services, and activities.  Ex. 03.  Plaintiffs' circumstances are not typical of students who were residents of the state of Delaware, part-time students, or in different programs.  Moreover, Plaintiffs' proposed class includes study abroad and international students, some of whom, due to COVID-19 travel restrictions, received refunds.  *See* Ex. 30; Ex. 31; Ex. 50.  Similarly, the proposed class includes students in UD's Associate in Arts program who, unlike Plaintiffs, took courses outside of the Newark Campus at around a third of the cost of regular tuition.  Ex. 50.

- ***CARES Act receipts differ by student.***  Plaintiffs' claims are further rendered atypical due to the varying amounts of CARES Act funding received by each and credited towards the Spring 2020 semester.  Nigrelli, Ninivaggi, and Russo all applied for and received a CARES Act distribution (and in different amounts).  Ex. 18; Ex. 19; Ex. 20.  They are thus atypical of the students who received more, less, or no CARES Act funding for the Spring 2020 semester—including the other named Plaintiff, Mickey, who was unaware of, and did not apply for, CARES Act funding for the Spring 2020 semester.  Ex. 44 at 135:4-6; Ex. 17.

- ***Not all students are the same.***  Plaintiffs' formulaic approach presupposes that every undergraduate student who was enrolled at the time UD was required to convert to online education in Spring 2020 was harmed (and in the same way).  As will be seen in UD's forthcoming expert report[1], Plaintiffs' purported class-wide damages model is inherently flawed, unreliable, and untethered to the real world facts, circumstances, and experiences that are unique and individualized as to each student during the Spring 2020 semester.  For some

---

[1] Inasmuch as the expert report is not due under the Scheduling Order until September 2, UD respectfully incorporates it by reference herein and intends to submit the forthcoming expert report as a supplemental exhibit when it is issued.

students, the online learning and lack of other distractions made for a better academic experience. Students had the option to take courses pass/fail or for a grade, enabling many (including the majority of Plaintiffs) to achieve better GPAs than they might otherwise have earned. Ex. 45 at 91:10-92:17.

### C. Plaintiffs are Inadequate Class Representatives Under Rule 23(a).

Plaintiffs must also satisfy Rule 23(a)(4)'s adequacy requirement which "ensure[s] 'that the representatives and their attorneys will competently, responsibly, and vigorously prosecute the suit and that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit.'" *Coyle v. Hornell Brewing Co.*, 2011 WL 2147218, at *3 (D.N.J. May 26, 2011) (quoting *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977)). The adequacy of proposed class representatives requires a "stringent examination" by the Court. *Bontempo v. Wolpoff & Abramson, L.L.P.*, 2008 WL 163051, at *7 (W.D. Pa. Jan. 15, 2008).

A "class representative must represent [the] class capably and diligently," and must possess at least "a minimal degree of knowledge about the litigation." *In re Nat'l Football League Players Concussion Litig.*, 821 F.3d at 430 (internal quotations omitted). This should include an understanding of the "basis for the claimed injury." *In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*, 421 F. Supp.3d 12, 51 (E.D. Pa. 2019), *aff'd.* 967 F.3d 264 (3d Cir. 2020). Where a proposed class representative has "'communicated with their lawyers, reviewed filings prior to their submission to the Court, and have aided counsel to discovery requests' and 'shown a basic understanding of the facts and claims underlying the litigation,' the adequacy prong is met." *Vrakas v. U.S. Steel Corp.*, 2019 WL 7372041, at *6 (W.D. Pa. Dec. 31, 2019) (quoting *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,

2016 WL 4138613, at *10 (E.D. Pa. Aug. 4, 2016)).  Plaintiffs do not meet even those minimal factors here.  Indeed, none of the Plaintiffs could answer basic questions such as:

- ***The names of the other named plaintiffs.***  Ex. 44 at 41:4-8; Ex. 49 at 113:2-4; Ex. 46 at 68:24-69:10; Ex. 48 at 85:4-11;

- ***Whether any motions have been filed.***  Ex. 44 at 40:19-21; Ex. 49 at 110:24-111:8; Ex. 46 at 65:16-19; Ex. 49 at 83:16-22;

- ***How many hearings had been held.***  Ex. 44 at 41:1-3; Ex. 49 at 111:12-17; Ex. 46 at 65:24-66:14; Ex. 48 at 84: 17-24; and

- ***Whether they had reviewed filings before they were made.***  Ex. 44 at 40:19-24; Ex. 49 at 110:24-111:8; Ex. 46 at 65:16-19; Ex. 48 at 83:16-22.

Most Plaintiffs could not identify any of their attorneys other than the one defending their deposition (and whom they had only met a few days prior).  Ex. 44 at 10:11-12; Ex. 49 at 144:2-16; Ex. 48 at 19:14-20:1, 20:12-23.  And Nigrelli and Russo were unaware:

- ***That the plaintiff parents had been dismissed (or indeed that they were ever parties – including Nigrelli's own father who was an original party).***  Ex. 49 at 269:7-10; Ex. 48 at 88:8-89:18.

- ***Whether the case had been consolidated.***  Ex. 49 at 110:6-8; Ex. 48 at 82:19-22.

- ***The outcome of any Court rulings in this case or the University's defenses.***  Ex. 49 at 111:18-112:18; 196:2-198:12; Ex. 48 at 84:1-7; 145:24-146:19.

To qualify as a class representative, a plaintiff must "fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement imposes certain duties on class representatives to ensure the interests of the class are protected.  *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 430.  A plaintiff who does not understand or properly discharge the duties of a class representative is inadequate to serve in that role. *Scott v. New York City. Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356 (S.D.N.Y. 2004).  Here, Plaintiffs fail to understand (let alone follow) the basic duties of a class representative:

- Nigrelli testified that her duties as class representative were to attend her deposition and produce documents—nothing more.  Ex. 49 at 104:6-105:5.

- Russo identified "giv[ing] a deposition, speak[ing] to counsel," and testifying as her ***sole*** obligations as a class representative—and admitted that she had not even satisfied those basic obligations.  Ex. 48 at 79:19-20; 105:4-5.

- Ninivaggi identified the class representative's duties as including "stay[ing] up to date with the case," but later demonstrated his own noncompliance with this duty when he admitted to not knowing the status of any pending motions or upcoming hearings in the matter.  Ex. 46 at 65:20-66:9.

- Mickey and Russo expressly admitted they were not actively overseeing their counsel in this matter.  Ex. 44 at 37:22-38:2; Ex. 49 at 80:13-15.

Nor are the Plaintiffs credible representatives.   Challenges to a proposed class representative's interests are "often evaluate[d] [as] attacks on the named plaintiff's credibility." *Coyle*, 2011 WL 2147218 at *3 (finding proposed class representative inadequate on credibility basis due to inconsistencies in deposition testimony and discovery responses).   Here, the Plaintiffs' deposition testimony contradicts prior, sworn Responses to two sets of Requests for Admission (the "RFA Responses").   Ex. 37; Ex. 38.   For example, Nigrelli and Ninivaggi denied that their "degree progress was not slowed or impeded because of UD's shift to remote instruction," but later admitted in deposition just the opposite—that their progress was not slowed or impeded.  Ex. 37 at No. 14; Ex. 49 at 248:19; Ex. 46 at 146:15-18.  Likewise, both Mickey and Russo denied UD's request to "[a]dmit that executive orders issued by Delaware governor John C. Carney prohibited UD from offering in-person instruction during portions of the Spring 2020 semester," later admitted in deposition that those denials were inaccurate.  Ex. 38 at No. 20; Ex. 44 at 142:4-13;  Ex. 48 at 212:13-213:3.

Finally, a plaintiff who does "not comply wholeheartedly and fully with the discovery requirements of modern federal practice," are typically considered inadequate to serve as a class representative. *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976).  As part of

their duty to vigorously represent the class, class representatives are expected to, "comply[] with reasonable discovery obligations and failure to do so strongly intimates that the class representation is inadequate." *McDaniel v. Cty. Of Schenectady*, 2005 WL 1745566, at \*3 (N.D.N.Y. July 21, 2005); *see also Dover v. British Airways, PLC (UK)*, 321 F.R.D. 49, 56 (E.D.N.Y. 2017) (explaining "class representatives are inadequate [where] they have failed to live up to [their] fiduciary obligation[s] to participate in discovery." (internal quotations omitted)); *see also, e.g. Goldman v. Alhadeff*, 131 F.R.D. 188, 192 (W.D. Wash. 1990) (finding "class representative who was never willing to comply with his discovery obligations," inadequate).

Plaintiffs acknowledged inaccuracies in their responses to Defendant's Requests for Admission and failed to correct those inaccuracies. *See supra* Section III.C.3; *see also Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 763 F. Supp.2d 671, 691 (D. Del. 2010) ("Parties are always under an obligation to supplement their contentions…when it becomes necessary to do so."). Additionally, Plaintiffs failed to conduct proper searches for documents in responses to Defendant's Requests for the Production of Documents. *See* Ex. 44 at 77:17-78:4; Ex. 49 at 127:20-128:9; Ex. 46 at 103:23-104:21; Ex. 48 at 97:14-98:9, 101:12-102:5. Plaintiffs produced a sum total of ninety-three (93) pages of documents in discovery. That's it. And, while both Nigrelli and Russo affirmatively swore that they "have collected documents responsive to Defendant's requests for production," this proved untrue when both testified that they had not, in fact, conducted searches for UD's specific document requests. D.I. 82 at ¶ 12; D.I. 83 at ¶ 14; Ex. 49 at 127:20-23; Ex. 48 at 101:15-18. Collectively, these inaccuracies, inconsistencies, and inaccurate sworn statements cast significant doubt on the credibility of the named Plaintiffs and their ability to serve adequately as class representatives.

Because Plaintiffs did not abide by their discovery obligations, they likewise cannot serve as adequate class representatives to the putative class.

### D.  Plaintiffs' Proposed Class Counsel is Also Inadequate.

Rule 23(g) requires the appointment of adequate class counsel.  Fed. R. Civ. P. 23(g).  In determining whether proposed class counsel is adequate, courts consider: "counsel's work on the pending class action, experience in handling class actions or other complex litigation, knowledge of the applicable law, and the resources available and committed to representing the class."  *Henkel v. Highgate Hotels, LP*, 2021 WL 2550203, at *10 (M.D. Pa. June 22, 2021) (citing Fed. R. Civ. P. 23(g)).  Where a proposed class representative lacks sufficient knowledge about the case, "counsel's adequacy takes on even greater importance," and the "[C]ourt must have absolute confidence in counsel's competence and loyalty to the class."  *Garcia De León v. New York Univ.*, 2022 WL 2237452, at *15 (S.D.N.Y. June 22, 2022).

For the reasons articulated in *Garcia De León v. New York University*, the Anastopoulo firm is wholly inadequate to serve as class counsel.  *See id.* at *15-*17.  Nor have the other class counsel complied with their obligations.  As described above, they have not kept their clients informed.   They did not adequately oversee the collection of responsive documents by Plaintiffs, and instead left the entire collection process to the discretion of the Plaintiffs.  Ex. 44 at 78:2-4; Ex. 49 at 123:17-20; Ex. 46 at 106:12-14.  And, the presence of multiple firms, often disfavored in class actions, further demonstrates counsels' inability to properly represent the putative class here.  *See Garcia De León*, 2022 WL 2237452, at *16; *see also Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharm.*, 529 F. Supp.3d 385, 402 (E.D. Pa. 2021). The insufficiency of class counsel combined with Plaintiffs' inadequacy to serve as class

representatives "dooms the [M]otion for certification." *See Garcia De León*, 2022 WL 2237452, at *17.

## IV.    RULE 23(B)(3) CANNOT BE MET AS A MATTER OF LAW

### A.    Plaintiffs Cannot Meet Commonality and Predominance Requirements.

Where a class is asserted pursuant to Rule 23(b)(3), commonality is "subsumed and incorporated" into the more stringent predominance requirement and "the two factors [are analyzed] together." *Walney v. SWEPI LP*, 2015 WL 5333541, at *9 (W.D. Pa. Sept. 14, 2015) (citing *Sullivan v. DB Invests. Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (*en banc*)), *class decertified*, 2019 WL 1436938 (W.D. Pa. Mar. 31, 2019).  Predominance focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Sullivan*, 667 F.3d. at 297.    Rule 23(b)(3)'s "predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members." *Id.*   Individual issues and questions are ones "where members of a proposed class will need to present evidence that varies from member to member." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotations omitted).  To satisfy predominance, a plaintiff must demonstrate that the "essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Grandalski v. Quest Diagnostics, Inc.*, 767 F.3d 175, 184 (3d Cir. 2014).  Plaintiffs' breach of implied contract and unjust enrichment claims are inherently individualized, necessitate student-by-student fact investigations and analyses, and are not susceptible to "generalized, class-wide proof." *See Bouphakeo*, 577 U.S. at 453.

### 1. Plaintiffs' Breach of Implied Contract Claims Require an Individualized Showing of Contract Formation Via Mutual Assent.

Under Delaware law, the existence of an implied contract requires a showing of "[t]he parties' intent and mutual assent…through conduct rather than words." *Cap. Mgmt. Co. v. Brown*, 813 A.2d 1094, 1098 (Del. 2002); *see also Manchester Equip. Co., Inc. v. Am. Way Moving and Storage, Co.*, 176 F. Supp.2d 239, 244 (D. Del. 2011). Accordingly, breach of implied contract claims are generally inappropriate for class certification as they require individualized assessments of contract formation. *See De Ascenio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003) ("[I]ndividualized questions of implied contract formation with respect to each member of [a] class might conceivably predominate over the issues common to the" class); *see also Rockford Principals and Supervisors Ass'n v. Bd. of Educ. Of Rockford Sch. Dist. No. 205*, 721 F. Supp. 948, 950 (N.D. Ill. 1989) ("Individualized proof will be necessary to prove the existence of the alleged contractual-type relationships whether termed as 'mutually explicit understandings' or implied employment contracts."); *Abla v. Brinker Rest. Corp.*, 279 F.R.D. 51, 58 (D. Mass. 2011) ("It is not possible or advantageous to attempt to prove liability for breach of implied contract on a class-wide basis, because the very existence of a contract as to each event at each restaurant will be subject to individual proof and defense.").

Plaintiffs' simplification of implied contract formation—"the school admits [students], students enroll and pay tuition, and the students go to class"—ignores the fact that Plaintiffs must still demonstrate UD and each class member reached an implied contract requiring ***in-person instruction***. D.I. 76 at 15-16; *see also Ninivaggi*, 555 F. Supp.3d at 50 (noting evidence establishing that UD impliedly contracted to provide in-person instruction still needed). Plaintiffs focus entirely on UD's alleged intent and conveniently ignore the ***mutual*** nature of

contract formation, which will require a showing of each individual class member's **_intent_** and **_conduct_**.  D.I. 76 at 15-16.  Plaintiffs argue UD promised in-person instruction through various statements on some degree-specific webpages.  *Id.*  In support of this argument, Plaintiffs cite to webpages from twenty-three distinct degree program websites.  D.I. 76 at 3-5.  In doing so, Plaintiffs capture a small portion of the over 150 major and minor programs offered by UD[2]. But the cited webpages are **_from May 2022_**, and thus could not have informed Plaintiffs in their decision to enroll in UD during the Spring **_2020_** semester.  Nor can Plaintiffs argue these twenty-three examples establish an implied contract on the part of class members who were not enrolled in any of those twenty-three degree programs.  Thus, Plaintiffs failed to meet their burden of satisfying the commonality and predominance prong.

### 2.    Plaintiffs' Unjust Enrichment Claims are Inherently Individualized.

Unjust enrichment claims, which require "individualized proof," are likewise not suitable for adjudication on a class-wide basis.  *See Grandalski*, 767 F.3d at 185 (upholding District Court's denial of class certification on predominance grounds due to individualized nature of unjust enrichment claims); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) ("Due to the necessity of this inquiry into the individualized equities attendant to each class member, courts, including ours, have found unjust enrichment claims inappropriate for class action treatment."); *Walney*, 2015 WL 5333541, at *15 (noting unjust enrichment claims may "be unsuitable for class treatment where the claim require[s] a highly individualized inquiry.").  Likely recognizing that fact, and in an attempt to portray their claim

---

[2] UD does not of course concede that those oblique references to offerings or "hands on" learning connote or implicitly promise "in person" education under all circumstances, that "hands on" cannot be done online as evidence by our collective experiences over the last two plus years, or that these descriptions promised that every experience and semester would be in person (they did not).

as uniform, Plaintiffs argue their entire "unjust enrichment claim turns on whether it was unjust for [UD] to retain…tuition payments even though it failed to provide in-person classes." D.I. 76 at 12-13. Not so.

Plaintiffs' claim for unjust enrichment instead requires a demonstration of "a relation between the [UD's] enrichment and the [class's] impoverishment." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). To satisfy this prong, Plaintiffs must "show[] that the defendant was enriched unjustly by the plaintiff ***who acted for the defendant's benefit***." *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59–60 (Del. Ch. 2012) (emphasis added). Establishing this connection requires an inquiry into the individual circumstances of each student. The Court would have to first identify who among the proposed class paid tuition without assistance from third parties, as only those individuals could theoretically have been harmed by the transition to online learning in the Spring 2020 semester. Moreover, of the students who did pay tuition, each paid a varying amount of tuition based on a myriad of factors (*e.g.* residency, full-time v. part-time, financial aid, grants, awards, etc.). Accordingly, the extent of each student's harm also varies on an individual basis. Stated simply, satisfaction of the unjust enrichment claim requires a student-by-student demonstration of how each student was impoverished and how that individualized impoverishment allegedly enriched UD. These individual questions necessarily predominate over questions common to the class.

Nor can Plaintiffs satisfy the "absence of justification," or "unjust" prong of the unjust enrichment analysis without an individualized assessment of each class member. *See Nemec*, 991 A.2d at 1130 (outlining elements of unjust enrichment claim). Demonstrating that UD's alleged retention of a benefit is unjust requires "inquiry into the individualized equities attendant to each class member." *Vega*, 564 F.3d at 1274. As defined, Plaintiffs' proposed

class includes students who cannot satisfy this prong.  For example, certain international and study abroad students cannot possibly argue UD was enriched by its retention of their tuition payments because UD refunded some or all of their tuition by virtue of their inability to complete their degree programs.  Nor can students who, for example, enrolled in at least one online course at the onset of the Spring 2020 semester argue UD's retention of their tuition payment became unjust upon UD's transition to online instruction.  At a minimum, individualized inquiries into the status of each student and the student's relationship with UD are necessary to show an ***unjust*** enrichment predominates over any common questions of fact or law that may otherwise be implicated in the unjust enrichment analysis.

## B.    Individualized Damages Issues Predominate Over Common Damages Issues.

To satisfy commonality, Plaintiffs must also show "the class members have suffered the same injury."  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (internal quotation marks omitted).  This common injury "must be . . . capable of class wide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims."  *Id.*  The class members' payment of tuition and fees to UD for the Spring 2020 semester is insufficient to establish a common injury because each member made ***different*** tuition payments.

UD, like most higher-education institutions, charges variable tuition rates to its students based on their individual status.  For example, UD students who are residents of the state of Delaware are charged a discounted tuition rate.  Ex. 03.  UD's tuition rate also changes between full-time and part-time students.  *Id.*; Ex. 04. Likewise, UD charges a variable amount of supplemental tuition depending on the specific courses in which a student enrolls.  Ex. 03; Ex.

04; Ex. 50.  These variable tuition rates and fees together create a broad range of alleged injuries suffered by each class member, defeating commonality.

The alleged injury suffered by the putative class also varies with the individual factual circumstances of each class member.  As explained earlier, students who enroll in class, but later withdraw before the conclusion of the designated add/drop period, are refunded tuition and fees in their entirety.  Ex. 03; Ex. 04.  International students also received refunds due to their inability to continue courses.  Ex. 30; Ex. 31.  And, not all students attended classes on UD's main Newark campus.[3]  Ex. 43.  The existence of this subset of class members alone defeats commonality, as it shows class members have not suffered a common injury and "have little in common except that they were enrolled in [UD] in 2020 and paid some type of fee," to UD. *Garcia De León*, 2022 WL 2237452, at *13; *see Dukes*, 564 U.S. at 359-60 (holding commonality not met in proposed sex discrimination class action where class members "ha[d] little in common but their sex and this lawsuit.").  Lastly, as referenced above, UD's forthcoming expert report, incorporated by reference herein, will explain in great detail why Plaintiffs' proposed class-wide damages model fails and why individual issues predominate over common issues concerning the putative class's alleged damages precluding any such calculation on a class-wide basis.

### C.    Plaintiffs Cannot Satisfy Superiority Because Individualized Inquiries Render the Class Unmanageable.

Superiority concerns the balance "in terms of fairness and efficiency" between "the merits of a class action against those of alternative available methods of adjudication."  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 434.  In striking this

---

[3] For example, students in UD's Associate in Arts program attend courses throughout the state of Delaware, including Wilmington, Dover, and Georgetown.  Ex. 50.

balance, the Court "consider[s] the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action. *Id.* at 434-35.

Plaintiffs fail to satisfy this final prong of Rule 23(b)(3). Plaintiffs' proposed class requires individual considerations and "mini-trials" to determine, *inter alia*: (1) whether a student qualifies as a class member under Plaintiffs' class definition; and (2) the validity of the underlying breach of implied contract and unjust enrichment claims and any alleged damages related thereto. A class action therefore, is not "the best available method of achieving a fair and efficient adjudication of the controversy," as the individualized inquiries required render the class action unmanageable. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001) (internal quotations omitted).

<u>**CONCLUSION**</u>

For the reasons set forth above, UD respectfully requests Plaintiffs' Motion be denied.

**SAUL EWING ARNSTEIN & LEHR LLP**

/s/ *James D. Taylor, Jr.*
James D. Taylor, Jr. (#4009)
Marisa R. De Feo (#6778)
Juliana G. Clifton (#6980)
1201 N. Market Street, Suite 2300
Wilmington, DE  19801
(302) 421-6800
james.taylor@saul.com
marisa.defeo@saul.com
juliana.clifton@saul.com

Dated: August 26, 2022                    *Counsel for Defendant University of Delaware*