# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL NINIVAGGI, JAKE MICKEY and CAILIN NIGRELLI, HANNAH RUSSO, individually and on behalf of all others similarly situated,<br><br>              *Plaintiffs*,<br><br>   v.<br><br>UNIVERSITY OF DELAWARE,<br><br>              *Defendant*. | Civil Action No. 20-cv-1478-SB |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
## THEIR MOTION FOR CLASS CERTIFICATION

 

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
Robert J. Kriner, Jr. (#2546)
2711 Centerville Road, Suite 201
Wilmington, DE 19808
(302) 656-2500

*Counsel for Plaintiffs*

Dated: September 30, 2022

## **TABLE OF CONTENTS**

**PAGE(S)**

| | | |
|---|---|---|
| I. | PLAINTIFFS HAVE ARTICLE III STANDING | 1 |
| II. | THE PROPOSED CLASS IS ASCERTAINABLE | 3 |
| | A. The Class Is Defined By Objective Criteria | 3 |
| | B. The Class Is Administratively Feasible | 4 |
| III. | PLAINTIFFS SATISFY RULE 23(a) | 4 |
| | A. The Proposed Class Is Sufficiently Numerous | 4 |
| | B. Plaintiffs' Claims Are Typical | 5 |
| | C. Plaintiffs Are Adequate Class Representatives | 6 |
| | D. Class Counsel Will Adequately Represent the Class | 7 |
| IV. | PLAINTIFFS SATISFY RULE 23(b)(3) | 8 |
| | A. Common Issues Predominate For Plaintiffs' Contract Claim | 8 |
| | B. Common Issues Predominate For Plaintiffs' Unjust Enrichment Claim | 9 |
| | C. Plaintiffs Have Calculated Classwide Damages | 10 |
| | D. A Class Action Is Superior to Thousands of Individual Actions | 10 |
| CONCLUSION | | 11 |

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Abla v. Brinker Rest. Corp.*,
    279 F.R.D. 51 (D. Mass. 2011) .................................................................................. 8

*AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*,
    871 A.2d 428 (Del. 2005) .......................................................................................... 5

*Barnes v. American Tobacco Co., Inc.*,
    176 F.R.D. 479 (E.D. Pa. 1997) ................................................................................. 6

*Brickman v. Fitbit, Inc.*,
    2017 WL 5569827 (N.D. Cal. Nov. 20, 2017) .......................................................... 9

*Chesner v. Stewart Title Guar. Co.*,
    2008 WL 553773 (N.D. Ohio Jan. 23, 2008) ............................................................ 8

*Cottrell v. Alcon Lab'ys,*
    874 F.3d 154 (3d Cir. 2017) ...................................................................................... 1

*De Asencio v. Tyson Foods, Inc.*,
    342 F.3d 301 (3d Cir. 2003) ...................................................................................... 8

*Eddlemon v. Bradley Univ.*,
    2022 WL 3227865 (C.D. Ill. July 22, 2022) ............................................................. 4

*Evans v. Brigham Young Univ.*,
    2022 WL 596862 (D. Utah Feb. 28, 2022) ............................................................ 3, 4

*Garcia De Leon v. New York University*,
    2022 WL 2237452 (S.D.N.Y. June 22, 2022) ........................................................... 7

*In re Cephalon Sec. Litig.*,
    1998 WL 470160 (E.D. Pa. Aug. 12, 1998) .............................................................. 6

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    2012 WL 5833604 (D. Del. Nov. 16, 2012) ............................................................. 8

*In re K-Dur Antitrust Litig.*,
    2008 WL 2660723 (D.N.J. Mar. 27, 2008) ............................................................... 6

*In re Merck & Co., Inc. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005) ...................................................................................... 8

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*,
    967 F.3d 264 (3d Cir. 2020) .................................................................................... 10

*In re Thalomid & Revlimid Antitrust Litig.*,
  2018 WL 6573118 (D.N.J. Oct. 30, 2018) ................................................................. 9

*In re Tivity Health, Inc.*,
  2020 WL 4218743 (6th Cir. July 23, 2020) ............................................................... 9

*Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*,
  2020 WL 4201661 (D.D.C. July 22, 2020) ............................................................... 2

*James D. Hinson Elec. Contracting Co. v. BellSouth Telecomm., Inc.*,
  275 F.R.D. 638 (M.D. Fla. 2011) ............................................................................. 9

*Madison Realty Partners 7, LLC v. Ag ISA, LLC*,
  2001 WL 406268 (Del. Ch. Apr. 17, 2001) ............................................................... 2

*Mahon v. Chicago Title Ins. Co.*,
  296 F.R.D. 63 (D. Conn. 2013) ................................................................................ 8

*Neale v. Volvo Cars of N. Am., LLC*,
  2015 WL 4466919 (3d Cir. July 22, 2015) ............................................................. 10

*Oetting v. Heffler, Radetich & Saitta, LLP*,
  2016 WL 1161403 (E.D. Pa. Mar. 24, 2016) ............................................................ 3

*Patel v. Univ. of Vermont & State Agric. Coll.*,
  2021 WL 3109908 (D. Vt. July 22, 2021) ................................................................ 2

*Skeway v. China Nat. Gas, Inc.*,
  304 F.R.D. 467 (D. Del. 2014) ............................................................................... 10

*United Health All., LLC v. United Med., LLC*,
  2014 WL 6488659 (Del. Ch. Nov. 20, 2014) ............................................................ 2

*Walney v. SWEPI LP*,
  2015 WL 5333541 (W.D. Pa. Sept. 14, 2015) .......................................................... 9

*Yoon v. Gap, Inc.*,
  2010 WL 11597565 (C.D. Cal. Oct. 6, 2010) ........................................................... 8

**STATUTES**

11 U.S.C. §523(a)(8) .................................................................................................. 1, 2

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 304 ..................................................................... 2

## I. PLAINTIFFS HAVE ARTICLE III STANDING

Defendant argues that none of the named Plaintiffs have Article III standing. Def.'s Opp'n To Pls.' Mot. For Class Cert. ("Opp'n") at 2. That is incorrect. The Plaintiffs all suffered an injury because, whether it was out of their own pocket, through loans or with the help of their parents, they all paid for in-person classes and access to the campus that they did not receive, as well as seven missed days of classes.

As an initial matter, Defendant ignores the fact that three out of the four named Plaintiffs took out loans in their own names to pay for the Spring 2020 semester. Exs. 99-101 (showing loans for Ninivaggi, Nigrelli and Russo). These Plaintiffs will be paying back these loans for decades, and yet, they did not receive the benefit of their bargain. This "financial harm is a classic and paradigmatic form of injury" that supports standing. *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017) (cleaned up).

Ignoring these loans completely, Defendant instead contends that Plaintiffs were not economically harmed if their parents paid tuition. But that argument overlooks the fact that UD held students, and not parents, solely responsible for tuition obligations. Every semester, UD requires that all of its students sign its Costs, Billing, and Financial Aid policy:

> I understand that when I register for any class at the University of Delaware (UD) or receive any service from UD, **I accept full responsibility to pay all tuition**, fees and other associated costs assessed as a result of my registration and/or receipt of services.

Ex. 102 (emphasis added).[1] This language demonstrates that the contract at issue here was

---

[1] *Id.* ("I further understand and agree that my registration and acceptance of these terms constitutes a promissory note agreement (i.e. a financial obligation in the form of an educational loan as defined by the U.S. Bankruptcy Code at 11 U.S.C. §523(a)(8)) its which the University of Delaware is providing me educational services, deferring some or all of my payment obligation for those services, and I promise to pay for all assessed tuition, fees and other associated costs by use published or assigned due date."); *id.* ("Each student is responsible for . . . paying established fees . . . ."); *id.* ("The act of registering generates tuition charges for which

exclusively between UD and its students. When tuition is unpaid, students are the only ones on the hook, not their parents or any other third parties. It follows that the students are the ones who are injured when UD fails to perform.[2]

Even if UD is correct that some students are not parties to contracts with UD, these students nevertheless have standing as intended third-party beneficiaries. Under Delaware law, third-party beneficiaries to a contract can sue for breach if three elements are met:

> (1) an intent between the contracting parties to benefit a third party through the contract, (2) the benefit being intended to serve as a gift or in satisfaction of a pre-existing obligation to the third party, and (3) a showing that benefiting the third party was a material aspect to the parties agreeing to contract.

*United Health All., LLC v. United Med., LLC*, 2014 WL 6488659, at *3-4 (Del. Ch. Nov. 20, 2014) (citing *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001)).[3] Here, to the extent that parents paid tuition, the purpose of those payments was to confer benefits to their children. As such, their children have standing to seek redress for UD's breach as intended third-party beneficiaries. *Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*, 2020 WL 4201661, at *5 (D.D.C. July 22, 2020) (Third-party

---

students are financially responsible."); *id.* ("Students are responsible for full charges . . . ."); *id.* ("Failure to pay does not relieve students of their financial obligation for courses not dropped within the free drop/add period."); *id.* ("Students are responsible for any collection agency fees, attorney fees, court costs, and other costs and charges necessary for the collection of any amount not paid by the due date.").

[2] Defendant's authorities are not to the contrary. UD asserts that this Court previously held that students do not have standing. Opp'n at 3. It made no such finding. Nor does *Patel v. Univ. of Vermont & State Agric. Coll.*, 2021 WL 3109908, at *1 (D. Vt. July 22, 2021), have any relevance as that case involved an exchange student who paid tuition to a different institution altogether.

[3] *See also* Restatement (Second) of Contracts § 304 ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty."); *id.* at comment (d) ("[T]he beneficiary has available for his own benefit the usual remedies for breach of contract. An action by the beneficiary is commonly a convenient way to enforce the right of the promisee as well as to redress any injury to the beneficiary.").

beneficiaries meet the requirements for Article III standing).

## II.     THE PROPOSED CLASS IS ASCERTAINABLE

### A.     The Class Is Defined By Objective Criteria

Defendant argues that the class is not defined by objective criteria because it is unclear which students "paid tuition." Opp'n at 4. That is incorrect. Defendant's records show who attended the school and which students' accounts were credited with payments.

The proposed class is defined as "all undergraduate students enrolled in classes at the University of Delaware during the Spring 2020 semester who paid tuition." The first part of this definition is not controversial; UD has a record of which students were enrolled in classes in Spring 2020. *See, e.g.*, Exs. 99-101 (account statements). Instead, UD harps on the modifier "who paid tuition," arguing that parent payments render the definition unworkably vague. But that argument misses the point of the "who paid tuition" limitation. The purpose of that language is to exclude students who received a full scholarship, and who, therefore, did not sustain an injury. While Plaintiffs believe that is already sufficiently clear, if necessary, any ambiguity can easily be addressed by adding the following language to the class definition: "or who had their tuition paid by a third party other than the University of Delaware, and who did not receive a full refund." *Oetting v. Heffler, Radetich & Saitta, LLP*, 2016 WL 1161403, at *5 (E.D. Pa. Mar. 24, 2016) ("The Court may, in its discretion, amend the proposed class definition *sua sponte* to ensure that its order certifying the class is proper.").

*Evans v. Brigham Young Univ.*, 2022 WL 596862 (D. Utah Feb. 28, 2022) does not require a different conclusion. In *Evans*, the class included not only students, but "all people" who paid tuition and/or fees. Here, on the other hand, only students who paid tuition are included in the class. One court recently distinguished *Evans* on this basis:

3

> The court finds the class definition here does not present the same issue as the class definition in *Evans*. Here, Plaintiff and other students similarly situated are the parties alleged to have formed a contract with Defendant. The proposed class here does not include unascertainable third-party payors like the proposed class in *Evans*. If Plaintiff and the class were to ultimately obtain a recovery from Defendant, third party payors could potentially seek reimbursement from Plaintiff. But that reality does not hinder this court in certifying these classes.

*Eddlemon v. Bradley Univ.*, 2022 WL 3227865, at *9 (C.D. Ill. July 22, 2022).

### B. The Class Is Administratively Feasible

Defendant argues that the class is not administratively feasible because Plaintiffs point to UD's records related to individual students rather than a predetermined class list. Opp'n at 5. That is incorrect. Plaintiffs have sufficiently demonstrated that Defendant has records of who its undergraduate students were during the Spring 2020 semester and whether they were credited for tuition payments. And, as explained above, it does not matter whether students made those payments directly out of their own pocket, through loans, or with the help of their parents or other third parties. As long as students did not get a free ride or a full refund, they are members of the class. And UD's records can be used to identify those students. *See, e.g.*, Exs. 99-101 (account statements).

### III.   PLAINTIFFS SATISFY RULE 23(a)

### A. The Proposed Class Is Sufficiently Numerous

Defendant questions whether numerosity is satisfied. As Mr. Weir explains in his declaration, the net tuition paid to UD for the Spring 2020 semester was $165,982,732. Weir Decl. ¶ 47. Even if the class was comprised exclusively of students who were from out of state and who paid the maximum possible amount of $17,080, Exs. 99-101, there would still be 9,717 class members.

4

### B. Plaintiffs' Claims Are Typical

Defendant presents a laundry list of reasons why the named Plaintiffs are supposedly not typical of the class. Opp'n at 6-9. But none of these reasons changes the fact that the Plaintiffs, just like every other class member, entered into an implied-in-fact contract with UD, and UD breached that contract in every instance. Likewise, UD fails to point to a single unique defense that would be apply to any of the named Plaintiffs.

Defendant's arguments are each easily dispelled:

**Plaintiffs are all class members.** As explained above, all of the named Plaintiffs are class members because they each paid tuition either through loans or with the help of others.

**Implied-in-fact contracts are implied.** The fact that Plaintiffs could not point to express promises from UD about the in-person nature of the classes is therefore of no moment and not surprising. They each stated that, based on the facts and circumstances, they understood that their bargains included in-person classes and access to the UD campus. Ninivaggi Decl. ¶ 8; Mickey Decl. ¶ 8; Nigrelli Decl. ¶ 8; Russo Decl. ¶ 8.

**Russo paid for access to the campus.** The fact that she left campus at or around the same time that UD suspended classes and moved up its Spring Break is not evidence that she intended to voluntarily relinquish her known contractual rights.[4]

**Plaintiffs' out-of-state status does not render them atypical.** The fact that the named Plaintiffs were all non-residents does not open them up to any unique defenses or otherwise impact their claims or ability to represent the entire class in any meaningful way.

**The CARES Act is irrelevant.** UD distributed CARES Act funds from the federal government to students based on economic need, not as compensation for the transition to online

---

[4] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005) ("Waiver is the voluntary and intentional relinquishment of a known right.").

classes.

**Individual preferences are irrelevant.** All class members were injured because the online classes that they received were worth less than the in-person classes that they paid for. This is true regardless of individual preferences related to online vs. in-person classes. Students also paid for seven days of classes that they did not receive.

### C. Plaintiffs Are Adequate Class Representatives

Defendant argues that the named Plaintiffs have not been sufficiently involved in this litigation to qualify as adequate class representatives. Opp'n at 9-13. That is wrong. Each of them has been in regular communications with counsel, reviewed documents in this case including the pleadings, searched for and responded to document requests and assisted in responding to interrogatories and requests to admit. Ninivaggi Decl. ¶ 12; Mickey Decl. ¶ 12; Nigrelli Decl. ¶ 12; Russo Decl. ¶ 12. They also prepared for and then sat through lengthy depositions with harsh questioning from defense counsel.[5]

Playing "gotcha," UD relies on the Plaintiffs' lack of technical legal knowledge, but class representatives are not required to have legal expertise. In fact, "it is unrealistic to require a class action representative to have an in-depth grasp of the legal theories of recovery behind his or her claim. It is more important that the representative actively seeks vindication of his or her rights and engages competent counsel to prosecute the claims." *In re Cephalon Sec. Litig.*, 1998 WL 470160, at *3 (E.D. Pa. Aug. 12, 1998) (quoting *Barnes v. American Tobacco Co., Inc.*, 176 F.R.D. 479, 485-86 (E.D. Pa. 1997)); *In re K-Dur Antitrust Litig.*, 2008 WL 2660723, at *7 (D.N.J. Mar. 27, 2008) ("[A] class representative is not required to understand or be intimately familiar with the legal or factual basis for the case."). Here, it is sufficient that Plaintiffs have a

---

[5] Notably, Jonathan A. Singer deposed Plaintiff Nigrelli on June 9, 2022, but he was not admitted *pro hac vice* in this matter until July 21, 2022. ECF No. 86.

basic understanding of this case, that they have been actively engaged in this litigation and that they are looking out for not just their own interests but the interests of the class as a whole.

### D. Class Counsel Will Adequately Represent the Class

Defendant argues that the Anastopoulo Law Firm (now the Poulin | Willey | Anastopoulo Law Firm ("PWA")) is inadequate for the reasons articulated in *Garcia De Leon v. New York University*, 2022 WL 2237452, at *15-*17 (S.D.N.Y. June 22, 2022). But that decision, which is currently being appealed, failed to acknowledge the full breadth of the firm's experience. Specifically, Mr. Willey has been appointed Chair of the Plaintiff's Steering Committee in a prominent MDL, MDL No. 2989 *IN RE: January 2021 Short Squeeze Trading Litig.*, and was appointed by lead counsel in *In Re: Columbia University Tuition Refund Action*, 1:20-cv-03208-JMF (S.D.N.Y.). Additionally, Mr. Willey has been appointed as interim lead or co-lead counsel in several other cases.[6] Thus, PWA is experienced and more than adequate to represent the class.

In any event, UD does not argue that any of the other firms seeking to be appointed class counsel are inexperienced. Nor could it. *See, e.g.*, Ex. 89 (Bursor & Fisher, P.A. has "won multi-million dollar verdicts or recoveries in six of six class action jury trials since 2008," been appointed as lead counsel in dozens of class actions and recovered hundreds of millions of dollars for class members). Nevertheless, Defendant argues that all class counsel are inadequate because (1) "they have not kept their clients informed," (2) "[t]hey did not adequately oversee the collection of responsive documents," and (3) "the presence of multiple firms . . . [is] often

---

[6] *See Ford v. Rensselaer Polytechnic Institute*, 1:20-cv-00470-DNH-CFH, Dkt. No. 51, at 3; *In Re: University of Miami COVID-19 Tuition and Fee Refund Litig.* 0:20-cv-60851-AHS, Dkt. No. 48, at 3; *In Re: January 2021 Short Squeeze Trading Litig.* 1:21-md-02989-CMA, Dkt. No. 310, at 3; *Espejo v. Cornell Univ.*, 3:20-cv-00467-MAD-ML, Dkt. No. 32, at 8; *Qureshi v. American Univ.*, 1:20-cv-01141-CRC, Dkt. No. 25, at 2; *Montesano v. The Catholic University of America*, 1:20-cv01496-DLF, Dkt. No. 15, at 2.

disfavored in class actions." Opp'n at 13. None of these arguments are tethered to reality. Plaintiffs have confirmed that they have been in regular contact with counsel and been kept abreast of the proceedings in this case. Ninivaggi Decl. ¶ 12; Mickey Decl. ¶ 12; Nigrelli Decl. ¶ 12; Russo Decl. ¶ 12. With the help of their attorneys, they each produced all responsive documents in their possession, custody or control and Defendant has not raised any dispute to the contrary. Finally, it should be noted that all counsel in this matter have appeared and been actively involved through this litigation.[7]

## IV.     PLAINTIFFS SATISFY RULE 23(b)(3)

### A.     Common Issues Predominate For Plaintiffs' Contract Claim

Defendant argues that Plaintiffs' implied-in-fact contract claims are "inappropriate for class certification as they require individualized assessments of contract formation." Opp'n at 15. That is incorrect. As set out in Plaintiffs' moving brief, the course of dealing between UD and students was the same across the board. ECF No. 76 at 2-7. In such instances, courts have found that certification of a class asserting an implied-in-fact contract claim is appropriate. *See, e.g.*, *Mahon v. Chicago Title Ins. Co.*, 296 F.R.D. 63, 78 (D. Conn. 2013) ("[C]ertification of the breach of implied contract claim is appropriate because the claim turns on the standardized nature of the . . . transaction," and "not on the facts and circumstances unique to any particular class member."); *Chesner v. Stewart Title Guar. Co.*, 2008 WL 553773 (N.D. Ohio Jan. 23, 2008) (same); *Yoon v. Gap, Inc.*, 2010 WL 11597565, at *4 (C.D. Cal. Oct. 6, 2010) (certifying

---

[7] In addition, "lead plaintiffs may retain multiple firms as co-lead counsel." *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 267 n.4 (3d Cir. 2005); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 2012 WL 5833604, at *1 (D. Del. Nov. 16, 2012) ("The court recognizes that the appointment of co-lead counsel may be appropriate where the magnitude of the class action justifies the pooling of resources and experience.").

claims based on an implied contract related to gift cards).[8]

Nevertheless, UD argues that individual issues will predominate because, it speculates, some students might not have understood that they were paying for in-person classes and access to the UD campus. But it is black-letter law that "[s]peculation alone does not defeat predominance." *In re Tivity Health, Inc.*, 2020 WL 4218743, at *1 (6th Cir. July 23, 2020). Here, all of the evidence points to a common course of conduct across the class. Indeed, UD does not point to a single student who understood their bargain with UD differently from the named Plaintiffs.

### B. Common Issues Predominate For Plaintiffs' Unjust Enrichment Claim

Defendant argues that unjust enrichment claims are never suitable for classwide treatment because they inherently require individualized proof. Opp'n at 16. But courts routinely certify unjust enrichment classes. *In re Thalomid & Revlimid Antitrust Litig.*, 2018 WL 6573118, at *17 (D.N.J. Oct. 30, 2018) ("Common to all class members . . . is whether Defendant unjustly acquired additional revenue or profits by virtue" of its alleged misconduct, and "the Court does not find that there is a need for inquiry into the equities of individual Plaintiffs."); *Brickman v. Fitbit, Inc.*, 2017 WL 5569827, at *7 (N.D. Cal. Nov. 20, 2017) ("[U]njust enrichment claims are appropriate for class treatment where the defendant's 'conduct is the same as to all members of the putative class,' because in that case 'it is difficult to conceive of any significant equitable

---

[8] Defendant quotes dicta from *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003) stating that "individual questions of implied contract formation . . . might ***conceivably*** predominate . . . ." Opp'n at 15 (emphasis added). In a case with separate courses of conduct for each class member, that could very well be true. For instance, in *Abla v. Brinker Rest. Corp.*, 279 F.R.D. 51, 57 (D. Mass. 2011), which Defendant cites, contracts between banquet servers and a restaurant "often differ[ed] between different restaurant locations, and even between different events at the same restaurant." But here, where the course of conduct was the same across the board and the product that UD offered was standardized, there are no differences from one student to another.

9

differences between class members.' ") (quoting *James D. Hinson Elec. Contracting Co. v. BellSouth Telecomm., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011)).[9]

### C. Plaintiffs Have Calculated Classwide Damages

Defendant argues that individual issues predominate over common ones because "each member made *different* tuition payments." Opp'n 18 (original emphasis). But it is sufficient that Plaintiffs can prove damages as a whole on a classwide basis. "Although allocating the damages among class members may be necessary after judgment, such individual questions do not ordinarily preclude the use of the class action device." *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020) (quotation marks and citation omitted). In fact, denial of class certification solely because damages require individual calculation would be an abuse of discretion. *Neale v. Volvo Cars of N. Am., LLC*, 2015 WL 4466919, at *17 (3d Cir. July 22, 2015); *Skeway v. China Nat. Gas, Inc.*, 304 F.R.D. 467, 476 (D. Del. 2014) (predominance satisfied where the "only issue requiring individual treatment will be the computation of damages for the Class members").

### D. A Class Action Is Superior to Thousands of Individual Actions

Defendant does not present any reason that a class action is not superior to individual lawsuits concerning this dispute. There is no evidence that any absent class members has an interest in individually controlling this litigation and there are no separate parallel proceedings pending. Moreover, proceeding as a class will be eminently more manageable than thousands of individual actions.

---

[9] *Walney v. SWEPI LP*, 2015 WL 5333541, at *1 (W.D. Pa. Sept. 14, 2015) is inapposite because that case involved negotiations between the defendant and class members that "took place on an individualized basis." Here, on the other hand, there were no individualized negotiations. To the contrary, UD offered a product that was uniform in nature and it advertised the in-person nature of its school in the same way to all class members. Accordingly, the injustice of its decision not to refund any tuition payments does not differ between individuals.

10

## CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court certify the class, appoint Plaintiffs as the class representatives and appoint their counsel as class counsel.

Dated: September 30, 2022

Respectfully submitted,

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**

*/s/ Robert J. Kriner, Jr.*
Robert J. Kriner, Jr. (#2546)
Scott M. Tucker (#4925)
2711 Centerville Road, Suite 201
Wilmington, DE 19808
(302) 656-2500

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (admitted *pro hac vice*)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**CROSS & SIMON, LLC**
Christopher P. Simon (No. 3697)
Michael L. Vild (No. 3042)
1105 N. Market Street, Suite 901
P.O. Box 1380
Wilmington, Delaware 19801-1380
(302) 777-4200
csimon@crosslaw.com
mvild@crosslaw.com

**ANASTOPOULO LAW FIRM, LLC**

11

        Eric M. Poulin (admitted *pro hac vice*)
        Roy T. Willey, IV (admitted *pro hac vice*)
        Blake G. Abbott (admitted *pro hac vice*)
        32 Ann Street
        Charleston, SC 29403
        (843) 614-8888
        eric@akimlawfirm.com
        roy@akimlawfirm.com
        blake@akimlawfirm.com

        *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, Robert J. Kriner, Jr., hereby certify that service of the foregoing was caused to be made on September 30, 2022 via e-mail upon the below parties.

Dated: September 30, 2022        */s/ Robert J. Kriner, Jr.*
                                                    Robert J. Kriner, Jr. (#2546)


**SAUL EWING ARNSTEIN & LEHR LLP**
James Darlington Taylor , Jr.
Marisa R. De Feo
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
james.taylor@saul.com
marisa.defeo@saul.com