## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL NINIVAGGI, JAKE MICKEY, CAILIN NIGRELLI and HANNAH RUSSO, individually and on behalf of all others similarly situated, | Civil Action No. 20-cv-1478-SB |
| *Plaintiffs*, | |
| v. | |
| UNIVERSITY OF DELAWARE, | |
| *Defendant*. | |

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT TESTIMONY OF BENJAMIN S. WILNER

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
Robert J. Kriner, Jr. (#2546)
2711 Centerville Road, Suite 201
Wilmington, DE 19808
(302) 656-2500

*Counsel for Plaintiffs*

Dated: October 25, 2022

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................... 1

LEGAL STANDARD ........................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.      DR. WILNER IS NOT QUALIFIED TO PROVIDE EXPERT TESTIMONY ABOUT
CONJOINT ANALYSIS ................................................................................................ 2

CONCLUSION ................................................................................................................... 5

## **<u>TABLE OF AUTHORITIES</u>**

**PAGE(S)**

**CASES**

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
   2022 WL 3021560 (D. Del. July 29, 2022) ................................................................ 2

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*,
   2017 WL 3528606 (D. Del. Aug. 16, 2017) .............................................................. 5

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
   350 F.3d 316 (3d Cir. 2003) ................................................................................. 2, 5

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001) ............................................................................... 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ................................................................................................. 1

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   382 F. Supp. 3d 687 (E.D. Mich. 2019) .................................................................. 4

*Mannacio v. LG Elecs. U.S.A., Inc.*,
   2020 WL 4676285 (D. Minn. Aug. 12, 2020) .......................................................... 4

*Michaux v. Temas*,
   2019 WL 6606110 (W.D. Pa. Dec. 5, 2019) ............................................................ 5

*Schneider ex rel. Est. of Schneider v. Fried*,
   320 F.3d 396 (3d Cir. 2003) .................................................................................... 2

*Three Rivers Hydroponics, LLC v. Florists' Mut. Ins. Co.*,
   2020 WL 419946 (W.D. Pa. Jan. 27, 2020) ............................................................. 5

*Wolf v. Hewlett Packard Co.*,
   2016 WL 7743692 (C.D. Cal. Sept. 1, 2016) .......................................................... 4

**RULES**

Federal Rule of Evidence 702 ...................................................................................... 1, 2

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Michael Ninivaggi, Jake Mickey and Cailin Nigrelli filed their initial Complaint on August 14, 2020, and Plaintiff Hannah Russo filed her original Complaint on November 18, 2020 (collectively "Plaintiffs").  On August 20, 2021, the Court granted Defendant University of Delaware's  ("Defendant" or "UD") motion to dismiss Plaintiffs' conversion claim and request for punitive damages, but otherwise denied UD's motion to dismiss.  ECF No. 20.  Plaintiffs filed a Consolidated Class Action Complaint on September 3, 2021.  ECF No. 19.  On July 1, 2022, following fact discovery, Plaintiffs moved for certification of a class defined as: "All undergraduate students enrolled in classes at the University of Delaware during the Spring 2020 semester who paid tuition."  ECF No. 75.  As part of its opposition to that motion, Defendant submitted the expert report of Benjamin S. Wilner.

## SUMMARY OF ARGUMENT

1.      Dr. Wilner is not qualified to provide expert testimony related to conjoint analysis because (1) he has never designed or executed a conjoint survey; (2) he does not know whether he could design a conjoint survey; (3) he has no publications on the topic of conjoint analysis; (4) he has limited familiarity with conjoint software; and (4) he has no meaningful training in conjoint analysis.

## LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Rule 702 permits expert testimony from "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education . . . ."  In addition, the court must be satisfied that "the expert's scientific, technical, or other specialized knowledge

1

will help the trier of fact to understand the evidence or to determine a fact in issue . . . ."  Fed. R. Evid. 702.

The Third Circuit has added that "[q]ualification," for purposes of Fed. R. Evid. 702, "refers to the requirement that the witness possess specialized expertise."  *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  The Third Circuit has "interpreted this requirement liberally, holding that 'a broad range of knowledge, skills, and training qualify an expert.' "  *Id.* (citation omitted).  "But while generalized qualifications are sufficient, 'more specific knowledge is required to support more specific opinions.' "  *Allscripts Healthcare, LLC v. Andor Health, LLC*, 2022 WL 3021560, at *23 (D. Del. July 29, 2022) (quoting *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003)).

## <u>ARGUMENT</u>

## I.   DR. WILNER IS NOT QUALIFIED TO PROVIDE EXPERT TESTIMONY ABOUT CONJOINT ANALYSIS

The primary purpose of Dr. Wilner's report in this case is to opine on the reliability of the conjoint analysis executed by Plaintiffs' expert Steven P. Gaskin.  Among other items, Dr. Wilner opines on the following aspects of Mr. Gaskin's conjoint work:

- The suitability of conjoint analysis in general for measuring the difference in market price between in-person and online classes at UD (Ex. 1 at 12-22);

- The ability of conjoint analysis to calculate market shares (*Id.* at 29);

- Mr. Gaskin's use of attributes and levels in his conjoint survey's choice tasks (*Id.* at 20-21);

- Mr. Gaskin's interpretation of his conjoint survey data (*Id.* at 21, 44, 66-69);

- The supposed bias built into Mr. Gaskin's conjoint survey (*Id.* at 38-39);

- Mr. Gaskin's use of a "None Option" in his conjoint survey (*Id.* at 30);

- The realism of Mr. Gaskin's conjoint survey (*Id.* at 31);

- The competitor schools used in Mr. Gaskin's conjoint survey (*Id.* at 33);

- Mr. Gaskin's use of list prices in his conjoint survey (*Id.* at 45-50);

- The sample size used in Mr. Gaskin's conjoint survey (*Id.* at 60-62);

- Mr. Gaskin's holdout hit rate (*Id.* at 64); and

- The response rate to Mr. Gaskin's conjoint survey (*Id.* at 71-73).

But Dr. Wilner is not qualified to provide any of this testimony. He has never designed or executed a conjoint survey:

> Q.    Have you ever designed conjoint analysis surveys?
> A.    Again, I have designed surveys that utilize similar techniques, I have built statistical models that are very similar to what -- in using conjoint, so for example, hierarchical Bayesian regression, I've done those, but I have not done them together within a conjoint framework, but I've done each one individually under different contexts.
> Q.    Have you ever executed a conjoint analysis survey?
> A.    Again, the same answer.

Ex. 3 at 40:25-41:13. He does not even know if he *could* design a survey if he were asked to do so. *Id.* at 66 ("Q. If you were asked to design a conjoint survey, would you be able to do that? A. It's not something I've thought about."). He has never published any article or book that have even used the words "conjoint analysis." *Id.* at 26-27. His first use of Sawtooth Software, the leading software for designing and analyzing conjoint analysis surveys, was earlier this year.

> Q.    Do you know what Sawtooth is?
> A.    I do.
> Q.    What is it?
> A.    It is a company that puts forth a software program that analyzes data from various surveys, and -- and it has different models and modules, and from those models and modules, you can come up with financial results that -- and the applicability of those Sawtooth says you need to be very careful about.
> Q.    Have you ever used the Sawtooth software?
> A.    I have gone through a lot of their documentation, I don't know if I have ever turned it on my computer.

3

> Q.    Do you have a license for the software?
> A.    I personally do not, I think my firm does, and multiple licenses.

*Id.* at 41-42.

> Q:    Have you – had you used Sawtooth software prior to the past month?
> A:    Yes.
> Q:    When?
> A:    Earlier this year.

Ex. 2 at 20:9-13.  Dr. Wilner cannot point to any training or education specifically focused on conjoint analysis.  *Id.* at 12:19-13:17.

Where, as here, a witness seeks to provide expert testimony on a topic in which they are evidently not qualified, courts do not hesitate to exclude their testimony.  *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d 687, 694 (E.D. Mich. 2019) ("Dr. Strombom admits that he is not an expert in conjoint analysis and never has performed such a task . . . .  Therefore, all of Dr. Strombom's testimony relating to the propriety of Dr. Hastings's conjoint analysis and the foundations for it must be excluded."); *Wolf v. Hewlett Packard Co.*, 2016 WL 7743692, at *6 (C.D. Cal. Sept. 1, 2016) ("Buckley's deposition testimony leaves the Court convinced that he lacks sufficient expertise in the area of consumer behavior prediction generally, and in the performance or analysis of conjoint studies specifically to opine on the matter.  The Court finds that Buckley is not qualified to testify as an expert on consumer behavior prediction and conjoint analysis."); *Mannacio v. LG Elecs. U.S.A., Inc.*, 2020 WL 4676285, at *8 (D. Minn. Aug. 12, 2020) ("Ugone is admittedly not a survey design expert, and he is not qualified to render opinions on CBC design.  Accordingly, the Court will exclude this opinion."); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1355 (Fed. Cir. 2001) (explaining that district court found that damages expert was not qualified because he had minimal specialized academic credentials and minimal experience with patent

damages).

Dr. Wilner would undoubtedly be qualified to testify as an expert in other cases as an economist or statistician.  But he is not an expert on conjoint analysis, even in the most liberal sense.  Here, Dr. Wilner seeks to opine at Mr. Gaskin's conjoint survey at the most granular level, but he simply does not have the experience or training to do so.  *Three Rivers Hydroponics, LLC v. Florists' Mut. Ins. Co.*, 2020 WL 419946, at *3 (W.D. Pa. Jan. 27, 2020) (" 'An expert may be generally qualified but may lack qualifications to testify outside [their] area of expertise.'  While 'background, education, and training may provide an expert with general knowledge to testify about general matters, more specific knowledge is required to support more specific opinions.' ") (quoting *Calhoun*, 350 F.3d at 322); *Michaux v. Temas*, 2019 WL 6606110, at *5 (W.D. Pa. Dec. 5, 2019) ("An expert's qualifications are determined with respect to each matter addressed in the proposed testimony.") (citing *Calhoun*, 350 F.3d at 322); *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, 2017 WL 3528606, at *2 (D. Del. Aug. 16, 2017) ("Generalized qualifications are sufficient . . . but 'more specific knowledge is required to support more specific opinions[.]' ").

## CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court exclude the expert testimony of Benjamin S. Wilner.

Dated: October 25, 2022

Respectfully submitted,

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**

*/s/ Robert J. Kriner, Jr.*
Robert J. Kriner, Jr. (#2546)
Scott M. Tucker (#4925)
2711 Centerville Road, Suite 201
Wilmington, DE 19808
(302) 656-2500

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (admitted *pro hac vice*)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**CROSS & SIMON, LLC**
Christopher P. Simon (No. 3697)
Michael L. Vild (No. 3042)
1105 N. Market Street, Suite 901
P.O. Box 1380
Wilmington, Delaware 19801-1380
(302) 777-4200
csimon@crosslaw.com
mvild@crosslaw.com

**ANASTOPOULO LAW FIRM, LLC**
Eric M. Poulin (admitted *pro hac vice*)
Roy T. Willey, IV (admitted *pro hac vice*)
Blake G. Abbott (admitted *pro hac vice*)
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com
blake@akimlawfirm.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert J. Kriner, Jr., hereby certify that service of the foregoing was caused to be made

on October 25, 2022 via e-mail upon the below parties.

Dated:  October 25, 2022                           */s/ Robert J. Kriner, Jr.*
                                                          Robert J. Kriner, Jr. (#2546)

**SAUL EWING ARNSTEIN & LEHR LLP**
James Darlington Taylor , Jr.
Marisa R. De Feo
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
james.taylor@saul.com
marisa.defeo@saul.com