## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL NINIVAGGI, JAKE MICKEY, CAILIN NIGRELLI, and HANNAH RUSSO, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNIVERSITY OF DELAWARE,<br><br>*Defendant*. | Civil Action No. 20-cv-1478-SB |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated: October 9, 2023

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
Robert J. Kriner, Jr. (#2546)
Scott M. Tucker (#4925)
2711 Centerville Road, Suite 201
Wilmington, DE 19808
(302) 656-2500

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (admitted *pro hac vice*)
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (admitted *pro hac vice*)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**CROSS & SIMON, LLC**

Christopher P. Simon (No. 3697)
Michael L. Vild (No. 3042)
1105 N. Market Street, Suite 901
P.O. Box 1380
Wilmington, Delaware 19801-1380
(302) 777-4200
csimon@crosslaw.com
mvild@crosslaw.com

**POULIN WILLEY
ANASTOPOULO, LLC**
Eric M. Poulin (admitted *pro hac vice*)
Roy T. Willey, IV (admitted *pro hac vice*)
Blake G. Abbott (admitted *pro hac vice*)
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com
blake@akimlawfirm.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

INTRODUCTION ............................................................................................................ 1
BACKGROUND ............................................................................................................. 1
I.     FACTUAL BACKGROUND ................................................................................. 1
II.    PROCEDURAL BACKGROUND .......................................................................... 1
III.   KEY TERMS OF THE SETTLEMENT ................................................................ 4

       A.    The Class Definition ................................................................ 4

       B.    Monetary Relief ....................................................................... 5

       C.    Release ...................................................................................... 5

       D.    Notice And Administration Expenses ...................................... 5

       E.    Opt-Outs and Objections .......................................................... 6

       F.    Incentive Awards, Attorneys' Fees, Costs, And Expenses ...... 7

ARGUMENT .................................................................................................................. 7
I.     THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED ................. 7
II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS ............................... 8
III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
       ADEQUATE AND SHOULD BE APPROVED BY THIS COURT .................... 10

    A.    The Rule 23(e)(2) Factors .......................................................... 10

       1.    The Class Representatives And Class Counsel Have
           Adequately Represented The Class ............................... 11

       2.    The Settlement Was Negotiated At Arm's Length .......... 11

       3.    The Relief Provided For The Class Is Adequate ............ 12

       4.    The Proposal Treats Class Members Equitably Relative To
           Each Other ................................................................... 12

    B.    The *Girsh* Factors ..................................................................... 12

       1.    The Complexity and Duration of the Litigation ............ 13

       2.    The Reaction of the Class to the Settlement .................. 13

       3.    The Stage of the Proceedings ........................................ 14

       4.    The Risks of Establishing Liability, Damages and
           Maintaining A Class Action .......................................... 15

       5.    The Ability of the Defendant to Withstand a Greater
           Judgment ..................................................................... 16

       6.    The Range of Reasonableness of the Settlement in Light of
           the Best Recovery and the Attendant Risk of Litigation .......... 16

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Bredbenner v. Liberty Travel, Inc.*,
2011 WL 1344745 (D.N.J. Apr. 8, 2011) .......................................................................... 14, 15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................................................................ 8

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .............................................................................................. 13, 15

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3rd Cir. 2001) ........................................................................................ 14, 15, 18

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
269 F.R.D. 468 (E.D. Pa. 2010) ........................................................................................ 11, 17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................................................................ 12, 13, 15

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012) .................................................................................................. 14

*In re Orthopedic Bone Screw Products Liability Litigation*,
176 F.R.D. 158 (E.D. Pa. 1997) ............................................................................................ 14

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
148 F.3d 283 (3d Cir. 1998) .................................................................................................. 14

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) .......................................................................................... 16

*In re Warfarin Sodium Antitrust Litigation*,
391 F. 3d 516 (3d. Cir. 2004) ....................................................................................... 11, 16, 17

*Moon v. E.I. du Pont de Nemours and Co.*,
2023 WL 1765565 (D. Del. Feb. 3, 2023) .............................................................................. 13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ................................................................................................................ 8

*Singleton v. First Student Management LLC*,
2014 WL 3865853 (D.N.J. Aug. 6, 2014) .............................................................................. 17

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ................................................................. 13

**RULES**

Fed. R. Civ. P. 23 ..................................................................... 8, 9, 10

Fed. R. Civ. P. 23(a) ........................................................................ 8

Fed. R. Civ. P. 23 (b) ....................................................................... 8

Fed. R. Civ. P. 23 (a) and (b)(3) ........................................................ 8

Fed. R. Civ. P. 23(c)(2)(B) ............................................................ 8, 15

Fed. R. Civ. P 23(e) ....................................................................... 11

Fed. R. Civ. P. 23 (e)(2) .............................................................. 11, 18

Fed. R. Civ. P. 23 (e)(3) .................................................................. 11

Fed. R. Civ. P. 23(f) ..................................................................... 3, 16

**OTHER AUTHORITIES**

MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.312 (2004) ...................... 9

## INTRODUCTION

Plaintiffs Michael Ninivaggi, Jake Mickey, Cailin Nigrelli, Hannah Russo, and Sean Griffin (collectively, "Plaintiffs"), individually and as the Class Representatives, hereby move for a final order approving the Class Action Settlement Agreement[1] between Plaintiffs and Defendant University of Delaware ("UD" or "Defendant").

## BACKGROUND

### I.   FACTUAL BACKGROUND

Plaintiffs are current and/or former students at UD who allege that Defendant failed to "issue appropriate refunds for the Spring 2020 term after cancelling in-person classes and changing all classes to an online/remote format . . . as a result, of the Novel Coronavirus Disease."  Consolidated Class Action Complaint (ECF No. 19) ("CAC"), ¶ 1.  Plaintiffs further allege that UD "deprived Plaintiffs and other members of the Classes from recognizing the benefits of on-campus enrollment . . . in exchange for which they had already paid . . . tuition."  *Id.* ¶ 2.  The CAC also alleges that UD breached a contract with Plaintiffs when failing to provide Plaintiffs with refunds for tuition.  *See, e.g., id.* ¶¶ 120, 158.  In addition, Plaintiff Griffin alleges that UD breached its contractual obligations with students when it cancelled seven days of the Spring 2020 Semester without making them up.  Class Action Compl. in *Griffin v. University of Delaware*, 1:23-cv-00385-SB.  Defendant disputes Plaintiffs' allegations and denies all claims of wrongdoing.

### II.   PROCEDURAL BACKGROUND

Plaintiffs Michael Ninivaggi, Jake Mickey and Cailin Nigrelli, along with their parents

---

[1] Unless otherwise noted, capitalized terms have the same meaning as set forth in the Class Action Settlement Agreement (the "Settlement Agreement" or "Settlement") (ECF No. 150-3), which is attached as Exhibit A to the Declaration of Joshua D. Arisohn in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Arisohn Decl.").  *See* Arisohn Decl. ¶ 3.

Penny Ninivaggi, Todd Mickey, and James Nigrelli (the "Parent Plaintiffs") filed a putative class action complaint in the Superior Court of the State of Delaware on August 14, 2020.  ECF No. 1-1.[2]  On October 29, 2020, UD removed the action to this Court.  ECF No. 1.  UD moved to dismiss the complaint on November 19, 2020.  ECF No. 5.  Plaintiffs opposed the motion on December 11, 2020.  ECF No. 7.  UD filed its reply on December 18, 2020.  ECF No. 8.  Plaintiff Hannah Russo filed a putative class action complaint against UD in the Superior Court of the State of Delaware.  *Russo v. University of Delaware*, 1:20-cv-01693-SB, ECF No. 1-1.  On December 14, 2020, UD removed the *Russo* action to federal court and it was related to the *Ninivaggi* action.  *Russo* ECF No. 1.

UD moved to dismiss the *Russo* complaint on January 8, 2021.  *Russo* ECF Nos. 6-7.  Plaintiff Russo opposed the motion on February 3, 2021.  *Russo* ECF No. 9.  UD filed its reply on February 17, 2021.  *Russo* ECF No. 11.  The Court held oral argument on the motions to dismiss in *Ninivaggi* and *Russo* on May 18, 2021 (ECF No. 12), and issued an Order granting in part and denying in part the motions on August 20, 2021.  ECF Nos. 15-16.  Following this Court's denial of Defendant's motions to dismiss, the Court entered a scheduling order.  ECF No. 18.  Subsequently, the parties engaged in extensive written discovery, including an exchange of interrogatories and search for and production of documents.  Arisohn Decl. ¶ 12.  The parties then took numerous depositions, including Defendant's 30(b)(6) witness as well as all Plaintiffs whose depositions were requested.  *Id*.  On September 3, 2021, Plaintiffs Michael Ninivaggi, Jake Mickey, Cailin Nigrelli, and Hannah Russo filed a consolidated class action complaint in the *Ninivaggi* action.  ECF No. 19.  UD answered the complaint on September 17, 2021.  ECF No. 20.  Defendant filed a petition for certification of a novel and undecided issue of Delaware

---

[2] On May 27, 2022, the Parent Plaintiffs voluntarily dismissed their claims.  ECF No. 62.

law to the Delaware Supreme Court on October 5, 2021.  ECF No. 22.  Plaintiffs filed their opposition to the petition on October 19, 2021 (ECF No. 29) followed by Defendant's reply in support of its petition on October 26, 2021.  ECF No. 30.  On December 3, 2021, the Court denied UD's petition for certification.  ECF No. 34.

On July 1, 2022, Plaintiffs filed a motion for class certification.  ECF No. 75.  On August 26, 2022, Defendant filed its opposition to that motion (ECF No. 94), followed by Plaintiffs' reply in support of their motion for class certification on September 30, 2022.  ECF No. 102. The Court held oral argument on the motion on March 24, 2023 (ECF No. 132), and then issued an order granting Plaintiffs' motion and certified a class defined as "All undergraduate students enrolled in classes at the University of Delaware during the Spring 2020 semester who paid tuition." ECF Nos. 138-139.  UD filed a Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f) on April 14, 2023.  Plaintiffs filed an opposition to the petition on April 24, 2023. That petition remains pending.  Defendant filed a motion to stay the case pending appeal of the Court's order granting Plaintiffs' motion for class certification on April 14, 2023.  ECF No. 141. On April 18, 2023, Plaintiffs filed a response to that motion (ECF No. 143), followed by Defendant's reply in support of its motion to stay on April 25, 2023.  ECF No. 144.  This Court issued an order denying Defendant's motion to stay the case pending appeal on April 26, 2023. ECF No. 146.

Defendant filed a motion for summary judgment on October 28, 2022.  ECF No. 117.  On December 5, 2022, Plaintiffs filed their opposition to that motion (ECF No. 126), followed by Defendant's reply in support of its motion for summary judgment on December 22, 2022.  ECF No. 128.  That motion remains pending.

On September 30, 2022, Defendant moved to strike the expert testimony of Steven P.

3

Gaskin and Colin B. Weir.  ECF Nos. 103-104.  Plaintiffs opposed those motions on October 21, 2022 (ECF Nos. 112-113) followed by Defendant's replies.  ECF No. 123, 125.  On October 25, 2022, Plaintiffs moved to strike the expert testimony of Benjamin S. Wilner.  ECF No. 114. Defendant opposed that motion on November 30, 2022 (ECF No. 124), followed by Plaintiffs reply on December 16, 2022.  ECF No. 127.  These motions remain pending.  On April 5, 2023, Plaintiff Sean Griffin filed an action captioned *Griffin v. University of Delaware*, 1:23-cv-00385-SB, alleging claims for breach of contract and unjust enrichment arising out of cancelled classes during the Spring 2020 semester.  *Griffin*, ECF No. 1.

The parties participated in a mediation with the Hon. Sue L. Robinson (Ret.) on January 23, 2023.  Arisohn Decl. ¶ 24.  While the parties did not reach a resolution at the mediation, through further negotiations, over the next few months, they reached agreement on all material terms of a class action settlement and executed a term sheet.  *Id.* at ¶ 25.  In the weeks following, the parties negotiated and finalized the full-form Settlement Agreement.  *Id.*  On June 23, 2023, the Court granted preliminary approval of the Settlement.  ECF No. 152.

### III.   KEY TERMS OF THE SETTLEMENT

The key terms of the Settlement are briefly summarized as follows:

### A.     The Class Definition

The "Settlement Class" or "Settlement Class Members" is defined as:

> [A]ll UD undergraduate and graduate students for whom any amount of tuition and fees were paid from any source (e.g., the student's own funds, funding from a parent, or other family member, loan, or non-UD scholarship) to Defendant for the Spring 2020 Semester, and whose tuition or fees have not been refunded in their entirety prior to this Settlement.  Excluded from the Settlement Class are (1) any Judge or Magistrate Judge presiding over these Actions and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former

4

officers, directors, agents, and attorneys; (3) persons who properly
execute and file a timely request for exclusion from the class; and
(4) the legal representatives, successors or assigns of any such
excluded persons.

Arisohn Decl., Ex. A, Settlement ¶¶ 1.28, 1.29.

### B.     Monetary Relief

The Settlement creates a $6.3 million non-reversionary common fund from which cash
awards will be paid to Settlement Class Members as well as Settlement Administration
Expenses, any incentive awards to the Class Representatives, and any attorneys' fees or expenses
awarded to Class Counsel.  *Id.*, ¶ 1.31.  Each Settlement Class Member will automatically
receive a *pro rata* cash payment from the Settlement Fund.  *Id.*, ¶ 2.1(b).  The Notice gave
Settlement Class Members the ability to opt via an Election Form to receive a Cash Award by
Check, Venmo, or Pay Pal.  *Id.* In the event a Settlement Class Member did not submit an
Election Form, the Settlement Class Member will receive a Cash Award in the form of a check
sent to the Settlement Class Member's last known address.  *Id.*

### C.     Release

In exchange for the relief described above, the obligations incurred pursuant to this
Settlement Agreement shall be a full and final disposition of the Action and any and all Released
Claims, as against all Released Parties.  *Id.*, ¶ 3.1.  Upon the Effective Date, the Releasing
Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall
have, fully, finally, and forever released, relinquished, and discharged all Released Claims
against the Released Parties, and each of them.  *Id.*, ¶ 3.2.

### D.     Notice And Administration Expenses

The Class Notice has been timely disseminated in accordance with the schedule and
procedure directed in the Court's Preliminary Approval Order (ECF Nos. 152, 154).  Arisohn

Decl. ¶ 39; *see generally* Declaration of Amanda Sternberg Regarding Notice and Settlement Administration ("Sternberg Decl.").  Class Notice was timely emailed or sent via First Class U.S. Mail to 19,106 Settlement Class Members identified using Defendant's records.  Sternberg Decl., ¶ 13; Arisohn Decl., Ex. A, Settlement ¶ 4.1(a).

In addition, the Settlement Administrator has established a Settlement website (udsettlement.com) with substantial information including: (1) details regarding the lawsuit, the Settlement and its benefits, and the Settlement Class Members' legal rights and options including objecting to or requesting to be excluded from the Settlement and/or not doing anything; (2) instructions on how and when to submit an Election Form; (3) instructions on how to contact the Settlement Administrator by mail or telephone; (4) copies of the Amended Complaint, the Settlement Agreement, the Preliminary Approval Order, the Election Form, and the Long Form Notice; (5) important dates pertaining to the Settlement including the deadline to opt-out of or object to the Settlement, the Election Form submission deadline, the Fairness Hearing date, place and time; and (6) answers to Frequently Asked Questions.  *See* Sternberg Decl., ¶ 14.

The Settlement Fund will be used to pay the cost of Settlement Administration Expenses, which includes sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administering the Settlement.  Arisohn Decl., Ex. A, ¶ 1.31.

### E.      Opt-Outs and Objections

Pursuant to the Settlement Agreement and Preliminary Approval Order, any Settlement Class Member who wishes to opt-out of the Settlement Class is required to do so in accordance with the procedure and deadline set forth therein.  *See* Prelim. Approval Order, ¶ 15-17.  The opt-out deadline was September 19, 2022.  *Id.* ¶ 16.  There is only one opt-out as of the date of this filing. Arisohn Decl., ¶ 40; Sternberg Decl., ¶ 18.  Settlement Class Members who did not submit timely and proper opt-out requests are deemed to be part of the Settlement Class, and thus

bound by all subsequent proceedings, orders and judgments.

Also pursuant to the Settlement Agreement and Preliminary Approval Order, any Settlement Class Member who did not request to opt-out of the Settlement was duly afforded the right to object to the Settlement and/or to the requested attorneys' fees and expense award and Class Representative incentive awards.  To object, the Settlement Class Member was required to comply with the procedures and deadline set forth therein.  *See* Prelim. Approval Order, ¶¶ 18-22.  The written objection was required to be filed with the Court or, for *pro se* objectors, mailed to the Court, Class Counsel, and defense counsel.  *Id.* ¶ 22.  There are zero objectors to the Settlement as of the date of this filing.  Arisohn Decl., ¶ 41; Sternberg Decl., ¶ 19.

### F.     Incentive Awards, Attorneys' Fees, Costs, And Expenses

In recognition for their efforts on behalf of the Settlement Class, UD has agreed that Plaintiffs Michael Ninivaggi, Jake Mickey, Cailin Nigrelli, Hannah Russo, and Sean Griffin may each receive, subject to Court approval, an incentive award of $5,000 each from the Settlement Fund, as appropriate compensation for their time and effort serving as Class Representatives and as parties to the Action.  Arisohn Decl., ¶¶ 47-49; *id.*, Ex. A, Settlement ¶ 8.3.  UD has also agreed that Plaintiffs' Attorneys may receive from the Settlement Fund, subject to Court approval, attorneys' fees, not to exceed one-third of the Settlement Fund (or $2,100,000.00).  *Id.*, ¶ 8.1.  In addition, UD has agreed that Plaintiffs' Attorneys may receive from the Settlement Fund, subject to Court approval, attorneys' costs and expenses not to exceed $250,000.00, of which Plaintiffs' Attorneys have requested $245,240.19.  Plaintiffs have moved separately for attorneys' fees, costs and incentive awards.  (ECF Nos. 155-156).

### ARGUMENT

### I.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

This Court's Preliminary Approval Order (ECF No. 152, ¶ 9) conditionally certified a

class for settlement purposes.  Under Federal Rule of Civil Procedure 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Here, all Rule 23 requirements for certification of the proposed Settlement Class are satisfied.  This Court was correct in conditionally certifying the Class for settlement purposes pursuant to Rules 23(a) and (b)(3), and nothing has changed to alter the propriety of this Court's certification.  *See* Prelim. Approval Order ¶ 9.  Accordingly, for the reasons set out in Plaintiff's motion for preliminary approval and the Court's Preliminary Approval Order, the Court should now grant final certification of the Settlement Class.

## II.   THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Due process and Rule 23 require that the notice provided to the Settlement Class be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010).

The notice of class settlement should: define the class; describe clearly the options open to class members and the deadlines for taking action; describe essential terms of the proposed settlement; disclose any special benefits provided to the class representatives; provide attorneys' fees information; indicate the time and place of the hearing considering approval of the settlement; explain the method for objecting to or opting out of the settlement; explain procedures for entitlement to payment of claims; and, display the contact information for

inquiries.  MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.312 (2004).

Here, the Notice Plan meets the above-mentioned standards.  The Notice Plan provided direct notice via e-mail or First-Class U.S. mail to over 99% of the Settlement Class.  *See* Arisohn Decl. ¶ 3, Ex. A, 4.1(b)-(c); Sternberg Decl. ¶¶ 10-13.  Further, the approved Notice advised the Settlement Class of the Settlement Class definition, the essential terms of the Settlement, the proposed attorneys' fees and incentive awards, and it also advised Settlement Class Members of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or any of its terms.  Arisohn Decl. ¶ 3, Ex. A, Settlement ¶ 4.2 and Exhibits B and C to the Settlement Agreement; Sternberg Decl., ¶ 8, Ex. B, ¶ 12, Ex. C. At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process.  *See* Prelim. Approval Order, ¶ 12.  The Plan has now been fully carried out by a professional settlement administrator, Epiq Systems, Inc. ("Epiq"). Arisohn Decl., ¶ 39; *see generally* Sternberg Decl.  Pursuant to the Settlement, Defendant provided Epiq with a list of 19,106 available names, addresses and emails of potential Settlement Class Members derived from Defendant's records.[3]  *See* Sternberg Decl. ¶¶ 6-7; Arisohn Decl., Ex. A, Settlement ¶ 4.1(a).  On July 14, 2023, Epiq sent Email Notices to 19,006 potentially valid Class Member email addresses.  Sternberg Decl. ¶ 10.  A total of 17,458 Email Notices were delivered.  *Id.* ¶ 11.  Of the 1,458 Email Notices that could not be delivered, 1,090 of them were undeliverable because the email address no longer existed, the email account was closed, or the email address had a bad domain name or address error.  *Id.*  After three attempts, the remaining 368 Email Notices could not be delivered due to various reasons, such as an inactive or disabled account.  *Id.*  Ultimately, Epiq was able to deliver direct Email Notice to over 92% of

---

[3] On June 16, 2023, Epiq also notified the appropriate state and federal officials pursuant to CAFA.  Sternberg Decl. ¶ 5, Exhibit A.

the email addresses provided in the Class Data.  *Id.*  Epiq also sent Postcard Notice to each of the Settlement Class Members provided in the Class List without an email address, in addition to 1,456 Settlement Class Members whose email addresses "bounced" back as undeliverable in the email campaign effort and had a valid physical mailing address on file.  *Id.* ¶ 12.  In total, Epiq mailed 1,556 Postcard Notices, of which only 29 were undeliverable.  *Id.*

Accordingly, the Court-approved Notice successfully reached over 99% of the Settlement Class directly.  *Id.* ¶¶ 10-13.  The Notice also directed Settlement Class Members to the Settlement website, where they were able to access important court filings, including the Motion for Attorneys' Fees and all related documents; and see deadlines and answers to frequently asked questions.  *Id.* ¶ 8, Ex. B, ¶ 12, Ex. C.  Given the broad reach of the Notice, and the comprehensive information provided therein, due process and Rule 23 requirements are met.

## III.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THIS COURT

Fed. R. Civ. P 23(e) requires a determination by the district court that the proposed settlement is "fair, reasonable and adequate."; *In re Warfarin Sodium Antitrust Litigation*, 391 F. 3d 516, 534 (3d. Cir. 2004).  There is a strong judicial policy in favor of resolution of litigation before trial "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.,* 269 F.R.D. 468, 484 (E.D. Pa. 2010) (internal citations omitted).

### A.     The Rule 23(e)(2) Factors

Rule 23(e)(2) requires the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into

account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

Here, the settlement checks all of these boxes.

### 1. The Class Representatives And Class Counsel Have Adequately Represented The Class

First, as explained in Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, And Incentive Awards (ECF Nos. 155-156), the class representatives and class counsel have adequately represented the class. Plaintiffs have been active participants in all aspects of this case. Class Counsel are experienced lawyers who diligently pursued the claims on behalf of the Class. Accordingly, as the Court already held in issuing its Order granting preliminary approval (ECF No. 152), Class Counsel "are competent and capable of exercising the responsibilities of Class Counsel" and "Plaintiffs Ninivaggi, Mickey, Nigrelli, Russo, and Griffin will adequately protect the interests of the Settlement Class defined below."

### 2. The Settlement Was Negotiated At Arm's Length

After three years of litigation, plus mediation, the parties negotiated for months in good faith. Arisohn Decl. ¶¶ 24-25. These negotiations were informed both by the discovery in this case as well as by the lawyers' experience, giving rise to the presumption that the settlement is fair and reasonable. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55

F.3d 768, 785 (3d Cir. 1995).

### 3. The Relief Provided For The Class Is Adequate

Here, the total settlement value is $6.3 million, which is in line with other COVID-19 tuition refund settlements. *See, e.g., Smith v. The University of Pennsylvania*, No. 2:20-cv-02086-TJS ($4.5MM common fund); *D'Amario v. The University of Tampa*, No. 7:20-cv-03744-CS ($3.4MM common fund); *See, e.g.*, *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.) ($2.4MM common fund); *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609 (D.N.H.) ($1.25MM common fund); *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128 (E.D. Mo.) ($1.65MM common fund). In light of these other settlements, this settlement amount is well within the range of reasonableness. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 324 (3d Cir. 2011) ("[I]n conducting the analysis, the court must guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." (internal quotation marks omitted)). That is especially true given the continued risks in this case. *See infra* at III.B.4. In addition, the automatic payments to all class members is the most effective method of distributing class benefits possible. And the one-third recovery sought by Class Counsel is "unremarkable." *Moon v. E.I. du Pont de Nemours and Co.*, 2023 WL 1765565, at *4 (D. Del. Feb. 3, 2023).

### 4. The Proposal Treats Class Members Equitably Relative To Each Other

Each Settlement Class Member will automatically receive a *pro rata* cash payment from the Settlement Fund. *Id.*, ¶ 2.1(b).

### B. The *Girsh* Factors

The Third Circuit has also adopted a nine-factor test to determine whether a settlement

is "fair, reasonable, and adequate."  The elements of this test—known as the *Girsh* factors—are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*GM Trucks,* 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).  "These factors are a guide and the absence of one or more does not automatically render the settlement unfair."  *In re Orthopedic Bone Screw Products Liability Litigation*, 176 F.R.D. 158, 184 (E.D. Pa. 1997).  The Settlement satisfies the *Girsh* factors and the Court should grant final approval.

### 1.    The Complexity and Duration of the Litigation

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.,* 264 F.3d 201, 233-34 (3rd Cir. 2001) (internal quotation marks omitted).  "Where the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement."  *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *11 (D.N.J. Apr. 8, 2011).

By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the Settlement Class.  Indeed, remaining steps would likely include: (1) Defendant's pending 23(f) Petition; (2) Defendant's pending motion for summary judgment; (3) the Parties' competing motions to strike each other's experts; (4) trial; and (5) appeal.  Accordingly, settlement at this juncture provides a prompt resolution of this action as compared to the alternative.

### 2.    The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the

settlement," *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 318 (3d Cir. 1998), and the Class's support "creates a strong presumption . . . in favor of the Settlement." *In re Cendant*, 264 F.3d at 235. A "small number of objections by Class Members to the Settlement weighs in favor of approval." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 103 (D.N.J. 2012) (citations omitted).

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 152, ¶¶ 12-14), and direct notice reached over 99% of the Settlement Class. *See* Arisohn Decl. ¶ 39; Sternberg Decl. ¶ 13. Zero objected to the Settlement, and only one has opted out. *See* Arisohn Decl. ¶ 40-41; Sternberg Decl. ¶¶ 18-19. This exceptional participation rate and lack of objections leave no question that the Settlement Class Members view the Settlement favorably, weighing heavily in favor of final approval.

### 3. The Stage of the Proceedings

The stage of the proceedings and the amount of discovery completed is another factor that courts may consider in determining the fairness, reasonableness and adequacy of a settlement. *GM Trucks*, 55 F.3d at 785; *Girsh*, 521 F.2d at 157. "This factor considers the degree of case development accomplished by counsel prior to settlement." *Bredbenner*, 2011 WL 1344745, at *12. "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *GM Trucks*, 55 F.3d at 813.

Here, Class Counsel are well informed of the strengths and weaknesses of Plaintiffs' claims as well as Defendant's arguments and affirmative defenses, having completed discovery and briefed a motion to dismiss, motion for class certification, and motion for summary judgment. Therefore, this factor weighs heavily in favor of final approval.

### 4. The Risks of Establishing Liability, Damages and Maintaining A Class Action

These factors "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant*, 264 F.3d at 237 (quoting *GM Trucks,* 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if the case were taken to trial against the benefits of immediate settlement." *In re Safety Components, Inc. Sec. Litig.,* 166 F. Supp. 2d 72, 89 (D.N.J. 2001) (internal quotation and citation omitted).

Although Class Counsel believe that the claims presented in this litigation are meritorious, they are experienced class action and litigation counsel who understand the risks in continuing the litigation. At the time of the settlement, Defendant's 23(f) Petition and motion for summary judgment were both pending, presenting significant risk to the case. For example, several courts have rejected similar cases by granting motions for summary judgment. Arisohn Decl. ¶ 34 (citing cases). The proposed Settlement alleviates these risks and provides a substantial benefit to the Settlement Class Members in a timely fashion. This factor favors final approval.

Likewise, Plaintiffs face considerable risk of establishing damages both individually and on a class-wide basis and such determination of damages would likely reduce to a battle of the experts, the outcome of which is uncertain.

Plaintiffs also face significant litigation risk in seeking to maintain a litigation class. Indeed, UD has already filed a Petition to Appeal Pursuant to Fed. R. Civ. P. 23(f)—a petition which remains pending—and will likely subsequently move to decertify, forcing additional rounds of briefing. The proposed settlement eliminates this risk, expense, and delay. This factor favors final approval.

### 5.	The Ability of the Defendant to Withstand a Greater Judgment

UD probably could withstand a greater judgment, but countless settlements have been approved even though a settling defendant might have had the ability to pay greater amounts. The Third Circuit has noted that this fact alone does not weigh against settlement approval, *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d at 538, and in any event, this factor is generally neutral when, as in this case, the defendant's ability to pay was not a factor in settlement negotiations. *In re CertainTeed*, 269 F.R.D. at 489 (explaining that the "fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached"). Therefore, this factor is neutral.

### 6.	The Range of Reasonableness of the Settlement in Light of the Best Recovery and the Attendant Risk of Litigation

"The last two *Girsh* factors evaluate [the] . . . reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d at 538. Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained are less than those originally sought. *See Singleton v. First Student Management LLC*, 2014 WL 3865853, at *7 (D.N.J. Aug. 6, 2014) ("The settlement of a class action may be appropriate even where the settlement is only a fraction of the ultimate total exposure….").

Here, the total settlement value is $6.3 million, which is in line with other COVID-19 tuition refund settlements. *See, e.g., Smith v. The University of Pennsylvania*, No. 2:20-cv-02086-TJS ($4.5MM common fund); *D'Amario v. The University of Tampa*, No. 7:20-cv-03744-CS ($3.4MM common fund); *See, e.g., Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.) ($2.4MM common fund); *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609

16

(D.N.H.) ($1.25MM common fund); *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128 (E.D. Mo.) ($1.65MM common fund).  Weighing the benefits of the Settlement against the risks, the Settlement is more than reasonable.  Thus, these *Girsh* factors also weigh in favor of final approval.

*   *   *

In sum, the Rule 23(e)(2) factors and the *Girsh* factors weigh overwhelmingly in favor of approval.  Because the settlement is "fair, reasonable, and adequate," the Court should grant final approval.  *In re Cendant*, 264 F.3d at 243.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement and enter the proposed Final Judgment and Order of Dismissal with Prejudice submitted herewith.

Dated: October 9, 2023

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**

_____*/s/ Robert J. Kriner, Jr.*_____
Robert J. Kriner, Jr. (#2546)
Scott M. Tucker (#4925)
2711 Centerville Road, Suite 201
Wilmington, DE 19808
(302) 656-2500

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (admitted *pro hac vice*)
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (admitted *pro hac vice*)
701 Brickell Avenue, Suite 1420

17

Miami, FL 33131
Tel: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**CROSS & SIMON, LLC**
Christopher P. Simon (No. 3697)
Michael L. Vild (No. 3042)
1105 N. Market Street, Suite 901
P.O. Box 1380
Wilmington, Delaware 19801-1380
(302) 777-4200
csimon@crosslaw.com
mvild@crosslaw.com

**POULIN WILLEY
ANASTOPOULO, LLC**
Eric M. Poulin (admitted *pro hac vice*)
Roy T. Willey, IV (admitted *pro hac vice*)
Blake G. Abbott (admitted *pro hac vice*)
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com
blake@akimlawfirm.com

*Attorneys for Plaintiffs*

18